UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JEFFREY LAYDON, on behalf of himself and all    :
others similarly situated,                                      :
                                                                           :
                           Plaintiff,                             :
                                                                           :    Case No: 12-cv-3419 (GBD)
                      v.                                           :
                                                                           :
MIZUHO BANK, LTD., THE BANK OF TOKYO-         :    **ORAL ARGUMENT REQUESTED**
MITSUBISHI UFJ, LTD, THE SUMITOMO              :
TRUST AND BANKING CO., LTD., THE                 :
NORINCHUKIN BANK, MITSUBISHI UFJ               :
TRUST AND BANKING CORPORATION,               :
SUMITOMO MITSUI BANKING                             :
CORPORATION, RESONA BANK, LTD., J.P.           :
MORGAN CHASE & CO., J.P. MORGAN CHASE     :
BANK, NATIONAL ASSOCIATION, J.P.                :
MORGAN SECURITIES PLC, MIZUHO                   :
CORPORATE BANK, LTD., DEUTSCHE BANK       :
AG, MIZUHO TRUST AND BANKING CO.,             :
LTD., THE SHOKO CHUKIN BANK, LTD.,            :
SHINKIN CENTRAL BANK, UBS AG, UBS             :
SECURITIES JAPAN CO. LTD., THE BANK OF       :
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA,       :
THE ROYAL BANK OF SCOTLAND GROUP,          :
PLC, ROYAL BANK OF SCOTLAND PLC, RBS        :
SECURITIES JAPAN LIMITED, BARCLAYS           :
BANK PLC, CITIBANK, NA, CITIGROUP, INC.,      :
CITIBANK, JAPAN LTD., CITIGROUP GLOBAL     :
MARKETS JAPAN, INC., COÖPERATIEVE            :
CENTRALE RAIFFEISEN-BOERENLEENBANK      :
B.A., HSBC HOLDINGS PLC, HSBC BANK PLC,     :
ICAP PLC, R.P. MARTIN HOLDINGS                   :
LIMITED AND JOHN DOES NOS. 1-50,                :
                                                                           :
                           Defendants.                           :
-----------------------------------------------------------------x

### SUPPLEMENTAL REPLY MEMORANDUM OF THE TIBOR-ONLY BANKS
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### (Counsel listed on following pages)

Gary W. Kubek
Jeffrey S. Jacobson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6836
gwkubek@debevoise.com
jsjacobson@debevoise.com

*Attorneys for Defendant*
*The Bank of Yokohama, Ltd.*

Paul B. Hewitt
C. Fairley Spillman
Diana Gillis
AKIN GUMP STRAUSS HAUER & FELD
    LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel.:  (202) 887-4409
Fax:  (202) 887-4288
phewitt@akingump.com
fspillman@akingump.com
dgillis@akingump.com

Michael Asaro
AKIN GUMP STRAUSS HAUER & FELD
    LLP
One Bryant Park
New York, NY 10036-6745
Tel.:  (212) 872.8100
Fax:  (212) 872-1002
masaro@akingump.com

*Attorneys for Defendant*
*Resona Bank, Ltd.*

Frederick A. Brodie
Tameka M. Beckford-Young
PILLSBURY WINTHROP SHAW PITTMAN
    LLP
1540 Broadway
New York, New York 10036-4039
Tel.: (212) 858-1000
Fax: (212) 858-1500
fab@pillsburylaw.com
tameka.beckfordyoung@pillsburylaw.com

*Attorneys for Defendant*
*Shinkin Central Bank*

Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Weitman@sewkis.com
Christensen@sewkis.com

*Attorneys for Defendant*
*Sumitomo Mitsui Trust Bank, Ltd.*

Robert C. Mason
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Tel.: (212) 715-1088
Fax: (212) 715-1399
robert.mason@aporter.com

James W. Thomas, Jr. *(admitted pro hac vice)*
Ingrid A. Epperly *(admitted pro hac vice)*
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel.: (202) 942-5000
Fax: (202) 942-5999
james.thomas@aporter.com
ingrid.epperly@aporter.com

*Attorneys for Defendant*
*The Shoko Chukin Bank, Ltd.*

# TABLE OF CONTENTS

Page

I.  PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS CLAIMS SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS TO THE EXTENT THOSE CLAIMS ARE BASED ON ALLEGED CONDUCT RELATING TO YEN LIBOR ................................................................................ 1

