UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated, | : |
| | : |
| Plaintiff, | : Case No. 12-cv-3419 (GBD) |
| | : |
| v. | : **ECF CASE** |
| | : |
| MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED and JOHN DOE NOS. 1-50, | : **SUPPLEMENTAL REPLY** <br> : **MEMORANDUM** <br> : **OF LAW IN SUPPORT OF** <br> : **ICAP PLC'S MOTION TO DISMISS** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **ORAL ARGUMENT REQUESTED** <br> : |
| Defendants. | : |

------------------------------------------------------------- x

RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281-1003
Telephone: 212.530.1800

Date: September 27, 2013                *Attorneys for Defendant* ICAP plc

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff's Reliance on Matters Outside the SAC Is Impermissible and Unavailing. ........................................................................................................... 2

    II.    Judge Buchwald's Recent Opinion in the USD LIBOR MDL Action Confirms the Insufficiency of Plaintiff's Allegations of Specific Intent and Actual Damages. ................................................................................................. 4

        A.    Plaintiff Has Failed to Plead That ICAP Had the Requisite Intent to Support His CEA Claims. ....................................................................... 4

        B.    Plaintiff Has Failed to Plead That ICAP Caused Him Actual Damages as a Result of Any Alleged Artificial Euroyen TIBOR Futures Prices. ...... 6

    III.    Plaintiff's Antitrust Claim Against ICAP Fails. ........................................................ 7

CONCLUSION ............................................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................................2

*CAC Group, Inc. v. Maxim Group, LLC*,
   No. 12-cv-5901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012), *aff'd* No. 12-4381-cv,
   2013 WL 1831672 (2d Cir. May 2, 2013) ............................................................................2

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..................................................................................................3

*Frangipani v. HBO*,
   No. 08 Civ. 5675, 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) (Daniels, J.) .........................7

*Global Network Commc'n, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)..................................................................................................3

*Gotlin v. Lederman*,
   367 F. Supp. 2d 349 (E.D.N.Y. 2005) ............................................................................3 n.4

*In re Amaranth Natural Gas Commodities Litig.*,
   612 F. Supp. 2d 376 (S.D.N.Y. 2009), *aff'd* No. 12-2075-cv, 2013 WL 5302678 (2d
   Cir. Sept. 23, 2013) ...............................................................................................................4

*In re LIBOR-based Fin. Instruments Antitrust Litig.*,
   No. 11-MD-2262, 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013).................................. *passim*

*Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (USA) Inc.*,
   22 F. Supp. 2d 94 (S.D.N.Y. 1999) ......................................................................................6

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)..................................................................................................2

**STATUTES**

7 U.S.C. § 25(a)(1)..................................................................................................................6

**RULES**

Fed. R. Civ. P. 12(d) ...............................................................................................................3

Defendant ICAP plc ("ICAP") respectfully submits this Supplemental Reply Memorandum of Law in Support of ICAP's Motion to Dismiss the claims brought against it by plaintiff Jeffrey Laydon ("Plaintiff") in the Second Amended Class Action Complaint ("Complaint" or "SAC").[1]

**PRELIMINARY STATEMENT**

As we demonstrated in ICAP's opening Supplemental Brief,[2] Plaintiff does not, and cannot, plead viable claims against ICAP under either the Commodity Exchange Act ("CEA") or the Sherman Act for claimed losses on alleged transactions in three-month Euroyen TIBOR futures contracts. Nothing in Plaintiff's Opposition[3] alters that conclusion. Plaintiff has not pled that ICAP *specifically intended* in violation of the CEA to manipulate the prices of any three-month Euroyen TIBOR futures contracts to which Plaintiff was a party. Moreover, Plaintiff has not pled what, if any, actual damages he suffered on his Euroyen TIBOR futures contracts, despite his exclusive control over the information concerning the dates, amounts and claimed losses on those contracts. Thus, in addition to the insufficient allegations in his Complaint, he also lacks standing under the CEA to bring his claims against ICAP. Finally, his antitrust claim remains unsalvageable.

---

[1] ICAP joins and incorporates as if fully set forth herein (i) the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Commodity Exchange Act Claims (the "Defendants' CEA Reply Brief" or "CEA Reply Br.") (addressing the First, Second, and Third Claims) and (ii) the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Antitrust and Unjust Enrichment Claims (the "Defendants' Antitrust Reply Brief" or "Antitrust Reply Br.") insofar as it addresses the Fourth Claim for Relief (Sherman Act § 1). Terms not otherwise defined herein shall have the meanings set forth in Defendants' CEA Reply Brief and/or Defendants' Antitrust Reply Brief. ICAP previously joined the opening Defendants' CEA Brief and Antitrust Brief, as defined therein.

