UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated,<br>                        Plaintiff,<br><br>- against -<br><br>MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,<br>                        Defendants. | Docket No. 12-cv-3419-GBD<br><br>**ORAL ARGUMENT REQUESTED** |


**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF UBS AG AND UBS SECURITIES JAPAN CO., LTD.**

## TABLE OF CONTENTS

Page

I. THE UBS SETTLEMENTS DO NOT ADMIT PLAINTIFF'S ALLEGED CONSPIRACY OR RENDER IT PLAUSIBLE .................................................................. 1

II. THE CFTC SETTLEMENT AND SESC RECOMMENDATION DO NOT SUPPORT PLAINTIFF'S ANTITRUST CLAIM EVEN IF THEY COULD BE CONSIDERED ........................................................................................................ 3

CONCLUSION ................................................................................................................ 6

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................2, 6

*In re Air Cargo Shipping Services Antitrust Litig.*,
  No. 06-MD-1775 (JG)(VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009),
  *aff'd*, 697 F.3d 154 (2d Cir. 2012).................................................................................................4

*In re Automotive Parts Antitrust Litig.*,
  No. 12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013) ...............................................4

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) .............................................................................................................2

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
  541 F. Supp. 2d 487 (D. Conn. 2008)............................................................................................2

*In re Platinum & Palladium Commodities Litig.*,
  828 F. Supp. 2d 588 (S.D.N.Y. 2011) ...........................................................................................4

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir.1976) ...........................................................................................................4

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) ..........................................................................................................5

*Starr v. Sony BMG Music Entertainment*,
  592 F.3d 314 (2d Cir. 2010) ..........................................................................................................4

**Other Authorities**

Hiroko Tabuchi, Japan Calls for Action Against Citigroup and UBS, N.Y. Times, Dec,
  9, 2011 ...........................................................................................................................................6

Takahiko Hyuga, UBS, Citigroup May Be Penalized in Japan on Tibor Probe,
  Commission Says, Bloomberg, Dec. 9, 2011 ................................................................................6

The Second Amended Complaint ("Complaint" or "Compl.") fails to state a claim against UBS AG and UBS Securities Japan Co. Ltd.[1] (collectively "UBS") or any of the defendants for the reasons set forth in Defendants' Antitrust And Unjust Enrichment Memorandum ("Antitrust Mem.") and their Antitrust And Unjust Enrichment Reply ("Antitrust Reply"), UBS's Supplemental Memorandum of Law ("UBS Supp. Mem."), and Defendants' CEA Memorandum and Reply.[2] UBS respectfully submits this supplemental reply memorandum to separately address Plaintiff's erroneous assertions that the UBS Settlements either constitute direct evidence or support an inference of plausibility of the antitrust conspiracy he alleges.[3] As more fully demonstrated below, they do not.

I.  **THE UBS SETTLEMENTS DO NOT ADMIT PLAINTIFF'S ALLEGED CONSPIRACY OR RENDER IT PLAUSIBLE**

Plaintiff contends that his "Complaint alleges collusion in the setting of Euroyen TIBOR." (Plaintiff's Omnibus Memorandum of Law In Opposition to Defendants' Motion to Dismiss ("Opp.") at 76). To support this contention, Plaintiff asserts that UBS has *admitted* collusion and that these admissions constitute either (1) direct evidence of the Euroyen TIBOR conspiracy set out in the Complaint (*Id.* at 6 and 76), or (2) render it more plausible (*Id*. at 82). Plaintiff is wrong on both counts.

---

[1] UBS Securities Japan submits this memorandum without waiver of any potential defenses based on the lack of personal jurisdiction, as further set forth in this Court's Order of June 11, 2013 (Docket No. 194).

[2] UBS joins the Defendants' CEA Memorandum and Reply in their entirety as well as Sections I.B and IV of Defendants' Antitrust Mem. and the Background Section and Sections I.B, IV and V of their Antitrust Reply.

