UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEFFREY LAYDON, on behalf of himself and all : 
others similarly situated, :
:
: 
Plaintiff, :
: Case No: 12-cv-3419 (GBD)
v. :
:
MIZUHO BANK, LTD., THE BANK OF TOKYO- : **ORAL ARGUMENT REQUESTED**
MITSUBISHI UFJ, LTD, THE SUMITOMO :
TRUST AND BANKING CO., LTD., THE :
NORINCHUKIN BANK, MITSUBISHI UFJ :
TRUST AND BANKING CORPORATION, :
SUMITOMO MITSUI BANKING :
CORPORATION, RESONA BANK, LTD., J.P. :
MORGAN CHASE & CO., J.P. MORGAN CHASE :
BANK, NATIONAL ASSOCIATION, J.P. :
MORGAN SECURITIES PLC, MIZUHO :
CORPORATE BANK, LTD., DEUTSCHE BANK :
AG, MIZUHO TRUST AND BANKING CO., :
LTD., THE SHOKO CHUKIN BANK, LTD., :
SHINKIN CENTRAL BANK, UBS AG, UBS :
SECURITIES JAPAN CO. LTD., THE BANK OF :
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, :
THE ROYAL BANK OF SCOTLAND GROUP, :
PLC, ROYAL BANK OF SCOTLAND PLC, RBS :
SECURITIES JAPAN LIMITED, BARCLAYS :
BANK PLC, CITIBANK, NA, CITIGROUP, INC., :
CITIBANK, JAPAN LTD., CITIGROUP GLOBAL :
MARKETS JAPAN, INC., COÖPERATIEVE :
CENTRALE RAIFFEISEN-BOERENLEENBANK :
B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, :
ICAP PLC, R.P. MARTIN HOLDINGS :
LIMITED AND JOHN DOES NOS. 1-50, :
:
Defendants. :
------------------------------------------------------------x

**SUPPLEMENTAL REPLY MEMORANDUM OF THE ROYAL BANK OF SCOTLAND
GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, AND RBS SECURITIES
JAPAN LIMITED IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, and RBS Securities Japan Limited (collectively, "RBS") respectfully submit this supplemental reply memorandum of law in further support of their motion to dismiss the Second Amended Class Action Complaint ("Compl."). Plaintiff's opposition does not (and cannot) cure the deficiencies identified in Defendants' joint opening and reply memoranda of law.[1] This memorandum highlights key respects in which Plaintiff's allegations as to RBS, in particular, remain deficient, requiring that the claims against RBS be dismissed.

Plaintiff's opposition does not respond directly to the argument in RBS's supplemental opening brief that, except for 2 paragraphs of the 747-paragraph Complaint, Plaintiff has advanced *zero* specific allegations of wrongdoing by RBS relating to Euroyen TIBOR, let alone the CME-traded Euroyen TIBOR futures contracts in which he claims to have traded. *See* Supplemental Mem. RBS in Supp. Defs.' Mot. Dismiss ("RBS Mem.") at 2-3.[2] Instead, Plaintiff points once again to his Yen LIBOR allegations, *see, e.g.*, Pl.'s Omnibus Mem. Opp'n Defs.' Mot. Dismiss ("Opp'n") at 21-22, 29-33, 88, without suggesting that he will (or could) establish a more direct connection between RBS and his alleged injury.[3] Plaintiff's silence is fatal to his claims against RBS.

---

[1] RBS joins the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Commodity Exchange Act Claims ("CEA Reply") and Sections I.B, IV and V of the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Antitrust and Unjust Enrichment Claims ("Antitrust Reply"), except to the extent that statements therein could be construed to contradict any of the admitted findings in RBS's settlements with the U.S. Department of Justice ("DOJ") and the U.S. Commodity Futures Trading Commission ("CFTC").

[2] The two paragraphs, which refer to a Swiss Competition Commission investigation into suspicions that RBS and eleven other banks "might have" engaged in misconduct, *see* Compl. ¶¶ 515, 517, are insufficient as a matter of law to support an inference of any wrongdoing, *see In re Hansen Natural Corp. Secs. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007), let alone Plaintiff's claim that RBS participated in a wide-ranging, five-year effort among 32 Defendants to violate the Commodity Exchange Act and the Sherman Act.

[3] Plaintiff also mischaracterizes RBS's brief as "denying the Complaint's Yen-LIBOR allegations." Opp'n 88. The allegations are denied insofar as they differ from the facts set forth in RBS's settlements with DOJ and the CFTC, *see supra* n.1—but that is beside the point. The point is that Plaintiff's allegations as to Yen LIBOR are irrelevant.

As explained in the CEA Reply, Plaintiff's Yen LIBOR allegations cannot support a showing that RBS specifically intended to manipulate the price of Plaintiff's Euroyen TIBOR futures contracts or caused his alleged injury. Similarly, as explained in the Antitrust Reply, Plaintiff's reliance on a remote and speculative theory of antitrust injury deprives him of standing to pursue an antitrust claim against all defendants, including RBS, and his failure to allege any RBS misconduct relating to Euroyen TIBOR, rather than Yen LIBOR, provides an independent basis for dismissing the antitrust claim against RBS.

Plaintiff's sole specific response to RBS's supplemental memorandum is to fall back on his statistical analysis, which he claims somehow "implicates" RBS in the alleged conspiracy. Opp'n 88. Plaintiff does not dispute that this analysis largely ignores RBS, which was not a Euroyen TIBOR panel member during most of the class period. *See* RBS Mem. at 4. Instead, Plaintiff suggests that his claim of a positive spread between the Euroyen Deposit Rate and RBS's Euroyen TIBOR submissions permits an inference of manipulation. *See* Opp'n 88. What Plaintiff does not mention is that the RBS spreads he lists, *see* Compl. Figs. 29, 30 (citing spreads of 0.10, 0.08, 0.08, 0.10, and 0.1483), are consistent, *not* with Plaintiff's claim of artificiality, but rather with his own assertion that the "historical, pre-Class Period positive spread [was] 0.0940," *id.* ¶ 643. Thus, even *if* Plaintiff could in theory plead manipulation based on a positive spread "well above" the historical average (which Defendants dispute), *id.* ¶ 644, on the face of his own allegations he does not and could not do so as to RBS.

In sum, Plaintiff points to no allegations capable of supporting a finding that RBS engaged in any misconduct affecting his Euroyen TIBOR futures contracts—exposing his claims against RBS as a failed attempt to piggyback on settlements relating to a separate and independent benchmark rate. Accordingly, the claims against RBS should be dismissed.

2

| | |
|---|---|
| Dated: New York, New York<br>September 27, 2013 | /s/ Fraser L. Hunter, Jr.<br>Fraser L. Hunter, Jr.<br>David Sapir Lesser<br>Alan E. Schoenfeld<br>Jamie Dycus<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>(212) 230-8800 (phone)<br>(212) 230-8888 (fax)<br>fraser.hunter@wilmerhale.com<br>david.lesser@wilmerhale.com<br>alan.schoenfeld@wilmerhale.com<br>jamie.dycus@wilmerhale.com<br><br>Robert G. Houck<br>Alejandra de Urioste<br>James D. Miller<br>Clifford Chance US LLP<br>31 West 52nd Street<br>New York, NY 10019<br>(212) 878-8000 (phone)<br>(212) 878-8375 (fax)<br>robert.houck@cliffordchance.com<br>alejandra.deurioste@cliffordchance.com<br>jim.miller@cliffordchance.com<br><br>*Counsel for The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, and RBS Securities Japan Limited* |