IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>      - against -<br><br>MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,<br><br>       Defendants. | Docket No. 12-cv-3419 (GBD)<br><br>ECF Case |

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS FOR RECONSIDERATION OR REARGUMENT
<u>OF THE COURT'S MARCH 28, 2014 MEMORANDUM DECISION AND ORDER</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................ 1

THE MOTION FOR RECONSIDERATION STANDARD ..................................................... 2

I. Defendants Do Not Cite Any New Precedent Justifying Reconsideration .......................... 3

II. The Court Did Not Overlook the Defendants' CEA "Actual Damages"
Pleading Arguments ............................................................................................................ 4

III. The Court Did Not Overlook the "No-Allegations" Banks, HSBC, Citibank, Deutsche
Bank, or the JP Morgan Defendants' Arguments ................................................................ 8

IV. The Court Did Not Overlook the TIBOR-Only Banks' Arguments .................................... 9

CONCLUSION ........................................................................................................................ 11

**TABLE OF AUTHORITIES**

**Cases**

*Barnes & Noble, Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 10-cv-5759 (GBD), 2013 U.S. Dist. LEXIS 110648 (S.D.N.Y. July 31, 2013) ................ 2

*Beatty v. JP Morgan Chase & Co.* (*In re Commodity Exch., Inc.
Silver Futures & Options Trading Litig.*),
    No. 13-cv-1416, 2014 U.S. App. LEXIS 5597
    (2d Cir. Mar. 27, 2014) ("*Silver Futures II*") ................................................................ 4

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013) ................................................................................ 5

*Detsis v. Victori's Secret Stores, Inc.*,
    No. 03-cv-5358 (GBD), 2006 U.S. Dist. LEXIS 87838 (S.D.N.Y. Dec. 4, 2006) .................. 3

*Ferrand v. Credit Lyonnais*,
    292 F. Supp. 2d 518 (S.D.N.Y. 2003) ................................................................................ 5

*In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*,
    No. 11 M.D. 2213 (RPP), 2012 U.S. Dist. LEXIS 181487
    (S.D.N.Y. Dec. 21, 2012) ("*Silver Futures I*") ................................................................ 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013) ("*USD LIBOR II*") ................................................ 1, 4, 7

*Kimm v. KCC Trading, Inc.*,
    No. 12-cv-0650 (GBD), 2013 U.S. Dist. LEXIS 106475 (S.D.N.Y. July 24, 2013) ................ 3

*King Cnty. v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 317 (S.D.N.Y. 2012) ................................................................................ 4

*Laydon v. Mizuho Bank, Ltd*,
    No. 12-cv-3419 (GBD), 2014 U.S. Dist. LEXIS 46368 (S.D.N.Y. Mar. 28, 2014) ....... *passim*

*Locke v. Tom James Co.*,
    No. 11-cv-2961 (GBD), 2014 U.S. Dist. LEXIS 19071 (S.D.N.Y. Feb. 10, 2014) ................ 3

*Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*,
    585 F.3d 677 (2d Cir. 2009) ................................................................................ 3, 9

**Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 (2006) ................................................................ 1

## PRELIMINARY STATEMENT

Defendants filed 279 pages of briefing and had seven lawyers argue their motions to dismiss the Complaint. They filed a post-argument letter brief. Disappointed that they did not secure a total victory, Defendants seek reconsideration of the Court's Order sustaining Plaintiff's claims for manipulation and aiding and abetting manipulation under the Commodity Exchange Act, 7 U.S.C. § 1 (2006) *et seq.* ("CEA"). *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 U.S. Dist. LEXIS 46368, at *15-25 (S.D.N.Y. Mar. 28, 2014) ("*Order*"). Defendants do not cite a single precedential decision previously uncited. Moreover, they identify no argument or fact the Court overlooked. Defendants do not come close to meeting the onerous standards for reconsideration. The motions should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On April 15, 2013, Plaintiff filed a 747-paragraph, 337-page Second Amended Class Action Complaint ("Complaint") with a 65-page Appendix detailing scores of manipulative instant messages among various Defendants relative to Euroyen TIBOR and Yen-LIBOR rate submissions and derivatives prices. Dkt. No. 150. Defendants, who have already paid billions of dollars in fines to government regulators and made admissions detailing pervasive Yen-LIBOR and Euroyen TIBOR manipulation, filed motions to dismiss the Complaint accompanied by 13 separate memoranda of law totaling 183 pages, and a declaration with 14 exhibits. Dkt. Nos. 205-14, 217-18, 220-21. Plaintiff responded with a 93-page opposition brief. Dkt. No. 226. Defendants replied with 95 pages of briefing, Dkt. Nos. 232-43, relying heavily on the then-recent decision of Judge Buchwald in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606 (S.D.N.Y. 2013) ("*USD LIBOR II*"). Plaintiff's 15-page Sur-Reply addressed Defendants' *USD LIBOR II* arguments. Dkt. No. 245.

