# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

JEFFREY LAYDON, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 12-cv-3419 (GBD)

ECF Case

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND FILE THE PROPOSED THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL HISTORY....................................................................................................... 2

THE MOTION FOR LEAVE TO AMEND STANDARD ....................................................... 2

I.  The Proposed Complaint Properly Adds New Parties ........................................... 3

II.  The Proposed Complaint Properly Asserts RICO Claims ..................................... 4

    A.  The Proposed Complaint States RICO Claims ...................................... 5

        1.  The Proposed Complaint Alleges an Enterprise to Manipulate Yen-LIBOR, Euroyen-TIBOR, and the Prices of Euroyen-Based Derivatives ....................... 5

    B.  The Proposed Complaint Alleges Predicate Acts of Racketeering by Defendants. .... 6

        1.  The Proposed Complaint Alleges a Scheme through which Defendants Intended to Defraud Euroyen-Based Derivatives Investors Including U.S.-Based Counterparties ............................................. 6

        2.  The Proposed Complaint Alleges that Defendants Used The Wires "In Furtherance Of" Their Scheme to Defraud ...................... 7

    C.  The Proposed Complaint Alleges Pleads a Pattern of Racketeering Activity ............. 9

    D.  The Proposed Complaint Alleges that Plaintiffs Have Been Injured in Their Business or Property as a Result of Defendants' RICO Violations ................. 10

    E.  The Proposed Complaint Properly States a RICO Conspiracy Claim....................... 11

    F.  Defendants Cannot Challenge the RICO Claims Based on Extraterritoriality or the PSLRA Amendment....................................................................... 12

        1.  Plaintiffs' Claims Do Not Require Extraterritorial Application of RICO ....... 12

        2.  The RICO Claims are not Barred by the PSLRA RICO Amendment ............. 14

III.  The Proposed Complaint Alleges Properly Asserts a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing......................................................... 15

IV.  Plaintiff Properly Seeks to File an Amended Complaint in Order to Cure Certain of the Pleadings Identified  in the Court's March 28 Decision..................................... 15

i

A.    OPPRS's Japanese Yen Currency Forward Agreements With
Several Defendant Counterparties Cures the Unjust Enrichment Deficiencies......... 16

B.    Plaintiff Properly Seeks Leave to Cure the "Efficient Enforcer" Pleading
Deficiencies as to Defendants UBS and RBS........................................................... 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
626 F.3d 699 (2d Cir. 2010)..................................................................................... 2

*Angermeir v. Cohen*,
No. 12-cv-55, 2014 U.S. Dist. LEXIS 42403 (S.D.N.Y. Mar. 27, 2014)................................. 9

*Automated Teller Mach. Advantage LLC v. Moore*,
No. 08 Civ. 3340, 2009 U.S. Dist. LEXIS 68724 (S.D.N.Y. Aug. 6, 2009) ............................ 7

*Boyle v. United States*,
556 U.S. 938 (2009)............................................................................................. 6

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012) .......................................................... 6, 7, 8

*City of New York v. Coastal Oil N.Y., Inc.*,
98-Civ-8667, 1999 U.S. Dist. LEXIS 10458 (S.D.N.Y. July 9, 1999)................................... 16

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
187 F.3d 229 (2d Cir. 1999)................................................................................. 12

*Cohen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
722 F. Supp. 24 (S.D.N.Y. 1989).......................................................................... 16

*Dalton v. Educ. Testing Servs.*,
663 N.E.2d 289 (N.Y. 1995)................................................................................. 16

*European Cmty. v. RJR Nabisco*,
02-cv-577, 2011 U.S. Dist. LEXIS 23538 (E.D.N.Y. Mar. 8, 2011)..................................... 15

*European Cmty. v. RJR Nabisco*,
No. 11-cv-2475, 2014 U.S. App. LEXIS 7593 (2d. Cir. Apr. 23, 2014) ........................... 5, 14

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*,
282 F. App'x 94 (2d Cir. 2008) ....................................................................... 6, 10

*G-I Holdings v. Baron & Budd*,
238 F. Supp. 2d 521 (S.D.N.Y. 2002) .................................................................... 11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)........................................................................................... 10

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010) ........................................................................... 11

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013). ........................................ 18

*Ifill v. West*,
  No. 96 cv 6308, 1999 U.S. Dist. LEXIS 21320 (E.D.N.Y. Sep. 1, 1999) ............................... 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig. (USD LIBOR I)*,
  935 F. Supp. 666 (S.D.N.Y. 2013) ............................................... 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig. (USD LIBOR II)*,
  962 F. Supp. 2d 606 (S.D.N.Y. 2013) .......................................... 16

*Kaye v. Grossman*,
  202 F. 3d 611, 616 (2d Cir. 2000) ................................................ 17

*Laydon v. Mizuho Bank Ltd.*,
  No. 12-cv-3419, 2014 U.S. Dist. LEXIS 46368 (S.D.N.Y. 2014) ................................... passim

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
  179 F. Supp. 2d 159 (S.D.N.Y. 2001) .......................................... 15

*Lotes Co., Ltd. v. Hon Hai Precision Indust. Co., Ltd.*,
  No. 13-2280, (2d Cir. June 4, 2014) ............................................. 20

*Lucente v. Int'l Bus. Machs. Corp.*,
  310 F.3d 243 (2d Cir. 2002) ........................................................... 3

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ......................................................... 15

*Neely v. RMS Residential Mortg. Solution, L.L.C.*,
  12-cv-1523, 2013 U.S. Dist. LEXIS 26978 (E.D.N.Y. Feb. 26, 2013) .................. 18

*Panther Partners, Inc. v. Ikanos Communs., Inc.*,
  681 F.3d 114 (2d Cir. 2012) ........................................................... 3

