UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JEFFREY LAYDON, on behalf of himself and all    :
others similarly situated,                                :
                                                  :
                 Plaintiff,              :
                                                    :  Case No: 12-cv-3419 (GBD)
               v.                     :
                                                    :
MIZUHO BANK, LTD., THE BANK OF TOKYO-    :  **ORAL ARGUMENT REQUESTED**
MITSUBISHI UFJ, LTD, THE SUMITOMO      :
TRUST AND BANKING CO., LTD., THE        :
NORINCHUKIN BANK, MITSUBISHI UFJ      :
TRUST AND BANKING CORPORATION,      :
SUMITOMO MITSUI BANKING             :
CORPORATION, RESONA BANK, LTD., J.P.   :
MORGAN CHASE & CO., J.P. MORGAN CHASE :
BANK, NATIONAL ASSOCIATION, J.P.      :
MORGAN SECURITIES PLC, MIZUHO       :
CORPORATE BANK, LTD., DEUTSCHE BANK :
AG, MIZUHO TRUST AND BANKING CO.,   :
LTD., THE SHOKO CHUKIN BANK, LTD.,   :
SHINKIN CENTRAL BANK, UBS AG, UBS   :
SECURITIES JAPAN CO. LTD., THE BANK OF :
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, :
THE ROYAL BANK OF SCOTLAND GROUP,  :
PLC, ROYAL BANK OF SCOTLAND PLC, RBS :
SECURITIES JAPAN LIMITED, BARCLAYS  :
BANK PLC, CITIBANK, NA, CITIGROUP, INC., :
CITIBANK, JAPAN LTD., CITIGROUP GLOBAL :
MARKETS JAPAN, INC., COÖPERATIEVE   :
CENTRALE RAIFFEISEN-BOERENLEENBANK :
B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, :
ICAP PLC, R.P. MARTIN HOLDINGS      :
LIMITED AND JOHN DOES NOS. 1-50,    :
                                                  :
                Defendants.      :
-----------------------------------------------------------------x

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO**
**<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

    I.    Sullivan's and OPPRS' Claims Are Untimely.................................................................. 2

        A.    *American Pipe* Tolling Does Not Apply to Sullivan Because He Has Never Been an "Asserted Member" of Plaintiff's Putative Class. ................................................... 2

        B.    Neither Sullivan's CEA Claims nor OPPRS' Contract and Quasi-Contract Claims Relate Back to Plaintiff's Complaint. .......................................................... 3

        C.    OPPRS May Not Invoke Equitable Estoppel to Salvage Its State Law Claims. ........ 4

    II.    Sullivan Lacks Standing and Cannot State a CEA Claim.................................................. 4

    III.    The PTAC's RICO Claims Are Deficient as a Matter of Law. ......................................... 7

    IV.    OPPRS Cannot State a Contract or Unjust Enrichment Claim Against Any Defendant.... 9

    V.    Plaintiff Has No Valid Antitrust Claim Against UBS or RBS. ....................................... 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Cohain v. Kimley*,
   No. 08 Civ. 5047(PGG), 2011 WL 3896095 (S.D.N.Y. Aug. 31, 2011) .................................. 1

*Dluhos v. Floating & Abandoned Vessel, Known as "New York,"*
   162 F.3d 63 (2d Cir. 1998) ........................................................................................................ 3

*European Cmty. v. RJR Nabisco, Inc.*,
   No. 11-2475, 2014 WL 4085863 (2d Cir. Apr. 23, 2014) ..................................................... 7, 8

*First Am. Title Ins. Co. of N.Y. v. Fiserve Fulfillment Servs., Inc.*,
   No. 06 Civ. 7132 (NRB), 2008 WL 282019 (S.D.N.Y. Jan. 25, 2008) .................................... 4

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990) ........................................................................................................ 9

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) ....................................................................................................................... 7

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................................................................... 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR I*"),
   935 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................................... 1

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR II*"),
   962 F. Supp. 2d 606 (S.D.N.Y. 2013) .............................................................................. 6, 9, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"),
   No. 11-MD-2262, 2014 WL 2815645 (S.D.N.Y. June 23, 2014) ................................... 1, 6, 10

*Knipe v. Skinner*,
   999 F.2d 708 (2d Cir. 1993) ...................................................................................................... 1

*Koal Indus. Corp. v. Asland, S.A.*,
   808 F. Supp. 1143 (S.D.N.Y. 1992) .......................................................................................... 3

