SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954
(212) 455-2000

———

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER                                                                                           E-MAIL ADDRESS
(212) 455-3040                                                                                                      trice@stblaw.com


VIA ECF AND HAND DELIVERY                        October 10, 2014


       Re: *Laydon v. Mizuho Bank, Ltd. et al., No. 12-cv-3419 (GBD)*
          Letter from the European Commission

The Honorable George B. Daniels
United States District Court
United States Courthouse
500 Pearl Street, Room 630
New York, New York 10007

Dear Judge Daniels:

  We are counsel to Defendant JPMorgan Chase & Co. and write to provide the Court with a copy of an October 8, 2014 letter received by JPMorgan from the European Commission regarding Plaintiff's First Request for Production of Documents, which seeks (among other things) various documents received from and provided to the European Commission concerning Yen LIBOR and Euroyen TIBOR. We understand that certain other defendants also received such letters from the European Commission this week.

  As reflected in the enclosed letter, the European Commission has expressed, among other things, its concern that "the disclosure of the requested documents would impair the effectiveness of the Commission's powers of investigation."

                Very truly yours,

                /s/ Thomas C. Rice
                Thomas C. Rice


Enclosure

cc: Counsel of Record (VIA ECF)



**EUROPEAN COMMISSION**
DG Competition

Cartels
G-1

Brussels, 0 8 -10- 2014*D/2014/097962
COMP/G-1/JK/mvk

**JPMorgan Chase & Co.**
270 Park Avenue
New York, NY 10017
U.S.A.

<u>Via:</u>
**Freshfields Bruckhaus Deringer LLP**
**Mr Nicolas French**
Nicholas.french@freshfields.com

**Subject:** **Pending litigation before the US District Court for the Southern District of New York, *in re Jeffrey Laydon v. Mizuho Bank, Ltd.*; Case No. 12-cv-3419 (GBD)**

Dear Sir / Madame,

You informed us of the discovery motion filed by the plaintiffs in the above referenced litigation. In this motion, the plaintiffs ask that the Court orders the defendants, including your company, to produce, among others:

- all requests for information received from the European Commission (hereinafter 'the Commission') concerning the Yen-LIBOR and/or Euroyen TIBOR and their responses thereto,

- all documents produced to the Commission concerning the Yen-LIBOR and/or Euroyen TIBOR,

- all sworn statements or testimony provided to the Commission concerning the Yen-LIBOR and/or Euroyen TIBOR.

In the following text these materials are collectively referred to as 'the requested documents'.

The purpose of this letter is to draw your attention to the fact that disclosure of any of the requested documents would be made in contravention of Commission rules and stated policy on this issue. The concerns in this case are particularly acute due to the ongoing nature of the Commission's investigation in the Yen-LIBOR and Euroyen-TIBOR sector -

Commission européenne, DG COMP GREFFE ANTITRUST, B-1049 Bruxelles, Belgique
Europese Commissie, DG COMP GREFFE ANTITRUST, B-1049 Brussel, België

Tel: (32-2) 299 11 11, Fax: (32-2) 295 01 28, e-mail: COMP-GREFFE-ANTITRUST@ec.europa.eu

Case AT.39861 – Yen Interest Rate Derivatives (hereinafter 'YIRD investigation'). Please note that this letter presents the position of the Commission services in this respect.

The requested materials contain information (i) of confidential nature, (ii) provided in the context of the Commission's leniency programme, (iii) exchanged within the context of the Commission's settlement procedure for cartel cases, and the Commission services' concerns with respect to each of these categories are set out below.

*Confidential information*

As regards confidential information, Article 337 of the Treaty of the Functioning of the European Union and Article 28 of Regulation 1/2003 obliges the Commission not to disclose any confidential information that it receives in carrying out its duties. The Commission is under the duty to ensure that confidential information it receives is not disclosed to third parties. In this respect, I would also like to note that any disclosure of confidential information may result in their potential liability towards the originators of that confidential information.

*Leniency information*

Concerning information submitted under the leniency programme and other voluntarily provided information, the Commission requires a high level of protection for information that has been specifically prepared by the parties for voluntary submission to the Commission. The Commission's leniency programme is a cornerstone of its cartel detection and enforcement, which is often carried out in cooperation with public authorities from jurisdictions around the world, including the United States Department of Justice. Its optimal functioning requires that a party that comes forward and cooperates with the Commission does not find itself worse-off vis-à-vis the non-cooperating cartel members as a result of doing so. For this reason, the Commission has put in place stringent rules to protect information that the Commission receives from cooperating companies. If the addressees are compelled to provide the requested documents that contain information submitted under the leniency programme, it makes these guarantees meaningless and could seriously undermine the leniency programme.

