

**New York**
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

www.lowey.com

**Pennsylvania**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

January 26, 2015

<u>Via ECF</u>
The Honorable George B. Daniels
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (GBD) (HBP)
Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and
Plaintiff's Motion to Amend His Complaint

Dear Judge Daniels,

We are counsel for Plaintiff and the proposed class.

This letter alerts the Court to information first disclosed by the United Kingdom's Financial Conduct Authority ("FCA") on January 22, 2015. The FCA announced fines and bans of two former senior executives of Martin Brokers (UK) Ltd.,[1] Jeremy Kraft and David Caplin, for compliance and cultural failings at the firm relating to Yen-LIBOR manipulation. The FCA Final Notices are attached hereto.[2]

The FCA Final Notices revealed for the first time that Defendant R.P. Martin's brokers paid for trips to the United States as compensation for certain Bank Defendants' manipulative efforts relating to Yen-LIBOR.

The Kraft Final Notice evidences R.P. Martin brokers securing promises from Bank Defendants to engage in wash trading in return for paid-for trips to Las Vegas for entertainment:

> UBS Trader (identified as Trader A) entered into wash trades in return for Brokers assisting him to manipulate JPY LIBOR. On occasion ***counterparties to these wash trades were Traders at other banks*** who participated in the trades ***upon the promise of entertainment funded by Martins***, such as trips to Las Vegas.

*Kraft Final Notice* at ¶ 49 (emphasis added).

---

[1] Martin Brokers (UK) Ltd. is a subsidiary of Defendant R.P. Martin Holdings Ltd.

[2] *See FCA Jeremy Kraft Final Notice*, Ref No. JDK01054 (Jan. 22, 2015) ("*Kraft Final Notice*"); *FCA David Caplin Final Notice*, Ref No. DSC01046 (Jan. 22, 2015) ("*Caplin Final Notice*").



Letter to The Honorable George B. Daniels
January 26, 2015
Page 2

    The Caplin Final Notice reveals that Defendant R.P. Martin's executives knew that their brokers regularly compensated a Yen-LIBOR derivatives trader with paid-for entertainment in the United States:

> One Broker regularly engaged in this practice [and in a 12 month] period:
>
> (1) entertained one particular client (the Trader identified as **Trader B in the Martins Final Notice**) on an almost weekly basis to an average cost of approximately £400 per week; and
>
> (2) entertained the same client on **three overseas trips to the United States** and Singapore for various sporting events.

*Caplin Final Notice* at ¶ 53(2) (emphasis added).

    These U.S. trips pertain to two motions before the Court: (i) Defendants' Rule 12(b)(2) personal jurisdiction motions, ECF Nos. 310, 315, 323, 327, 331, 337, 341, and 344, and (ii) Plaintiff's Motion to Amend his Complaint to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ECF No. 301.

    With respect to personal jurisdiction, certain Defendants argued that the Court lacked specific jurisdiction because the Plaintiff's claims do not "arise out of or relate to" the Defendants' contacts with the United States. But "physical entry into the [jurisdiction]—either by defendant in person or through an agent, goods, mail or some other means—is certainly a relevant contact." *Walden v. Fiore*, 1345 S. Ct. 1115, 1122 (2014) (citations omitted). Certain Defendants' trips to the United States were provided "upon the promise" to compensate Bank Defendant traders for their manipulation of Yen-LIBOR, rendering these contacts related to Plaintiff's claims of Yen-LIBOR manipulation. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011).

    The United States trips also bolster Plaintiff's RICO claims in the Proposed Third Amended Complaint ("PTAC"). As the Second Circuit clarified in *Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) ("*RJR*"), RICO applies to an enterprise outside of the United States if the predicate acts have a domestic connection. Defendants' travel to the United States, as revealed in the FCA Final Notices, coupled with Defendants' completion of the wire fraud in the U.S. and/or while crossing United States borders, as alleged in the PTAC (*see, e.g.*, ¶¶764-65, 768, 774-76) provide a sufficient domestic connection to uphold Plaintiff's RICO claims. Consequently, the RICO claims are properly asserted here where the predicate acts, including wire fraud, have a domestic connection, even if the scheme involves a foreign enterprise or extraterritorial conduct. *RJR*, 764 F.3d at 140-43.[3]

---

[3] "Plaintiffs are not required to plead that their alleged injuries actually occurred in the United States." *Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 149, 152 (2d Cir.2014).



Letter to The Honorable George B. Daniels
January 26, 2015
Page 3

      These recently revealed facts—coupled with the jurisdictional allegations in Plaintiff's PTAC and other jurisdictional facts before the Court—provide additional support for concluding (i) that Plaintiff has alleged a prima facie case of specific personal jurisdiction over Defendants; and (ii) that Plaintiff has sufficiently alleged a domestic connection to Defendants' acts of wire fraud for purposes of Plaintiff's RICO claims.[4]

      Respectfully submitted,

      Vincent Briganti

Encls.

cc:    Counsel of Record (via ECF and e-mail)

---

[4] While the revealed facts do not identify which Defendant Bank's employees traveled to the United States, this asymmetrical information deficit will be cured during discovery. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004).