


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x

JEFFREY LAYDON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD, THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP, PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BORENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOES NOS. 1-50,

Defendants.

---------------------------------------- x

<u>MEMORANDUM DECISION AND ORDER</u>

12 Civ. 3419 (GBD)

GEORGE B. DANIELS, District Judge:

Defendants Mizuho Bank, Ltd. ("Mizuho Bank"), Mizuho Trust and Banking Co., Ltd. ("Mizuho Trust"), Resona Bank, Ltd. ("Resona"), and ICAP plc ("ICAP"), (collectively, the "Stipulating Defendants"), move to dismiss Plaintiff's Second Amended Class Action Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] The Stipulating Defendants entered into a stipulation with Plaintiff preserving their right to bring the instant motions to dismiss for lack of personal jurisdiction until after this Court ruled on the motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Stipulation, ECF No. 160 (so-ordered on May 24, 2013).) This Court granted in part and denied in part the motions to dismiss under Rule 12(b)(6) filed by all Defendants, (*see* ECF No. 270 (dated Mar. 28, 2014)), and the Stipulating Defendants brought the instant motions thereafter. (*See* ECF Nos. 310, 323, 331 (dated Aug. 7, 2014).) Plaintiff only opposes the instant motions on specific jurisdiction grounds and has expressly waived any argument that this Court has general jurisdiction over the Stipulating Defendants. (Pl. Opp. Br., (ECF No. 367), at 5.)[2]

The Stipulating Defendants' motions to dismiss for lack of personal jurisdiction are GRANTED, and Plaintiff's request for jurisdictional discovery is DENIED. The Stipulating Defendants therefore are dismissed from this action.

## STANDARD OF REVIEW

Plaintiff bears the burden of demonstrating that this Court has jurisdiction over the Stipulating Defendants. *See, e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,

---

[1] The procedural history outlined in this Court's decision, also dated March 31, 2015, denying the Non-Stipulating Defendants' motions to dismiss for lack of personal jurisdiction is incorporated by reference.

[2] Prior to the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), courts in the Second Circuit often asserted general jurisdiction over "foreign corporations based on the presence of corporate branches, subsidiaries, or affiliates in the Circuit." *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 138 (2d Cir. 2014) (citations omitted).

566 (2d Cir. 1996) (citation omitted). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."[3] *Id.* In other words, Plaintiff must make a "prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citations and internal quotation marks omitted). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation and internal quotation marks omitted). A plaintiff's pleadings "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Banker v. Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006). To establish personal jurisdiction over a defendant, this Court must engage in a two-part due process inquiry to determine (1) whether each of the Stipulating Defendants has sufficient "minimum contacts" with the forum, and (2) whether the exercise of jurisdiction is "reasonable" as to each defendant under the circumstances. *See Metro. Life Ins. Co.*, 84 F.3d at 567-68.

The first step of the due process inquiry differs depending on whether the plaintiff is advancing a theory of specific or general jurisdiction. Where, as here, the plaintiff proceeds under a theory of specific jurisdiction, the court must consider whether the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum" to determine if jurisdiction exists. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & nn.8-9 (1984). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122

[3] Discovery has not commenced in this action. The Stipulating Defendants move for a stay of discovery pending resolution of the instant motions. This Court stayed discovery until at least April 7, 2015. (*See* Order, (ECF No. 432).) Therefore, these motions are denied as moot.

(2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Plaintiff is relying on the Commodity Exchange Act for jurisdiction, under which the relevant forum for a contacts analysis is the United States as a whole. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008).

If a foreign defendant's alleged activities giving rise to the suit occurred outside of the forum, specific jurisdiction properly exists if the defendant "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 475 (1985) (citations and internal quotation marks omitted); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) ("[S]ubmission through contact with and activity *directed at a sovereign* may justify specific jurisdiction.") (emphasis added). A defendant, however, cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." 131 S. Ct. at 2801 (citing *Burger King*, 471 U.S. at 475). Moreover, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also In re Terrorist Attacks*, 714 F.3d at 674-75 (holding that foreseeability is not the standard for recognizing personal jurisdiction; the actions must instead be "expressly aimed . . . at residents of the United States").

