UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :

JEFFREY LAYDON, on behalf of himself and all   :
others similarly situated,                        :

                                     :

                Plaintiff,               :

                                     :             MEMORANDUM
                 v.                      :     DECISION AND ORDER

                                     :

MIZUHO BANK, LTD., THE BANK OF TOKYO- :       12 Civ. 3419 (GBD)
MITSUBISHI UFJ, LTD, THE SUMITOMO      :
TRUST AND BANKING CO., LTD., THE        :
NORINCHUKIN BANK, MITSUBISHI UFJ      :
TRUST AND BANKING CORPORATION,       :
SUMITOMO MITSUI BANKING              :
CORPORATION, RESONA BANK, LTD., J.P.    :
MORGAN CHASE & CO., J.P. MORGAN CHASE :
BANK, NATIONAL ASSOCIATION, J.P.       :
MORGAN SECURITIES PLC, MIZUHO       :
CORPORATE BANK, LTD., DEUTSCHE BANK : 
AG, MIZUHO TRUST AND BANKING CO.,     :
LTD., THE SHOKO CHUKIN BANK, LTD.,     :
SHINKIN CENTRAL BANK, UBS AG, UBS     :
SECURITIES JAPAN CO. LTD., THE BANK OF :
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, :
THE ROYAL BANK OF SCOTLAND GROUP,   :
PLC, ROYAL BANK OF SCOTLAND PLC, RBS :
SECURITIES JAPAN LIMITED, BARCLAYS    :
BANK PLC, CITIBANK, NA, CITIGROUP, INC., :
CITIBANK, JAPAN LTD., CITIGROUP GLOBAL :
MARKETS JAPAN, INC., COÖPERATIEVE     :
CENTRALE RAIFFEISEN-BORENLEENBANK   :
B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, :
ICAP PLC, R.P. MARTIN HOLDINGS        :
LIMITED AND JOHN DOES NOS. 1-50,      :

                                     :

               Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GEORGE B. DANIELS, District Judge:

Plaintiff Jeffrey Laydon moves this Court for leave to file a Proposed Third Amended Class Action Complaint ("PTAC"). Specifically, Plaintiff seeks to add two plaintiffs and four defendants, a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, and a claim for breach of the implied covenant of good faith and fair dealing. In addition, Plaintiff attempts to cure certain pleading deficiencies identified by this Court in the March 28, 2014 decision granting in part Defendants' motions to dismiss the Second Amended Class Action Complaint ("SAC"). (*See* Mem. Decision & Order, dated March 28, 2014 ("March 28 Decision"), (ECF No. 270).)

Plaintiff's motion for leave to amend to add four defendants is GRANTED. Plaintiff's motion for leave to amend the SAC is otherwise DENIED.

## PROCEDURAL HISTORY[1]

Plaintiff filed his initial complaint on April 30, 2012. (*See* Compl., (ECF No. 1).) Plaintiff filed the Corrected First Amended Class Action Complaint on December 3, 2012, (FAC, (ECF No. 124)), and the SAC on April 15, 2013. (SAC, (ECF No. 150).) The SAC alleges that Defendants manipulated prices of Euroyen TIBOR (the Tokyo Interbank Offered Rate) futures contracts and other Euroyen derivatives through their deliberate and systematic submission of false Euroyen TIBOR and Yen-LIBOR (the London Interbank Offered Rate for Japanese yen) rates to the Japanese Bankers Association ("JBA") and British Bankers Association ("BBA"), respectively, throughout the Class Period of at least January 1, 2006 through at least December 31, 2010. (SAC ¶¶ 1-3, 135.) To support these allegations, Plaintiff cites government settlements,

---

[1] The relevant procedural history and background facts provided in this Court's decision on Defendants' motions to dismiss the SAC are incorporated by reference. (*See* March 28 Decision, (ECF No. 270), at 1-6.) Plaintiff brought this action on behalf of himself and all those similarly situated to recover for losses that he allegedly suffered when he initiated short positions in Euroyen TIBOR futures contracts. Plaintiff alleges that his losses are due to the presence of artificial Euroyen TIBOR futures prices proximately caused by Defendants' unlawful manipulation and restraint of trade. (*See* SAC ¶ 56.)

Defendants' admissions and guilty pleas, pending investigations and related proceedings, and other evidence of Defendants' conduct. (*Id.* ¶¶ 7-49.)

On June 14, 2013, Defendants moved to dismiss the SAC. (*See* Mot. to Dismiss SAC, (ECF No. 204).) On March 28, 2014, this Court held that Plaintiff adequately pled a claim under the Commodity Exchange Act ("CEA") for price manipulation and aiding and abetting against all defendants. (*See* March 28 Decision at 7-13, 24.) This Court granted Defendants' motions to dismiss Plaintiff's vicarious liability, antitrust, and unjust enrichment claims. (*Id.* at 24.)

