


New York
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
914-997-0500 Telephone
914-997-0035 Fax
www.lowey.com

Pennsylvania
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977
610-941-2760 Telephone
610-862-9777 Fax

April 29, 2015

**VIA ECF**

The Honorable George B. Daniels
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (GBD) (HBP)
**CalSTRS' Letter Motion To Be Added As Named And Representative Plaintiff**

Dear Judge Daniels:

Pursuant to the Court's March 31, 2015 Order,[1] California State Teachers' Retirement System ("CalSTRS"), requests that the Court grant CalSTRS leave to intervene as a named Plaintiff in the above-referenced action. This letter is submitted with the full support of Plaintiff Jeffrey Laydon ("Laydon").

I.  **Background**

Laydon filed his Second Consolidated Amended Class Action Complaint on April 15, 2013. ECF No. 150. On March 28, 2014, this Court granted-in-part and denied-in-part Defendants' motions to dismiss. In particular, the Court denied the motions to dismiss Laydon's claims for primary violations and aiding and abetting violations of the Commodity Exchange Act, but granted, *inter alia*, Defendants' motions to dismiss Laydon's unjust enrichment claim, reasoning that Laydon did not "allege any relationship between himself and any of the Defendants or how Defendants benefitted at Plaintiff's expense." *Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419 GBD, 2014 U.S. Dist. LEXIS 46368, at *45 (S.D.N.Y. Mar. 28, 2014) ("March 28, 2014 Order").

Following the March 28, 2014 Order, Laydon filed a motion for leave to amend on June 17, 2014, seeking leave to add two plaintiffs, Stephen P. Sullivan and Oklahoma Police Pension & Retirement System ("OPPRS"), four Defendants, and new claims, including claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), to this action. ECF No. 301. Defendants opposed Plaintiff's motion on the grounds that, *inter alia*, OPPRS' and Sullivan's claims were futile. ECF No. 361.

---

[1] ECF No. 448.



Letter to The Honorable George B. Daniels
April 29, 2015
Page 2

On reply, Class Counsel notified the Court that it had recently been retained by CalSTRS and requested that CalSTRS be added to the amended pleading if leave to amend was granted. ECF No. 387, at 2 n. 2. This Court denied Plaintiff's request to add CalSTRS without prejudice. ECF No. 448, at 5 n. 2. CalSTRS now seeks leave to intervene in this action to assert the same claims as Laydon and to add as Defendants DB Group Services (UK) Limited and Bank of America, whose identity and involvement in the Yen-LIBOR and Euroyen TIBOR manipulation was revealed on April 23, 2015, in Defendant Deutsche Bank's $2.5 billion LIBOR manipulation settlement.[2]

## II.   CalSTRS' Claims

CalSTRS is the largest U.S. teachers' retirement fund, with approximately $188.3 billion in assets and nearly one million members. CalSTRS transacted thousands of Euroyen-based derivatives with notional values exceeding $26 billion, including directly with many Contributor Bank Defendants,[3] from January 11, 2006 to December 30, 2010. Based on these transactions, CalSTRS seeks to assert, *inter alia*, claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing. CalSTRS should be allowed to intervene in this action to assert these claims because they are: (a) timely; and (b) not futile given CalSTRS' direct contractual relationship with the Defendants.

### A. CalSTRS' Claims for Unjust Enrichment and Breach of the Implied Covenant of Good Faith and Fair Dealing Are Timely

CalSTRS' claims are timely because its Class Period transactions fall within the six-year statute of limitations applicable to claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing. *See* March 31, 2015 Order, at 11 (applying six year statute of limitations). CalSTRS transacted in Euroyen-based derivatives through the end of 2010. *See* Briganti Decl. Ex. 1, at ¶¶ 674-87 (highlighting Euroyen-based derivative transactions occurring on March 3, 2010, May 12, 2010 and December 2, 2010). As a result, claims arising from these transactions are well within the limitations period.