II. PLAINTIFF'S OPPOSITION CONFIRMS THAT THE FIRST THROUGH THIRD CLAIMS FOR RELIEF UNDER THE COMMODITY EXCHANGE ACT SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS ................................................................................ 1

   A.  Plaintiff Cannot State a CEA Claim Against the TIBOR-only Banks Based on Allegations About Other Defendants' Conduct ................................. 1

   B.  Plaintiff's Meager Allegations Against the TIBOR-only Banks Do Not State a Claim ................................................................................ 3

      1.  Alleged Variations in Euroyen TIBOR's Relationship to Other Rates Cannot Show That Any TIBOR-only Bank Caused Artificial Prices ................................................................................ 3

      2.  The Alleged Rate Variations in Euroyen TIBOR Cannot Show That Any TIBOR-only Bank Specifically Intended to Cause Artificial Prices ................................................................................ 5

III. THE FOURTH CLAIM FOR RELIEF UNDER THE SHERMAN ACT SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS .................................... 6

   A.  Plaintiff Admittedly Pleads No Facts That Could Constitute Direct Evidence That Any TIBOR-only Bank Participated in the Asserted Conspiracy to Restrain Trade ................................................................ 6

   B.  Plaintiff's Allegations As to Other Banks Cannot Support an Inference That Any TIBOR-only Bank Participated in the Asserted Conspiracy to Restrain Trade ................................................................................ 7

   C.  Plaintiff's Other Allegations Cannot Support an Inference That Any TIBOR-only Bank Participated in the Asserted Conspiracy to Restrain Trade ................................................................................ 8

IV. THE FIFTH CLAIM FOR RELIEF, SEEKING RECOVERY FOR UNJUST ENRICHMENT, SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS ................................................................................ 9

CONCLUSION ................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
    720 F.3d 33 (1st Cir. 2013) ................................................................................. 9

*Hinds Cnty, Miss. v. Wachovia Bank N.A.*,
    620 F. Supp. 2d 499 (S.D.N.Y. 2009) ................................................................. 7

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG)(VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009)...................... 2, 7

*In re Air Cargo Shipping Services Antitrust Litigation*,
    No. 06-MD-1775 (JG)(VVP), 2008 WL 5958061, (E.D.N.Y. Sept. 26, 2008) ....................... 2

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp.2d 513 (S.D.N.Y. 2008) ................................................................. 10

*In re Auto Parts Antitrust Litig.*,
    12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013) ................................. 7

*In re Commodity Exchange, Inc. Silver Futures & Options Trading Litig.*,
    No. 11 MD 2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ............................. 5

*In re Crude Oil Commodity Litig.*,
    No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007).............................. 2

*In re Elevator Antitrust Litig.*
    502 F.3d 47 (2d Cir. 2007) ................................................................................. 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MD 2262 (NRB), 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013)................................ 6

*Sperry v. Crompton Corp.*
    8 N.Y.3d 204 (2007) ....................................................................................... 9-10

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ............................................................................... 9

*United States v. Huezo*,
    546 F. 3d 174 n.2 (2d Cir. 2008) ........................................................................ 8

*United States v. Wilkinson*
    754 F.2d 1427 (2d Cir. 1985) ............................................................................. 8

Rules and Regulations

Federal Rules of Civil Procedure
   Rule 9(b) ........................................................................................................................ 2, 5

The Bank of Yokohama, Ltd., Resona Bank, Ltd., Shinkin Central Bank, The Shoko Chukin Bank, Ltd., and Sumitomo Mitsui Trust Bank, Ltd. (the "TIBOR-only Banks") respectfully submit this Supplemental Reply Memorandum in further support of their motion to dismiss Plaintiff's Second Amended Complaint.

Plaintiff's opposition brief ("P.Mem.")[1] pays scant attention to the TIBOR-only Banks, confirming that Plaintiff has not carried, and cannot carry, his pleading burden against these Japanese banks.  The Complaint does not allege – nor, as a factual matter, could it allege – that any of the TIBOR-only Banks has been accused of wrongdoing by any authority or implicated by any settlement.  The claims against the TIBOR-only Banks should therefore be dismissed.