[2] The Supplemental Memorandum of Law in Support of ICAP plc's Motion to Dismiss will be referred to as "Supplemental Brief" or "Supp. Br."

[3] Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss will be referred to as the "Opposition" or "Opp. " and the Declaration of Vincent Briganti, Esq. in Support of Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss will be referred to as "Briganti Decl."

In an apparent admission regarding the insufficiency of his Complaint, Plaintiff's Opposition impermissibly relies on references to ICAP in news articles and charge sheets filed against non–ICAP employees. *See* Briganti Decl. Exs. 1-3, 8. These materials are beyond the four corners of his Complaint (the "Extraneous Materials") and may not be relied upon in connection with the present motion. And even if the Court considered the Extraneous Materials, they concern actions allegedly taken in regards to the Yen LIBOR benchmark, not the Euroyen TIBOR benchmark, and certainly not the three-month futures contracts referencing Euroyen TIBOR that are at issue in this litigation. And there is no suggestion anywhere in the Extraneous Materials that ICAP agreed to join in an antitrust conspiracy.

For these reasons and others set forth below and in the Defendants' CEA Brief and CEA Reply Brief and the Defendants' Antitrust Brief and Antitrust Reply Brief, the claims against ICAP in the Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff's Reliance on Matters Outside the SAC Is Impermissible and Unavailing.

In his Opposition, Plaintiff impermissibly relies on Extraneous Materials. Plaintiff's reliance on materials outside the pleadings is improper and unhelpful to his efforts to salvage his pleading. Other than the Complaint, the Court's consideration on a motion to dismiss is limited to "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that plaintiff cannot amend his complaint through his opposition papers); *CAC Group, Inc. v. Maxim Group, LLC*, No. 12-cv-5901, 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012) ("It is axiomatic, however, that a plaintiff cannot amend a complaint with new

allegations contained in an opposition to a motion to dismiss."), *aff'd* No. 12-4381-cv, 2013 WL 1831672 (2d Cir. May 2, 2013). Contrary to Plaintiff's contention that the Court may take judicial notice of the U.K. Serious Fraud Office's charges, Opp. at 2 n.2, the Court may only do so to "establish the existence of the [document], not for the truth of the facts asserted in the [document]." *See Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotations and citations omitted). When "presented with matters outside the pleadings" on a motion to dismiss, under Fed. R. Civ. P. 12(d), the Court may either exclude the documents or convert the motion to one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). What the Court may not do is permit Plaintiff to attempt to bolster his pleading with matters that he has not pled.[4]

Furthermore, even if the Court *were* to consider Plaintiff's proffered Extraneous Materials, those materials do not cure any of the defects in the Complaint. Indeed, they merely repeat the same insufficient allegations regarding Yen LIBOR that are already contained in the Complaint. The Extraneous Materials fail to remedy the key deficiency in the Complaint—the lack of plausible allegations connecting any actions purportedly taken by ICAP to any actual damages suffered by Plaintiff with respect to his three-month Euroyen TIBOR futures contracts. Nothing in the Extraneous Materials supports an inference that ICAP had any involvement in the

---

[4] On September 25, 2013, ICAP plc's non-defendant subsidiary ICAP Europe Limited ("IEL") entered into settlements with the U.S. Commodity Futures Trading Commission and the U.K. Financial Conduct Authority resolving their investigations of IEL in connection with the alleged manipulation of Yen LIBOR. For the reasons set forth in Part I, *supra*, the IEL settlements are irrelevant to the Court's consideration of whether Plaintiff has adequately pled claims against ICAP concerning his three-month Euroyen TIBOR futures contracts. Moreover, any statements in the settlements are neither material nor entitled to deference by this Court because, among other reasons, they appear in settlement documents, they are not admissions, and they are not the result of an adjudication on the merits. *See* CEA Reply Br. at Part I (citing *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363-64 (E.D.N.Y. 2005); *In re LIBOR-based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262, 2013 WL 4504769, at *5 (S.D.N.Y. Aug. 23, 2013)).

setting or manipulation of Euroyen TIBOR or that it had any intent to manipulate the prices of Euroyen TIBOR futures contracts.