[3] UBS entered into a Non-Prosecution Agreement with the Criminal Division of the Department of Justice ("DOJ") on December 18, 2012 ("DOJ Settlement"); the Commodity Futures Trading Commission ("CFTC") issued an Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodities Exchange Act Making Findings and Imposing Remedial Sanctions on December 19, 2012 ("CFTC Settlement"); and a Final Notice was issued by the United Kingdom Financial Services Authority ("FSA") on December 19, 2012 ("FSA Settlement") (collectively, "UBS Settlements").

1

To be clear, only UBS's settlement with the DOJ contains factual admissions by UBS.[4] But the collusive conduct referenced in the DOJ Settlement deals exclusively with Yen LIBOR; UBS does not admit a *single* collusive communication with another financial institution regarding Euroyen TIBOR. Thus, the DOJ Settlement does not provide any direct evidence of a Euroyen TIBOR conspiracy, let alone "rampant," "sustained," "wide-ranging" or "systematic" collusion between UBS and over 30 financial institutions as Plaintiff alleges in his Complaint.

Because the DOJ Settlement provides no direct evidence to support his claim, Plaintiff alternatively argues that it makes the alleged conspiracy more plausible. (*See* Opp. at 82 ("Factual admissions . . . of UBS . . . support the plausible Plaintiff's conspiracy allegations.")). How the DOJ Settlement supposedly makes a pervasive Euroyen TIBOR conspiracy more plausible is unclear, but Plaintiff appears to argue that if there was a Yen LIBOR conspiracy then there must have also been a Euroyen TIBOR conspiracy. However, according to the law in this Circuit, conclusory allegations of "if it happened there, it could have happened here" do not provide sufficient factual allegations to satisfy *Twombly*.[5] *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (evidence of European misconduct was an "insufficient factual basis for [plaintiffs'] assertions of a worldwide conspiracy.").[6]

Unlike *In re Elevator*, there is no linkage whatsoever between the conspiracy set out in the DOJ Settlement and that set out in the instant Complaint. While *In re Elevator* involved conspiracies related to the same products and the same defendants, the same cannot be said of

---

[4] Statements in the UBS settlement with the CFTC are admissions only to the extent that those statements were admitted in the settlement with the DOJ.

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[6] *See also In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 492 (D. Conn. 2008) (finding complaint insufficient under *Twombly* where the criminal plea agreements "involved conduct on a different trade route and amounted to a conspiracy to unlawfully raise prices, while this case involves conspiracy claims of predatory pricing.").

2

the DOJ Settlement (which involves collusive conduct respecting Yen LIBOR) and Plaintiff's Complaint (alleging a conspiracy with respect to Euroyen TIBOR). Indeed, the Complaint admits that Yen LIBOR and Euroyen TIBOR are two very different benchmarks. (Compl. ¶¶ 78-97). Plaintiff's counsel has forcefully made this same point in a letter to this Court and Judge Buchwald arguing against the transfer of the Euroyen TIBOR litigation to Judge Buchwald. Plaintiff's counsel correctly stated that Yen LIBOR and Euroyen TIBOR "are not only set by different bank panel members, they are set according to different protocols, rules and procedures, at different times of day (11:00 a.m. Tokyo time versus 11:00 a.m. London time), and are published by different reporting bodies (the JBA for Euroyen TIBOR and the BBA for LIBOR)." (Declaration of Thomas C. Rice, dated June 14, 2013, Ex. N (Letter to Judge Daniels and Judge Buchwald, May 25, 2012) at 2). These statements are consistent with Plaintiff's concession that Euroyen TIBOR and Yen LIBOR diverged from each other during the class period. (Compl. ¶ 649). Plaintiff's conclusory allegations that the DOJ Settlement renders the conspiracy claim plausible should therefore be rejected.