The Court carefully considered all of these extensive arguments at a nearly all-day March 5th oral argument, where Defendants had seven lawyers argue their positions. Following oral argument, Defendants submitted a post-argument letter on March 26 to "emphasize the significance" (Dkt. No. 268) of Plaintiff's response to this Court's targeted questions concerning

1

Plaintiff's transactions in the Euroyen TIBOR futures market.  *See* Mar. 5, 2014 Mot. Hr'g Tr. at 102-07.

On March 28, 2014, this Court issued a Memorandum Decision and Order granting-in-part and denying-in-part the motions to dismiss.  *See Order*.  The Court sustained Plaintiff's claims for CEA manipulation and aiding and abetting, and dismissed Plaintiff's claims for vicarious liability under the CEA, violations of Section 1 of the Sherman Act and unjust enrichment.

In sustaining Plaintiff's CEA claims, this Court held that (i) "Plaintiff has standing to sue under the CEA" (*Order* at *17-18); and the Complaint (ii) alleges the appropriate causal relationship "between the purportedly manipulative conduct and the alleged market response" (*id.* at *18-20); (iii) "includes overwhelming factual content from which this Court could infer manipulative intent, particularly based on direct evidence from certain Defendants' communications" (*id.* at *20-23); and (iv) "contains numerous allegations giving rise to an inference that Defendants knew of the other Defendants' unlawful and manipulative conduct and assisted each other in the furtherance of the violation."  *Id.* at *23-25.

On April 11, 2014, Defendants filed motions for reconsideration attacking the Court's determination that Plaintiff "adequately pled a claim under the Commodity Exchange Act for price manipulation and aiding and abetting price manipulation against all defendants."  *Id.* at *7.  Without citation to any newly-issued controlling authority, Defendants primarily contend that the Court "overlooked" certain of their CEA arguments.

### THE MOTION FOR RECONSIDERATION STANDARD

"Reconsideration of a judicial order pursuant to Local Rule 6.3 is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Barnes & Noble, Inc. v. Alcatel-Lucent USA, Inc.*, No. 10-cv-5759 (GBD), 2013 U.S. Dist. LEXIS 110648, at *5 n.1 (S.D.N.Y. July 31, 2013) (citation and internal quotation omitted).  This Court has emphasized that "[a] court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent

2

the rule from being used as a substitute for appealing a final judgment." *Id.* at *6 n.1 (citation and internal quotation omitted). Thus, the "threshold for prevailing on a motion for reconsideration is high." *Kimm v. KCC Trading, Inc.*, No. 12-cv-0650 (GBD), 2013 U.S. Dist. LEXIS 106475, at *2 (S.D.N.Y. July 24, 2013) (citation and internal quotation omitted).

"Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Barnes & Noble*, 2013 U.S. Dist. LEXIS 110648, at *6 (internal quotation omitted); *see also* S.D.N.Y. Local Civ. R. 6.3. Reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Kimm*, 2013 U.S. Dist. LEXIS 106475, at *2 (citation and internal quotation omitted).