*Porat v. Lincoln Towers Cmty. Ass'n*,
  464 F.3d 274 (2d Cir. 2006) ........................................................... 2

*Powers v. British Vita, P.L.C.*,
  57 F.3d 176 (2d Cir. 1995) ......................................................... 7, 8

iv

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008).................................................................................. 3

*Sch. Dist. v. J.P. Morgan Chase Bank*,
    08-cv-7688, 2009 U.S. Dist. LEXIS 12329 (S.D.N.Y. Jan. 30, 2009) ................................... 15

*Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    253 F. Supp. 359 (S.D.N.Y. 1966)........................................................................... 16

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)................................................................................ 2, 3

**Statutes**

18 U.S.C. § 1962(c) ..................................................................................................... 5

18 U.S.C. § 1962(d) ..................................................................................................... 5

18 U.S.C. § 1964(c) ..................................................................................................... 5

**Rules**

Fed. R. Civ. P. 15(a)(2)................................................................................................. 2

# PRELIMINARY STATEMENT

Since this case was filed in 2012, there has been a deluge of public facts demonstrating Defendants' manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives. Identities of previously unknown wrongdoers continue to be revealed. Some have pleaded guilty to wire fraud, others have paid billions of dollars in fines, and others still have been charged with crimes. Just last week, the U.S. Department of Justice ("DOJ") issued another press release entitled: "Former Rabobank Trader Pleads Guilty for Scheme to Manipulate Yen LIBOR," noting:

> 'With this guilty plea, we take another significant step to hold accountable those who fraudulently manipulated the world's cornerstone benchmark interest rate for financial gain,' said Attorney General Eric Holder. 'This conduct distorted transactions and financial products around the world. Manipulating LIBOR effectively rigs the global financial system, compromising the fairness of world markets.
>
> Today, a former Rabobank trader has pleaded guilty to participating in a scheme to manipulate the global benchmark interest rate LIBOR to benefit Rabobank's trading positions,' said Assistant Attorney General Caldwell. '**This was the ultimate inside job. As alleged, traders illegally influenced the very interest rate on which their trades were based, using fraud to gain an unfair advantage. Takayuki Yagami is the ninth person charged by the Justice Department in connection with the industry-wide LIBOR investigation, and we are determined to pursue other individuals and institutions who engaged in this crime.'**

*See* Briganti Decl., Ex. 2, at 1 (emphasis added).

In addition to adding new defendants whose identities have come to light, Plaintiff's proposed complaint adds new plaintiffs, including a state pension fund that traded hundreds of millions of dollars in notional value of Euroyen-based derivatives directly with various Contributor Bank Defendants, including UBS, Citibank, Barclays, Deutsche and JPMorgan. Just as the Yagami guilty plea was "another significant step to hold accountable those who fraudulently manipulated the world's cornerstone benchmark interest rate for financial gain," so

too is the proposed amended complaint another step in restoring to investors the monies they lost due to the systemic fraud perpetrated by the Defendants.

## PROCEDURAL HISTORY

On March 28, 2014, the Court granted-in-part and denied-in-part defendants' thirteen motions to dismiss. *See Laydon v. Mizuho Bank Ltd.*, No. 12-cv-3419, 2014 U.S. Dist. LEXIS 46368 (S.D.N.Y. 2014). In accordance with the regular practice in this Circuit[1], and in conformity with the Court's schedule, Plaintiff moves to amend his Complaint to add: (1) two plaintiffs and four defendants; (2) a claim for relief that fits within the Second Circuit's recent clarification of the territorial scope of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (3) a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff also cures certain pleading deficiencies identified by the Court in its decision on defendants' motions to dismiss.

## THE MOTION FOR LEAVE TO AMEND STANDARD

"The Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.' Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks omitted)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010) (citation omitted) (emphasis added). Examples of prejudice include amendments which would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citation omitted).

---

[1] "Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

A pleading amendment is futile if the proposed claim could not withstand a motion to dismiss under FED. R. CIV. P. 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "In assessing whether the proposed complaint states a claim, we consider 'the proposed amendment[s] . . . along with the remainder of the complaint,' . . . , accept as true all nonconclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners, Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citations omitted).

## I.     The Proposed Complaint Properly Adds New Parties.

The proposed complaint includes Oklahoma Police Pension & Retirement System ("OPPRS") and Stephen P. Sullivan ("Sullivan") as plaintiffs and additional class representatives. OPPRS and Sullivan traded numerous Euroyen-based derivatives throughout the Class Period at artificial prices directly resulting from Defendants' alleged manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives. *See* ¶656 (OPPRS entered into hundreds of Japanese yen currency forward agreements directly with Contributor Bank Defendants UBS, Citibank, Barclays, Deutsche and JPMorgan) ¶652 (Sullivan transacted Yen currency futures contracts on the Chicago Mercantile Exchange). Adding these Plaintiffs will not delay these. To the contrary, OPPRS and Sullivan bolster the claims alleged herein, and eliminate any purported standing ambiguities raised by defendants in their pending reconsideration motions.

The proposed complaint also seeks to add four new defendants: (1) ICAP Europe Limited; (2) Lloyds Banking Group, PLC; (3) Tullett Prebon, PLC; and (4) Martin Brokers (UK) Ltd. These entities were not publicly implicated in the Yen-LIBOR and Euroyen TIBOR manipulation on or before April 15, 2013, the date the last operative complaint was filed.