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010) ................................................................................................................... 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ............................................................................................................... 7

*Mayle v. Felix*,
   545 U.S. 644 (2005) ................................................................................................................... 3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91-2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)........................................................ 8

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
    980 F. Supp. 2d 487 (S.D.N.Y. 2013) ...................................................................................... 3

*Petróleos Mexicanos v. SK Eng'g & Constr. Co.*,
    No 13-3175, 2014 WL 3445747 (2d Cir. July 16, 2014)........................................................ 7, 8

*Simcuski v. Saeli*,
    44 N.Y.2d 442 (N.Y. 1978) ...................................................................................................... 4

*Slayton v. Am. Express Co.*,
    460 F.3d 215 (2d Cir. 2006) ...................................................................................................... 3

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) .................................................................................................... 10

*Tenamee v. Schmukler*,
    438 F. Supp. 2d 438 (S.D.N.Y. 2006) ...................................................................................... 4

*Three Crown Ltd. P'ship v. Caxton Corp.*,
    817 F. Supp. 1033 (S.D.N.Y. 1993) .......................................................................................... 5

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ...................................................................................... 4

*United States v. Guadagna*,
    183 F.3d 122 (2d Cir. 1999) ...................................................................................................... 9

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (N.Y. 2006) ........................................................................................................ 4

**STATUTES**

7 U.S.C. § 25.................................................................................................................................. 5

## PRELIMINARY STATEMENT

Sullivan and OPPRS are not entitled to recover for purported manipulation of Yen LIBOR or Euroyen TIBOR because they did not transact in derivatives priced by reference to Yen LIBOR or Euroyen TIBOR—and therefore cannot allege a direct relationship between Defendants' alleged conduct and their purported losses.[1]  The fact that Sullivan and OPPRS did not trade Yen LIBOR- or Euroyen TIBOR-based derivatives (1) fundamentally distinguishes their case from Plaintiff's, precluding application of *American Pipe* tolling or the relation back doctrine, and (2) is fatal to each of their proposed claims.[2]  When a private plaintiff seeks to recover for alleged wrongdoing, claiming that misconduct occurred is only one piece of the puzzle: "those private actions which seek damages and attorney's fees must be examined closely to ensure that the plaintiffs who are suing are the ones properly entitled to recover."[3]

Plaintiff's attempts to plead a RICO claim and to revive his already dismissed antitrust claim also fail.

---

[1] Defendants' assertion does not "dispute the facts alleged in the PTAC" (Reply 3) because the PTAC does not allege that these derivatives use Yen LIBOR or Euroyen TIBOR as a reference rate.  Although the mathematical formula by which Yen currency futures and forwards are priced (PTAC fig. 79) does involve *an* interest rate on Japanese Yen, it is not *the particular interest rate benchmarks* at issue here.  Plaintiff does not (and cannot) allege that the base rate on any given date is equal to, or even derived from, Yen LIBOR or Euroyen TIBOR.

[2] The Court should disregard Plaintiff's request, raised for the first time on reply (Reply 1 n.2), to add yet another named plaintiff—California State Teachers' Retirement System ("CalSTRS")—and a new set of related allegations.  "Arguments may not be made for the first time in a reply brief."  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).  The same is true, with greater force, for pleading amendments.  In a nearly identical situation, where a party first attempted to introduce proposed amendments in a reply brief, Judge Buchwald recently ruled that "[i]t would be manifestly unjust and contrary to established practice to allow plaintiffs to 'shift the goalposts' and add amendments" that fall outside "the focus of the initial motion."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"), No. 11-MD-2262, 2014 WL 2815645, at *8 (S.D.N.Y. June 23, 2014).  Because plaintiffs cannot "salvage their motion[] to amend by raising new … claims in a reply brief," *Cohain v. Kimley*, No. 08 Civ. 5047(PGG), 2011 WL 3896095, at *5 n.4 (S.D.N.Y. Aug. 31, 2011) (collecting cases), attempting to add CalSTRS does not, as Plaintiff claims, "render[] Defendants' statute of limitations argument moot."  Reply 17 n.29.

A motion to add CalSTRS would, in any event, be futile because its proposed claims suffer from the same fatal deficiencies as those asserted by OPPRS.  Opp'n 33-35; *infra* Parts III-IV.  Furthermore, with respect to three of its proposed counterparty Defendants—Citibank, HSBC, and Société Générale—CalSTRS fails to identify any specific contract that it alleges was artificially priced.