For further detail on the Commission's position as regards the disclosure of leniency information I refer you to a number of publicly available documents, in particular, the Commission's submissions to various courts in the United States, which deal specifically with the issue of disclosure or leniency documents in the damage litigation context[1], as well as the Commission's submission to the US Antitrust Modernization Commission[2].

---

[1] See *Air Cargo Shipping Services Antitrust Litigation*, M.D.L. No. 1775 (E.D.N.Y.); re *TFT-LCD (Flat Panel) Antitrust Litigation*, No. M: 07-1827 (N.D. Cal. 2011), *Special Master's Order Denying Motion of Direct Purchaser Plaintiffs to Compel Hitachi to Produce Foreign Regulatory Documents*, No. M:07-cv-01827-si (April 26, 2011); *Re Vitamins Antitrust Litigation*, Misc. No. 99-197, Docket No. 3079 (D.D.C. May 20, 2002); *Re: Methionine Antitrust Litigation*, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002).

[2] Submission by Director General of DG Competition to Andrew Heimert, Executive Director, Antitrust Modernization Commission of April 4, 2006, available at
http://govinfo.library.unt.edu/amc/public_studies_fr28902/international_pdf/060406_DGComp_Intl.pdf.

2

*Settlement related documents*

In the course of the Commission's YIRD investigation a number of documents were exchanged with the Commission in the context of the Commission's settlement procedure for cartel cases. Without addressing each of these documents specifically, allow me to make several remarks on the Commission's rules and policy with respect to disclosure of settlement related submissions in general.

The settlements procedure has been created as an alternative to the normal procedure in competition cases, in order to optimise the enforcement of anti-cartel rules by freeing up resources to deal with more cases, thereby increasing the detection rate and the deterrence of Article 101 TFEU.[3] It allows the Commission to settle a cartel case with the companies involved under a simplified procedure, whereby companies acknowledge their involvement in the cartel and their liability for it, after having access to the evidence against them and the opportunity to express their observations thereon.

In settlement related submissions, companies either indicate their willingness to engage in a settlement, or, when a formal proposal of settlement ("settlement submission") is introduced, expressly acknowledge liability for an infringement of Article 101 TFEU.

Disclosure of such submissions to third parties carries the significant risk of negatively impacting the position of companies that made them. This in turn reduces the incentives of companies to engage in a settlement, thereby impairing the Commission's ability to effectively enforce Article 101 TFEU by frustrating the Commission's objective behind the introduction of the settlement procedure expressed in point 1 of the Settlement Notice.

To protect the confidentiality of settlement related submissions, the Commission has put in place a series of rules akin to those safeguarding the confidentiality of leniency submissions.[4] The Commission's concern over the protection of settlement related submissions even after a case has been closed is also evidenced by point 40 of the Settlement Notice dealing with access under public access to documents rules. In the Commission's view the policy reasoning set out in this provision is equally applicable in relation to disclosure of settlement related submissions to third parties in other contexts.

*Conclusion*

In view of the above, the Commission services consider that the disclosure of the requested documents would impair the effectiveness of the Commission's powers of investigation.

Accordingly, I would like to request you to keep the Commission services duly informed of any developments in the above referenced litigation as regards any documents received from, or exchanged with, the Commission in the context of its YIRD investigation. If necessary the Commission could wish to have the opportunity to consider taking whatever action may be warranted to protect its interests as an enforcement authority,

---

[3]   *See* point 1 of the Settlements Notice.

[4]   *See* points 35-38 of the Settlement Notice.

including presenting its interests and concerns directly to the Court, as it has done before a number of courts in the United States in the past.[5]

Finally, please note that while the Commission services have no objection to the disclosure of this letter to the Court in the pending litigation mentioned above, this letter should not be construed as being in support of any particular party in the proceedings. Its purpose is only to safeguard the interests of the Commission as an enforcement authority.

Yours faithfully,

Eric VAN GINDERACHTER
Director

---

[5] Most recently the Commission services have intervened in the *Air Cargo Shipping Services Antitrust Litigation, M.D.L. No. 1775 (E.D.N.Y)*. See also, Commission interventions in (i) *re TFT-LCD (Flat Panel) Antitrust Litigation, No. M: 07-1827* (N.D. Cal. 2011), *Special Master's Order Denying Motion of Direct Purchaser Plaintiffs to Compel Hitachi to Produce Foreign Regulatory Documents, No. M:07-cv-01827-si (April 26, 2011)* (ii) *Re Vitamins Antitrust Litigation*, Misc. No. 99-197, Docket No. 3079 (D.D.C. May 20, 2002); (iii) *Re: Methionine Antitrust Litigation*, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002).