If the contacts are not sufficient, the due process inquiry ends. *See Metro. Life Ins. Co.*, 84 F.3d at 568-69 (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)). If, however, minimum contacts exist, courts then address the "reasonableness" inquiry. 84 F.3d at 568-69; *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) ("If the defendant has sufficient minimum contacts, we proceed to the second stage of the due process inquiry."). Under that inquiry, courts "ask[] whether the assertion of personal jurisdiction

comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro Life Ins. Co.*, 84 F.3d at 568 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts must evaluate the following factors in assessing the reasonableness inquiry: (1) "the burden on the defendant"; (2) "the interests of the forum State"; (3) "the plaintiff's interest in obtaining relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

## MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### I. Plaintiff Advances Four Theories to Argue that Specific Jurisdiction Exists

Plaintiff argues that the Stipulating Defendants: (1) "planned and carried out the manipulation using electronic means that entered the United States through the Bloomberg network"; (2) "conspired with and aided and abetted domestic Defendants to manipulate Yen-LIBOR and Euroyen TIBOR"; (3) "took purposeful action to facilitate the manipulation of the price of Euroyen-based derivatives traded in the United States"; and (4) "exercised sufficient control over their U.S. banking and brokerage subsidiaries to support *alter ego* status." (Pl. Opp. Br. at 1.)

Plaintiff's first theory relies upon communications via the Bloomberg Professional Service. According to Plaintiff, "[g]iven the structure of the Bloomberg network, each Contributor Bank Defendant and Broker Defendant that sent or received messages or trade information via the Bloomberg Professional Service electronically contacted the United States." (Pl. Opp. Br. at 19.) Plaintiff argues that because "any time one of the Defendants connected to

the Bloomberg network, their computer or mobile device made an electronic connection to the United States," there is specific jurisdiction over ICAP and grounds for jurisdictional discovery as to Mizuho Bank, Mizuho Trust, and Resona.[4] (*Id.* at 20.)

There is no basis to conclude that any of the Stipulating Defendants, including ICAP, took actions "expressly aimed" at the United States by passively connecting to the United States via internet protocol ("IP") addresses. *See Calder*, 465 U.S. at 789. To contend that this highly attenuated connection constitutes "purposeful[] avail[ment]" is unreasonable. Moreover, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *See Walden*, 134 S. Ct. at 1122 (citation omitted). Communications that "passed through and/or were stored within the United States" are insufficient to assert personal jurisdiction over a defendant. (*See* Pl. Opp. Br. at 20.) Plaintiff therefore cannot proceed under this theory of specific jurisdiction. *See Walden*, 134 S. Ct. at 1123 (citation and internal quotation marks omitted) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.").

Plaintiff also argues that contacts of certain domestic banks can be imputed to the Stipulating Defendants under a "conspiracy theory" of jurisdiction.[5] (Pl. Opp. Br. at 12-13.) Courts have been increasingly reluctant to extend this theory of jurisdiction beyond the context

---

[4] Jurisdictional discovery to determine if the two Mizuho entities and Resona engaged in such communications, where there is no basis provided to assume that they did, would be improper. Moreover, as discussed *infra*, this is not an independent theory of jurisdiction and discovery is denied on that ground.

[5] Plaintiff describes this theory as "a conspiracy or aiding and abetting imputation theory." (Pl. Opp. Br. at 13.) Plaintiff cites, and this Court is aware of, no authority that allows this Court to assert specific jurisdiction over a defendant solely because that defendant allegedly aided and abetted the actions of a third-party over which there is jurisdiction.

of New York's long-arm statute, N.Y. C.P.L.R. 302(a)(2). *See, e.g., In re Aluminum Warehousing Antitrust Litig.*, 13-md-2481 (KBF), 2015 WL 892255, at *5 (S.D.N.Y. Mar. 3, 2015) (rejecting the plaintiffs' argument "that Rule 4(k)(2) permits courts to exercise personal jurisdiction over a defendant on the basis of a conspiracy," and holding that "[t]he rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine"); *see also Tymoshenko v. Firtash*, 11-CV-2794 (KMW), 2013 WL 1234943, at *2-4 (S.D.N.Y. Mar. 27, 2013). The alleged facts do not support the required elements to establish a possible "conspiracy theory" of jurisdiction.[6]

Plaintiff's third theory is based on the "effects test" of *Calder v. Jones*. *See* 465 U.S. at 787. Under this test, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) (citing *Calder*, 465 U.S. at 789). As the below discussion explains, (*see infra* Section II), Plaintiff has not alleged facts to support this Court's jurisdiction over any of the Stipulating Defendants under the effects test.

Finally, Plaintiff advances an "alter ego" or "mere department" theory of jurisdiction as to ICAP, Mizuho Bank, and Mizuho Trust,[7] whereby a foreign corporation may be subject to personal jurisdiction based on the acts of its "alter ego" subsidiary.[8] *See Jazini*, 148 F.3d at 184.