On June 17, 2014, Plaintiff brought the instant motion seeking leave to amend to: (1) add two plaintiffs, Oklahoma Police Pension & Retirement System ("OPPRS") and Stephen P. Sullivan ("Sullivan") (together, the "Proposed Plaintiffs"); (2) add four defendants, ICAP Europe Limited, Lloyds Banking Group, PLC, Tullett Prebon, PLC, and Martin Brokers (UK) Ltd.; (3) add a RICO claim; (4) add a claim for breach of the implied covenant of good faith and fair dealing; and (5) cure certain pleading deficiencies identified by this Court in the March 28 Decision. (Mot. to Amend/Correct, (ECF Nos. 301 (motion) & 302 (memorandum)).) On August 15, 2014, Defendants filed a joint memorandum opposing the instant motion. (*See* Def. Opp. Mem., (ECF No. 361).) Plaintiff filed a reply memorandum on September 22, 2014. (Pl. Reply Mem., (ECF No. 387).) Defendants filed a joint sur-reply on September 29, 2014. (Def. Sur-Reply Mem., (ECF No. 391).)

## STANDARD OF REVIEW

Courts should freely permit plaintiffs leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). By its terms, however, this rule is not absolute. The Supreme Court has identified reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

3

party by virtue of allowance of the amendment, futility of amendment, etc." that justify denying a movant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to file an amended pleading should be denied when the amendment would be futile. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007)). A proposed amendment is futile when it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Rather, to state a facially plausible claim, *Iqbal* requires a party to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted). For purposes of a Rule 12(b)(6) motion, the plaintiff's well-pleaded facts are assumed to be true, and all reasonable inferences therefrom are construed in the light most favorable to the plaintiff, the non-moving party. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007)). Where the claims are premised on allegations of fraud, the heightened pleading standard of Rule 9(b) applies. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

**PROPOSED THIRD AMENDED COMPLAINT**

I. **NEW PARTIES**[2]

Plaintiff seeks leave to add two plaintiffs, Sullivan and OPPRS, as additional class representatives. The PTAC alleges a CEA claim on behalf of Sullivan and two claims on behalf of OPPRS: (1) breach of the implied covenant of good faith and fair dealing, and (2) unjust enrichment. In addition, Sullivan and OPPRS join Plaintiff's proposed RICO claim. (*See infra* Section II.) Leave to amend is denied as to the Proposed Plaintiffs' claims. Therefore, leave to amend the SAC to add Sullivan or OPPRS as named plaintiffs is denied.

Plaintiff also seeks to add four defendants: (1) ICAP Europe Limited; (2) Lloyds Banking Group, PLC; (3) Tullett Prebon, PLC; and (4) Martin Brokers (UK) Ltd. (collectively, the "Proposed Defendants"). Plaintiff's motion to amend the complaint to include the Proposed Defendants is granted.

A. **Proposed Plaintiff Sullivan's CEA Claim Is Time-Barred**

Sullivan alleges that he traded Yen currency futures contracts during the Class Period. (PTAC ¶¶ 651-53.) Defendants argue that Sullivan's CEA claim is time-barred under the CEA's two-year statute of limitations period. Sullivan was put on notice of his claims no later than July 26, 2011.[3] (*See* Def. Opp. Mem. at 4 (citing PTAC ¶ 726).) Sullivan's CEA claim therefore

---

[2] For the first time in a footnote in his reply memorandum, Plaintiff seeks to add California State Teachers' Retirement System as a named Plaintiff. (Pl. Reply Mem. at 1 n.2 & 17 n.29.) Defendants oppose this application in a footnote in their sur-reply memorandum on the grounds that it was raised for the first time in the reply brief and that such an amendment would be futile. (Def. Sur-Reply Mem. at 1 n.2.) Plaintiff's application is denied without prejudice. Plaintiff may renew this application by letter within thirty (30) days of this order. Defendants may fully respond by letter within fourteen (14) days of Plaintiff's letter application.

[3] "[A] discovery accrual rule [i]s applicable to claims under the CEA wherein discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262 NRB, 2014 WL 2815645, at *471 (S.D.N.Y. June 23, 2014) (internal quotation marks omitted) (quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012)).

expired in July 2013, unless either the tolling doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), or Federal Rule of Civil Procedure 15(c)'s relation back doctrine applies. Neither doctrine applies. Sullivan's CEA claim is therefore time-barred.

### 1. *American Pipe* Tolling

"The commencement of a class action suspends the applicable statute of limitations as to all *asserted members* of the class." *Am. Pipe*, 414 U.S. at 554 (emphasis added); *see also Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013) (finding that "to take advantage of the toll, a plaintiff must have been a member of the purported class").