---

[2] Pursuant to Fed. R. Civ. P. 24(c), the claims and defenses for which intervention is sought are set forth in the proposed draft of the third amended complaint already provided to the Court. *See* Proposed Third Amended Class Action Complaint ("PTAC"), June 17, 2014, ECF No. 302-2; *see also* Declaration of Vincent Briganti in Further Support of Plaintiff's Motion for Leave to Amend and File the Proposed Third Amended Class Action Complaint ("Briganti Decl."), Sept. 22, 2014, ECF No. 388-1, Ex. 1 (highlighting CalSTRS-specific allegations).

[3] CalSTRS transacted with the following Defendants: UBS, RBS, JPMorgan, Deutsche, Citibank, Barclays, HSBC and Société Générale. *Id.* ¶¶ 671-87.



### B. CalSTRS' Claims for Unjust Enrichment and Breach of the Implied Covenant of Good Faith and Fair Dealing Are Not Futile

CalSTRS' claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are not futile because they arise from over-the-counter transactions in Euroyen-based derivatives conducted directly with Contributor Bank Defendants. These transactions create a "relationship between [CalSTRS] and . . .the Defendants" that explains how Defendants benefited from their manipulative conduct at CalSTRS' expense, curing the deficiencies identified in the Court's March 28, 2014 Order. *See* March 28, 2014 Order, at *45.

#### 1. Defendants Were Unjustly Enriched at CalSTRS' Expense By Overcharging and/or Underpaying CalSTRS for Japanese Yen

Defendants' benefited from CalSTRS' transactions in Japanese Yen currency forward agreements by overcharging or underpaying CalSTRS for Japanese Yen purchased and sold during the Class Period.

Japanese Yen currency forward agreements are priced based on Yen-LIBOR and Euroyen-TIBOR. *See* Briganti Decl., Ex. 1, at ¶ 673 (citing *RBS CFTC Settlement*). Defendants knew of this pricing relationship and intentionally exploited it for their financial benefit during the Class Period. CalSTRS' counterparty RBS even settled claims related to the manipulation of Japanese Yen "foreign exchange ('FX') forwards" with the United States Commodity Futures Trading Commission ("CFTC") because those products are priced based on Yen-LIBOR. *Id.*

The PTAC demonstrates that Japanese Yen currency forward agreements are priced based on Yen-LIBOR and Euroyen TIBOR because the price of Yen increases as Yen-LIBOR decreases and vice-versa. *See* PTAC, *Id.* ¶¶637-44. Therefore, Defendants' manipulation of Yen-LIBOR and Euroyen TIBOR impacted the price that CalSTRS paid or received for Japanese Yen under its Japanese Yen currency forward agreement with Defendants. For example, on May 12, 2010, CalSTRS entered into a Japanese Yen currency forward agreement with RBS for the purchase of ¥198,000,000.00 for $2,127,644.15 on June 9, 2010. Briganti Decl., Ex. 1, at ¶ 681. On May 12, 2010, RBS and ICAP conspired to and successfully lowered three-month Yen-LIBOR to 0.23%. *Id.* at ¶ 682. This manipulative conduct artificially increased the cost of purchasing Yen, injuring CalSTRS while generating illicit profits for RBS. *See id.* at ¶ 684; *see also id.* at ¶¶ 678-80; 685-87 (highlighting other illustrative examples).

The same is true for transactions between CalSTRS and other Defendants. For example, on December 2, 2010, CalSTRS entered into three Japanese Yen currency forward agreements: (i) with Defendant Barclays purchasing ¥806,103,420.00 for $9,649,888.31 on December 14, 2010; (ii) with Defendant Deutsche purchasing ¥4,324,477.00 for $51,274.33 on December 16, 2010; and (iii) with Defendant Deutsche purchasing ¥5,242,826.00 for $62,248.53 on December 17, 2010. *Id.* at ¶ 674. That same day, Defendants Rabobank and ICAP agreed to, and



succeeded in, artificially lowering three-month Yen-LIBOR to 0.18%. *Id.* at ¶ 675. This artificially increased the price CalSTRS paid for Yen under its Japanese Yen currency forward agreements, resulting in increased profits for Defendants Barclays and Deutsche. *Id.* at ¶ 677.