## I.    PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS CLAIMS SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS TO THE EXTENT THOSE CLAIMS ARE BASED ON ALLEGED CONDUCT RELATING TO YEN LIBOR

Plaintiff does not dispute that the TIBOR-only Banks were not on the Yen LIBOR panel and could not have manipulated Yen LIBOR.  His claims against the TIBOR-only Banks should therefore be dismissed to the extent they are based on the alleged manipulation of Yen LIBOR.

## II.    PLAINTIFF'S OPPOSITION CONFIRMS THAT THE FIRST THROUGH THIRD CLAIMS FOR RELIEF UNDER THE COMMODITY EXCHANGE ACT SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS

As demonstrated in the defendants' joint reply memorandum on CEA issues, Plaintiff has failed to allege an actionable violation of the CEA against any defendant.  Plaintiff's CEA claims against the TIBOR-only Banks fail for additional and independent reasons, as set forth below.

### A.    Plaintiff Cannot State a CEA Claim Against the TIBOR-only Banks Based on Allegations About Other Defendants' Conduct

The substantive allegations cited in Plaintiff's opposition brief to support his CEA claims say *nothing* about any TIBOR-only Bank.  *See* P.Mem. 25-56.  After reciting at length from the

---

[1]   The abbreviations and citation forms adopted in the Supplemental Memorandum of the TIBOR-only Banks in Support of Defendants' Motions to Dismiss, Doc. 208 ("T-O Mem.") are continued herein.

Barclays, UBS, and RBS regulatory settlements, Plaintiff groups all other defendants together, labeling them creatively but meaninglessly as the "Yet-Non-Settling Contributor Banks," and conclusorily asserts that they all participated in certain "manipulative acts." P.Mem. 34. In fact, all those asserted "manipulative acts" make no reference to any of the TIBOR-only Banks. *See id.* at 29-34.

Plaintiff tries to overcome this pleading deficiency by arguing that he does not need to plead facts implicating each defendant when "certain . . . alleged co-conspirators have already admitted to fixing prices," citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009), *aff'd on other issues*, 697 F.3d 154 (2d Cir. 2012). P.Mem. 11.[2] But *Air Cargo* did not address claims under the CEA or the more stringent pleading standards under Rule 9(b). Moreover, the few non-settling defendants in *Air Cargo* did not contend that the allegations against them differed in substance from those against other defendants, so the court decided only that the complaint alleged a plausible conspiracy, not whether it sufficiently alleged each defendant's involvement. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2008 WL 5958061, at *3 (E.D.N.Y. Sept. 26, 2008) (itemizing motions, none by separate defendants for failure to state a claim). Here, in contrast, the TIBOR-only Banks *do* contend that the absence of allegations as to their conduct makes Plaintiff's claims against them untenable. Because the Complaint fails to allege any facts that could show the TIBOR-only Banks participated in the asserted price manipulation by other defendants, the CEA claims against the TIBOR-only Banks should be dismissed. *See, e.g., In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("where multiple defendants are alleged to have committed fraud,

---

[2]  Plaintiff misleadingly cites the District Court's decision as having been affirmed by the Second Circuit, but that court affirmed only the District Court's holding that certain of plaintiffs' claims should be dismissed.

the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement").

### B.   Plaintiff's Meager Allegations Against the TIBOR-only Banks Do Not State a Claim

Stripped of its group pleading allegations, the Complaint is left with three insignificant allegations that purportedly support Plaintiff's CEA claims against the TIBOR-only Banks, *i.e.*, that each TIBOR-only Bank (1) was a Euroyen TIBOR contributor bank, (2) served as a Tokyo Financial Exchange (TFX) trading and clearing member, and (3) submitted rates used to calculate TIBOR that Plaintiff asserts were "false" simply because they varied from a historical relationship with Yen LIBOR and the Bloomberg Euroyen Deposit Rate ("EYDR").  *See* P.Mem. 40-42, 51-52.

But allegations that each TIBOR-only Bank served as a Euroyen TIBOR contributor bank and as a TFX trading and clearing member are insufficient to plead that any TIBOR-only Bank either caused artificial prices for Euroyen TIBOR futures contracts or specifically intended to do so.  To accept these allegations as sufficient would be to say that any bank that accepted appointment to the Euroyen TIBOR panel and joined the TFX would, by those actions, be presumed to have the specific intent to cause artificial Euroyen TIBOR futures prices and to have carried out that intent, without regard to any facts concerning its actual intent and conduct. Nor, as shown below, can Plaintiff plead causation or specific intent based on his remaining allegation that the rates TIBOR-only Banks submitted for Euroyen TIBOR varied from their supposed "historical relationship" with Yen LIBOR or the EYDR.