### II. Judge Buchwald's Recent Opinion in the USD LIBOR MDL Action Confirms the Insufficiency of Plaintiff's Allegations of Specific Intent and Actual Damages.

In its opening Supplemental Brief, ICAP sought dismissal of Plaintiff's CEA claims on the grounds that Plaintiff had failed to plead that ICAP acted with the specific intent to manipulate the prices of his Euroyen TIBOR futures contracts. *See* ICAP Supp. Br. at 7-10. On August 23, 2013, Judge Buchwald issued a decision in the USD LIBOR MDL action that highlights the fatal flaws in Plaintiff's claims against ICAP, all of which were raised in the common and supplemental briefs filed on June 14, 2013, in support of ICAP's motion to dismiss. *See generally In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262, 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013) ("*LIBOR Litig. II*"). Judge Buchwald's *LIBOR Litig. II* opinion further validates ICAP's specific intent and actual damages arguments. Below, we address the arguments specific to ICAP in Plaintiff's Opposition and apply the holdings from Judge Buchwald's decision to the allegations against ICAP.

### A. Plaintiff Has Failed to Plead That ICAP Had the Requisite Intent to Support His CEA Claims.

In *LIBOR Litig. II*, Judge Buchwald held that, to plead a claim under the CEA, a plaintiff must plead specific intent on the part of a defendant, including that the defendant had motive and opportunity to commit fraud in the form of "'concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged.'" *LIBOR Litig. II*, 2013 WL 4504769 at *6 (quoting *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 383 (S.D.N.Y. 2009), *aff'd* No. 12-2075-cv, 2013 WL 5302678 (2d Cir. Sept. 23, 2013)). In *LIBOR Litig. II*, Judge Buchwald invited further briefing regarding specific intent from the bank defendants, including on the question of whether the plaintiffs, which alleged that the bank

4

defendants had entered into futures contracts, had adequately alleged a motive to achieve a "concrete benefit" from the alleged fraud, apart from a generalized profit motive. *Id*. at *6-*9.

The specific intent allegation against ICAP is even more tenuous than the allegations in USD LIBOR MDL that Judge Buchwald found lacking. ICAP is not a bank defendant. It is an interdealer broker. There are no allegations in the SAC that ICAP entered into a Euroyen TIBOR futures contract with Plaintiff or any other party, nor could there be. Plaintiff has not alleged any other means by which ICAP stood to gain a "concrete benefit" from the manipulation of the prices of his contracts. Moreover, even if the Court were to credit the allegations in the SAC regarding "Broker A" or the allegations about ICAP in the charge sheet regarding Mr. Tom Hayes, those allegations concern the Yen LIBOR benchmark, not the Euroyen TIBOR benchmark or three-month Euroyen TIBOR futures contracts. Under the "concrete benefit" standard for pleading specific intent, which Judge Buchwald affirmed, Plaintiff's CEA claims against ICAP fail.

Moreover, Plaintiff's Opposition also fails to save his aiding and abetting claim against ICAP because he has failed to allege that ICAP had the specific intent to aid and abet the manipulation of prices of Euroyen TIBOR futures contracts. *See* ICAP Supp. Br. at 10-12. Plaintiff argues that "Broker Defendants, including ICAP and RP Martin, knowingly facilitated the manipulation of Yen-LIBOR, Euroyen TIBOR, and Euroyen TIBOR futures contract prices during the Class Period," Opp. at 56, but the Complaint fails to allege that ICAP knew that any bank intended to manipulate three-month Euroyen TIBOR futures contract prices, let alone that ICAP intentionally rendered substantial assistance to a bank in doing so (as Plaintiff admits must be pled, Opp. at 55). Plaintiff does not specifically allege that any ICAP broker ever communicated with banks regarding their positions or interests in Euroyen TIBOR submissions

5

or futures contracts. Even Plaintiff's Extraneous Materials fail to support any inference that ICAP had the specific intent to further the Bank Defendants' purported manipulation of those contracts.

### B. Plaintiff Has Failed to Plead That ICAP Caused Him Actual Damages as a Result of Any Alleged Artificial Euroyen TIBOR Futures Prices.

In Defendants' CEA Brief and in its Supplemental Brief, ICAP argued that Plaintiff had failed to demonstrate a causal link between the purported manipulation of Yen LIBOR and the allegedly artificial prices of his Euroyen TIBOR futures contracts. *See* CEA Mem. at Part II.A; ICAP Supp. Br. at 10. Plaintiff disputes whether "loss causation" is a proper standing requirement under the CEA, contending that the proper test to determine standing is whether Plaintiff has alleged "actual damages." Opp. at 53-54 & n.48. Having fashioned a new standing test for himself, Plaintiff then proceeds to fail it.