## II. THE CFTC SETTLEMENT AND SESC RECOMMENDATION DO NOT SUPPORT PLAINTIFF'S ANTITRUST CLAIM EVEN IF THEY COULD BE CONSIDERED

Plaintiff contends that various governmental investigations support the plausibility of his conspiracy claim. This is incorrect as a matter of law for the reasons set out in detail in Defendants' Antitrust Mem. and Antitrust Reply. *See* Defs.' Antitrust Mem. at IV.D; Defs.' Antitrust Reply at IV.C. The fact that UBS entered into settlements with regulatory entities does not change the result or make the conspiracy alleged in the Complaint plausible.[7]

---

[7] The UBS Settlements do not support Plaintiff's CEA claims either. As discussed in UBS's Supplemental Memorandum of Law In Support of the Motion to Dismiss at II.A, the UBS Settlements are not evidence of the specific intent to manipulate CME Euroyen TIBOR futures contracts. Nor do these settlements, as Plaintiff

*(Cont'd on next page)*

3

It has long been held that settlements with regulators cannot be used to meet a plaintiff's pleading requirements, let alone the heightened pleading standard under *Twombly*. *See, e.g., Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976) ("[A] consent judgment between a federal agency and a private corporation . . . is not the result of an actual adjudication of any of the issues.  Consequently, it can not be used as evidence in subsequent litigation between that corporation and another party."); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (striking all paragraphs referencing a CFTC administrative consent order and dismissing the complaint because, without such allegations, plaintiffs had failed to state a claim); *see generally* Defs.' Antitrust Reply at 22 (citing additional cases).[8]

---

*(Cont'd from previous page)*

suggests, make specific intent more plausible.  The settlements do not relate to CME Euroyen TIBOR futures contracts, but rather to the reference rates themselves (Yen LIBOR or Euroyen TIBOR) or to derivatives that have nothing to do with CME Euroyen TIBOR futures contracts.  (See, e.g., DOJ Settlement at 1).  The mere fact that UBS traded a wide variety of instruments, some of which are linked to Yen LIBOR and some to Euroyen TIBOR, does not plausibly lead to an inference that it had the specific intent to manipulate CME Euroyen TIBOR futures contracts.  While Plaintiff carelessly states that the UBS Settlements admit "that it collusively agreed with dealers to manipulate the Euroyen TIBOR rates" (Opp. at 6), this statement is baseless—no UBS Settlement provides factual support for the statement.  Moreover, Plaintiff's laundry list of so-called "Manipulative Acts" (Opp. at 29-32) does not assist him either.  The list—like the Complaint—either mischaracterizes the UBS Settlements (*see* UBS Supp. Mem. at 6-14) or references completely irrelevant allegations, such as those involving UBS's internal controls and employee training.  And the document that Plaintiff characterizes as "criminal charges" by the U.K.'s Serious Fraud Office against former UBS trader Tom Hayes, which Plaintiff trumpets as "damning" (Opp. at 1), does not even mention Euroyen TIBOR or futures contracts, let alone any factual findings that could support a claim.  (See Declaration of Vincent Briganti, dated August 8, 2013, Ex. 1).  It is not even clear whether Plaintiff's Ex. 1 is an official charging instrument.  In sum, the UBS Settlements confirm Plaintiff's failure to state a claim against UBS.

[8]  The cases that Plaintiff cites to argue the contrary are inapposite.  Unlike the CFTC Settlement and the Japanese Securities and Exchange Surveillance Commission's Recommendation For Administrative Action Based on Findings of the Inspection of UBS Securities Japan Ltd. issued on December 9, 2011 ("SESC Recommendation"), both *In re Automotive Parts Antitrust Litigation*, No. 12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013), and *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG)(VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012) involved criminal proceedings.  The complaints in those cases also referenced facts set out in the guilty pleas that related to the very same conspiracies alleged in the subsequent civil actions.  Not only are the CFTC Settlement and SESC Recommendation civil administrative proceedings that do not involve guilty pleas but, as stated above, the conduct at issue is very different from what is alleged in the Complaint.  While *Starr v. Sony BMG Music*