A court may not reconsider a prior ruling unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice." *Detsis v. Victoria's Secret Stores, Inc.*, No. 03-cv-5358 (GBD), 2006 U.S. Dist. LEXIS 87838, at *2 (S.D.N.Y. Dec. 4, 2006) (citation omitted); *Locke v. Tom James Co.*, No. 11-cv-2961 (GBD), 2014 U.S. Dist. LEXIS 19071, at *3-4 (S.D.N.Y. Feb. 10, 2014) ("[t]he standard for granting a motion for reconsideration is strict, and reconsideration should be denied where the movant simply seeks to relitigate an issue already decided by the court") (citation and internal quotation omitted).

### I. Defendants Do Not Cite Any New Precedent Justifying Reconsideration.

Defendants do not cite a single precedent in any of their reconsideration briefs that was unavailable to them when they argued their motions to dismiss the Complaint.[1]

---

[1] Defendants argue the Court "overlooked controlling Second Circuit authority that requires plaintiff 'to provide a factual basis for scienter *for each defendant*." *Defendants' Memorandum of Law In Support of Their Motion for Reconsideration* (Dkt. No. 276) ("*No Allegations Banks' Reconsideration Brf.*") at 1 (citing *Meijer, Inc. v. Ferring B.V.* (*In re DDAVP Direct Purchaser Antitrust Litig.*), 585 F.3d 677, 695 (2d Cir. 2009)); *HSBC Defendants' Memorandum in Support of Their Motion for Reconsideration or Reargument* ("*HSBC Defendants' Brf.*") (Dkt. No. 279) at 1 (same). But this case was neither new, nor overlooked—the Court cited it *twice* in its March 28, 2014 Order. *See Order* at *27, 31.

3

The best Defendants could muster on this score is the March 27, 2014 Second Circuit Summary Order in *Beatty v. JP Morgan Chase & Co.* (*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*), No. 13-cv-1416, 2014 U.S. App. LEXIS 5597 (2d Cir. Mar. 27, 2014) ("*Silver Futures II*").  But this ruling explicitly disclaims that it has precedential value—it states that "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT"; *see also* 2d Cir. Local R. 32.1.1(a) ("[r]ulings by summary order do not have precedential effect"); *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 323 (S.D.N.Y. 2012) (summary orders "cannot serve as the basis for reconsideration").

Moreover, *Silver Futures II* affirmed the ruling of Judge Patterson in *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, No. 11 M.D. 2213 (RPP), 2012 U.S. Dist. LEXIS 181487 (S.D.N.Y. Dec. 21, 2012) ("*Silver Futures I*").  And the March 28, 2014 Order **relied on** *Silver Futures I* in sustaining Plaintiff's CEA claims.  *See Order* at *18-19 ("[a] CEA Plaintiff must demonstrate a causal relationship between the purportedly manipulative conduct and the alleged market response") (citing *Silver Futures I*).  Defendants can hardly argue that the Court overlooked the now-affirmed rationale of *Silver Futures I* in issuing its decision.  *Silver Futures II*, therefore, does not justify reconsideration.

## II.  The Court Did Not Overlook the Defendants' CEA "Actual Damages" Pleading Arguments.

All Defendants (except UBS Securities Japan Co. Ltd.) seek reconsideration of the Court's ruling that Plaintiff has adequately pled that their conduct caused Plaintiff to suffer actual damages under the CEA, and cite principally to Judge Buchwald's decision in *USD LIBOR II*, 962 F. Supp. 2d at 620—a non-precedential case that was argued extensively in the parties' briefs and at oral argument on the motions to dismiss.  *See Memorandum of Law In Support of Defendants' Motion for Reconsideration of the Court's March 28, 2014 Memorandum Decision and Order* (Dkt. No. 280) ("*Defendants' Main Reconsideration Brf.*")  at 4-6.  Not only do Defendants acknowledge they raised this argument both in their opening and

4

reply memoranda in support of the motion to dismiss, *id.* at 1 n.2,[2] the Court left no doubt at oral argument that it had considered Judge Buchwald's *LIBOR* decisions:

> THE COURT: Now, you're primarily relying on Judge Buchwald's opinion or opinions. Is there anyplace else that I can look, as they say, other than down the hall?
>
> MR. RICE: Absolutely. I think your Honor looks to the argument. I think your Honor looks –
>
> THE COURT: Well, I'm talking about authority. I'm talking about other – I'm talking about Second Circuit opinion on this issue.