The first public disclosure of the involvement of ICAP Europe Limited and Martin Brokers (UK) Ltd. in the manipulation of Yen-LIBOR did not occur until ICAP Europe Limited

settled CFTC and FCA civil charges on September 25, 2013[2] and Martin Brokers (UK) Ltd. settled similar charges on May 15, 2014.[3]  Likewise, Tullett Prebon's involvement in the manipulation of Yen-LIBOR was not confirmed until June 20, 2013 when the U.K. Serious Fraud Office identified it as an alleged co-conspirator in the charging instrument of former UBS and Citigroup trader Thomas Hayes.[4]

Plaintiff named Lloyds as a Defendant in his initial April 30, 2012 pleading.  Based on representations from Lloyds' counsel, Plaintiff entered into a tolling agreement with Lloyds and thereafter removed Lloyds from the action.  It was not until October 29, 2013, however, when Defendant Rabobank settled charges of Yen-LIBOR manipulation, that Plaintiff was able to identify Lloyds as a Rabobank co-conspirator in the manipulation of Yen-LIBOR.[5]  *See* ¶¶396-97.  Lloyds is a proper defendant.

An amended pleading to add these new parties is appropriate given that Plaintiff did not unduly delay in seeking to join them and there is no prejudice to either the existing or new defendants from their addition to the litigation.[6]

## II.    The Proposed Complaint Properly Asserts RICO Claims.

The proposed complaint includes claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  On April 24, 2014, in *European Community v. RJR Nabisco*, the Second Circuit clarified the presumption against extraterritoriality of U.S. statutes.  *European*

---

[2] *See* Commodity Futures Trading Commission Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions against ICAP Europe Limited, CFTC Docket No. 13-38 (September 25, 2013).  *See* Exhibit C-1 to the Proposed Third Amended Complaint.

[3] *See* Commodity Futures Trading Commission Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions against RP Martin Holdings Limited and Martin Brokers (UK) Ltd., CFTC Docket No. 14-16 (May 15, 2014).  *See* Exhibit E-1 to the Proposed Third Amended Complaint.

[4] *See* ECF No. 227-1.

[5] *See* United States Department of Justice Criminal Division (Fraud Section) and Antitrust Division Deferred Prosecution Agreement against Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., (October 29, 2013).  *See* Exhibit D-1 to the Proposed Third Amended Complaint.

[6] Plaintiff also seeks to add a conforming amended class definition to include the specific categories of additional Euroyen-based derivatives traded by OPPRS and Sullivan.  *See* ¶714.

*Cmty. v. RJR Nabisco*, No. 11-cv-2475, 2014 U.S. App. LEXIS 7593 (2d. Cir. Apr. 23, 2014). The Court held that whether RICO claims can be asserted depends on the location of the alleged RICO predicate acts, not that of the RICO enterprise. *European Cmty.*, 2014 U.S. App. LEXIS 7593, at * 19. With that clarification, the proposed complaint alleges that Defendants committed numerous predicate acts of wire fraud that satisfy the *RJR Nabisco* test.

## A. The Proposed Complaint States RICO Claims.

The proposed complaint alleges that each Defendant violated RICO, which affords a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To plead a Section 1962(c) violation, a plaintiff must allege "(1) an enterprise, (2) the conduct of the affairs of the enterprise through (3) a pattern of racketeering activity, and (4) injury to [plaintiff's] business or property . . . caused by the violation of Section 1962." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 239 (S.D.N.Y. 2012) (ellipsis in original) (citation and internal quotation marks omitted). Section 1962(d) provides for a separate claim against any person who "conspire[s] to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The proposed complaint sufficiently pleads claims under both Sections 1962(c) and (d).

### 1. The Proposed Complaint Alleges an Enterprise to Manipulate Yen-LIBOR, Euroyen-TIBOR, and the Prices of Euroyen-Based Derivatives.

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 F. App'x 94, 97 (2d Cir. 2008). The definition "is obviously broad . . . The term 'any' ensures that the definition has wide reach, and

the very concept of an association in fact is expansive." *Boyle v. United States,* 556 U.S. 938, 944 (2009).

Defendants' collective association, including their participation together as members of the BBA's Yen-LIBOR and/or JBA's Euroyen TIBOR panels, aided by the Broker Defendants, constitutes the RICO enterprise. ¶763-67. Every member of the enterprise transmitted or caused to be transmitted in the United States false and artificial Yen-LIBOR and/or Euroyen TIBOR submissions. Each Defendant engaged in the acts of wire fraud in furtherance of the conspiracy while participating as a member of the enterprise. ¶763-67. These acts completed Defendants' criminal acts of wire fraud in the United States or while crossing United States borders and/or were sent through electronic servers located in the United States. *See* ¶763-67.

This enterprise easily satisfies the "low threshold for pleading [an association-in-fact] enterprise." *Automated Teller Mach. Advantage LLC v. Moore,* No. 08 Civ. 3340, 2009 U.S. Dist. LEXIS 68724 (S.D.N.Y. Aug. 6, 2009) (explaining that *Boyle v. United States*, 556 U.S. 938, "establishes a low threshold for pleading [an association-in-fact] enterprise").

**B.    The Proposed Complaint Alleges Predicate Acts of Wire Fraud by Defendants.**

The proposed complaint alleges that Defendants "used the mails or wire transmissions in furtherance of a scheme to defraud." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995). The Proposed Complaint includes facts that satisfy all of the elements of wire fraud: "(1) the formation of a scheme to defraud victims (2) of money or other property (as the object of the scheme), and (3) the use of the mails or interstate or foreign wire communications in furtherance of the scheme." *Chevron*, 871 F. Supp. 2d at 249; *see* ¶¶ 763-67.