[3] *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR I*"), 935 F. Supp. 2d 666, 739 (S.D.N.Y. 2013).

1

## I.   SULLIVAN'S AND OPPRS' CLAIMS ARE UNTIMELY.

Plaintiff argues that dismissals on statute of limitations grounds are "limited to the unique circumstances where a plaintiff pleads herself out of court by alleging facts that show 'facial' noncompliance with a limitations period."  Reply 7.  This is precisely such a circumstance: Sullivan concedes he was on notice as of July 2011 (PTAC ¶ 726) and failed to bring claims within the CEA's two-year limitations period, and OPPRS' latest transaction took place in 2008, more than six years before it sought to bring claims.  Opp'n 4-5, 32.  Sullivan and OPPRS may not circumvent the limitations periods by trying to shoehorn their new claims into an old complaint.  The fact that Plaintiff would have to alter his class definition materially to accommodate Sullivan and OPPRS shows that neither they nor their claims are in the case.

### A.   *American Pipe* Tolling Does Not Apply to Sullivan Because He Has Never Been an "Asserted Member" of Plaintiff's Putative Class.

Plaintiff argues that *American Pipe* tolling applies to Sullivan's claims because the contracts Sullivan traded—Yen currency futures—were among the "exchange-traded Euroyen futures and options contracts on the Chicago Mercantile Exchange" referenced in Plaintiff's original complaint.  Reply 8-9.  But the original complaint expressly defined a CME Euroyen futures contract as one (1) for which "Euoyen [*sic*] Tibor and Yen Libor serves as the basis for settlement," (2) for which "the underlying commodity … is a Euroyen time deposit having a principal value of ¥100,000,000 with a three-month maturity," and (3) "quoted in terms of the IMM One-Month Libor index points or 100 minus the deposit rate on an annual basis over a 360 day year."  Apr. 30, 2012 Compl. ¶¶ 65, 68.  By contrast, the PTAC alleges that "a CME Yen currency futures contract is based on 12,500,000 Japanese Yen, [and] the value of a contract is equal to 12,500,000 Japanese Yen multiplied by the exchange rate, quoted in terms of U.S. Dollars per Japanese Yen, on the settlement date."  PTAC ¶ 638.  These are not subtle

distinctions.  No "[i]nterpretation of the class definition" (Reply 9) is required to deduce that

Sullivan's Yen currency futures contracts meet *none* of Plaintiff's three criteria for the "Euroyen

futures" involved in the original class definition.  And Plaintiff does not dispute that Sullivan

was unequivocally excluded from the FAC and SAC.[4]  Because Sullivan was never a class

member, *American Pipe* tolling does not apply.  Opp'n 5-7.

### B.   Neither Sullivan's CEA Claims nor OPPRS' Contract and Quasi-Contract Claims Relate Back to Plaintiff's Complaint.

Plaintiff erroneously asserts that "relation back depends upon whether a Defendant was

on notice within the applicable limitations period of *its* conduct that plaintiff alleges was

wrongful—not the theory of damage asserted by the newly-named plaintiff."  Reply 11

(emphasis in original).  But this illogical position was rejected by the Supreme Court in the very

case Plaintiff cites for support.  In *Mayle v. Felix*, the Court refused to characterize a *series* of

incidents of wrongdoing as a single instance of "conduct, transaction, or occurrence" for

relation-back purposes because, under that broad construction, "virtually any new claim

introduced in an amended petition will relate back."  545 U.S. 644, 656-57 (2005).[5]  The

Supreme Court held that there must be a "common 'core of operative facts' uniting the original

and newly asserted claims" before a defendant has notice and relation back applies.  *Mayle*, 545

---

[4] "[I]t is well established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect."  *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 68 (2d Cir. 1998) (citations and internal quotation marks omitted).  Plaintiff's contention that subsequent narrowing of the class does not preclude tolling for a plaintiff excluded from the narrowed class (Reply 9-10) is wrong because the authority on which he relies concerns new *claims*, not new *plaintiffs*.  *E.g.*, *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 492 (S.D.N.Y. 2013) (*American Pipe* applied to securities claims voluntarily dismissed in a prior complaint and then reasserted).