---

[6] To establish conspiracy jurisdiction under New York's long-arm statute, a "[p]laintiff[] must make a prima facie showing of conspiracy, allege specific facts warranting an inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in [the forum]." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005).

[7] Plaintiff does not advance this theory as to Resona because Resona has no United States subsidiaries.

[8] "*Daimler* expressed doubts as to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the

Courts consider the four factors articulated in *Volkswagenwerk AG v. Beech Aircraft Corp.* to determine if a subsidiary is the alter ego of its parent: (1) "nearly identical ownership interests"; (2) "financial dependency of the subsidiary on the parent corporation"; (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." 751 F.2d 117, 120-22 (2d Cir. 1984). As discussed below, (*see infra* Section II), the facts alleged in support of this theory are insufficient to assert personal jurisdiction over ICAP, Mizuho Bank, or Mizuho Trust.

## II. Specific Jurisdiction Analysis

To determine if the Stipulating Defendants' contacts are sufficient to find specific jurisdiction, this Court must analyze the contacts articulated as to each defendant separately. *See Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually."); *Metro. Life Ins. Co.*, 84 F.3d at 570 ("The assessment of minimum contacts is fact-specific and must necessarily be tailored to the circumstances of each case."). Accordingly, this Court analyzes the contacts of each of the Stipulating Defendants as alleged in the Second Amended Class Action Complaint, the Declaration of Vincent Briganti in support of Plaintiff's opposition to the motions to dismiss for lack of personal jurisdiction, and the Proposed Third Amended Class Action Complaint. This Court also weighs the facts provided in the Stipulating Banks' declarations in support of their respective motions to dismiss—especially to the extent that they are uncontroverted. *See generally Beach v. Citigroup Alt. Invs. LLC*, 12 CIV. 7717(PKC), 2014 WL 904650, at *5 (S.D.N.Y. Mar. 7, 2014) (citation omitted) ("On a motion

---

defendant as to be its alter ego." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).

pursuant to Rule 12(b)(2), courts may rely upon materials that are outside the pleadings," including affidavits and declarations).

**A. ICAP**

According to Plaintiff, ICAP "is the world's premier voice and electronic interdealer broker and provider of post trade services with its head office in London, United Kingdom." (Second Amended Class Action Complaint, (ECF No. 150), ¶ 82.) Plaintiff alleges further that "ICAP and certain of its subsidiaries are involved in the brokering of cash deposits and derivatives based on Euroyen TIBOR and Yen-LIBOR between banks, including Contributor Bank Defendants." (*Id.*)

ICAP explains that it is a non-operational holding company, organized under the laws of the United Kingdom, with its registered office in London. (Decl. of Iain Torrens ("Torrens Decl."), (ECF No. 332), ¶¶ 3-4.) It has no other offices. (*Id.* ¶ 4.) While ICAP acknowledges that it has over 100 subsidiaries, some of which are located in the United States, none of its United States subsidiaries is named as a defendant in the Second Amended Class Action Complaint.[9] (*See id.* ¶ 5) Significantly, ICAP asserts that it "does not broker trades, does not employ interdealer brokers, and has never communicated with Yen Libor or Euroyen Tibor panel banks regarding Libor or Tibor submissions." (*Id.* ¶ 11; *see also* Decl. of Vincent Briganti ("Briganti Decl."), (ECF No. 368), Exs. 3 & 7 ("The business of ICAP plc is solely that of a holding company. ICAP plc itself conducts no broking or other activities.").)

Plaintiff alleges several facts to argue that ICAP has sufficient contacts with the United

[9] Plaintiff has moved to amend the Second Amended Class Action Complaint, in part, to include ICAP Europe Limited ("IEL"), ICAP's subsidiary, as a defendant. IEL is not a U.S.-based subsidiary, but is also headquartered in London, England. (*See* Decl. of Vincent Briganti ("Briganti Decl."), (ECF No. 368), Ex. 5 at 4.)