The parties' dispute as to tolling turns primarily on whether Sullivan is an "asserted member" of the class proposed in Plaintiff's prior pleadings. Plaintiff argues that "CME Yen currency futures contracts . . . were included in the class definition." (Pl. Reply Mem. at 8.) Defendants contend that "[t]hrough the evolution of the purported class definition, one thing remained constant: the claims at issue in the case involved *only* exchange-based transactions in *Euroyen TIBOR futures contracts*." (Def. Opp. Mem. at 3 (emphasis in original).) Defendants argue that, under the broadest reading of the class definition taken from the originally-filed complaint, membership is limited to persons or entities that transacted in "exchange-traded Euroyen futures and option contracts" for which "Euroyen Tibor and Yen Libor serve as the pricing benchmark." (*Id.* at 5-6 (citing Compl. ¶¶ 14, 98).) Because Sullivan transacted in Yen currency futures contracts priced with reference to the U.S. Dollar-Japanese Yen exchange rates, (*see* PTAC ¶ 638), Defendants argue that tolling under *American Pipe* is not available to Sullivan.

The original complaint asserted CEA claims on behalf of Plaintiff and all persons or entities "who purchased or sold exchange-traded Euroyen futures and option[] contracts on the [CME]."

(Compl. at 1.)[4]  Plaintiff therefore argues that he alleged claims for "[a]ll Euroyen-based CME futures contracts affected by Yen-LIBOR."  (Pl. Reply Mem. at 9.)  Defendants are correct, however, that the original complaint states that "Euroyen Tibor and Yen Libor serve as the pricing benchmark (or 'underlying commodity') for Euroyen-based futures and options contracts traded on the CME."  (*See* Compl. ¶ 14.)  As mentioned, the transaction giving rise to Sullivan's CEA claim does not fit this description.  (*See* PTAC ¶ 638.)  Defendants' position is bolstered by the fact that Plaintiff has twice amended his complaint—both times specifying that the class consists of persons and entities that transacted in "Euroyen TIBOR futures contract[s]."  (*See* FAC ¶ 254; SAC ¶ 704.)  Therefore, Sullivan is not included in the class as defined in the FAC.[5]  At least one district court has held that when "a purported class member for any reason cease[s] to be a member of the putative class, the toll ends by operation of law and the limitations period begins to run immediately."  *Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002) (citation omitted); *cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262, 2014 WL 2815645, at *21 (S.D.N.Y. June 23, 2014) (citation omitted) ("[P]laintiffs filed their [FAC], which superseded the previous complaints of the class members . . . and was legally operative.").

Sullivan is not a member of the putative class defined in Plaintiff's prior pleadings, and his claim does not arise out of the same transactions that are the basis for Plaintiff's claims.  Plaintiff's three prior complaints limited the proposed class to persons and entities that transacted in derivatives for which Euroyen TIBOR and Yen LIBOR serve as the pricing benchmark.  Plaintiff

---

[4] (*See also* Compl. ¶ 98 ("Plaintiff brings this action . . . on his own behalf and as representative of a class defined as all persons, corporations and other legal entities . . . that transacted in exchange-traded Euroyen futures and option contracts.").)

[5] Plaintiff essentially concedes this point by "seek[ing] to add a conforming amended class definition to include the specific categories of additional Euroyen-based derivatives traded by OPPRS and Sullivan." (*See* Mot. to Amend/Correct at 4 (citing PTAC ¶ 714).)

cites to various paragraphs in the original complaint to argue that the class was more broadly defined than Defendants contend. (*See* Pl. Reply Mem. at 8-9 (citing Compl. ¶¶ 651-53, 64, 86, 98).) In his prior pleadings, however, Plaintiff has not defined the putative class to include persons that traded in Yen currency futures contracts priced with reference to the U.S. Dollar-Japanese Yen exchange rate. (*Compare* Compl. ¶¶ 65, 68 (defining CME Euroyen futures contracts in the context of the putative class), *with* PTAC ¶ 638 (defining CME Yen currency futures contracts).)

Sullivan is not a member of the putative class because he alleges that he traded in a Yen currency futures contract, which is not a derivative for which "Euroyen Tibor and Yen Libor serve as the pricing benchmark." (*See* Compl. ¶¶ 14, 98.)   Even if this Court were to credit Plaintiff's overly-broad reading of the original complaint's putative class to include Sullivan, Sullivan was not a member of the putative class as described in the FAC (or SAC).[6]   Therefore, Sullivan does not get the benefit of *American Pipe* tolling, and his CEA claim is time-barred unless it "relates back" pursuant to Rule 15(c), which it does not.