Because of this pricing relationship, and the direct contractual nature of the agreement between CalSTRS and the Defendants, any loss to CalSTRS was profit to Defendants. Thus the Defendants were unjustly enriched when they manipulated Yen-LIBOR and Euroyen TIBOR during the Class Period.

### 2. Defendants Breached the Implied Covenant of Good Faith and Fair Dealing By Manipulating Yen-LIBOR and Euroyen TIBOR

Defendants' manipulative conduct also resulted in a breach of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing obligates a promisor to fulfill "any promises which a reasonable person in the positon of the promise would be justified in understanding were included" in the contract. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 632 (S.D.N.Y. 2013) ("*LIBOR II*") (citation omitted). Every contract contains the implied promise that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (citation omitted). Because Japanese Yen currency forward agreements are priced based on Yen-LIBOR and Euroyen TIBOR, CalSTRS' agreements with the Defendants carried "an implied duty not to manipulate [Yen] LIBOR. . .because manipulation of [Yen] LIBOR would cause the contractual exchange to depart from what the parties intended." *Id.* at 633. Defendants breached that duty when they entered into Japanese Yen currency forward agreements with CalSTRS while they manipulated Yen-LIBOR and Euroyen TIBOR.

### 3. These Claims Have Been Sustained in Other LIBOR Cases

The *LIBOR II* court allowed plaintiffs who transacted in over-the-counter LIBOR-based derivatives to assert claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing because defendants' manipulation of LIBOR allowed them to pay plaintiffs less than they should have under their LIBOR-based derivative contracts. *Id.* at 629, 632-633. These claims were subsequently sustained against all defendants that plaintiffs transacted with directly. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 482-484 (S.D.N.Y. 2014) ("*LIBOR III*").

Here CalSTRS entered into thousands of Japanese Yen currency forward agreements *directly* with Defendants UBS, RBS, JPMorgan, Deutsche, Citibank, Barclays, HSBC and Société Générale. *See* Briganti Decl. Ex. 1, ¶ 672. CalSTRS has satisfied this Court's March 28, 2014 Order, alleging precisely how Defendants benefited at CalSTRS' expense by overcharging and underpaying for Yen purchased and sold during the Class Period. *See id.* ¶¶ 672-87. This is



the same direct relationship and type of harm that the *LIBOR III* court found sufficient to sustain claims for both unjust enrichment and breach of the implied covenant of good faith and fair dealing. For these same reasons, CalSTRS' claims are not futile.

### C. CalSTRS' Other Claims

If allowed to intervene, CalSTRS would also assert claims arising under the Commodity Exchange Act, Sherman Antitrust Act, and Racketeer Influenced and Corrupt Organizations Act. To the extent these claims are subject to dismissal pursuant to the March 28, 2014 Order, ECF No. 270, and March 31, 2015 Order, ECF No. 448, CalSTRS would assert these claims solely to protect its appellate rights.

### III. CalSTRS Meets the Requirements for Intervention as of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure "gives one a right to intervene if (1) he clams a sufficient interest in the proceedings and (2) that interest is not 'adequately represented by existing parties.'" *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). To intervene as of right, plaintiffs in the Second Circuit must (1) file a timely motion for intervention; (2) assert an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicants ability to protect its interest; and (4) that interest is not adequately represented by the other parties. *See Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). As set forth below, these factors are each met here.