### 1.   *Alleged Variations in Euroyen TIBOR's Relationship to Other Rates Cannot Show That Any TIBOR-only Bank Caused Artificial Prices*

Plaintiff alleges no plausible basis to infer that any variation from the purported "historical relationship" between Euroyen TIBOR and Yen LIBOR or EYDR was caused by

3

false submissions by the TIBOR-only Banks. To the contrary, Plaintiff alleges that submissions for Euroyen TIBOR, Yen LIBOR, and EYDR were based on different criteria that would vary depending upon market conditions that Plaintiff concedes occurred.

Plaintiff acknowledges that Euroyen TIBOR is based on what eight submitting banks "deem to be the prevailing market rates, assuming transactions between prime banks on the Japanese offshore market . . . *unaffected by their own positions*." Compl. ¶¶90-93 (emphasis added). In other words, all TIBOR panel banks were instructed to estimate the same thing: the borrowing rate between "prime banks." Yen LIBOR, in contrast, is based on the rates at which each of more than a dozen banks estimates that *it* "could . . . borrow funds . . . by asking for and then accepting inter-bank offers in a reasonable market size," *id.* ¶¶94-96, while EYDR is based on *actual* transactions of an even larger set of both banks and brokerages. *Id.* ¶¶631-632. Because the three rates are based on different criteria, the relationship among them necessarily could vary depending on changes in market conditions.

Moreover, Plaintiff concedes that there were market conditions or other factors during the class period that logically would cause the historical relationship among those three rates to vary due to the different criteria on which they were based. These included the following:

- A financial crisis in 2007-2008, in which the borrowing rates of the "prime banks" estimated for Euroyen TIBOR would be expected to decrease relative to the rates of the more diverse set of banks whose borrowing ability was reflected in Yen LIBOR or the EYDR, and thus would account for Euroyen TIBOR becoming lower relative to Yen LIBOR and EYDR than it had been prior to the crisis (as Plaintiff alleges).

- The passing of that financial crisis, which would be expected to reverse the change in rates, and thus would account for Euroyen TIBOR increasing relative to Yen LIBOR and EYDR in the latter part of the class period (as Plaintiff alleges).

- Brokers' purported dissemination of false information, which Plaintiff alleges influenced the rates submitted for use in determining Euroyen TIBOR.

*See* T-O Mem. 8-10.

In light of these factors, Plaintiff alleges no facts that plausibly suggest that the asserted variations of Euroyen TIBOR submissions from Yen LIBOR or EYDR during the class period were caused by the TIBOR-only Banks' submission of false rates.

> **2.    *The Alleged Rate Variations in Euroyen TIBOR Cannot Show That Any TIBOR-only Bank Specifically Intended to Cause Artificial Prices***

Plaintiff's allegations that Euroyen TIBOR submissions varied from their "historical relationship" with Yen LIBOR or EYDR are likewise insufficient to create a plausible inference that any TIBOR-only Bank had the *specific intent* to manipulate the prices of Euroyen TIBOR futures contracts.  Because the three rates were based on different criteria that could have varied based on admitted market conditions, Plaintiff provides no plausible basis to infer that any variation shows a specific intent to manipulate Euroyen TIBOR or the prices of Euroyen TIBOR futures contracts.[3]

Moreover, the Complaint asserts that a UBS trader "used several interdealer brokers to disseminate false information about Yen LIBOR and Euroyen TIBOR to other panel banks, expecting that the other banks would rely on that information when they made their own submissions."  Compl. ¶242; *see also id.* ¶217.  Since the TIBOR-only Banks allegedly were "duped" by such misinformation in submitting rates for Euroyen TIBOR, no specific intent to manipulate could be inferred from any variation in those submissions' claimed historical relationship to Yen LIBOR or EYDR.  Although Plaintiff argues that such allegations do not "exonerate[]" defendants from "participation in an admitted conspiracy" (P.Mem. 77 n.73), the TIBOR-only Banks have not admitted to any conspiracy, have not been accused by any