In *LIBOR Litig. II*, Judge Buchwald addresses the issue of standing under 7 U.S.C. § 25(a)(1), finding that (as Plaintiff contends) standing under that section requires that the plaintiff has "suffered 'actual damages' as a result of defendant's manipulation." *LIBOR Litig. II*, 2013 WL 4504769 at *10. "Actual damages" is defined as "'actual injury caused by the violation.'" *Id*. (quoting *Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (USA) Inc.*, 22 F. Supp. 2d 94, 107 (S.D.N.Y. 1999)). Applying that standard, Judge Buchwald denied exchange-based plaintiffs leave to amend their complaint because they failed to plead they "suffered actual damages from defendants' alleged trader-based manipulation of" certain futures contracts. *Id*. at *13.

Plaintiff admits that he cannot plead actual damages at this stage in the litigation, even generally. Opp. at 52 ("Plaintiff does not suggest to know … at this early stage of the litigation the precise amount of artificiality transmitted from Yen-LIBOR (and Euroyen TIBOR) to

6

Euroyen TIBOR futures contract prices."). With respect to ICAP, Plaintiff stands in the position of the exchange-based plaintiffs in *LIBOR Litig. II*: he purports to identify specific, numerous instances in which ICAP was involved in efforts by the "Senior Yen Trader" to affect Yen LIBOR (not Euroyen TIBOR) in ways that benefited the Senior Yen Trader's derivatives positions. These were alleged acts of "trader-based manipulation" under Judge Buchwald's analysis. *See LIBOR Litig. II*, 2013 WL 4504769 at *12. Yet despite the availability to Plaintiff of that information, which presumably includes the dates, counterparties, gains and losses involved in his Euroyen TIBOR futures trades, Plaintiff fails to identify a single three-month Euroyen TIBOR futures contract with respect to which he suffered actual damages as a result of any purported manipulation involving ICAP. As Judge Buchwald found, such a pleading failure denies Plaintiff standing to sue under the CEA. *See LIBOR Litig. II*, 2013 WL 4504769 at *13.

### III.     Plaintiff's Antitrust Claim Against ICAP Fails.

ICAP joins the Defendants' Antitrust Reply Brief as to why Plaintiff's antitrust claim should be dismissed as to all the Defendants. Plaintiff's antitrust claim against ICAP should be dismissed for the further reason that both the SAC and the Extraneous Materials are devoid of any allegation that ICAP joined in any conspiracy to violate the antitrust laws by virtue of the manipulation of the prices of three-month Euroyen TIBOR futures contracts. In particular, none of the new materials proffered by Plaintiff support any inference that ICAP entered into an agreement or conspiracy to violate Sherman Act § 1 by fixing the prices of or otherwise restraining competition in the U.S. market for Euroyen TIBOR futures contracts. *See Frangipani v. HBO*, No. 08 Civ. 5675, 2010 WL 1253609, at *4 (S.D.N.Y. Mar. 16, 2010) (Daniels, J.) (dismissing antitrust claims because, *inter alia*, "Plaintiff fails to allege that there is an agreement between [the defendants]"). Plaintiff's antitrust claim against ICAP should be dismissed.

**CONCLUSION**

For the reasons stated in ICAP's opening Brief and this Supplemental Reply, as well as those stated in the Defendants' CEA Brief and CEA Reply Brief and the Defendants' Antitrust Brief and Antitrust Reply Brief, the Court should dismiss Plaintiff's First, Second, Third, and Fourth Claims against ICAP with prejudice.

Dated:   New York, New York
         September 27, 2013

RICHARDS KIBBE & ORBE LLP

By: /s/ H. Rowan Gaither
    Brian S. Fraser (*bfraser@rkollp.com*)
    Shari A. Brandt (*sbrandt@rkollp.com*)
    H. Rowan Gaither (*rgaither@rkollp.com*)
    Rebecca Carvalho (*rcarvalho@rkollp.com*)
    Katherine Kern (*kharrington@rkollp.com*)
    One World Financial Center
    New York, NY  10281-1003
    Telephone: 212.530.1800
    Facsimile: 212.530.1801

*Attorneys for Defendant* ICAP plc