*(Cont'd on next page)*

But even if the Court were to consider the CFTC settlement—the only settlement to even mention inter-bank communications regarding Euroyen TIBOR—it is of no help to Plaintiff because it shows, at most, only the existence of opportunistic conduct from time to time by a few traders aimed at helping individual trading positions. According to the CFTC Settlement, they engaged in external communications "periodically" and "on occasion." (CFTC Settlement at 11, 18, 20). These periodic and occasional communications, most of which were made by a single UBS trader, do not render it more plausible that UBS engaged in a pervasive and widespread conspiracy by over 30 financial institutions to systematically manipulate Euroyen TIBOR. *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 140 (2d Cir. 2013) ("[T]wo vague references to isolated discussions" were "not enough plausibly to allege a 'high level' of interfirm communications").

Further, the CFTC Settlement, despite the CFTC's lengthy investigation, does not assert that UBS's occasional communications were successful in moving another bank's submissions, let alone that they had any impact on the price of Euroyen TIBOR futures contracts. In particular, the CFTC Settlement does not even link these communications to the three-month Euroyen TIBOR rate, the exclusive rate used to price Euroyen TIBOR futures.

The same is true with respect to the Japanese Securities and Exchange Surveillance Commission ("SESC") Recommendation. Unlike the allegations of the Complaint, the SESC Recommendation describes the conduct of a single trader at UBS who "conducted approaches" to personnel at other banks to obtain advantages for his own trading positions. More importantly, the SESC Recommendation did not find that an agreement to influence Euroyen

---

*(Cont'd from previous page)*

    *Entertainment*, 592 F.3d 314 (2d Cir. 2010), was a civil proceeding, the court there held that the plaintiff had otherwise pleaded plausible antitrust claims that were independently sufficient to satisfy *Twombly*.

TIBOR was ever reached, although it is hornbook law that there can be no conspiracy without an agreement. *Twombly*, 550 U.S. at 556 (complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made"). And like the CFTC Settlement, the SESC found that "[t]here was no evidence that the TIBOR rate was actually manipulated."[9]

The CFTC Settlement and SESC Recommendation do not come close to rendering the conspiracy that Plaintiff attempts to allege—an overarching agreement among over 30 financial institutions that was sustained for five years—plausible. As a result, the governmental investigations and settlements cannot save Plaintiff's Complaint from dismissal.

## CONCLUSION

For all of the reasons set out in this Supplemental Reply Memorandum, UBS's Supplemental Memorandum of Law In Support of the Motion to Dismiss, as well as the memoranda and replies submitted by the other defendants, the Complaint in this action should be dismissed.

---

[9] Hiroko Tabuchi, *Japan Calls for Action Against Citigroup and UBS*, N.Y. Times, Dec, 9, 2011; *see also* Takahiko Hyuga*, UBS, Citigroup May Be Penalized in Japan on Tibor Probe, Commission Says*, Bloomberg, Dec. 9, 2011 ("There is no evidence that the Tibor rate was manipulated following the actions, an SESC official said at a news conference today, speaking on condition of anonymity in accordance with the organization's policy." *See generally* Defs.' Antitrust Reply at 18, fn. 18 (citing additional sources).

6

Dated: New York, New York
September 27, 2013

                        GIBSON, DUNN & CRUTCHER LLP

                        By:      /s/
                              Peter Sullivan
                              Lawrence J. Zweifach

                        200 Park Avenue
                        New York, New York 10166-0193
                        (212) 351-4000

                        Joel S. Sanders (*admitted pro hac vice*)
                        555 Mission Street
                        Suite 3000
                        San Francisco, California 94105-0921
                        (415) 393-8200

                        *Attorneys for Defendants UBS AG*
                        *and UBS SECURITIES JAPAN CO. LTD*