Mar. 5, 2014 Mot. Hr'g Tr. at 23-24.

Defendants conflate the Court's decision not to engage in prolix discussion of this argument in its Order with "overlooking" the argument. *Cf. Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521-22 (S.D.N.Y. 2003) (Marrero, J.) (simply because "the Court did not specifically reference every factual detail or incident to which [the party seeking reconsideration] attached special significance in [their] opposition papers does not necessarily establish that the Court did not consider that particular matter . . . . That the Court did not refer to the matter in the first instance is precisely an indicator that that detail was not particularly worthy of mention."); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (same).

The Court considered Defendants' argument and specifically questioned Plaintiff's futures market transactions at oral argument. *See* Mar. 5, 2014 Mot. Hr'g Tr. at 102-07, and

---

[2] Defendants argued that "Plaintiff must plausibly allege that Defendants' purportedly manipulative conduct proximately caused him to suffer actual damages." ("*Def. CEA Opening Brf.*"), Dkt. No. 205 at 21-22 (citation omitted). According to Defendants, Plaintiff failed "to allege any facts about his positions or the positions of the class he purports to represent, such as when they were initiated and exited, how long they were held, or at what prices they were purchased and sold," which, they argued, justified dismissal. *Id.* at 21 (citation omitted); *see also* ("*Def. CEA Reply Brf.*"), Dkt. No. 233 at 14-16.

elicited from Plaintiff's counsel that Plaintiff's trading occurred between July and August 2006. *Id.* at 103:6-25.

That is consistent with Plaintiff's allegations that he "initiated short positions in CME Euroyen TIBOR futures contracts during the Class Period and suffered net losses on such contracts," Complaint, ¶ 56; his trading losses were "suffered . . . due to the presence of artificial Euroyen TIBOR futures prices proximately caused by Defendants' unlawful manipulation and restraint of trade . . . ." *id.*; and he was injured by being "deprived of transacting in a lawful, non-manipulated Euroyen market . . . ." *Id.*

Plaintiff's trading loss allegations are supported by Defendants' admissions and other indicia of persistent manipulative and collusive conduct committed contemporaneously during the time he opened, held, and closed his trading positions, as well as throughout the entirety of the Class Period. Sample manipulation *admissions* include:

- "*[f]rom at least as early as August 2006* through approximately January 2007" Barclays *admits* that its yen swaps traders internally influenced Barclays' Yen-LIBOR submissions, Complaint, ¶ 470 (incorporating by reference Barclays' Statement of Facts set forth in its settlement with the Department of Justice (Barclays DOJ SOF, ¶ 20) (emphasis added);

- UBS *admits* that certain of its yen derivatives traders were doing the same thing "*[f]rom as early as 2001* through at least June 2010" Complaint, ¶ 150; (incorporating by reference UBS' Statement of Facts set forth in its settlement with the Department of Justice (UBS DOJ SOF, ¶ 20); and that "the manipulation of Yen LIBOR submissions . . . began to occur far more frequently after July 2006." Complaint, ¶ 155; UBS DOJ SOF, ¶ 24 (emphasis added);

- RBS *admits* that it engaged in similar manipulative conduct "*[f]rom approximately mid-2006* through 2010" Complaint, ¶ 332 (incorporating by reference RBS' Statement of Facts set forth in its settlement with the Department of Justice (RBS DOJ SOF, ¶ 18) (emphasis added);

- Rabobank settled with the Department of Justice in October, 2013, after the operative Complaint was filed. As part of its settlement it *admitted* that "*[f]rom in or around May 2006*, through in or around November 2010, several Rabobank Yen swaps traders" influenced Yen-LIBOR submitters to provide manipulative rates (Rabobank DOJ SOF, ¶ 30), Dkt. No. 247-2 (emphasis added);