**1.    The Proposed Complaint Alleges a Scheme through which Defendants Intended to Defraud Euroyen-Based Derivatives Investors.**

The "scheme to defraud" prong of wire fraud "has been construed liberally to include any plan consummated by the use of the mails or interstate or foreign wire communications, in which artifice or deceit is employed to obtain something of value with the intention of depriving the

owner of his property." *Chevron*, 871 F. Supp. 2d at 249 (citation and internal quotation marks omitted).

Defendants persistently and knowingly made false statements to the BBA and JBA for the purpose and with the effect of manipulating Yen-LIBOR and/or Euroyen TIBOR and the price of Euroyen-based derivatives. *Laydon*, 2014 U.S. Dist. LEXIS 46368, at *21-23 (describing the "overwhelming factual content from which this Court could infer manipulative intent"). Plaintiffs exceed their need to "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Powers*, 57 F.3d at 184 (citation and internal quotation marks omitted). Specifically, the Court may infer that Defendants possessed "a motive for committing fraud and a clear opportunity for doing so" or that circumstances existed "indicating conscious behavior" by Defendants, as it already has done in connection with Plaintiff's CEA claims. *Id.* (citation omitted). The proposed complaint adequately pleads a scheme to defraud.

## 2. The Proposed Complaint Alleges that Defendants Used The Wires "In Furtherance Of" Their Scheme to Defraud.

To plead use of the wires "in furtherance of" the scheme to defraud, plaintiffs need only allege that the use "be 'for the purpose of executing' the scheme." *Chevron*, 871 F. Supp. 2d at 250 (quoting *United States v. Maze*, 414 U.S. 395, 400 (1974)).[7]

In sustaining Plaintiff's Commodity Exchange Act ("CEA") claims, the Court held the "Complaint also includes overwhelming factual content from which this Court could infer manipulative intent, particularly based on direct evidence from certain Defendants' communications . . . ." *Laydon*, 2014 U.S. Dist. LEXIS 46368, at *21-23. Those very

_____

[7] The proposed complaint's allegations satisfy RICO's "interstate commerce" element because the racketeering arises out of Defendants' use of the wires across state lines as well as agreements between entities in different states to manipulate Yen-LIBOR and/or Euroyen TIBOR and the price of Euroyen-based derivatives. Billions in notional value of U.S.-based transactions in Euroyen-based derivatives were transacted during the Class Period. ¶¶779-84.

communications constitute the predicate acts of wire fraud for each Defendant.  The predicate

acts fall into *at least* the following categories:

> (1) Transmitting false Yen-LIBOR Rates to Thomson Reuters in the United States, for
> further dissemination;

> (2) Causing the transmission and dissemination in the United States of false Yen-LIBOR
> "Fix" by Thomson Reuters as agent for the BBA;

> (3) Causing the transmission and dissemination in the United States of false Yen-LIBOR
> Individual Bank Quotes by Thomson Reuters;

> (4) Transmitting false Euroyen TIBOR Rates from the United States to the JBA;

> (5) Causing the transmission and dissemination in the United States of false Euroyen-
> TIBOR "Fix" by Thomson Reuters as agent for the JBA;

> (6) Causing the transmission and dissemination in the United States of false Euroyen
> TIBOR Individual Bank Quotes by Thomson Reuters as agent for the JBA;

> (7) Electronic communications and instant messages that emanated from within the
> United States or were routed through United States electronic servers with
> manipulative requests, broker false run-thrus and suggested Yen-LIBORs; and

> (8) Sending trade confirmations based on manipulated and false Yen-LIBOR and/or
> Euroyen TIBOR rates to counterparties in the United States.

¶¶ 768.

The proposed complaint details this particularized information as to each RICO

defendant, stating "the contents of the communications, who was involved, [and] where and

when they took place, and . . . why they were fraudulent." *Angermeir v. Cohen*, No. 12-cv-55,

2014 U.S. Dist. LEXIS 42403, at *20-24 (S.D.N.Y. Mar. 27, 2014).  *See* ¶¶ 79-82 (Panel Banks);

87 (Broker Defendants).  *See also* (1) ¶¶ 194, 350-362, 474 (UBS); (2) ¶¶ 363-387, 475 (RBS);

(3) ¶¶ 84, 277-289 (ICAP); (4) ¶ 273 (Barclays); (5) ¶¶ 298-317, 776 (R.P. Martin); (6) ¶¶ 244-

272, 774 (Rabobank); (7) ¶ 479 (Tullet Prebon); (8) ¶¶ 298-317, 681-693, 696-699, Figures 30-

65 (Yet-Non-Settling Contributor Banks): *See also* Chronological Appendix (identifying

electronic communications released as part of regulatory investigations).

The foregoing allegations amply satisfy the RICO predicate acts pleading requirement.[8] *See Ifill v. West*, No. 96 cv 6308, 1999 U.S. Dist. LEXIS 21320, at *14 (E.D.N.Y. Sep. 1, 1999) (explaining that plaintiff only needs to identify "the nature of the RICO scheme" at the pleading stage).

### C.     The Proposed Complaint Pleads a Pattern of Racketeering Activity

A RICO plaintiff must allege that "the racketeering activities are related" and "they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  "Relatedness" exists where the alleged predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (citation and internal quotation marks omitted).  A plaintiff may plead "continuity" by alleging "a series of related predicates extending over a substantial period of time." *Id.* at 242.