[5] The other cases Plaintiff cites also undercut his argument.  *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 554-55 (2010) (relation back permitted where plaintiff had "clearly" made a "mistake concerning the proper party's identity" and correct defendant (a corporate affiliate) was represented by same counsel and on timely notice of mistake); *Slayton v. Am. Express Co.*, 460 F.3d 215, 229 (2d Cir. 2006) (relation back permitted for amended complaint with same parties and same legal theory where amendments "simply delineate[d] with more detail those general allegations"); *Koal Indus. Corp. v. Asland, S.A.*, 808 F. Supp. 1143, 1157 (S.D.N.Y. 1992) (relation back permitted where amendments sought merely to add more corporate officer defendants and assert legal theories arising from same underlying facts).

U.S. at 659.  Sullivan's and OPPRS' claims do not even involve the same types of financial instruments, let alone the same transactions, giving rise to Plaintiff's claims.[6]

### C.   OPPRS May Not Invoke Equitable Estoppel to Salvage Its State Law Claims.

OPPRS may not invoke the doctrine of equitable estoppel to circumvent the statute of limitations because the PTAC fails to allege that OPPRS (1) had knowledge of its claims but was prevented from timely filing an action by some misrepresentation to it by Defendants and (2) exercised due diligence.[7]  The only misrepresentations purportedly made to OPPRS are the same misrepresentations underlying OPPRS' contract and quasi-contract claims: improper Yen LIBOR and Euroyen TIBOR submissions.  But "the same act of non-disclosure cannot underlie both the argument for estoppel and the related cause of action."[8]

## II.   SULLIVAN LACKS STANDING AND CANNOT STATE A CEA CLAIM.[9]

Plaintiff accuses Defendants of "shifting focus away from their unlawful conduct and onto the Plaintiffs via attacks on the proposed Plaintiffs' standing."  Reply 1.  But the CEA's standing requirement is not a distraction—it is a basic prerequisite that every *plaintiff* must satisfy, regardless of the purported wrongdoing.  To establish standing, Sullivan must "show[]

---

[6] Reply 3 ("Sullivan suffered actual damage by transacting in CME Yen currency futures contracts at artificial prices proximately caused by Defendants' false reporting of Yen-LIBOR and Euroyen TIBOR."); *id.* 13 ("Defendants caused OPPRS to receive less or pay more on its Yen currency forward agreements.").

[7] *First Am. Title Ins. Co. of N.Y. v. Fiserve Fulfillment Servs., Inc.*, No. 06 Civ. 7132 (NRB), 2008 WL 282019, at *5 n.10 (S.D.N.Y. Jan. 25, 2008); *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) ("Equitable estoppel will apply where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." (internal quotation marks omitted)); *Simcuski v. Saeli*, 44 N.Y.2d 442, 450 (N.Y. 1978) ("[D]ue diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel.").

[8] *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 444-45 (S.D.N.Y. 2006) ("[A] plaintiff must allege more than that the defendant remained silent regarding the initial wrong."); *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) ("[F]ailure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large." (internal quotation marks omitted)).

[9] Although the PTAC's collective pleading appears to assert CEA claims on behalf of both Sullivan and OPPRS, Plaintiff now concedes that OPPRS does not have CEA claims.  Reply 5 n.9.  The confusion created by "Plaintiffs'" collective allegations underscores the impropriety of their group allegations against "Defendants."  *See* Opp'n 24 and Part III, *infra*.

that he stands in an appropriate relationship to the Defendants *with respect to the alleged CEA violation*." *Laydon v. Mizuho Bank, Ltd.*, No. 12–CV–3419 (GBD), 2014 WL 1280464, at *18 (S.D.N.Y. Mar. 28, 2014) (ECF No. 270) ("March 28 Order") (emphasis added).  Because Sullivan did not trade in instruments linked to Yen LIBOR or Euroyen TIBOR (*i.e.*, related to the alleged CEA violation), all the PTAC can plead is that both Sullivan and Defendants participated in markets for so-called "Euroyen derivatives."  But trading in different "Euroyen" markets is not one of the qualifying relationships defined in 7 U.S.C. § 25(a)(1)(A)-(D).[10]

     Plaintiff's explanation of the alleged causal relationship between Defendants' conduct and Sullivan's contracts, both for standing purposes and as a substantive CEA element, is equally deficient.  The PTAC's "correlation co-efficient and multiple regression analyses" purporting to compare movements in "multiple tenors" of Yen LIBOR and Euroyen TIBOR with movements in Yen currency futures prices (Reply 3) do not, logically or legally, show proximate causation. Sullivan's Yen currency futures contracts are one of countless types of transactions involving the exchange of Japanese Yen, some of which may experience similar price movements due to being subject to similar market variables.  The bare fact that Yen LIBOR and Euroyen TIBOR may involve the same currency as Sullivan's Yen currency futures is insufficient to show a plausible causal relationship between Defendants' alleged conduct and Sullivan's alleged losses.