States to meet part one of the due process inquiry.[10] Plaintiff alleges that ICAP Yen brokers colluded with a senior trader at UBS to manipulate Yen-LIBOR. (Proposed Third Amended Class Action Complaint ("PTAC"), (ECF No. 302, Ex. 1), ¶ 17.) To support this allegation, Plaintiff notes that several "ICAP brokers" were charged with wire fraud and conspiracy to manipulate the price of Euroyen-based derivatives in the United States. (Briganti Decl., Ex. 4.) They allegedly accomplished this, in part, by transmitting information using electronic communications throughout the United States. (PTAC ¶¶ 763-67.) Plaintiff also cites an Order by the U.S. Commodity Futures Trading Commission ("CFTC") requiring that ICAP "institute, implement and/or strengthen compliance and supervisory policies, procedures and internal controls" due to the system's "fail[ure] to detect and deter the wrongful conduct of the ICAP brokers." (Briganti Decl., Ex. 5 at 47.) As ICAP notes, its subsidiary, ICAP Europe Limited ("IEL"), "is the only Respondent to the Order and is the only entity alleged in the Order to have committed any violation." (Torrens Decl. ¶ 12.)

Plaintiff has not refuted ICAP's position that it is a holding company with no direct ties to the United States outside of select subsidiaries. ICAP's alleged suit-related conduct does not create a substantial connection with the United States. Indeed, ICAP has no connection to the United States except any connection that arguably can be imputed to it from its subsidiaries. *See Walden*, 134 S. Ct. at 1121 (citations omitted) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State . . . ."). Moreover, the CFTC Order is insufficient to establish minimum contacts with the United States. There is no basis to conclude under the "effects test" that jurisdiction is proper. This leaves only an analysis under the theory

[10] Among these facts is that ICAP conceded that it was subject to jurisdiction in New Jersey in an unrelated case, *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 03-cv-0612, 2004 U.S. Dist. LEXIS 19760, at *16 (D. Del. Sept. 13, 2004). This does not factor into the personal jurisdiction analysis here because "[a] party's consent to jurisdiction in one case . . . extends to that case alone." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).

that a United States subsidiary of ICAP is its alter-ego, which Plaintiff also cannot demonstrate. The alleged facts do not belie the presumption of corporate separateness or satisfy the considerations outlined in *Volkswagenwerk AG.*

Therefore, Plaintiff has not alleged sufficient facts upon which this Court can assert specific jurisdiction over ICAP.

**B. Resona**

Plaintiff does not allege adequate facts to provide this Court with a basis for specific jurisdiction over Resona. Only one alleged fact raised by Plaintiff in opposing Resona's instant motion even references the United States.[11] "An inference that Resona participat[ed] in the [alleged] conspiracy to manipulate the price of Euroyen-based derivatives" is not grounds to conclude that there are minimum contacts under the effects test. In addition, Plaintiff does not—and cannot—advance the alter ego theory of jurisdiction as to Resona because it has no United States-based "offices, branches, or subsidiaries." (Decl. of Yoshikazu Kawaguchi, (ECF. No. 311), ¶ 5.) Based on the alleged facts, Plaintiff has not made a prima facie showing of jurisdiction as to Resona. This Court therefore does not have personal jurisdiction over Resona.

**C. Mizuho Entities**

Plaintiff cannot establish personal jurisdiction with regard to the two Mizuho entities under the effects test because he has failed to plead facts showing that either "expressly aimed" any actions at the United States giving rise to injuries that serve as the basis for the instant suit. Moreover, Plaintiff alleges insufficient facts to support an alter ego theory of jurisdiction. Plaintiff notes that both Mizuho entities serve as trading and clearing members of the Tokyo

[11] "TFX, through its trading and clearing members, provides U.S.-based customers to access [t]hree month Euroyen futures contracts in European and American time-zone markets, thereby creating an extended trading day for those involved with yen-denominated swaps, forward rate agreements, hedging or speculation." (Briganti Decl. ¶ 83.)

Financial Exchange, Inc. ("TFX"). This fact, without more, provides no basis for this Court to assert jurisdiction. Nor does Plaintiff make out the required prima face showing through the additional facts that he alleges.

**1. *Mizuho Bank*[12]**

To demonstrate its ties to the United States, Plaintiff notes that Mizuho Bank collaborated with United States banks by entering into agreements to market and develop asset management and securities services, and held $793 million in holdings from United States companies. (Briganti Decl. ¶¶ 68, 70-71.) Mizuho Bank highlights several facts—none of which Plaintiff disputes—to support its motion to dismiss, including that it was a Japanese financial institution, with all of its branches and sub-branches in Japan. (Decl. of Masahiro Okamoto, (ECF No. 325), ¶¶ 2, 5.) Mizuho Bank was not licensed or registered to do business in New York, it did not host any board meetings in the United States, and all of Mizuho Bank's employees and supervisors responsible for submitting Euroyen TIBOR rates worked in Japan. (*Id.* ¶¶ 6, 8, 13.) It is true that certain minimum contacts can support a finding of specific jurisdiction when the defendant is a foreign entity that does not have a corporate presence in the United States. Plaintiff has failed, however, to demonstrate any contacts that support that Mizuho Bank purposefully availed itself of the United States or that its contacts are related to the instant suit. Moreover, Mizuho