### 2.   Relation Back Doctrine

In the alternative, Plaintiff argues that Sullivan's claim is timely because Rule 15(c)'s relation back doctrine applies.   Under Rule 15(c), amendment to add a new named plaintiff is proper if: (1) the amendment asserts a claim that "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (2) the defendant "received such notice of the action that it will not be prejudiced in defending on the merits" and (3) the defendant "knew or should have known that the action would have been brought against it,

---

[6] As Defendants correctly explain: "Even assuming that the statute (1) began running on July 26, 2011 after UBS' disclosure, (2) was tolled on April 30, 2012 when the original Complaint was filed, and (3) resumed on December 3, 2012 when the FAC (clearly excluding Sullivan from the putative class) was filed, the limitations period still would have expired on February 27, 2013—almost four months before Sullivan sought to join this action." (Def. Opp. Mem. at 7 n.2.)

but for a mistake concerning the proper party's identity."[7] Fed. R. Civ. P. 15(c)(1)(B)-(C);[8] *see also Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (citation and internal quotation marks omitted) ("[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."); *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 290 (S.D.N.Y. 2009) (citation and internal quotation marks omitted) ("[T]he question is whether the late addition of a plaintiff would surprise and frustrate reasonable possibilities for a defense."); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (citing *Tri-Ex Enters., Inc. v. Morgan Guar. Trust Co. of N.Y.*, 586 F. Supp. 930, 932 (S.D.N.Y. 1984)) ("The rationale underlying the relation-back doctrine is that one who has been given adequate notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitations are designed to afford.").

In *Beach v. Citigroup Alternative Investments LLC*, a court in this District noted that the "[t]he Second Circuit has not addressed whether the claims of a newly named plaintiff will relate back to the original time of filing in the class action context." 2014 WL 904650, at *19. The court there held:

> When an action is filed as a putative class action, defendants are on notice as to the extent and nature of the claims. As such, allowing relation back of the newly named plaintiff's claims under Rule 15(c), as long as they are identical to the claims already asserted and would have been timely at the time of filing, would not unduly surprise or prejudice the defendants.

---

[7] "In this Circuit, courts have rejected the 'mistake' requirement when adding new named plaintiffs in a class action and focus on whether the new plaintiff's claims were reasonably foreseeable and whether their addition would prejudice the defendants." *Beach v. Citigroup Alt. Inv. LLC*, 12-CIV-7717, 2014 WL 904650, at *19 (S.D.N.Y. Mar. 7, 2014) (citation omitted).

[8] "Rule 15(c)(1)(C) only addresses the addition of new defendants. Nevertheless, the Advisory Committee Note states that the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 290 (S.D.N.Y. 2009) (internal quotation marks omitted).

*Id.* at \*20 (citing *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 297-98 (3d Cir. 2010); *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006)). The court in *Beach* noted that the addition of a new named plaintiff did not prejudice or surprise the defendants because "the allegations . . . remained substantially the same." 2014 WL 904650, at \*20.

Plaintiff alleges manipulation of Euroyen TIBOR and Yen LIBOR throughout the PTAC. In its previous pleadings, however, Plaintiff did not indicate that it intended to include claims related to financial products for which neither Yen LIBOR nor Euroyen TIBOR serves as the pricing benchmark. Unlike in *Beach*, Sullivan is not a member of the class; his claim differs from Plaintiff's and that of the class; and Defendants therefore were not on notice. As discussed, (*see supra* Section I.A.), allowing amendment to include Sullivan and his claim will have the effect of significantly expanding the class. Thus, Rule 15(c)'s relation back doctrine also does not apply to Sullivan's claim. Sullivan's CEA claim is therefore time-barred. Plaintiff's motion for leave to amend the SAC to bring a CEA claim on behalf of Sullivan is denied.

## B. **Proposed Plaintiff OPPRS's Claims Are Time-Barred**[9]

Plaintiff seeks leave to amend the SAC to add OPPRS as a plaintiff. In addition, Plaintiff seeks leave to amend the SAC to bring two claims on behalf of OPPRS: (1) breach of the implied covenant of good faith and fair dealing,[10] and (2) unjust enrichment. Plaintiff previously brought an unjust enrichment claim that was dismissed by this Court in the March 28 Decision because Plaintiff did not allege any relationship between himself and any of the defendants, or allege how Defendants benefitted at Plaintiff's expense. (*See* March 28 Decision at 22.) Defendants argue

---

[9] Plaintiff is not seeking leave to amend to assert a CEA claim on behalf of OPPRS. (Pl. Reply Mem. at 5 n.9.)

[10] Plaintiff only seeks leave to assert this claim as to five defendants: Barclays, Citibank, Deutsche Bank, J.P. Morgan, and UBS. (*See* PTAC ¶ 806.)

that OPPRS is barred from bringing either of these claims, in part because the statute of limitations has expired. (Def. Opp. Mem. at 31-33.) This Court agrees.

OPPRS's breach of contract and unjust enrichment claims are technically time-barred under New York's six-year statute of limitations.[11] *See* N.Y. C.P.L.R. § 213(2). Plaintiff raises two arguments for why the statute of limitations period is not dispositive here. First, Plaintiff argues that OPPRS's claims "relate back" under Rule 15(c) for the same reasons he raises as to Sullivan's CEA claims.[12] Second, Plaintiff argues that Defendants are equitably estopped from raising a statute of limitations defense.