#### A. CalSTRS' Request For Intervention Is Timely and Will Not Prejudice the Current Parties to this Action

Courts consider four factors when determining whether a motion to intervene is timely: "(1) how long the applicant had notice of the interest before making the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). While the amount of time elapsed since the initiation of the action is relevant, "[t]he most important criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993) (internal quotations omitted); *see also United States v. International Business Machines Corp.*, 62 F.R.D. 530, 541 (S.D.N.Y. 1974) (explaining that mere lapse of time does not render motion to intervene untimely). Absent any significant prejudice to the existing parties, the motion for intervention will usually be deemed timely. *Id.*

CalSTRS' request for leave to intervene is timely because it is early enough in the litigation that there will be no significant prejudice to any of the existing parties if CalSTRS is



allowed to intervene. Discovery has not started having been stayed pending Defendants' motions to dismiss for lack of personal jurisdiction and further extended at the requests of the United States Department of Justice. ECF No. 362 (staying discovery until Sep. 30, 2014); ECF No. 432 (extending stay of discovery until April 7, 2015). Additionally, Laydon is preparing to file an amended complaint in accordance with the Court's March 31, 2015 Order. Courts in this district routinely grant leave to intervene in cases that are far more procedurally advanced than this action. *See, e.g., German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1392 (S.D.N.Y. 1995) (granting motion to intervene after class certification); *Miller*, 832 F. Supp. at 674 (finding the proposed intervenors' motion was timely filed and would not unduly delay the litigation even though the parties were proceeding with discovery); *see also Krauss v. First City Federal Sav. Bank*, No. 87 Civ. 5585, 1990 U.S. Dist. LEXIS 10838, at *4 (S.D.N.Y. Aug. 20, 1990) (permitting intervention after the close of discovery because "the concept of timeliness is a flexible one"). As a result, CalSTRS' request for leave to intervene is timely and should be granted.

Denying intervention, however, would prejudice CalSTRS. CalSTRS was defrauded out of the full value of its contracts and forced to pay more for or receive less Japanese Yen as a result of Defendants' manipulative conduct. CalSTRS would be prejudiced if it was denied the opportunity to recover for these injuries. While CalSTRS could file its own independent action, CalSTRS would be deprived of the efficiencies and cost-savings of joining this existing action.

### B. CalSTRS Has a Sufficient Interest in the Litigation

A proposed intervenor has a "sufficient interest" in the litigation under FED. R. CIV. P. 24(a)(2) when its interest is "direct, substantial, and legally protectable" and not "remote from the subject matter of the proceeding, or . . . contingent upon the occurrence of a sequence of events before it becomes colorable." *See Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). This interest need not be a property interest; rather, "an interest relating to the property or transaction which is the subject of the action" is sufficient. FED R. CIV. P. 24(a)(2).

CalSTRS has a sufficient interest in this lawsuit because it suffered harm from Defendants' alleged manipulative conduct by either paying too much or receiving less in exchange for Japanese Yen purchased and sold during the Class Period. *See* Briganti Decl. Ex. 1, ¶ 672-87. This interest is "direct, substantial, and legally protectable" as CalSTRS is an absent Class member covered by the PTAC that has a legal interest in the outcome of this action. *See, e.g., Devlin v. Scardelletti*, 536 U.S. 1, 7 (2005) (absent class members' legal rights under class settlement are individual, cognizable interests).



### C. CalSTRS' Claims Would Be Impaired Without Intervention

Once a sufficient interest has been identified, Rule 24(a)(2) only requires the proposed intervenor to demonstrate that the disposition of the action *may*, as practical matter, "impair or impede" their ability to protect that interest. *See* 6-24 MOORE'S FEDERAL PRACTICE - CIVIL § 24.03[3][a] (emphasis added). A movant's interests may be impaired by "a simple decrease in the value of the interest" or a potential adverse *stare decisis* effect from a decision in the case. *Id.* (citing *Atlantis Dev. Corp v. United States*, 379 F.2d 818, 828 (5th Cir. 1967) (explaining that stare decisis may provide practical disadvantages that warrant intervention)); *see also New York Public Interest Research Group, Inc. v. Regents of University of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (finding interest impaired on potential adverse stare decisis effects). Intervention should be permitted where "an absentee would be substantially affected in a practical sense by the determination made in an action." *Commack Self-Service Kosher Meats v. Rubin*, 170 F.R.D. 93, 101 (E.D.N.Y. 1996).