---

[3]  As the TIBOR-only Banks argued in their opening memorandum, Rule 9(b) applies to plaintiffs' CEA claims, but those claims fail even under a Rule 8 analysis.  *See* T-O Mem. 11-12, *quoting In re Commodity Exchange, Inc. Silver Futures & Options Trading Litig.*, No. 11 MD 2213, 2012 WL 6700236, at *12 (S.D.N.Y. Dec. 21, 2012).  Plaintiff purports to distinguish *Silver Futures* by arguing that "**no** administrative proceedings had been brought" in that case, P.Mem. 46 (emphasis in P. Mem.), but no administrative proceedings have been brought against the TIBOR-only Banks.

government authority of participating in any conspiracy, and are not the subject of any factual

allegations that could show their participation in any conspiracy.  *See* §III.

In addition, Plaintiff's unsupported assertion that the TIBOR-only Banks made false

submissions for *Euroyen TIBOR* is insufficient to plead a specific intent to manipulate the price

of *Euroyen TIBOR futures contracts*.  Judge Buchwald recently rejected that very argument in

the context of LIBOR:

> We have never, and do not, accept the notion that intentionally submitting
> false LIBOR quotes is tantamount to intending to manipulate Eurodollar
> futures contracts. . . .  In short, even accepting plaintiffs' allegations that
> each defendant submitted false LIBOR quotes over a long period of time
> and was aware that other defendants were doing the same, those
> allegations by themselves do not make plausible that defendants intended
> to manipulate Eurodollar futures contracts.

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2013 WL

4504769, at *7 n.8 (S.D.N.Y. Aug. 23, 2013).

## III.   THE FOURTH CLAIM FOR RELIEF UNDER THE SHERMAN ACT SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS

As shown in the defendants' joint reply memorandum on antitrust and unjust enrichment

issues, Plaintiff has failed to allege any viable antitrust claim.  Plaintiff's antitrust claims against

the TIBOR-only Banks should be dismissed for the additional and independent reason that the

Complaint does not allege any TIBOR-only Bank's involvement in an antitrust conspiracy.

### A.   Plaintiff Admittedly Pleads No Facts That Could Constitute Direct Evidence That Any TIBOR-only Bank Participated in the Asserted Conspiracy to Restrain Trade

Plaintiff does not dispute that the Complaint and Appendix contain *no* allegations with

respect to *any* TIBOR-only Bank that, if proven, could constitute direct evidence of participation

in an antitrust conspiracy.  *See* P.Mem. 75-78, 89-90.  Nothing in the settlements, consent orders,

or guilty pleas on which Plaintiff relies show the participation of any TIBOR-only Bank.  *See id.*

Nor do those materials support an inference that, if any conspiracy existed with respect to certain

Euroyen TIBOR rate submissions, it involved all of the Euroyen TIBOR panel banks.  *See id.*

To the contrary, Plaintiff's allegations that brokers engaged in misleading conduct, aimed at

influencing the submissions of "unwitting" Euroyen TIBOR and Yen LIBOR panel banks,

implies that some panel banks were *not* involved in the asserted conspiracy.  *See e.g.*, Compl. ¶¶

217, 242, 262.

> ### B.   Plaintiff's Allegations as to Other Banks Cannot Support an Inference That Any TIBOR-only Bank Participated in Any Conspiracy to Restrain Trade

Lacking direct evidence, Plaintiff argues that the settlements of other defendants provide

a sufficient basis for inferring the TIBOR-only Banks' participation in an antitrust conspiracy.

*See* P.Mem. 82-83.  But, consistent with *Twombly* and *Iqbal*, courts routinely reject such

arguments and require that a complaint plead factual allegations that link each defendant to the

asserted conspiracy.  *See* T-O Mem. 14; *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d

Cir. 2007); *Hinds Cnty, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009)

(allegations of government investigations in municipal bond industry were too general to make

an antitrust claim plausible as to all but one defendant).

The cases on which Plaintiff relies are not to the contrary.  *See* P.Mem. 82.  In *Air Cargo*,

while the District Judge noted the "additional fact" that "numerous defendants have pled guilty

to criminal charges of fixing prices," the Court's primary basis for rejecting the magistrate

judge's finding that the complaint failed to allege a plausible conspiracy was that the complaint

had alleged meetings and other communications among *all* defendants.  2009 WL 3443405 at

*1.[4]   Similarly, in *In re Auto Parts Antitrust Litig.*, 12-MD-02311, 2013 WL 2456584 (E.D.