6

- A June 20, 2013 U.K. Serious Fraud Office criminal complaint charged Thomas Hayes of UBS with conspiring with numerous banks and brokers (including (a) UBS Securities Japan Limited[3] and associated entities, (b) "JP Morgan Chase & Co, The Royal Bank of Scotland Group plc, Deutsche Bank AG and others," (c) "UBS AG, ICAP plc and others" and (d) UBS AG, RP Martin Holdings Limited, Tullett Prebon plc, Rabobank, HSBC and others") "between *August 8, 2006* and December 3, 2009" See Ex. 1 to *Pl. Mem.*, Dkt. No. 227-1 (attaching criminal charges) (emphasis added); and

- Rabobank *admitted* that one of its Yen-LIBOR submitters and a derivatives trader at another bank had a standing agreement to collude where mutually beneficial during the period between "*as early as May 2006* and continuing at least through October 2008" Rabobank DOJ SOF, ¶¶ 70-80, Dkt. No. 247-2 (emphasis added).

It is not just alleged—it is true—that (1) four Defendants have so far admitted manipulation during the period Plaintiff traded; (2) one Defendant, Rabobank, had a standing arrangement with another bank to collude when mutually advantageous beginning at least a month before Plaintiff traded; and (3) a regulator formally alleged that several Defendants (including unnamed "others") conspired to manipulate Yen-LIBOR beginning in the month (August 2006) Plaintiff held, then closed, his positions.[4]

Some Defendants argue that while the currently-available evidence admittedly demonstrates they manipulated either Yen-LIBOR or Euroyen TIBOR, Plaintiff does not yet have evidence establishing they did so when Plaintiff held his positions. *See HSBC Defendants' Brf.* at 9 ("the Complaint must allege wrongful conduct by HSBC prior to September 2006 in order to sustain a claim against HSBC"); *id.* at 10; ("it is clear that HSBC could not possibly have caused plaintiff's alleged trading losses because HSBC is not alleged to have done anything wrong until several months after plaintiff exited the market."); *Joinder in HSBC's Motion for*

---

[3] This Defendant did not move for reconsideration.

[4] Suffice it to say, that where, as here, a persistent manipulation throughout the entire Class Period is alleged, it is enough that Plaintiff alleges he transacted in an artificial market. *See USD LIBOR II*, 962 F. Supp. 2d at 622 ("[i]n evaluating the persistent suppression allegations in plaintiffs' first amended complaint, we did not require plaintiffs to allege the specific days on which they traded because LIBOR, and consequently Eurodollar futures prices, was allegedly artificial throughout the Class Period.")  Here, Plaintiff alleges persistent manipulation of Euroyen TIBOR, Yen-LIBOR and the prices of Euroyen TIBOR futures contracts by defendants throughout the entire Class Period. *See supra* (examples of persistent manipulation and collusion). *See, e.g.*, Complaint ¶ 243 (UBS traders made approximately 2,000 written requests to manipulate).  Thus, even if *USD LIBOR II* could serve as a basis for reconsideration—which as a matter of law, it cannot—it does not support Defendants' arguments.

*Reconsideration or Reargument* (Dkt. No. 281) ("*Joinder Defendants' Reconsideration Brf.*") (joinder by Citibank, Deutsche Bank and JP Morgan) (same). Boiled down, Defendants' argument is that "since the evidence made public thus far confirms their manipulation at certain times, it is not plausible they engaged in manipulation at other times."

Four Defendants admitted manipulation and one admitted collusion during Plaintiff's trading period. Is it plausible HSBC, Deutsche Bank, JP Morgan and others also manipulated and colluded during this period? Surely it is as the U.K. Serious Fraud Office **names these banks** as co-conspirators with former UBS trader Thomas Hayes for the period beginning in the month Plaintiff held, then closed, his positions.

The Court analyzed the level of specificity of Plaintiffs' alleged losses both at oral argument and again in its Order. *See Order* at *30-31 (describing same in connection with the antitrust analysis). The Order itself conclusively confirms that the Court did not overlook this issue.[5]

### III. The Court Did Not Overlook the "No-Allegations" Banks, HSBC, Citibank, Deutsche Bank, or the JP Morgan Defendants' Arguments.