The proposed complaint sets forth that numerous acts of wire fraud by defendants continually over a multi-year period as part of their scheme to manipulate Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives.   Defendants on the Yen-LIBOR panel on a near daily basis transmitted false Yen-LIBOR Rates to Thomson Reuters in the United States, for further dissemination to the markets.  Defendants on the Euroyen TIBOR panel (including certain United States based Defendants) also submitted false Euroyen TIBOR rates to the JBA, for further dissemination to the markets.  These banks, with assistance of the Broker Defendants, caused the transmission and dissemination in the United States of false Yen-LIBOR and Euroyen TIBOR "Fixes" to Thomson Reuters.  The Chronological Appendix to the proposed complaint identifies hundreds of electronic communications and instant messages with manipulative

---

[8] The findings in connection with various Defendants' government settlements identify specific e-mail correspondence, telephone conversations, and instant-message "chats" either (i) among individuals at Defendants, (ii) between Defendants' personnel and representatives of government regulatory bodies, or (iii) between Defendants' personnel and individuals at other Yen-LIBOR and/or Euroyen TIBOR Panel Banks (almost all of whom are Defendants here) that furthered the manipulation of Yen-LIBOR and Euroyen TIBOR by those Defendants and other banks.  (¶¶769-779)

requests, broker false run-thrus, "spoof" bids and offers, and suggested false LIBORs. These acts were far from isolated events – they constituted a related pattern of behavior. Additionally, the various charging documents here showed that the scheme began as early as 2001 and continued through at least early 2011. Continuity and relatedness are therefore adequately pled. *See Fresh Meadow Food Servs*, 282 F. App'x at 99.

> **D.** **The Proposed Complaint Alleges that Plaintiffs Have Been Injured in Their Business or Property as a Result of Defendants' RICO Violations.**

The proposed complaint alleges "that [the] RICO predicate offense[s] [were] not only … a 'but for' cause of [plaintiffs'] injury, but [were] the proximate cause as well." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (citation and internal quotation marks omitted). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations," and requires "*some* direct relation between the injury asserted and the injurious conduct alleged." *Id.* (emphasis added).

The proposed complaint includes detailed factual content demonstrating that plaintiffs suffered direct, tangible harm to their "property" (economic injury) due to Defendants' manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives. Defendants used the wires to send, among other information, false Euroyen TIBOR and Yen-LIBOR quotes to Thomson Reuters as agent to the JBA and BBA, which in turn caused Thomson Reuters to set Euroyen TIBOR and Yen-LIBOR at artificial levels. ¶770. The predicate acts were integral components of the alleged scheme. Without them, Yen-LIBOR and Euroyen TIBOR would not have been set at artificial levels, the prices of Euroyen-based derivatives would not have been impacted, and the Plaintiffs would not have suffered harm. . Moreover, Plaintiffs have plead that they and other Euroyen-based derivatives investors were "the intended targets of the RICO violations" and that the alleged RICO injury was the "preconceived purpose" of the RICO activities. *See* ¶¶783, 786 (showing how Euroyen-based derivative investors were the intended targets of Defendants' fraud); *see also G-I Holdings v. Baron & Budd*, 238 F. Supp. 2d 521, 548-549 (S.D.N.Y. 2002).

Thus, Plaintiffs have standing to assert their RICO claims.

**E.      The Proposed Complaint Properly States a RICO Conspiracy Claim.**

To state a RICO conspiracy claim, a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 244 (2d Cir. 1999) (quotation omitted).  Defendants must have "agreed to form and associated themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise."  *Id.*   Here, the proposed complaint provides overwhelming factual content directly implicating defendants in RICO-conspiratorial conduct.  For example,

- Defendants committed numerous domestic acts of wire fraud in the United States in furtherance of the alleged conspiracy.  *See* ¶¶773-785

- Certain defendants admitted that they conspired with others in connection with false reporting over the wires.  *See* ¶¶774-78.

- The complaint details more than 110 instances of instant message communications among defendants showing conspiratorial behavior in connection with defendants' racketeering conspiracy.  *See* ¶ 671; *see also* Chronological Appendix*, passim*; and

- Several defendants, including UBS, RBS, Rabobank, admit to conspiring to defraud investors.  *See* ¶¶469-71.

The proposed complaint also alleges that Contributor Bank Defendants and Broker Defendants colluded to manipulate Euroyen-based derivative prices by publishing false Euroyen-based derivatives transactions prices and by disseminating false Euroyen-based derivative transactions bids and offers.  In particular, UBS asked Broker Defendants, including ICAP, to display on the Broker Defendants' electronic trading screens prices of non-existent Euroyen-based derivatives transactions with the same tenors as the Yen-LIBOR and Euroyen TIBOR rates for the purpose of manipulating both the prices of Euroyen-based derivatives and Yen-LIBOR and Euroyen TIBOR rates. The Broker Defendants' electronic trading screens were available to

Euroyen-based derivatives dealers and traders including many of the Contributor Bank Defendants. *See* ¶29.

UBS also asked Broker Defendants to post and disseminate "spoof" bids and offers for Euroyen-based derivatives with the same tenors as the Yen-LIBOR and Euroyen TIBOR rates for the purpose of manipulating both the price of Euroyen-based derivatives and Yen-LIBOR and Euroyen TIBOR rates. Defendants colluded to disseminate spoof bids and offers through various means including through Broker Defendants' Yen Desk "squawk boxes" and through the Broker Defendants' electronic screens which allowed the UBS and the Broker Defendant to disseminate the "spoof" bids and offers to a multitude of Euroyen-based derivatives traders, including multiple Contributor Bank Defendants. *See* ¶¶ 29, 293-95.

The proposed complaint therefore adequately pleads a RICO conspiracy claim. *See Laydon*, 2014 U.S. Dist. LEXIS 46368, at *23 (recognizing that "the Complaint contains numerous allegations giving rise to an inference that Defendants knew of the other Defendants' unlawful and manipulative conduct and assisted each other in furtherance of the violation.").

> ### F. Defendants Cannot Challenge the RICO Claims Based on Extraterritoriality or the PSLRA Amendment.
>
> #### 1. Plaintiffs' Claims Do Not Require Extraterritorial Application of RICO.