     With respect to specific intent, although Plaintiff continues to cite excerpts from certain Defendants' regulatory settlements describing attempts "to financially advantage their currency derivatives positions," *id.* 3-4, the PTAC does not and cannot allege conduct intended to

---

[10] *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1043 (S.D.N.Y. 1993) (CEA standing could not be premised on allegation that manipulation of treasury notes affected other futures markets in which plaintiffs traded because notes were not "commodity underlying" plaintiffs' futures contracts, a "'condition precedent' in § 22(a)(1)(D)").

influence the prices of derivatives *that do not even reference Yen LIBOR or Euroyen TIBOR*.[11]
The settlement documents cited in support of this argument explicitly reference "derivatives
instruments *that were priced based on Yen LIBOR*." *Id.* 4 n.8 (citing PTAC Ex. B-4 at 6).  The
PTAC offers no factual allegations to support the absurd proposition that alleged manipulation of
Yen LIBOR or Euroyen TIBOR was undertaken for the purpose of profiting on foreign exchange
products or other derivatives that are *not* priced by reference to those benchmarks, or even that
its effect on the prices of such contracts was "either known to the defendant banks or so obvious
that they must have been aware of it." *Id.* 6.  If the relationship between Yen LIBOR, Euroyen
TIBOR, and the prices of *unrelated* Yen derivatives were "so obvious," the PTAC would not
require 81 charts and graphs attempting to justify the allegation.

        Sullivan cannot plead actual damages under the CEA where there is no cognizable
relationship between the allegedly artificial benchmarks and the prices of his contracts.  Opp'n
17.  Even if such a relationship existed in theory, Sullivan's actual damages allegations would
remain insufficient.  Although Plaintiff acknowledges the proper standard for actual damages set
forth in *LIBOR II* and clarified in *LIBOR III* (Reply 7), he ignores *LIBOR II*'s ultimate holding,
which applies with equal force here, that "we cannot say that the alleged trader-based
manipulation was so constant that plaintiffs adequately plead actual damages by alleging merely
that they traded during the Class Period."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*
("*LIBOR II*"), 962 F. Supp. 2d 606, 623 (S.D.N.Y. 2013).  Because Sullivan does not allege that
Defendants successfully manipulated Yen LIBOR and Euroyen TIBOR in a direction adverse to
his position on any day when he allegedly traded, he cannot plead actual damages under the CEA.

---

[11] Plaintiff's claim that this Court and Judge Buchwald have rejected Defendants' challenge to Sullivan's specific
intent allegations (Reply 6) is false: neither Court has been presented with a CEA claim involving financial
instruments that are *not* priced by reference to the benchmark rate(s) at issue.

III.    **THE PTAC'S RICO CLAIMS ARE DEFICIENT AS A MATTER OF LAW.**

     *Standing.*   Plaintiff's reply fails to confront this Court's dismissal of Plaintiff's antitrust claims for lack of standing, which compels the same result for the RICO claims.  *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267 (1992) (antitrust and RICO claims involve the same proximate causation analysis).  The RICO claims similarly involve a "complicated series of market interactions" that renders any injury "too remote and speculative."  March 28 Order at *9-10.  Plaintiff's own authority supports dismissal of RICO claims where, as here, the alleged harm is "too remote from the defendant's unlawful conduct."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) (internal quotation marks omitted).[12]

     *Extraterritoriality.*   Contrary to Plaintiff's contention, a mere "domestic connection" is not enough to trigger extraterritorial application of the RICO statute because a plaintiff must allege domestic conduct satisfying "every essential element" of the predicate statute—here, (1) a scheme to defraud; (2) to get money or property; (3) furthered by the use of interstate wires.  *European Cmty. v. RJR Nabisco, Inc.*, No. 11-2475, 2014 WL 4085863, at *10 (2d Cir. Apr. 23, 2014).  Alleging that Defendants "caused" the transmission and dissemination of false Yen LIBOR and Euroyen TIBOR submissions in the United States (Reply 19) falls far short of pleading domestic conduct that satisfies every essential element of a wire fraud claim.  *See RJR Nabisco*, 2014 WL 4085863, at *10.  "[S]imply alleging that some domestic conduct occurred cannot support a claim of domestic application."[13]

---

[12] Plaintiff's attempt to condition RICO's proximate cause requirement on foreseeability (Reply 17-18) contravenes Supreme Court precedent.  *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 12 (2010) ("Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm.").