[12] Plaintiff outlines facts concerning Defendant Mizuho Corporate Bank, Ltd. ("Mizuho Corporate") in his opposition to the instant motions filed by Mizuho Trust and Mizuho Bank. Mizuho Corporate's motion to dismiss under Rule 12(b)(2) is addressed by a separate decision, and those facts are not relevant to this Court's analysis here. In addition, Plaintiff cannot successfully impute Mizuho Corporate's contacts to Mizuho Bank on the grounds that the two entities later merged in July 2013, creating what Plaintiff has termed "New Mizuho Bank." (*See* Briganti Decl. ¶¶ 75, 91.) The merger was announced a year after the end of the class period, and those contacts therefore could not give rise to Plaintiff's claims. Prior to the merger, Mizuho Bank and Mizuho Corporate claim to have observed all corporate formalities, including being governed by separate boards, holding themselves out to the public as separate legal entities, and having distinct and separately-controlled day-to-day operations. (Decl. of Masahiro Okamoto, (ECF No. 325), ¶ 15); *cf. Porina*, 521 F.3d at 128 (citation omitted) (holding that jurisdiction is determined based on the contacts with the forum "up to and including the date the suit is filed" in the general jurisdiction context).

Bank did not have an "alter ego" subsidiary with contacts that could be imputed to Mizuho Bank.[13]

### 2. *Mizuho Trust*

Aside from its TFX participation, the only arguably relevant fact highlighted by Plaintiff with respect to Mizuho Trust is that it has a subsidiary, Mizuho Trust and Banking Co., Ltd. (USA), ("Mizuho Trust USA"), that is "an active participant in the foreign exchange market." (Briganti Decl. ¶¶ 76-77, 80.) Plaintiff does not allege facts to support that Mizuho Trust USA is the alter ego of its parent Mizuho Trust. Moreover, Mizuho Trust presents facts that contradict any alter ego theory. (*See* Decl. of Masahiro Gao, (ECF. No. 326), ¶¶ 15-19.) Therefore, there are not sufficient minimum contacts to support this Court's assertion of personal jurisdiction over either Mizuho entity.

* * *

The first part of the due process inquiry shows that Plaintiff has not made a prima facie showing of jurisdiction by demonstrating that any of the Stipulating Defendants have the requisite minimum contacts with the United States. This Court therefore does not need to address the second part of the due process analysis: the reasonableness inquiry. Even applying this second step, however, a finding of personal jurisdiction under these facts would be improper because it would not comport with notions of fair play and substantial justice.

## JURISDICTIONAL DISCOVERY

Plaintiff argues alternatively that he is entitled to jurisdictional discovery. Whether to allow jurisdictional discovery is within the discretion of this Court. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (holding that the district court was "well within its

---

[13] "New Mizuho Bank," *see supra* note 12, has a subsidiary, Mizuho Bank (USA). (Briganti Decl. ¶ 95.) Plaintiff does not appear to argue that Mizuho Bank (USA)'s contacts should be imputed to Mizuho Bank, and there are no grounds under these facts, and given the timing of the merger, to do so.

discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Jazini*, 148 F.3d at 186 ("Since the [plaintiff] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."). "District courts in this [C]ircuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction." *See Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (collecting cases).

Plaintiff has not made out a prima facie case of jurisdiction. Based on the alleged facts, there is no basis to believe Plaintiff would find any of the information that he seeks through jurisdictional discovery. Moreover, the Stipulating Defendants' sworn-to declarations support a conclusion that Plaintiff would not find what he seeks through discovery. Therefore, jurisdictional discovery is not appropriate here.

## CONCLUSION

The Stipulating Defendants' motions to dismiss for lack of personal jurisdiction are GRANTED. Plaintiff's request for jurisdictional discovery is DENIED. Defendants Mizuho Bank, Ltd.; Mizuho Trust and Banking Co., Ltd.; Resona Bank, Ltd.; and ICAP plc are DISMISSED from this action.

The Clerk of the Court is instructed to close the motions at ECF Nos. 310, 323, and 331.

Dated: March 31, 2015
New York, New York

SO ORDERED:

George B. Daniels

GEORGE B. DANIELS
United States District Judge