### 1. Relation Back Doctrine

OPPRS transacted in Yen currency forward agreements that were purchased over-the-counter, rather than on any registered exchange. (PTAC ¶ 655.) Thus, for the reasons discussed, (*see supra* Section I.A.), OPPRS is not a member of the putative class identified in any of the three previously-filed complaints. Moreover, its proposed claims do not arise out of the same transactions as Plaintiff's claims, nor can it be argued that Defendants were somehow on notice that an entity outside of the putative class would bring claims related to a different type of transaction years after the initial complaint was filed. Thus, OPPRS's claims do not "relate back."

---

[11] Defendants argue that the latest date when the statute of limitations on OPPRS's proposed claims could have begun to run is June 4, 2008, the date OPPRS entered into the last alleged Japanese Yen currency forward agreement. (*See* Def. Opp. Mem. at 32 (citing PTAC ¶ 655).)

[12] The New York corollary to Rule 15(c)'s relation back doctrine is New York C.P.L.R. § 203(f). "Although there are minor differences in the language between Rule 15(c)(2) and Section 203(f), courts have not focused on any distinction and have typically cited both rules and applied the federal rule." *Kitrosser v. CIT Grp./Factoring, Inc.*, 177 B.R. 458, 474 (S.D.N.Y. 1995) (citing *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir. 1994)).

### 2. Equitable Estoppel

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (3d Dep't 2005)). Equitable estoppel only applies where Plaintiff has exercised due diligence in bringing the action. *Id.*; *see also Simcuski v. Saeli*, 44 N.Y.2d 442, 450 (1978) (citation omitted) ("The preferable analysis, however, holds that due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine."). The Second Circuit has explained that:

> A plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former [act giving rise to the claim]. The uncommon remedy of equitable estoppel is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.

*Bisson v. Martin Luther King Jr. Health Clinic*, 399 F. App'x 655, 656 (2d Cir. 2010) (citation omitted) (applying New York law); *see also Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 2006) (citation omitted) ("New York law is clear that the same act of non-disclosure cannot underlie both the argument for estoppel and the related cause of action.").

Plaintiff does what the Second Circuit has held is impermissible: he relies on the same allegations giving rise to OPPRS's proposed claims to argue that Defendants engaged in some activity that prevented OPPRS from timely filing. *See id.* ("[E]quitable estoppel applies only when a defendant covers up an earlier wrongdoing to prevent plaintiff from suing on the initial wrong.").

Plaintiff cites to allegations in the PTAC to demonstrate that Defendants sought to "conceal their collusion." (*See* Pl. Reply Mem. at 16 n.28 (citing PTAC ¶¶ 322, 437, 438, 443, 722).) It was OPPRS's burden, however, to perform due diligence in an effort to bring these claims in a timely manner. The allegations in the PTAC demonstrate that as of July 2011, OPPRS was on notice that it may have grounds to bring the claims at issue. (*See* PTAC ¶¶ 726-27.) At a minimum, had OPPRS performed due diligence, it would have learned of the instant suit filed in 2012 with ample time to bring its own claims before expiration of the statute of limitations period.[13] As in *Abbas*, OPPRS has failed to show that any action by Defendants prevented it from timely joining in Plaintiff's original complaint, FAC, or even SAC. Thus, OPPRS's tolling arguments are without merit. Leave to amend the SAC to bring OPPRS's breach of contract claim and to reallege a previously-dismissed unjust enrichment claim is denied.[14]

### C. Proposed Defendants

Plaintiff claims that the Proposed Defendants were not publicly implicated in the Yen-LIBOR and Euroyen TIBOR manipulation on or before April 15, 2013, the date he filed the SAC. (Mot. to Amend/Correct at 3.) Plaintiff's unopposed motion to amend the SAC to add four new defendants is granted without prejudice to the Proposed Defendants.

## II. RICO CLAIM

Plaintiff seeks leave to include RICO claims, under 18 U.S.C. § 1964, on behalf of Plaintiff and Proposed Plaintiffs against all defendants. (*See* PTAC ¶¶ 754-795 (Fifth and Sixth Claims for

---

[13] Applying the statute of limitations under CPLR § 213(2), OPPRS had six years from June 4, 2008—the date the last alleged agreement was entered into—to bring the instant claims. (*See* PTAC ¶ 655.) There is no valid explanation offered in the PTAC or elsewhere as to why OPPRS waited until after the statute of limitations expired to file.

[14] Because the motion for leave to amend to add the Proposed Plaintiffs' claims is denied on statute of limitations grounds, this Court need not reach the merits of those claims to determine if amendment would be futile.