This risk of potentially adverse *stare decisis* effects is especially true in a class action where "the first decision will in all likelihood be the second and the third and the last one." *See Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154 (S.D.N.Y. 2000). CalSTRS' ability to pursue its claims, which arise from identical conduct as alleged in this action, will necessarily be affected by an adverse ruling in this case. Given the risk of adverse impact on its claim, CalSTRS should be allowed to intervene to protect its interests in the litigation.

### D. CalSTRS' Intervention Will Cure the Relationship Deficiencies Identified in the March 28, 2014 Order

CalSTRS transacted directly with Defendants and will therefore cure the deficiencies identified by the Court in dismissing Plaintiff Laydon's unjust enrichment claims. This Court granted Defendants' motion to dismiss Laydon's unjust enrichment claim because it determined that Laydon did not "allege any relationship between himself and any of the Defendants or how Defendants benefitted at Plaintiff's expense." *See* March 28, 2014 Order, at *45.[4] Here CalSTRS claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing arise from transactions conducted directly with Defendants. *See* Briganti Decl. Ex. 1, ¶¶ 672. Defendants benefited from these transactions at CalSTRS' expense by overcharging and/or underpaying CalSTRS for Yen purchased and sold during the Class Period. *Id.* ¶¶ 672-87. Because CalSTRS has the appropriate relationship to the Defendants it should be allowed to intervene and assert its claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing.

---

[4] Laydon respectfully disagrees with this Court's dismissal of the Second Consolidated Amended Complaint's unjust enrichment claim and preserves this claim for appeal purposes.



### IV. Alternatively, CalSTRS Meets the Requirements for Permissive Intervention Under Fed. R. Civ. P. 24(b)(1)(B)

Permissive intervention is allowed under the federal rules where an intervenor's claim or defense shares a question of law or facts with the main action and allowing intervention would not cause undue delay or prejudice the adjudication of the rights of the original parties. *See* FED. R. CIV. P. 24(b)(1)(B); *see also Louis Berger Group, Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489 (S.D.N.Y. 2011). While granting permissive intervention is at the discretion of the court, the standard is to be liberally construed and is satisfied where a single common question of law or fact is involved, despite factual differences between the parties. *See McNeil v. New York City Housing Authority*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

CalSTRS satisfies the common question of law or fact standard for permissive intervention. CalSTRS complaint asserts the same claims as this action, including claims under the Sherman Act, Clayton Act, Commodity Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act. *See* Briganti Decl. Ex. 1, ¶¶ 746-847. The theory of Defendants' liability is also based on the same underlying facts and occurrence, namely the manipulation of both Yen-LIBOR and Euroyen TIBOR. Allowing CalSTRS to intervene would also cure the deficiencies identified in the March 28, 2014 Order related to the unjust enrichment and contract law claims. *See* March 28, 2014 Order, at *45.

Nor would intervention cause any undue delay or prejudice to the rights of the existing parties. This action is still early on in the litigation process and discovery has not yet begun. Additionally, CalSTRS is represented by the same counsel as Laydon and so joining as a party is not likely to cause a delay. *See Davis v. Smith*, 431 F. Supp. 1206, 1209 (S.D.N.Y. 1977) (explaining that undue delay or complication is unlikely where all named plaintiffs are represented by the same counsel). If anything, allowing CalSTRS to intervene will create greater efficiencies moving forward by allowing counsel to coordinate discovery for all plaintiffs once the discovery stay is lifted.

For the reasons set forth above, CalSTRS' request for leave to intervene in this action should be granted.

Respectfully submitted,

Vincent Briganti /RG

cc: Counsel of Record (via ECF)