Mich. June 6, 2013), the plaintiffs alleged that industry meetings provided the opportunity to

---

[4]   Also, no defendant in *Air Cargo* challenged the sufficiency of the allegations against it individually.  *See* §II.A.

collude, and the court relied on those and many other allegations, in addition to antitrust guilty pleas by four co-defendants, to sustain the complaint.  No similar allegations are made as to the TIBOR-only Banks in this case.[5]

### C.   Plaintiff's Other Allegations Cannot Support an Inference That Any TIBOR-only Bank Participated in the Asserted Conspiracy to Restrain Trade

Unable to allege any direct conspiratorial conduct by the TIBOR-only Banks, Plaintiff asks the Court to infer their participation in an antitrust conspiracy based on allegations that (1) contacts were made to unidentified TIBOR submitters by UBS and Citibank according to the administrative action against those banks by the Japanese Securities and Exchange Surveillance Commission ("JSESC"), (2) the rates each submitter reported for TIBOR were "suspiciously similar" and uniformly lower in variability during the class period, and (3) the JBA rules limit which banks could make Euroyen TIBOR submissions and so "facilitated" collusion.  *See* P.Mem. 75, 78-84.  But those allegations are insufficient to support an inference of participation by the TIBOR-only Banks in a conspiracy to restrain trade.

At most, the JSESC's administrative actions against UBS and Citibank employees cite communications with unnamed entities, but do not show that any bank responded by agreeing to manipulate its TIBOR submissions to fix the prices of Euroyen TIBOR futures contracts, as would be required to support a conspiracy claim.  *See* P.Mem. 76; Defs.' Antitrust Reply Br. at 21 n.18.  Moreover, Plaintiff does not allege that any TIBOR-only Bank received such a communication or was the subject of any action or investigation by the JSESC or another government authority.

---

[5]   Plaintiff also cites *United States v. Wilkinson*, 754 F.2d 1427, 1436 (2d Cir. 1985), a criminal conspiracy case, for the proposition that "only 'slight evidence' is needed to link conspirators to a proven conspiracy."  P.Mem. 77. However, the Second Circuit has since rejected that formulation, finding that it incorrectly focuses on the quantity, rather than the quality, of evidence against a defendant.  *United States v. Huezo*, 546 F. 3d 174, 180 n.2 (2d Cir. 2008), *cert. denied*, 558 U.S. 936 (2009).

The alleged similarity in, and decrease in variability of, rates submitted for Euroyen TIBOR likewise cannot support an inference of participation in a conspiracy. Such similarities are a natural result of the fact that Euroyen TIBOR, unlike Yen LIBOR or EYDR, is based not a reporting bank's own borrowing rates, which might vary from bank to bank, but on an estimate of the prevailing rate between prime banks. *See* Compl. ¶¶ 90-96, 631-632. Moreover, such similarities in reporting could at most show only parallel conduct, which courts routinely find insufficient to show participation in an antitrust conspiracy. *See* T-O Mem. 16. Plaintiff himself has acknowledged multiple alternative explanations for such parallel conduct here. *See* T-O Mem. 17. And, as explained in defendants' joint reply brief, the decrease in the coefficient of variation that Plaintiff alleges was a mathematical result of the increase in interest rates that Plaintiff admits occurred. *See* Defs.' Antitrust Reply Br. at 19.

Finally, JBA rules governing participation as a submitting bank that allegedly create a barrier to entry and an oligopoly, and supposedly "facilitate" collusion, also are not a sufficient basis to infer actual collusion. *See* T-O Mem. 17-18. The cases on which Plaintiff relies, unlike this case, involved specific allegations of participation by each defendant in the alleged conspiracy, and the courts relied on numerous attributes of the alleged markets. *See Todd v. Exxon Corp.*, 275 F.3d 191, 207-13 (2d Cir. 2001); *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 47-50 (1st Cir. 2013).