The so-called "No Allegations Banks" Defendants[6] "seek reconsideration only of the Court's determination that plaintiff adequately pled scienter *as to Movants* for purposes of his CEA claims." *See No Allegations Banks' Reconsideration Brf.* at 1. The HSBC Defendants also argue that the Court improperly conducted a "group pleading" analysis when analyzing CEA "scienter" and that Plaintiff lacks standing because all of the publicly-available misconduct attributable to it occurred after he traded his Euroyen TIBOR futures contracts. *HSBC Defendants' Brf.* at 1-2. The Citibank, Deutsche Bank and JP Morgan Defendants join in the HSBC Defendants' motion and compare the dates of Plaintiff's trading with publicly-available

---

[5] On the merits, Plaintiff incorporates by reference his prior briefing on this issue, *see Pl. Mem.* at 53-54 (Dkt. No. 226); *Sur-Reply* at 4-5 (Dkt. No. 245) and on Defendant's manipulative intent arguments, *see Pl. Mem.* at 25-44; *Sur-Reply* at 5-12.

[6] The Bank of Tokyo-Mitsubishi UFJ, Ltd., Mitsubishi UFJ Trust and Banking Corporation, Mizuho Corporate Bank, Ltd., Mizuho Trust & Banking Co., Ltd., Mizuho Bank, Ltd., The Norinchukin Bank, Sumitomo Mitsui Banking Corporation and Société Générale.

dates when the already-available evidence confirms their employees participated in misconduct. *Joinder Defendants' Reconsideration Brf. passim*.

All of these Defendants made this "group pleading" intent argument before, and they cited *DDAVP* in support. *Compare No Allegations Banks' Reconsideration Brf.* at 1 ("[r]econsideration is warranted because the Court overlooked controlling Second Circuit authority that requires plaintiff 'to provide a factual basis for scienter *for each defendant*.'") (quoting *DDAVP*, 585 F.3d at 695) *with Def. CEA Opening Brf.* at 26; ("scienter must in fact be pled separately as to each Defendant") (citing *DDAVP*, 585 F.3d at 695).[7]

The Court did not ignore these Defendants' arguments when it ruled. To the contrary, the Court concluded that Plaintiff alleged "overwhelming factual content from which [it] could infer manipulative intent . . . ." for these Defendants, including Plaintiff's economic analyses in Figures 29-63 of the Complaint as to the "Yet-Non-Settling Contributor Banks, generally." *Order* at *22. The Court rejected—rather than overlooked—these Defendants' manipulative intent pleading arguments. The arguments do not justify reconsideration.

## IV. The Court Did Not Overlook the TIBOR-Only Banks' Arguments.

The TIBOR-only Banks echo the "group pleading" mantra by contending that the Court overlooked "the absence of allegations of scienter or manipulative intent necessary to prove a claim *against them* for price manipulation or aiding and abetting under the Commodity Exchange Act." *Memorandum In Support of the TIBOR-Only Bank Defendants' Motion for Reconsideration or Reargument* (Dkt. No. 283) ("*TIBOR-Only Banks' Reconsideration Brf.*") at 1.

On manipulative intent, the TIBOR-Only Banks first claim that although the Court concluded that Plaintiff sufficiently alleged that "Yen-LIBOR significantly impacted Euroyen TIBOR" and that "false reporting of Yen-LIBOR caused artificial Euroyen TIBOR" Plaintiff did

---

[7] *See also No Allegations Banks' Reconsideration Brf.* at 1, n.1 ("[a]ll Movants filed supplemental memoranda of law in support of defendants' motion to dismiss noting the complaint's lack of specific allegations of misconduct by them, much less any allegations sufficient to plead scienter for purposes of plaintiff's CEA claims.").