The RICO claims alleged in the proposed complaint do not require extraterritorial application of RICO because defendants, in furtherance of the conspiracy, committed numerous acts of wire fraud in the United States. ¶¶ 765-66, 773. Further, Defendants' alleged misconduct (which several Defendants have admitted) involved financial institutions that are either based in the United States such as Citigroup and JP Morgan (¶¶ 684, 688), or conduct substantial business here. *See also* pp. 9-10, *supra* (pattern of acts of wire fraud occurring over multi-year period). Further, defendants, such as Defendant UBS, have admitted as part of their plea agreements that

"a meaningful portion of the total value of the transactions entered into by [its] most successful Yen derivatives trader from 2007 through 2009 involved U.S.-based counterparties." ¶69 (UBS). These domestic acts are redressable by the United States courts.

Several Defendants have also pled guilty to criminal wire fraud charges (¶¶473-76) with the U.S. Department of Justice, while other Defendants' former employees have been criminally charged in this district with wire fraud. ¶¶477, 480, 482. The charges and pleas confirm that Defendants' Yen-LIBOR, Euroyen TIBOR, and Euroyen-based derivatives price manipulation, while global in scope, involved significant use of wire transmission in and through the United States.[9] Indeed, that the (i) CFTC and the DOJ took action against various Defendants based in part on unlawful collaboration with other members of the Yen-LIBOR and Euroyen TIBOR Panel (nearly all of whom are Defendants here), and (ii) that these Defendants have agreed to pay huge fines to the CFTC and the DOJ, demonstrates that the misconduct alleged herein had a significant U.S. connection and that the Defendants engaged in acts of wire fraud within the territorial scope of RICO.

On April 24, 2014, in *European Community v. RJR Nabisco*, 2014 U.S. App. LEXIS 7593, the Second Circuit clarified the presumption against extraterritoriality of U.S. statutes. The Court held that RICO claims can be asserted where the RICO predicate acts have a sufficiently domestic connection, not the RICO enterprise. *European Cmty.*, 2014 U.S. App. LEXIS 7593, at *19. The Court further held that even if the statute criminalizing the specific predicate acts does not have express extraterritorial reach, RICO claims based on those predicate acts may nevertheless be maintained where the plaintiff alleges that the elements of those statutes were violated in the United States. *Id.* at *32.[10]

---

[9] Congress did not intend to immunize RICO misconduct that (i) U.S. financial giants played a large role in perpetrating; (ii) has impacted nearly every corner of the U.S. financial markets; (iii) has incited investigations by U.S. agencies, including the DOJ and the CFTC; and (iv) caused significant damages to U.S. individuals and entities like the Plaintiffs. By any relevant measure, Plaintiffs' claims reside well within RICO's jurisdictional ambit.

[10] *RJR Nabisco* reversed the majority of district courts in this circuit which held that the test for extraterritorial application of RICO was the location of the enterprise rather than the predicate acts. *See e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig. (USD LIBOR I)*, 935 F. Supp. 666, at 731-32; *European Cmty. v. RJR Nabisco*, 02-cv-577, 2011 U.S. Dist. LEXIS 23538, at *4-6 (E.D.N.Y. Mar. 8, 2011).

Defendants violated the wire fraud statute by transmitting wires in and through the United States. This conduct is within the territorial reach of RICO.

### 2. The RICO Claims are not Barred by the PSLRA RICO Amendment.

Defendants may try to escape RICO liability based upon Section 107 of the Private Securities Litigation Reform Act ("PSLRA") ("RICO Amendment").[11] Any such efforts should fail as a matter of law (and reason).

Congress enacted the RICO Amendment, "to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011). Congress did not pass the RICO amendment to immunize defendants from RICO liability solely based on their status as publicly traded companies. In <u>this</u> case, there are no and have never been any: (i) allegations predicated on securities fraud, including aiding and abetting securities fraud; (ii) claims asserted or recovery sought for the purchase or sale of any security; or (iii) allegations that plaintiffs purchased or sold a security impacted by Yen-LIBOR or Euroyen TIBOR manipulation.[12] This is <u>not</u> a securities fraud case boot-strapped as a RICO case. Far from it. The RICO Amendment is inapplicable.

---

[11] Unlike the Plaintiffs in *USD LIBOR,* Plaintiffs here did not base their claims on securities fraud, or plead a securities fraud violation before amending to plead RICO, or base their predicate acts on alleged mail and wire fraud violations where the mailings and wires involved documents offering for sale LIBOR-based securities. *See USD LIBOR I, 935* F. Supp. 2d at 727-28. The *USD LIBOR I* Court rejected plaintiffs' attempt to switch their theory from securities fraud to RICO: "[f]rankly, this explanation strikes us as a dubious position adopted in an effort by plaintiffs to disown their original complaint and thereby avoid dismissal of their RICO claim, a claim whose siren song of treble damages apparently proved irresistible." *USD LIBOR I*, 935 F. Supp. 2d at 728.

[12] There are no securities at issue herein, but financial instruments for which no federal securities claims lie. *See Sch. Dist. v. J.P. Morgan Chase Bank*, 08-cv-7688, 2009 U.S. Dist. LEXIS 12329, at * 3 (S.D.N.Y. Jan. 30, 2009) (LIBOR-based swap is not a "security within the meaning of Rule 10(b)(5)"); *Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co*., 179 F. Supp. 2d 159, 161 (S.D.N.Y. 2001) ("interest-rate swaps are not securities"); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 253 F. Supp. 359, 367 (S.D.N.Y. 1966) ("futures contracts do not constitute 'investment contracts' as that term is defined in the Securities Act of 1933 and the Securities Exchange Act of 1934."); C*ohen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 722 F. Supp. 24, 26 (S.D.N.Y. 1989) ("It is well settled that commodity futures are not securities, and never have been, within the meaning of Section 10 or Rule 10b-5.").