[13] *Petróleos Mexicanos v. SK Eng'g & Constr. Co.*, No 13-3175, 2014 WL 3445747, at *1-2 (2d Cir. July 16, 2014) (summary order) (internal citations omitted) (allegations that financing for RICO scheme was obtained in U.S., including transmission of invoices and payments, were insufficiently domestic because "[t]he activities involved in the alleged scheme—falsifying the invoices, the bribes, the approval of the false invoices—took place outside of the United States").

Plaintiff also repeatedly misquotes and mischaracterizes regulatory documents involving UBS Japan, RBS Japan, Rabobank, and Lloyds, none of which supports the existence of a domestic scheme or RICO claim.[14]  UBS Japan and RBS Japan were each charged with a single count of wire fraud, and Rabobank and Lloyds each pled *not* guilty to one count of wire fraud.  The "minimal contacts" with the U.S. referenced in these documents do not support a domestic RICO claim, particularly against the majority of Defendants, which are not mentioned in these documents at all.  *Petróleos Mexicanos*, 2014 WL 3445747, at *1-2.[15]  Plaintiff does not address *Petróleos Mexicanos*, which was decided after *RJR Nabisco* and which dooms the RICO claim.

***Failure to Allege a § 1962(c) Claim.***  The PTAC fails to allege with requisite specificity that *each* Defendant either committed or aided and abetted multiple acts of wire fraud, as RICO requires.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-2923, 1994 WL 88129, at *6 (S.D.N.Y. Mar. 15, 1994).  Plaintiff's reply, which continues to lump together all Defendants impermissibly, emphasizes that the PTAC cannot allege a scheme involving all Defendants, let alone that each committed two predicate acts in furtherance of this scheme.  Alleging acts of wire fraud involving only certain Defendants (Reply 21-22, PTAC App.) does not explain how those acts amount to a RICO violation,[16] implicate *all* Defendants, or constitute

---

[14] For example, Plaintiff misleadingly combines two separate admissions—that UBS Japan has U.S. counterparties and that UBS Japan admitted to a "deceptive course of conduct" with respect to counterparties more generally (Reply 20-21)—to suggest that UBS Japan admitted to defrauding counterparties in the United States.  Likewise, Plaintiff makes much of the admission that a "meaningful portion" of a single UBS trader's derivative transactions involved U.S. counterparties (*id.* 19), but that does nothing to show a defendant-wide RICO scheme directed toward the United States.  The only alleged U.S.-based transmissions referenced in the Lloyds information involve USD LIBOR.  *See* Briganti Decl. Ex. 4.

[15] That former employees of some Defendants have been charged with, or pled guilty to, wire fraud (Reply 19) is similarly immaterial because these actions fail to support the existence of a domestic scheme to defraud.

[16] Plaintiff asserts that "[t]his case is unique in that a substantive RICO violation has not only been pled—it has been proven in parallel criminal proceedings" in which certain Defendants and former employees "have all pleaded guilty to wire fraud, a RICO predicate act."  Reply 2.  No Defendant or former employee has been charged with—let alone pled guilty to—a RICO violation.  *See* Opp'n 22-26 (discussing elements of RICO violation PTAC fails to plead).

a singular scheme.  And Plaintiff still cannot identify any allegation in the PTAC that Defendants engaged in a scheme consciously targeting Plaintiff, Sullivan, or OPPRS.[17]

**RICO Conspiracy.**  Because Plaintiff cannot dispute that a RICO conspiracy claim must fail where the underlying RICO claim fails, he relies on legal truisms regarding a "less demanding" standard for RICO conspiracies.  Reply 23.  But the PTAC omits *any* allegation of a conscious agreement among all 36 Defendants—a defect fatal to the RICO conspiracy claim. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 & n.4 (2d Cir. 1990).