Relief).)   Defendants argue that: (1) the proposed RICO claims seek an impermissible extraterritorial application of U.S. law; (2) Plaintiff and Proposed Plaintiffs lack standing to assert RICO claims because their injuries are too remote and speculative; (3) the PTAC fails to plead essential elements of a RICO claim under 18 U.S.C. § 1962(c);[15] and (4) the PTAC fails to state a RICO conspiracy claim under 18 U.S.C. § 1962(d).[16]   This Court finds that each of the first two grounds is sufficient to dismiss Plaintiff and Proposed Plaintiffs' RICO claims.

### A. **Extraterritorial Application of RICO**

Defendants argue that the proposed RICO claims seek an impermissible extraterritorial application of U.S. law.   As a general matter, "absent an express intention by Congress of extraterritorial effect, a statute applies only domestically." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)).   "When a statute gives no clear indication of an extraterritorial application, it has none."   *Morrison*, 561 U.S. at 248.   In *Norex Petroleum Ltd.*, the Second Circuit established that "RICO is silent as to any extraterritorial application."   631 F.3d at 32 (citation omitted).   "Following *Norex,* some district courts misinterpreted the Circuit's rejection of the argument that

---

[15] Under Section 1962(c), it is unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990) (citing 18 U.S.C. § 1962(a)-(c)).   A plaintiff must show "individual actions by defendants that form violations of RICO." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 91-CV-2923, 1994 WL 88129, at *6 (S.D.N.Y. Mar. 15,1994); *see also U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443-54 (S.D.N.Y. 2004) (the elements of a RICO claim "must be established as to each individual defendant").   Plaintiff alleges that the RICO enterprise is "Defendants' collective association, including their participation together as members of the BBA's Yen-LIBOR and/or JBA's Euroyen TIBOR panels, aided by the Broker Defendants." (Mot. to Amend/Correct at 6 (citing PTAC ¶¶ 763-67).)

[16] Under Section 1962(d), it is unlawful "for any person to conspire to violate" Section 1962(c). 18 U.S.C. § 1962(d).   "To adequately plead a violation of § 1962(d) in the Second Circuit, a plaintiff need only allege that a 'conspirator intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.'" *Gulf Coast Dev. Grp., LLC v. Lebror*, 02-cv-6949, 2003 WL 22871914, at *5 (S.D.N.Y. Dec. 4, 2003) (quoting *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003)).

'RICO applies extraterritorially *in all of its applications* as a ruling that RICO can never have extraterritorial reach in *any* of its applications.'"[17]   *Reich v. Lopez*, No. 13-CV-5307, 2014 WL 4067179, at \*4 (S.D.N.Y. Aug. 18, 2014) (quoting *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 136 (2d Cir. 2014) (emphasis in original)).

The Second Circuit provided clarification in *RJR Nabisco, Inc.* by holding that "RICO applies extraterritorially if, and only if, liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate." 764 F.3d at 136. The Court explained further that "[w]hen, and to the extent that, a RICO charge is based on an incorporated predicate that manifests Congress's clear intention to apply extraterritorially, the presumption against extraterritorial application of U.S. statutes is overcome." *Id.* at 137. In other words, where the predicate act itself applies extraterritorially, RICO can be applied extraterritorially.[18]

Here, Plaintiff alleges that the predicate act under RICO is wire fraud, 18 U.S.C. § 1343.[19] Wire fraud does not apply extraterritorially. *See Petróleos Mexicanos v. SK Eng'g & Constr. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014) ("[W]ire fraud cannot serve as such an extraterritorial predicate."). This, however, is not the end of the inquiry. The Second Circuit in *RJR Nabisco,*

---

[17] The majority of district courts in this Circuit previously misread *Norex* to hold that "RICO has no application outside the territory of the United States and cannot apply to a foreign enterprise." *RJR Nabisco, Inc.*, 764 F.3d at 134 (citing *European Cmty. v. RJR Nabisco, Inc.*, No. 02-CV-5771, 2011 WL 843957, at \*4-5, \*7 (E.D.N.Y. Mar. 8, 2011)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 732 (S.D.N.Y. 2013) (citation omitted) ("Under *Morrison*, a RICO enterprise must be a 'domestic enterprise.'").

[18] For example, the Second Circuit notes that the money laundering statute explicitly applies to extraterritorial conduct in certain circumstances. *RJR Nabisco, Inc.*, 764 F.3d at 137 (citing 18 U.S.C. § 1956(f)).

[19] 18 U.S.C. § 1343 reads in part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" has violated the statute. 18 U.S.C. § 1343.

*Inc.* held that even where the enterprise is foreign, a predicate act of wire fraud may allow for extraterritorial application of RICO where "all elements of the wire fraud . . . were completed in the United States." 764 F.3d at 139.