## IV.   THE FIFTH CLAIM FOR RELIEF, SEEKING RECOVERY FOR UNJUST ENRICHMENT, SHOULD BE DISMISSED AS TO THE TIBOR-ONLY BANKS

Adopting the Defendants' joint arguments for dismissal of the unjust enrichment claim, the TIBOR-only Banks noted that the Complaint alleges no relationship whatsoever between any of them and the Plaintiff. *See* T-O Mem. 19. In response, Plaintiff observes that unjust enrichment does not require "privity." P.Mem. 85. Yet, Plaintiff's authorities require some

9

relationship between the parties that is not "too attenuated."  *See e.g., Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007) (dismissing unjust enrichment claim because connection between tire purchaser and chemical producer was "too attenuated"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp.2d 513, 546 (S.D.N.Y. 2008) ("the alleged relationship between plaintiffs and defendants must not be excessively attenuated").  Here, Plaintiff has not alleged *any* relationship with a TIBOR-only Bank, much less one that is not "attenuated."

Plaintiff also urges that being a futures commission merchant, trading member, and/or clearinghouse member "on the exchanges where Euroyen TIBOR futures contracts are traded" is sufficient to support an unjust enrichment claim.  P.Mem. 85.  The TIBOR-only Banks, however, are not alleged to have traded on the same exchange as Plaintiff and thus could not have been unjustly enriched by him in that capacity.  *See* T-O Mem. 19-20; Compl. ¶¶56, 130.

Finally, the fact that some other defendants may have made "admissions in settlement agreements" with the Department of Justice (*see* P.Mem. 86) could not state a claim for unjust enrichment against the TIBOR-only Banks.  Simply put, the Complaint contains no plausible allegation that any TIBOR-only Bank engaged in any "unjust" conduct or was "enriched" thereby.  None of the settlements accused the TIBOR-only Banks of misconduct.

## CONCLUSION

The Complaint should be dismissed with prejudice as against The Bank of Yokohama, Ltd., Resona Bank, Ltd., Shinkin Central Bank, The Shoko Chukin Bank, Ltd. and Sumitomo Mitsui Trust Bank, Ltd.

Dated:  September 27, 2013

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

AKIN GUMP STRAUSS HAUER & FELD
   LLP

By:  /s/ Gary W. Kubek
     Gary W. Kubek
     Jeffrey S. Jacobson

By:  /s/ Paul B. Hewitt
     Paul B. Hewitt
     C. Fairley Spillman
     Diana Gillis

919 Third Avenue
New York, New York  10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6836
gwkubek@debevoise.com
jsjacobson@debevoise.com

1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel.:  (202) 887-4409
Fax:  (202) 887-4288
fspillman@akingump.com
phewitt@akingump.com
dgillis@akingump.com

*Attorneys for Defendant*
*The Bank of Yokohama, Ltd.*

Michael Asaro
One Bryant Park
New York, NY 10036-6745
Tel.:  (212) 872.8100
Fax:  (212) 872-1002
masaro@akingump.com

*Attorneys for Defendant*
*Resona Bank, Ltd.*

11

PILLSBURY WINTHROP SHAW PITTMAN
LLP

By:   /s/ Frederick A. Brodie
       Frederick A. Brodie
       Tameka M. Beckford-Young

1540 Broadway
New York, New York 10036-4039
Tel.: (212) 858-1000
Fax: (212) 858-1500
fab@pillsburylaw.com
tameka.beckfordyoung@pillsburylaw.com

*Attorneys for Defendant*
*Shinkin Central Bank*

ARNOLD & PORTER LLP

By:   /s/ Robert C. Mason
       Robert C. Mason

399 Park Avenue
New York, New York 10022
Tel.: (212) 715-1088
Fax: (212) 715-1399
robert.mason@aporter.com

James W. Thomas, Jr. (*admitted pro hac vice*)
Ingrid A. Epperly (*admitted pro hac vice*)
555 Twelfth Street, NW
Washington, DC 20004
Tel.: (202) 942-5000
Fax: (202) 942-5999
james.thomas@aporter.com
Ingrid.epperly@aporter.com

*Attorneys for Defendant*
*The Shoko Chukin Bank, Ltd.*

SEWARD & KISSEL LLP

By:   /s/ Dale C. Christensen. Jr.
       Dale C. Christensen, Jr.
       Michael B. Weitman

One Battery Park Plaza
New York, New York 10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Christensen@sewkis.com
Weitman@sewkis.com

*Attorneys for Defendant*
*Sumitomo Mitsui Trust Bank, Ltd.*