9

not allege that the TIBOR-Only Banks submitted quotes that were specifically intended to manipulate Euroyen TIBOR. *Id.* at 1-2. The TIBOR-only Banks also suggest that the Court "did not take account of the fact that the TIBOR-Only Banks *were not on the Yen-LIBOR panel*." *Id.* at 1. The TIBOR-Only Banks suggest that no regulatory investigations have yet to implicate them and criticize Plaintiffs' allegations as "meager." *Id.* at Point I.B.

Addressing the Court's conclusion that manipulative intent was properly pleaded because Defendants had both motive and opportunity to commit fraud, *Order* at *20, the TIBOR-Only Banks challenge the Court's ruling on "motive" by citing *Silver II* and *USD LIBOR II*.

The TIBOR-Only Banks also attack Plaintiff's coefficient of variation and Euroyen TIBOR/Euroyen Deposit Rate analyses. *TIBOR-Only Banks' Reconsideration Brf*. at 4-5. They hypothesize that the reduced coefficient of variation and the divergence in Euroyen TIBOR from the Euroyen Deposit Rates could have resulted from non-manipulative acts (an increase in borrowing rates and innocent reliance on Yen-LIBOR rates manipulated by others).

However, the TIBOR-Only Banks previously made all of these arguments:

(1) Plaintiff "pleads no facts indicating that the TIBOR-only Banks specifically intended to manipulate the prices of CME Euroyen TIBOR futures contracts." *See Supplemental Memorandum of the TIBOR-Only Banks in Support of Defendants' Motion to Dismiss* (Dkt. No. 208) ("*TIBOR-Only Banks' Opening Brf*.") at 11;

(2) They were not the subject of governmental investigations ("Plaintiff does not allege that any of the government investigations described in the Complaint found any wrongdoing by the TIBOR-only Banks . . . ."), *id.* at 3;

(3) Plaintiff did not plead that each Defendant specifically intended to manipulate Euroyen TIBOR futures contracts; *see Def. CEA Reply Brf.* at 19 (arguing the *DDAVP* "group pleading" point); *see also Supplemental Reply Memorandum of TIBOR-Only Banks in Support of Defendants' Motion to Dismiss* (Dkt. No. 235) ("*TIBOR-Only Banks' Reply Brf*.") at Point II (incorporating all Defendants' CEA reply arguments) & Point II.B at p. 3 (also describing Plaintiffs' allegations against them as "meager");

(4) They did not have sufficient motive to manipulate Euroyen TIBOR futures contracts. *see also Def. CEA Reply Brf.* at 19 (arguing that generalized profit motive from manipulation is "generalized motive" that is "insufficient to show intent") (citation omitted); and

10

(5) There were alternative hypotheses which could explain (a) the divergence between the Euroyen Deposit Rate and Euroyen TIBOR; *TIBOR-Only Banks' Opening Brf.* at 8-9 ("the difference between Euroyen TIBOR and EYDR or Yen LIBOR would naturally change if, for example . . . ."); *see also TIBOR-Only Banks' Reply Brf.* at 5 (same); and (b) their contribution to the reduced coefficient of variation among the submitted rates; *TIBOR-Only Banks' Opening Brf.* at 12 ("no plausible inference of specific intent to manipulate, much less a strong inference, can be based on the asserted lack of variation in the banks' submission").

Again, the Court did not "overlook" these arguments. As it did with all other "Yet-Non-Settling Contributor Banks," the Court simply found that the Complaint's economic and other "overwhelming factual content," as well as its motive and opportunity allegations, sufficed to plead facts from which manipulative intent could be implied. *Order* at *20-22.

## CONCLUSION

For the stated reasons, Defendants' Motions for Reconsideration or Reargument of the Court's March 28, 2014 Order should be denied.

Dated: May 9, 2014
White Plains, New York

        LOWEY DANNENBERG COHEN
          & HART, P.C.

        By: /s/ Vincent Briganti
          Vincent Briganti
          Geoffrey M. Horn
          Peter D. St. Phillip
          Thomas Skelton
          Raymond Girnys
          One North Broadway
          White Plains, New York 10601
          Tel.: 914-997-0500
          Fax: 914-997-0035

        *Interim Lead Class Counsel*