**III.    The Proposed Complaint Properly Asserts a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

The proposed complaint adds a claim for breach of the implied covenant of good faith and fair dealing.  New York law implies this covenant "in all contracts" and "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Dalton v. Educ. Testing Servs.*, 663 N.E.2d 289, 291-92 (N.Y. 1995)

Proposed Plaintiff OPPRS was a direct contracting counterparty of Contributor Bank Defendants UBS, Citibank, Deutsche, JPMorgan and Barclays in over 400 Japanese Yen currency forward agreements.  ¶656.  Proposed Plaintiff OPPRS alleges that manipulation of Yen-LIBOR and Euroyen TIBOR by the Defendants during the Class Period frustrated the performance under these contracts and breached the implied covenant of good faith and fair dealing.  *See* ¶¶801-811.  OPPRS thus pleads a claim for breach of the implied covenant of good faith and fair dealing.  *In re LIBOR-Based Fin. Instruments Antitrust Litig. (USD LIBOR II)*, 962 F. Supp. 2d 606, 631-632 (S.D.N.Y. 2013) (rejecting claim futility defense and allowing amendment to add claim for breach of the implied covenant of good faith and fair dealing where plaintiff alleged direct LIBOR-based contracts with defendants).  *See also City of New York v. Coastal Oil N.Y., Inc.*, 98-Civ-8667, 1999 U.S. Dist. LEXIS 10458, at * 16 (S.D.N.Y. July 9, 1999) (sustaining a breach of implied covenant of good faith and fair dealing claim of "reporting misleadingly high prices" to a publication that was used to determine contract prices).

**IV.    Plaintiff Properly Seeks to Cure Certain of the Pleading Deficiencies Identified in the Court's March 28 Decision.**

The Court conducted an exhaustive analysis of Plaintiff's Complaint in reaching its March 28, 2014 Decision.  It identified several pleading deficiencies with respect to Plaintiff's CEA vicarious liability, antitrust and unjust enrichment claims.  Plaintiff does not now quarrel with any of the Court's legal analyses; rather he preserves any disagreements he has for appeal.  Plaintiff does, however, seek to file an amended complaint in an effort to cure certain of the pleading deficiencies identified by the Court.

## A. OPPRS's Japanese Yen Currency Forward Agreements With Several Defendant Counterparties Cures the Unjust Enrichment Deficiencies.

In the March 28 Decision, the Court ruled that "[a]n unjust enrichment claim, 'requires some type of direct dealing or actual, substantive relationship with a Defendant.'"[13] *Laydon* 2014 U.S. Dist. LEXIS 46368, at *42(citation omitted).  Plaintiff Laydon's unjust enrichment claim failed "[b]ecause [he did] not allege any relationship between himself and any of the Defendants or how Defendants benefitted at Plaintiff's expense."  *Id.* at * 22.  Adding proposed Plaintiff OPPRS would cure this deficiency.[14]

OPPRS alleges that it entered into Japanese Yen currency forward agreements directly with defendants UBS, Citibank, Barclays, Deutsche and JPMorgan while these defendants were manipulating Yen-LIBOR, Euroyen TIBOR, and Euroyen-based derivative prices.  *See* ¶¶655-56.  OPPRS entered into: (a) 142 Japanese Yen currency forward agreements with Defendant Deutsche between January 12, 2006 and February 4, 2008; (b) 167 Japanese Yen currency forward agreements with Defendant JPMorgan between January 5, 2006 and April 21, 2008; (c) 46 Japanese Yen currency forward agreements with Defendant UBS between the period of January 5, 2006 and April 16, 2008; (d) 55 Japanese Yen currency forward agreements with Defendant Barclays between January 6, 2006 and August 14, 2007; and (e) 65 Japanese Yen currency forward agreements with Defendant Citibank between January 13, 2006 and June 4, 2008.  *See* ¶655-70.  These agreements between OPPRS and defendants UBS, Citibank, Barclays, Deutsche and JPMorgan, would cure the pleading deficiency of lack of "direct dealing" or "actual, substantive relationship" with the Defendants.

OPPRS also alleges that each of the Contributor Bank Defendants was enriched at its expense.  *See* ¶¶798-803.  Enrichment is "at Plaintiff's expense" if "defendant received

---

[13] A plaintiff alleges a viable unjust enrichment claim by averring that (1) Defendant received a benefit; (2) at Plaintiff's expense; where (3) "equity and good conscience" require restitution.  *Kaye v. Grossman*, 202 F. 3d 611 (2d Cir. 2000).

[14] Plaintiff preserves for appeal the Court's dismissal of unjust enrichment claim on behalf of futures traders on grounds that any relationship between futures traders and Defendants is too attenuated to support an unjust enrichment claim.  *Laydon* 2014 U.S. Dist. LEXIS 46368, at * 23.

something of value which belongs to the plaintiff." *Neely v. RMS Residential Mortg. Solution, L.L.C.*, 12-cv-1523, 2013 U.S. Dist. LEXIS 26978, at *28 (E.D.N.Y. Feb. 26, 2013) (internal citations omitted). Here, Defendants caused the currency exchange rate to be paid or received under the Japanese Yen currency forward agreements with OPPRS to be artificial because of the persistent manipulation of Yen-LIBOR and Euroyen TIBOR. Defendants received a direct, concrete benefit when Plaintiff OPPRS paid more and/or received less for the Japanese Yen currency forward agreements it transacted with Contributor Bank Defendants than it would have absent the manipulation. *See* ¶801.