## IV. OPPRS CANNOT STATE A CONTRACT OR UNJUST ENRICHMENT CLAIM AGAINST ANY DEFENDANT.

The illogical crux of OPPRS' breach of contract claim is that counterparty Defendants made an implied promise not to manipulate their Yen LIBOR and Euroyen TIBOR submissions when entering into contracts *that do not reference either of those benchmarks*.  Reply 13. Plaintiff's reliance on *LIBOR II* is inapposite because, as that decision recognized, "the implied covenant arises only in connection with the rights or obligations set forth in the terms of the contract."[18]  Judge Buchwald held that "an implied duty not to manipulate LIBOR is 'in connection with' plaintiffs' explicit contractual right to receive a *LIBOR-based rate*."  *LIBOR II*, 962 F. Supp. 2d at 633 (emphasis added).  But OPPRS does not—and cannot—allege *any* express contractual right to pay or receive a rate based on either Yen LIBOR or Euroyen TIBOR. Therefore, no such implied duty arises here—and Plaintiff cites no authority to the contrary.  The

---

[17] *See United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) ("It is not sufficient that defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims.  Instead, the proof must demonstrate that the defendant had a conscious knowing intent to defraud … [and] that the defendant contemplated or intended some harm to the property rights of the victim." (internal citations and quotation marks omitted; alteration in original)).

[18] *LIBOR II*, 962 F. Supp. 2d at 632 (internal citations and quotation marks omitted).

conclusory assertion that "Yen-LIBOR is integral to the contract" (Reply 13) is both baseless and insufficient to give rise to OPPRS' contract claim.[19]

Despite having conceded before this Court that his available unjust enrichment claims "would be limited to the banks that are trading the futures on the other side,"[20] Plaintiff now attempts to assert unjust enrichment claims by OPPRS against Defendants with which OPPRS is not alleged to have had any relationship, contractual or otherwise.  Reply 14-15.  Those claims directly contravene this Court's March 28 Order dismissing Plaintiff's unjust enrichment claims for failure to allege a relationship with Defendants.  March 28 Order at *13-14.[21]

## V.     PLAINTIFF HAS NO VALID ANTITRUST CLAIM AGAINST UBS OR RBS.

Although Plaintiff ignores the Court's holdings that he failed to plead antitrust injury and a restraint of trade, those holdings are the law of the case.  Moreover, Plaintiff's alleged antitrust injury as to UBS and RBS rests upon the same indirect and speculative theory, cobbled together through correlative statistics, that failed to support a claim against all other Defendants.[22]

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opposition papers, Plaintiff's motion for leave to amend should be denied.

---

[19] Similarly, Judge Buchwald's holding that plaintiffs' unjust enrichment claims against contractual counterparties were not futile was contingent upon the "alleg[ation] that they purchased financial instruments from defendants wherein they paid defendants fixed sums and received in return a floating amount *tied to LIBOR*."  *LIBOR II*, 962 F. Supp. 2d at 629 (emphasis added).  OPPRS can make no such allegation against its counterparties.

[20] Mar. 5, 2014 Hr'g Tr. (ECF No. 264) 170:21-22.

[21] *See also LIBOR III*, 2014 WL 2815645, at *22-23 ("Plaintiffs' attempt to plead that all defendant banks were part of a conspiracy to suppress LIBOR does not save their contract and quasi-contract claims against non-counterparty banks.").

[22] *E.g.*, *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 929 (3d Cir. 1999) ("[W]e do not believe that aggregation and statistical modeling are sufficient to get … over the hurdle of … whether the 'damages claim is … highly speculative.'").

Dated:          September 29, 2014
                New York, New York


Respectfully submitted,


/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Tel.:  (202) 956-7500
Fax:  (202) 956-7056
libowd@sullcrom.com
viapianoc@sullcrom.com

*Attorneys for Defendants The Bank of
Tokyo-Mitsubishi UFJ, Ltd. and Mitsubishi
UFJ Trust and Banking Corporation*


/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Ave., 7th Floor
New York, New York 10022
Tel.:  (212) 446-2300
Fax:  (212) 446-2350
jschiller@bsfllp.com
lnathanson@bsfllp.com

William A. Isaacson
Melissa Felder Zappala
5301 Wisconsin Avenue, NW
Washington, DC 20015
Tel.: (202) 237-2727
Fax: (202) 237-6131
wisaacson@bsfllp.com
mzappala@bsfllp.com


/s/ Gary W. Kubek
Gary W. Kubek
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6836
gwkubek@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendant
The Bank of Yokohama, Ltd.*


/s/ Yvonne S. Quinn
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.:  (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC*

11

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Tel.: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Tel.: (212) 225-2000
mlazerwitz@cgsh.com

*Attorneys for Defendants Citibank, N.A. and
Citigroup Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY &
McCLOY LLP
One Chase Manhattan Plaza
New York, New York 10005
dgelfand@milbank.com
smurphy@milbank.com
Tel.: (212) 530-5000