The parties do not dispute that the alleged enterprise is foreign. (*See supra* n.15.)  Instead, their dispute centers on whether the PTAC "alleges sufficient domestic conduct for the claims involving . . . wire fraud . . . to sustain the application of RICO."[20]  *Id.* at 141.  The elements of wire fraud include: "(1) the formation of a scheme to defraud victims (2) of money or other property (as the object of the scheme), and (3) the use of the mails or interstate or foreign wire communications in furtherance of the scheme." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 249 (S.D.N.Y. 2012).  Unlike in *RJR Nabisco, Inc.*, the PTAC does not adequately allege that "defendants hatched schemes to defraud in the United States, and [that] they used the U.S. . . . wires in furtherance of those schemes and with the intent to do so." 764 F.3d.  The PTAC alleges that Defendants "transmit[ted] or caus[ed] to be transmitted false and artificial Euroyen TIBOR and/or Yen-LIBOR submissions," and that they engaged in acts of "wire fraud in furtherance of the conspiracy." (PTAC ¶ 763.)  The PTAC describes actions that are far too attenuated to sufficiently plead that the scheme to defraud came about in the U.S. (*See, e.g., id.* ¶ 764 ("Defendants completed all elements of wire fraud within the United States or while crossing United States borders . . . by coordinating their daily Yen-LIBOR and/or Euroyen TIBOR submissions and their Euroyen-based derivatives trading positions in electronic chats routed through electronic servers located in the United States.").)

---

[20] Defendants argue that the PTAC *must* allege domestic conduct that satisfies every essential element of wire fraud. (Def. Opp. Mem. at 20.)  However, the Second Circuit held in *RJR Nabisco, Inc.* that it was not deciding "whether domestic conduct satisfying fewer than all of the statute's essential elements could constitute a violation of such a statute." *See* 764 F.3d at 142 n.14.

The Second Circuit recently held that in the wire fraud-RICO context, "simply alleging that some domestic conduct occurred cannot support a claim of domestic application." *Petróleos Mexicanos*, 572 F. App'x at 61 (citation omitted). Moreover, in *Petróleos*, the Court stated that "minimal contacts" will not suffice. For example, in that case, "[a]bsent from the pleadings [were] any allegations that the scheme was directed from (or to) the United States" and "the activities involved in the alleged scheme . . . took place outside the United States." *Id.*; *cf. RJR Nabisco, Inc.*, 764 F.3d at 142 ("[T]he Complaint also claims that the schemes themselves were directed at the United States and had substantial domestic effects.").

The PTAC's RICO violation is based on the alleged actions of foreign and international institutions that submitted false information to the BBA and JBA, located in London and Tokyo, respectively. (PTAC ¶ 763.) The PTAC does not contain the extensive factual allegations found to be adequate in the complaint at issue in *RJR Nabisco, Inc.*, where the scheme was allegedly both managed from *and* directed at the U.S. *See* 764 F.3d at 142. Based on the allegation in the PTAC, this Court cannot conclude that the alleged "minimal contacts" with the United States are sufficient to overcome the presumption against RICO's extraterritorial application.[21]

## B. **Standing**

Section 1964(c) of RICO affords a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Plaintiff and Proposed Plaintiffs claim that they "suffered direct, tangible harm to their 'property'" due to Defendants' submission of "false Euroyen TIBOR and Yen-LIBOR quotes . . . which in

---

[21] Moreover, the fact that certain defendants were charged with one count of wire fraud in criminal informations does not support a private, domestic RICO claim. (*See* PTAC ¶¶ 5-6.) The additional regulatory documents cited in the PTAC do not provide sufficient U.S. contacts to overcome the *Morrison* presumption. No "recently revealed facts" regarding actions by foreign or domestic regulators change this conclusion. (*See, e.g.*, Letter from Vincent Briganti, (ECF No. 431).)

turn caused Thompson Reuters to set Euroyen TIBOR and Yen-LIBOR at artificial levels," which in turn impacted the prices of Euroyen derivatives, which in turn harmed Plaintiff and Proposed Plaintiffs when they invested "in the Euroyen-based derivatives market." (Mot. to Amend/Correct at 10; *see also* PTAC ¶ 770; Pl. Reply Mem. at 18.)

The Supreme Court has "repeatedly observed that Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws." *See, e.g.*, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992) (citations omitted). Plaintiff therefore must "show[] that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.* at 268 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536-38 (1983)). There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* Where the relation is "'too remote,' 'purely contingent,' or 'indirec[t],'" it is insufficient to state a claim under RICO. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9-10, 12 (2010) (citing *Holmes*, 503 U.S. at 271, 274); *see also DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 650, 654 (S.D.N.Y. 2011) (applying the standing requirement from *Holmes* and *Hemi Group* and dismissing the RICO claim in its entirety where injury was "not proximately caused by defendants' alleged predicate acts").