Furthermore, it is unjust and inequitable for Contributor Bank Defendants to have enriched themselves at the expense of OPPRS. Under New York law, when plaintiffs do not "receive what they believed they [transacted] for," equity and good conscience require restitution of plaintiffs' losses. *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013). OPPRS believed that by contracting with some of the most sophisticated market participants in the world (UBS, Citibank, Barclays, Deutsche and JP Morgan), it was dealing in an accurately priced market and would receive the fair benefit of its agreements. Instead, OPPRS was misled, paid more and/or received less on the value of its Japanese Yen currency forward agreements with Contributor Bank Defendants, and transacted in a manipulated and artificial market for Euroyen-based derivatives. As such, Contributor Bank Defendants benefitted from their manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives, and equity and good conscience require the Contributor Bank Defendants to pay restitution.

These facts adequately plead an unjust enrichment claim. Plaintiff should be permitted to include them in his amendment.

### B. Plaintiff Properly Seeks Leave to Cure the "Efficient Enforcer" Pleading Deficiencies as to Defendants UBS and RBS.

The Court relied on three alternative grounds in dismissing Plaintiff's antitrust claims: the Complaint did not adequately plead (1) antitrust injury; (2) that Plaintiff was an "efficient enforcer" of the antitrust laws; and (3) Plaintiff did not plead a restraint of trade. *Laydon*, 2014

U.S. Dist. LEXIS 46368, at *27. The Court did not reach additional grounds for dismissal advanced by certain of the defendants.

UBS and RBS only joined two antitrust arguments in their motions to dismiss: Plaintiff (1) was not an efficient enforcer of the antitrust laws and (2) did not allege a plausible antitrust conspiracy.[15] Hence, if the Court concludes that the proposed complaint adequately cures pleading defects as to the efficient enforcer balancing test, antitrust claims against these two defendants (UBS and RBS) should be reinstated.[16]

As to the "directness or indirectness" of the injury under *AGC* prong (1), the Court held that the operative complaint failed to allege sufficient facts demonstrating a direct, clearly traceable relationship between Defendants' alleged manipulation of Yen-LIBOR and the prices of Plaintiff Laydon's Euroyen TIBOR futures contracts. *Laydon,* 2014 U.S. Dist. LEXIS 46368, at * 17. As to the *AGC* prong (3), the Court credited Defendants' argument that Plaintiff failed to alleged specific facts demonstrating how his injury could be credibly measured. *Id.* at 18.

Earlier this month, the Second Circuit characterized the first prong of the efficient enforcer test—the "directness" prong—as embodying a test that "us[es] familiar principles of proximate causation." *Lotes Co., Ltd. v. Hon Hai Precision Indust. Co., Ltd.*, No. 13-2280, slip op. at 41 (2d Cir. June 4, 2014) (citations omitted). The Court rejected a "directness" test that focuses this inquiry "on a single factor—the spatial and temporal separation between the defendants' conduct and the relevant effect." *Id.* at 43. The Court noted that "antitrust law has long recognized that anticompetitive injuries can be transmitted through multilayered supply chains" and that the Supreme Court considers claims by remote purchasers as "consistent with the broad purpose of the federal antitrust laws."

---

[15] *See UBS Supp. Br.* (ECF No. 221) at 1 n.2; *RBS Supp. Br.* (ECF No. 212) at 1 n.1.

[16] These defendants' second argument—that there is no plausible connection between Yen-LIBOR and Euroyen TIBOR—was rejected in the March 28, 2014 Decision, *Laydon,* 2014 U.S. Dist. LEXIS 46368 at *18-20_; and is mooted by the addition of OPPRS and Sullivan because they traded instruments benchmarked and/or priced to Yen-LIBOR. ¶¶651, 655-56.

The proposed complaint includes new statistical analyses showing that multiple tenors of Yen-LIBOR and Euroyen TIBOR, and Defendants' manipulation of same, directly impacted the prices of Euroyen TIBOR futures contracts and Yen currency futures contracts (among other Euroyen-based derivatives). *See* ¶¶611-633. These new allegations cure the "directness" pleading deficiency.

Plaintiff's proposed amendment also cures the Court's concerns about speculativeness of damages. Specifically, the proposed amended complaint includes multiple regression analyses showing that Yen-LIBOR and Euroyen TIBOR explain more than 95% of the price variation in Euroyen TIBOR futures contracts, and more than 78% of the price variation in Yen currency futures contracts. *See* ¶611-644. The high explanatory values of these models demonstrate that the prices of Euroyen TIBOR futures and Yen currency futures are overwhelmingly impacted by Yen-LIBOR and Euroyen TIBOR, and not by other unidentifiable independent factors.

The Court's concerns regarding directness of injury and speculation of damages have now been adequately addressed. Hence, plaintiff should be permitted to reassert his antitrust claims against Defendants UBS and RBS.

## CONCLUSION

The Court should grant Plaintiff leave to file his Third Amended Complaint.

Dated:  June 17, 2014
       White Plains, New York

LOWEY DANNENBERG COHEN
& HART, P.C.

By: /s/ Vincent Briganti
    Vincent Briganti
    Geoffrey M. Horn
    Peter D. St. Phillip
    Thomas Skelton
    Raymond Girnys
    Christian Levis
    One North Broadway
    White Plains, New York 10601
    Tel.: 914-997-0500

Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
tskelton@lowey.com
rgirnys@lowey.com

*Interim Lead Class Counsel*

Nicole Lavallee
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: nlavallee@bermandevalerio.com
        tseaver@bermandevalerio.com

Patrick T. Egan (PE-6812)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermandevalerio.com

*Additional Counsel for Plaintiffs*