*Attorneys for Defendant Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
Ankush Khardori
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
msilverman@paulweiss.com
afinch@paulweiss.com
akhardori@paulweiss.com
Tel.: (212) 373-3355

*Attorneys for Defendant Deutsche Bank AG*

/s/ Edwin R. DeYoung
Edwin R. DeYoung
Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Tel.: (214) 740-8000
Fax: (214) 740-8800
edeyoung@lockelord.com
rcowie@lockelord.com

Gregory T. Casamento
Three World Financial Center
New York, New York 10281-2101
Tel.: (212) 415-8600
Fax: (212) 303-2754
gcasamento@lockelord.com

*Attorneys for Defendants HSBC Holdings
plc and HSBC Bank plc*

/s/ Thomas C. Rice
Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase
& Co., JPMorgan Chase Bank, N.A. and
J.P. Morgan Securities plc*

/s/ Brian S. Fraser
Brian S. Fraser
Shari A. Brandt
H. Rowan Gaither
Katherine Kern Harrington
Robyn H. Frumkin
RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, NY  10281-1003
Tel.: 212.530.1800
Fax: 212.530.1801
bfraser@rkollp.com
sbrandt@rkollp.com
rgaither@rkollp.com
kharrington@rkollp.com
rfrumkin@rkollp.com

*Attorneys for Defendant ICAP plc*

/s/ Jerome S. Fortinsky
Jerome S. Fortinsky
John A. Nathanson
Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Tel.: 212-848-4000
Fax: 212-848-7179
jfortinsky@shearman.com
john.nathanson@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendants Mizuho Corporate
Bank, Ltd., Mizuho Bank, Ltd. and Mizuho
Trust & Banking Co., Ltd.*

/s/ Andrew W. Stern
_____
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com

*Attorneys for The Norinchukin Bank*

/s/ Paul B. Hewitt
_____
Paul B. Hewitt
C. Fairley Spillman
AKIN GUMP STRAUSS HAUER & FELD
   LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel.:  (202) 887-4000
Fax:  (202) 887-4288
phewitt@akingump.com
fspillman@akingump.com

Michael Asaro
One Bryant Park
New York, NY 10036-6745
Tel.:  (212) 872.8100
Fax:  (212) 872-1002
masaro@akingump.com

*Attorneys for Defendant Resona Bank, Ltd.*

/s/ Fraser L. Hunter, Jr.
_____
Fraser L. Hunter, Jr.
David Sapir Lesser
Alan E. Schoenfeld
Jamie Dycus
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com
jamie.dycus@wilmerhale.com

Robert G. Houck
Alejandra de Urioste
James D. Miller
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
 (212) 878-8000 (phone)
 (212) 878-8375 (fax)
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com

*Counsel for The Royal Bank of Scotland
Group plc, The Royal Bank of Scotland plc,
and RBS Securities Japan Limited*

/s/ Frederick A. Brodie

Frederick A. Brodie
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
Tel.: (212) 858-1000
Fax: (212) 858-1500
fab@pillsburylaw.com

*Attorneys for Defendant Shinkin Central
Bank*

/s/ Robert C. Mason

Robert C. Mason
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY   10022
Tel.: (212) 715-1088
Fax:  (212) 715-1399
robert.mason@aporter.com

James W. Thomas, Jr. *(admitted pro hac
   vice)*
555 Twelfth Street, NW
Washington, DC   20004
Tel.:  (202) 942-5000
Fax:  (202) 942-5999
james.thomas@aporter.com

*Attorneys for Defendant
The Shoko Chukin Bank, Ltd.*

/s/ Steven Wolowitz

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel.: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Jon R. Roellke

Jon R. Roellke
BINGHAM MCCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006-1806
jon.roellke@bingham.com
Telephone:  (202) 373-6000
Fax:  (202) 373-6001

Michael L. Spafford
PAUL HASTINGS LLP
michaelspafford@paulhastings.com
875 15th Street, NW
Washington, DC 20005
Telephone:  (202) 551-1700
Fax: (202) 551-1705

*Attorneys for Defendant Sumitomo Mitsui
Banking Corporation*

/s/ Dale C. Christensen, Jr.
_____
Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Christensen@sewkis.com
Weitman@sewkis.com

*Attorneys for Defendant*
*Sumitomo Mitsui Trust Bank, Ltd.*




/s/ Peter Sullivan
_____
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-4035
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street
Suite 3000
San Francisco, California 94105-0921
Tel.: (415) 393-8200
Fax: (415) 393-8306
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS*
*Securities Japan Ltd.*