The parties agree that the *Holmes* analysis for proximate cause applies in establishing standing under Section 1964(c). (*See* Pl. Reply Mem. at 17.) Plaintiff alleges that the injuries he and Proposed Plaintiffs suffered were "direct, proximate, foreseeable, and natural" injuries as a "direct and proximate" result of Defendants' conduct. (PTAC ¶¶ 785, 787.) Moreover, Plaintiff argues that he and Proposed Plaintiffs were the direct targets of Defendants' manipulative scheme, their injuries flowed from the manipulation, and their injuries were foreseeable. (Pl. Reply Mem. at 17-18; *see also* PTAC ¶¶ 645, 651, 654.)

18

Defendants argue that Plaintiff and Proposed Plaintiffs lack standing to assert RICO claims for the same reasons that this Court dismissed Plaintiff's antitrust claim on standing grounds. (Def. Opp. Mem. at 18; *see also* March 28 Decision at 15.) This Court previously held that because the causal link between Defendants' alleged conduct and Plaintiff's alleged injury contained four discrete links in a complicated series of market transactions, Plaintiff's alleged injury was "too remote and speculative." (*See* March 28 Decision at 18.) This Court pointed to Plaintiff's failure to allege any "direct, traceable means" by which Defendants' alleged manipulation of one benchmark led to a loss to Plaintiff on contracts linked to a separate benchmark. (*Id.*)

The PTAC includes statistical analyses that allegedly show how Yen-LIBOR and Euroyen TIBOR directly impact the price of the Euroyen TIBOR futures contracts in which Plaintiff traded. (PTAC ¶¶ 611-636.) Similarly, it includes analyses of how Yen-LIBOR and Euroyen TIBOR allegedly impact the value of both the CME Yen currency futures contracts in which Sullivan traded, (*id.* ¶¶ 637-643), and the Japanese Yen currency forward agreements in which OPPRS traded, (*id.* ¶ 644). Plaintiff cites transactions of Euroyen-based derivatives entered into by Plaintiff and Proposed Plaintiffs on dates when communications between Defendants allegedly indicate that they were engaged in manipulating Yen-LIBOR rates. (*Id.* ¶¶ 645-670.)

Defendants argue that the PTAC's new statistical analyses only suggest a correlation between the prices of the contracts in which Plaintiff and Proposed Plaintiffs traded and the manipulated benchmark rates, and that Plaintiff fails to establish how this correlation suggests that the changes in the prices of the contracts were caused by changes in Euroyen TIBOR or Yen LIBOR, as opposed to other external variables. (Def. Opp. Mem. at 15.)

Plaintiff and Proposed Plaintiffs fail to overcome the deficiencies identified in the March 28 Decision identifying the speculative nature of Plaintiff's injuries under this legal theory.

(March 28 Decision at 15.)  Even construing the newly alleged facts in the light most favorable to Plaintiff and Proposed Plaintiffs, the PTAC does not show a sufficiently direct connection between the alleged misconduct and the injury to support a RICO claim.  *See Holmes*, 503 U.S. at 271, 274. As to Plaintiff, the newly alleged facts fail to cure the proximate cause deficiencies raised in this Court's previous decision.  As to Proposed Plaintiffs, the instruments in which they traded, Yen currency futures contracts and forward agreements, are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR, and any causation analysis leads to the conclusion that the connection is too attenuated and speculative to support standing.[22]

Plaintiff and Proposed Plaintiffs therefore lack standing to assert a RICO claim.

## III.   ANTITRUST CLAIM (AS TO DEFENDANTS RBS AND UBS)

Plaintiff seeks to cure the "efficient enforcer" pleading deficiencies identified in the March 28 Decision as to Defendants UBS and RBS.  This Court dismissed Plaintiff's antitrust claim because the SAC failed to adequately plead: (1) antitrust injury; (2) that Plaintiff was an "efficient enforcer" of the antitrust laws; and (3) restraint of trade.  (March 28 Decision at 13-22.)  Plaintiff argues that Defendants UBS and RBS only moved to dismiss on the second ground, regarding whether Plaintiff was an efficient enforcer of the antitrust laws.  Therefore, Plaintiff argues that if he can amend the SAC to cure the efficient enforcer pleading deficiencies, his antitrust claim against UBS and RBS is cured.  This Court's dismissal of Plaintiff's antitrust claim as to UBS and RBS was not limited in the manner Plaintiff suggests; the claim was dismissed as to *all* defendants on the same three grounds.  Plaintiff's motion for leave to amend the SAC to cure the "efficient enforcer" pleading deficiency is therefore denied as futile.

---

[22] Proposed Plaintiffs cannot bring this claim for the separate reason that they are not part of the asserted class.

## CONCLUSION

Plaintiff's motion for leave to amend the SAC to add four defendants is GRANTED.

Plaintiff's motion for leave to amend the SAC to add plaintiffs and claims is DENIED.

The Clerk of the Court is instructed to close the motion at ECF No. 301.


Dated:  March 31, 2015
        New York, New York

                                        SO ORDERED:

                                        GEORGE B. DANIELS
                                        United States District Judge

21