IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, OKLAHOMA POLICE PENSION & RETIREMENT SYSTEM and STEPHEN P. SULLIVAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>– against –<br><br>MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,<br><br>Defendants. | Docket No. 12-cv-3419 (GBD) (HBP)<br><br>ECF Case |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

LEGAL STANDARD.................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

    I. Certification of the March 31 Order will materially advance the litigation by avoiding potential duplication of discovery and trial. ..................................................................... 4

    II. Certification as to the RICO's extraterritorial application is warranted. ........................ 5

        A. RICO's extraterritorial application is a controlling question of law. ....................... 5

        B. Whether a plaintiff must plead that each element wire fraud occurred domestically is an issue of first impression for the Second Circuit. .............................................. 7

    III. Certification of the question of Plaintiff's RICO standing is also appropriate for interlocutory review. .......................................................................................................... 7

        A. The issue of RICO standing is a controlling question of law. ................................. 8

        B. There is substantial ground for difference of opinion as there is conflicting authority on the RICO standing/proximate causation requirement. ......................... 9

    IV. Certification as to the question of relation back is appropriate. .................................. 11

        A. Whether the claims are time-barred is a controlling question of law. .................... 12

        B. There is a substantial ground for difference of opinion. ......................................... 12

CONCLUSION.......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases:**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) .................................................................................................. 11

*Beach v. Citigroup Alternative Investments LLC,*
    No. 12 Civ. 7717, 2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) ..................... 14

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) .......................................................................... 3, 4

*Chevron Corp. v. Donzinger*,
    871 F. Supp. 2d 229 (S.D.N.Y. 2012) ............................................................................. 6

*Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee*
    *Second Mortg. Loan Litig.),*
    622 F.3d 275 (3d Cir. 2010) .......................................................................................... 14

*European Cmty. v. RJR Nabisco, Inc.,*
    764 F.3d 129 (2d Cir. 2014) .............................................................................. 2, 6, 7, 8

*European Cmty. v. RJR Nabisco*, *Inc.*,
    No. 11-2475, 2015 U.S. App. LEXIS 5991, *reh'g denied* (2d. Cir. Apr. 13, 2015) ... 6, 7, 8

*Fed Hous. Fin. Agency v. UBS Americas Inc.*,
    712 F.3d 136 (2d Cir. 2013) .......................................................................................... 12

*Fed Hous. Fin. Agency v. UBS Americas Inc.,*
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) .......................................................................... 13

*Glatt v. Fox Searchlight Pictures Inc.*,
    No. 11 Civ. 6784, 2013 U.S. Dist. LEXIS 139594 (S.D.N.Y. Sept. 17, 2013) ............ 4, 10

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) .......................................................................................................... 11

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258 (1992) ...................................................................................................... 10

*In Litzler v. CC Investments, L.D.C.*,
    411 F. Supp. 2d 411 (S.D.N.Y. 2006) .......................................................................... 12

*In re A2P SMS Antitrust Litig.*,
    No. 12 Civ. 2656, 2015 U.S. Dist. LEXIS 24909 (S.D.N.Y. March 2, 2015) ................... 7

*In re Enron Corp.*,
   No. 06 Civ. 7828, 2007 U.S. Dist. LEXIS 70731 (S.D.N.Y. Sept. 24, 2007) .................... 4

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013) .............................................................................. 12

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 1997 U.S. Dist. LEXIS 11937 (S.D.N.Y. Aug. 9, 1997) ........ 10

*Johnson v. City of Shelby*,
   135 S. Ct. 346 (2014) ...................................................................................................... 13

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*,
   921 F.2d 21 (2d Cir. 1990) ................................................................................................ 3

*Odle v. Wal-Mart Stores Inc.*,
   No. 11 Civ. 2954, 2013 U.S. Dist. LEXIS 1879 (N.D. Tex. Jan. 7, 2013) ......................... 4

*Pollack v. Laidlaw Holdings*,
   No. 90 Civ. 5788, 1993 U.S. Dist. LEXIS 8783 (S.D.N.Y. June 25, 1993) ....................... 5

*Republic of Colom. v. Diageo N. Am., Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ................................................................................... 3

*Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005) ............................................................................... 4

**Statutes:**

28 U.S.C. § 1292(b) .......................................................................................................*passim*

**Rules:**

Fed. R. Civ. P. 15(c) ............................................................................................................ 2, 13

Plaintiff Jeffrey Laydon ("Laydon") and Proposed Plaintiffs Stephen P. Sullivan ("Sullivan") and Oklahoma Police Pension & Retirement System ("OPPRS") (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their motion for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the Court's March 31, 2015 Memorandum Decision and Order ("March 31 Order" or "Order").  *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2015 U.S. Dist. LEXIS 44126 (S.D.N.Y. Mar. 31, 2015) (ECF No. 448). The March 31 Order, in relevant part, denied Plaintiffs leave to amend their Complaint to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and to add Sullivan and OPPRS to the action. Plaintiffs intend to seek immediate review of the questions of law presented in the March 31 Order.

## PRELIMINARY STATEMENT

As of last Thursday, Defendant Deutsche Bank AG ("Deutsche") admitted to and pled guilty for the misconduct of at least twenty-nine of its managers, traders, and rate submitters from various offices, including New York.[1]  Deutsche acknowledged that from approximately 2005 through 2010, its New York branch manipulated Euroyen TIBOR by submitting rates to benefit its trading positions,[2] utilizing U.S. wires to execute these trades.  Based on the

---

[1] Financial Conduct Authority Final Notice against Deutsche Bank AG, FCA Ref. No. 150018, at 12 (Apr. 23, 2015); *see also* United States Dep't of Justice, Criminal Division, Fraud Section and Antitrust Division Deferred Prosecution Agreement and Attachment A Statement of Facts with Deutsche Bank AG (Apr. 23, 2015); New York State Dep't of Financial Servs. Consent Order Under New York Banking Law §§ 44 and 44-a, at 1, 4 (Apr. 23, 2015).

[2] *See* New York State Dep't of Financial Servs. Consent Order Under New York Banking Law §§ 44 and 44-a, at 1, (Apr. 23, 2015).  Likewise, past government settlements revealed that Defendant RBS' Yen derivatives trader helped manage the short-term tenors of the Yen trading book from his Connecticut trading desk, using U.S. wires to execute his trades and communicate with foreign-based traders. CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, at 7 (Feb. 06, 2013). Defendant UBS' senior manager of Group Treasury based in Stamford, Connecticut ordered the manager of the Yen trading desk, via U.S. wires, to make the bank appear more creditworthy when issuing its Yen-LIBOR quotes. Department of Justice Appendix A Statement of Facts, at 42 (Dec. 18, 2012).

Defendants' RICO arguments, however, Your Honor found that their wire fraud scheme was not managed from and directed at the United States, despite their admitted abuse of interstate wires. The question of "whether domestic conduct satisfying fewer than all of the [wire fraud] statute's essential elements could constitute a violation of such a statute" was expressly left open by *European Cmty. v. RJR Nabisco, Inc.,* 764 F.3d 129, 140-42 n.14 (2d Cir. 2014) ("*RJR Nabisco*"). The Court should certify this issue of first impression for immediate review, as it will materially advance the litigation in the most efficient manner.

    The Court's second basis for refusing to permit Plaintiffs to add RICO claims to their Complaint—that Plaintiffs lacked a sufficiently direct connection between Defendants' alleged misconduct and their injury—also presents a question of law that is ripe for certification. The question of proximate causation necessary to support a RICO claim is controlling law, and at minimum there is a conflict between this Court's proximate cause analysis and the legal standard applied to the adequacy of proximate causation.

    Also of first impression in the Second Circuit is the issue of relation back of newly-named plaintiffs' claims under FED. R. CIV. P. 15(c) in the class action context. This question is of significant precedential value, as many class actions are pending in this circuit asserting claims which are subject to change throughout the litigation as new facts come to light.

    The Court should certify these questions of law for immediate appeal in the interest of proceeding with this case in an efficient, non-duplicative manner.

## FACTUAL BACKGROUND

    Laydon filed his Second Consolidated Amended Class Action Complaint ("SAC") on April 15, 2013. (ECF No. 150.) On June 17, 2014, Plaintiffs moved for leave to amend and filed the Proposed Third Amended Class Action Complaint ("PTAC"). (ECF Nos. 302, 302-2.) Plaintiffs sought to add, among other things, RICO claims based on the Second Circuit's

2

clarification of RICO's territorial scope in *RJR Nabisco*, and to add additional class representatives, Sullivan, who traded Yen currency futures contracts on the Chicago Mercantile Exchange, and OPPRS, who traded Yen currency forward agreements. (ECF No. 302-2.)

The Court denied Plaintiffs leave to amend, holding, *inter alia,* that (i) the proposed RICO claims sought an impermissible extraterritorial application of U.S. law (March 31 Order at 14); (ii) Plaintiffs lack standing to assert RICO claims because their injuries are too remote and speculative (*id.* at 17-20); and (iii) Sullivan's and OPPRS' claims did not relate back under FED. R. CIV. P. 15(c).

## **LEGAL STANDARD**

Section 1292(b) provides that an interlocutory order may be certified for immediate appeal if: (i) the order involves a "controlling question of law"; (ii) as to which there is "substantial ground for difference of opinion"; and (iii) an "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 921 F.2d 21, 23-25 (2d Cir. 1990). Large, complex cases present greater efficiency concerns so "certification may be more freely granted in so-called 'big' cases." *Republic of Colom. v. Diageo N. Am., Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007).

With respect to the first prong, a "question of law" must be "pure," whereby "the reviewing court could decide [it] quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (citations omitted). A question of law is controlling if "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Glatt v. Fox Searchlight Pictures Inc.*,

No. 11 Civ. 6784, 2013 U.S. Dist. LEXIS 139594, at *4 (S.D.N.Y. Sept. 17, 2013) (citation omitted).

The second prong, "substantial ground for difference of opinion," "is met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Capitol Records,* 972 F. Supp. 2d. at 551 (quoting *In re Enron Corp.*, No. 06 Civ. 7828, 2007 U.S. Dist. LEXIS 70731, at *6 (S.D.N.Y. Sept. 24, 2007)). A court need not conclude that its decision was incorrect in order to determine that substantial grounds exist for a difference of opinion. *See Odle v. Wal-Mart Stores Inc.*, No. 11 Civ. 2954, 2013 U.S. Dist. LEXIS 1879, at *10 (N.D. Tex. Jan. 7, 2013) ("Although this Court believes its previous decision granting Defendant's motion to dismiss was correct, it still finds that there is substantial ground for difference of opinion.").

In this circuit, "[c]ourts place particular weight" on the third factor. *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005). To satisfy this prong, a party must show that an immediate appeal "promises to advance the time for trial or to shorten the time require for trial." *Id.*

## ARGUMENT

### I. Certification of the March 31 Order will materially advance the litigation by avoiding potential duplication of discovery and trial.

The most efficient way to advance this litigation is to permit immediate appellate review of the March 31 Order. The Court already sustained Laydon's CEA claims, (ECF No. 270), and ordered discovery to commence on May 15, 2015. (ECF No. 451.)  This case is moving forward and the parties will soon expend time and resources conducting discovery in the United States and abroad.  If certification of the March 31 Order is denied, "a substantial duplication of effort might be required if, following a trial on the remaining claim[], [Plaintiffs] obtained a reversal of

4

the Court's decision on appeal." *See Pollack v. Laidlaw Holdings,* No. 90 Civ. 5788, 1993 U.S. Dist. LEXIS 8783, at *10 (S.D.N.Y. June 25, 1993) (permitting interlocutory review of the court's decision that securities claims were not viable to avoid "much repetition of discovery and retrial").

It would be inefficient and unduly costly to require the parties to litigate the CEA action to judgment, only to have the Court's RICO, antitrust, and statute of limitations holdings reversed in whole or in part by the Second Circuit, as all claims are based on the same conduct: Defendants' actions in the Euroyen TIBOR and Yen-LIBOR markets. Certification is the most effective manner to avoid duplication. *See Anderson Group LLC v. City of Saratoga Springs*, No. 05-cv-1369 (GLS/DRH), 2008 U.S. Dist. LEXIS 39028, *24 (N.D.N.Y May 13, 2008) (certifying questions after determining the "resolution of these questions would undoubtedly advance the termination of this litigation by streamlining and synchronizing the arguments, evidence and jury instructions presented at trial.").

## II. Certification as to RICO's extraterritorial application is warranted.

### A. RICO's extraterritorial application is a controlling question of law.

The March 31 Order involves a "pure" question of law as to whether domestic conduct satisfying fewer than all of the essential elements of wire fraud, 18 U.S.C. § 1341, establishes a violation of the wire fraud statute. Judge Jacobs recently urged that "district courts should not hesitate to certify an interlocutory appeal" pertaining to this exact issue. *European Cmty. v. RJR Nabisco*, No. 11-2475, 2015 U.S. App. LEXIS 5991, at *14, *reh'g denied* (2d. Cir. Apr. 13, 2015) (Jacobs, J., dissenting) (citation omitted).

In *RJR Nabisco*, the Second Circuit clarified that RICO does *not* require that the alleged enterprise itself be domestic in nature. *RJR Nabisco,* 764 F.3d at 138-39 ("RICO does not qualify the geographic scope of the enterprise."); *see also Chevron Corp. v. Donzinger*, 871 F. Supp. 2d

5

229, 245 (S.D.N.Y. 2012) ("the focus properly is on the pattern of racketeering activity and its consequences," not on the enterprise).  The Second Circuit held that "RICO applies extraterritorially if, and only if, liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate." *RJR Nabisco,* 764 F.3d at 136.  In *RJR Nabisco*, one of the alleged predicate acts giving rise to RICO liability was wire fraud, which the Second Circuit held does not apply extraterritorially. *Id.* at 141.  The Second Circuit stated that the complaint alleged sufficient domestic conduct to satisfy each element of wire fraud, but expressly declined to reach the issue of "whether domestic conduct satisfying fewer than all of the statute's essential elements could constitute a violation of such a statute." *Id.* at 142. n.14.

In the March 31 Order, the Court relied upon the Second Circuit's decision in *RJR Nabisco* in holding that "[t]he PTAC describes actions that are far too attenuated to sufficiently plead that the scheme to defraud came about in the U.S." (March 31 Order at 16.)  By requiring the Defendants' scheme to defraud, as well as the other elements of wire fraud, to be domestic, the Court's conclusion conflicts with *RJR Nabisco's* holding that an enterprise need not be domestic to satisfy RICO. *See RJR Nabisco*, 764 F.3d at 138 ("Under that standard, if an enterprise formed in another nation sent emissaries to the United States to engage in domestic murders, kidnappings, and violations of the various RICO predicate statutes, its participants would be immune from RICO liability merely because the crimes committed in the United States were done in conjunction with a foreign enterprise.").  An immediate appellate decision regarding RICO's extraterritorial application would alleviate the uncertainty that *RJR Nabisco* created.

Although Laydon's Commodity Exchange Act ("CEA") claims are proceeding and certifying this issue of law will not terminate the action, courts "have long recognized that the

6

possibility of termination is not the stand-alone test for a 'controlling question' under § 1292(b)." *See In re A2P SMS Antitrust Litig.*, No. 12 Civ. 2656, 2015 U.S. Dist. LEXIS 24909, at *11 (S.D.N.Y. March 2, 2015). The question of the proper scope of the statute's application is also controlling insofar as it has precedential value given the vast number of RICO claims pled in the district courts of this circuit. *See RJR Nabisco*, 2015 U.S. App. LEXIS 5991, at *14. (Jacobs, J., dissenting) ("The frequency of RICO litigation in this Circuit all but ensures that district courts will face vexing questions about this."). This pressing RICO issue will surely be present in other cross-border cases, given the ease of international wire fraud committed through use of the Internet and other technology. Because this question should be answered to give guidance to the trial courts in this Circuit, the Court should certify this question for appeal.

### B. Whether a plaintiff must plead that each element wire fraud occurred domestically is an issue of first impression for the Second Circuit.

There is a "substantial ground for difference of opinion" regarding the extraterritoriality of RICO. The Second Circuit has expressly declined to answer this question. *See RJR Nabisco,* 764 F.3d at 142 n.14. Certification of the March 31 Order presents a uniquely appropriate use of 28 U.S.C. § 1292(b), as one Second Circuit judge recently expressed his view that questions regarding RICO's extraterritorial application are appropriately certified under this statute. *See RJR Nabisco*, 2015 U.S. App. LEXIS 5991, at *14 (Jacobs, J., dissenting). The Second Circuit's RICO precedent is currently in substantial flux, waiting for a question of law precisely like the one here to clarify extraterritorial application. Certification is the appropriate means to resolve this substantial ground for difference of opinion.

### III. Certification as to the question of Plaintiff's RICO standing is also appropriate for interlocutory review.

The Court held in its March 31 Order that Plaintiff lacked "a sufficiently direct connection" between the alleged misconduct and the injury to support a RICO claim." (March 31

7

Order at 20.) In essence, the Court found that any harm Defendants caused to Plaintiffs was not sufficiently direct to meet the proximate causation requirement that is applicable to RICO claims and, which the Court recognized, is largely borrowed from federal antitrust jurisprudence. But in issuing this decision, the Court gave no indication concerning who might be more directly harmed than Plaintiffs and why.

By denying the addition of RICO claims, the Court failed to resolve who (if not Plaintiffs) might be the party more directly harmed by Defendants' actions such that Plaintiffs lack standing to enforce a RICO claim. And in doing so, the Court left unresolved a controlling question of law that will have a significant impact on the myriad of pending cases involving commodity manipulation and mail and wire fraud with respect to benchmark rates such as Yen-LIBOR and Euroyen TIBOR.[3] As such, the question—what degree of directness (i.e. proximate cause) must exist in a benchmark manipulation case to establish RICO standing—is a controlling question of law that is appropriate for certification under 28 U.S.C. §1292(b). In addition to being a controlling question of law, there is a "substantial ground for difference of opinion" as courts in this Circuit and others view the proximate causation requirements in a manner that conflicts with this Court's decision. Certifying this question will materially advance not only this litigation but other litigation pending in this District concerning similar behavior regarding other benchmark rates.

### A. The issue of RICO standing is a controlling question of law.

---

[3] For example, in *Sullivan v. Barclays plc, et al*, No. 13 Civ. 2811, ECF No. 139 (S.D.N.Y.), pending before Judge Castel, the class alleges that the defendant contributor panel banks manipulated the Euro Interbank Offered Rate ("Euribor") in violation of the CEA, 7 U.S.C. §§ 1, *et seq.*, Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq.*, and RICO, 18 U.S.C. §§ 1961. Likewise, in *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, No. 15 Civ. 00871, ECF No. 1 (S.D.N.Y.), pending before Judge Stein, the class alleges the defendant contributor panel banks manipulated Swiss franc LIBOR in violation of the CEA, 7 U.S.C. §§ 1, *et seq.*, Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq.*, Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, and RICO, 18 U.S.C. §§ 1961-1968.

By ruling that Plaintiffs lack RICO standing (and thus the proposed amendment to add RICO claims would be futile), the Court has determined that derivative holders that trade instruments priced based on benchmarks are too remote to claim injury. This Court's pronouncement, and any decision reviewing this ruling by the Second Circuit, will have a wide-ranging (and immense) impact on current and future RICO claims involving benchmark manipulation. Thus this question is properly considered a controlling question of law. *See Glatt*, 2013 U.S. Dist. LEXIS 139594, at *4. The proximate causation question is purely a legal one, which does not require the Second Circuit to analyze the sufficiency of the pleadings: the investors' financial instruments and their relationship to Yen-LIBOR and Euroyen TIBOR is objectively apparent. *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 U.S. Dist. LEXIS 11937, *11-12 (S.D.N.Y. Aug. 9, 1997) (citing 16 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2d § 3931 at 458-59 (1996)) ("[D]ecisions on the pleadings may be appropriate for interlocutory review when they present difficult questions of substantive law, rather than the technical sufficiency of the pleadings."). A reversal of this Court's opinion would allow similarly situated investors in benchmark derivatives to recover for Defendants' wrongdoing both in this and other benchmark manipulation cases.

### B. There is substantial ground for difference of opinion as there is conflicting authority on the RICO standing/proximate causation requirement.

The Court's RICO "remoteness" conclusion centered on its conclusion that the instruments that Sullivan and OPPRS—"Yen currency futures contracts and forward agreements"—"are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR."[4] (March 31 Order at 20.) This conclusion respectfully diverges from the type of inquiry the

---

[4] The Court also stated that Laydon did not have standing to support his RICO claims because the newly alleged facts in the PTAC failed to cure the proximate cause deficiencies identified in the Court's March 28, 2014 Decision and Order. *See Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2014 U.S. Dist. LEXIS 46368 (S.D.N.Y. Mar. 28, 2014) (ECF No. 270).

9

Supreme Court in *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992) applies to RICO proximate causation questions.  "Remoteness" questions whether a claimed injury relies on an initial injury to a third party, not the steps a plaintiff must take to prove a causal chain.

The Supreme Court in *Holmes* articulated how proximate cause weeds out claims of remote consequential damages that are not readily foreseeable: "a plaintiff who complained of injury flowing ***merely*** from the misfortunes visited on a third person by the defendants' acts" is legally prohibited from recovering.  *Holmes*, 503 U.S. at 268-69 (emphasis added).

In *Holmes,* and the subsequent cases evaluating remoteness arguments, the Supreme Court focused primarily on whether plaintiff's injury relies on harm to a third party and a consequential loss to plaintiff.  *Id.* at 271 (plaintiff's injury was "purely contingent on the harm suffered by the broker-dealers . . . which left them without the wherewithal to pay customers' claims"); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-60 (2006) (competitor's alleged loss of customers due to defendants' underpayment of New York sales tax relied on a primary loss to New York causing by a secondary alleged effect to plaintiff); *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) (Hemi's failure to file cigarette sales reports with New York State (a third party) resulted in the State not passing such information on to New York City.  Hemi's retailer customers (a fourth party) were the ones obligated to pay the tax, but chose not to do so, "causing" New York City millions of dollars in lost taxes).  *Id.* at 9-10.

None of the plaintiffs in *AGC*, *Holmes*, *Anza*, or *Hemi* were the target of the defendants' conduct nor had a direct economic interest affected by the defendants' crimes.  Each plaintiff's injury was dependent upon another more direct injury to a third party.

Proposed plaintiffs here, as Yen currency futures and forwards traders, along with other participants in the Euroyen derivatives market, were the Defendants' *targets*.  The proposed

10

plaintiffs adequately pled that Defendants' aim of their collusive setting of Yen-LIBOR and Euroyen TIBOR was to extract unlawful profits in the Euroyen derivatives market, not in some ancillary market that was affected secondarily.[5] The proposed plaintiffs, as the Court recognized in the March 31 Order, "include[] analyses of how Yen-LIBOR and Euroyen TIBOR allegedly impact the value of both the CME Yen currency futures contracts in which Sullivan traded . . . and the Japanese Yen currency forward agreements in which OPPRS traded . . . . (March 31 Order at 19.) There is, therefore, a substantial ground for difference of opinion concerning how the *Holmes* remoteness test operates where a pleading articulates an impact that is not dependent upon the harm to a third party.

**IV. Certification as to the question of relation back is appropriate.**

Statute of limitations rulings fall into the "exceptional circumstances" that warrant interlocutory review. *See In Litzler v. CC Investments, L.D.C.*, 411 F. Supp. 2d 411, 413 (S.D.N.Y. 2006) (Hellerstein, J.) (certifying the issue of equitable tolling for interlocutory appeal); *Fed Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013) (interlocutory review of standing to bring claims and the timeliness of claims); *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 428, 476 n.1 (S.D.N.Y. 2013) (observing that "exceptional cases" include issues of "statutes of limitations"). Indeed, in certifying a timeliness ruling, one court recently noted that:

> [T]imeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure.

---

[5] Defendants knew of this pricing relationship and intentionally exploited it for their financial benefit during the Class Period. RBS even settled claims related to the manipulation of Japanese Yen "foreign exchange ('FX') forwards" with the United States Commodity Futures Trading Commission ("CFTC") because those products are priced based on Yen-LIBOR. *See* CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions against RBS and RBS Securities Japan Limited, CFTC Docket No. 13-14 (Feb. 6, 2013), Ex. B-4 to PTAC, at 6 (ECF No. 302-2.)

*Fed Hous. Fin. Agency v. UBS Americas Inc.,* 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012).

### A. Whether the claims are time-barred is a controlling question of law.

The Court should certify the question of whether claims of newly-named plaintiffs in the class action context relate back under Fed. R. Civ. P. 15(c) to the original time of filing when the claims are based on a different theory of liability, in light of the Supreme Court's holding in *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). In *Johnson*, the Supreme Court held that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 346. A complaint must adequately plead sufficient facts to show substantive plausibility, but need not set out a legal theory for the plaintiff's claim for relief. *Id.* at 347.

A Second Circuit decision reviewing the Court's relation back analysis would have significant precedential value in class actions filed within this circuit. In many class action cases—like this one—new facts and defendants are revealed during discovery, and the contours of the class and its claims change. Where to strike the balance between adding new class representatives based on these changing circumstances and the repose that is appropriately given to defendants is a significant question of law.

### B. There is a substantial ground for difference of opinion.

The March 31 Order implicates a difficult issue of first impression in the Second Circuit. As this Court noted, the Second Circuit has not addressed the circumstances under which the claims of a newly named plaintiff will relate back to the original time of filing in the class action context. (March 31 Order at 9 (citing *Beach v. Citigroup Alternative Investments LLC,* No. 12 Civ. 7717, 2014 U.S. Dist. LEXIS 30032, at *19 (S.D.N.Y. Mar. 7, 2014))) ). *Beach* imposed a requirement that the newly named plaintiff's claims be identical to the class's claims, a requirement that is in conflict with other circuits. *See Drennan v. PNC Bank, NA (In re Comty.*

12

*Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.),* 622 F.3d 275, 300 (3d Cir. 2010) (stating that a proposed class representative's Truth In Lending Act and Home Ownership and Equity Protection Act claims could relate back under Rule 15(c) because they "share a common factual and legal nexus" with the named plaintiffs' Real Estate Settlement Procedures Act claims "i.e., both claims are predicated on defendants' alleged predatory lending scheme and the charging of fraudulent and excessive closing fees."). Thus, the Court should certify this question for review, as there is no controlling Second Circuit opinion on the issue.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order certifying the March 31 Order under 28 U.S.C. § 1292(b) for immediate appeal.

Dated:   April 30, 2015

    White Plains, New York    **LOWEY DANNENBERG COHEN & HART, P.C.**

        By:   */s/ Vincent Briganti*
            Vincent Briganti
            Geoffrey M. Horn
            Peter D. St. Phillip
            Thomas Skelton
            Raymond Girnys
            Christian Levis
            One North Broadway
            White Plains, New York 10601
            Tel.: 914-997-0500
            Fax: 914-997-0035
            vbriganti@lowey.com
            pstphillip@lowey.com
            tskelton@lowey.com
            rgirnys@lowey.com
            clevis@lowey.com

            *Interim Lead Class Counsel*

            Nicole Lavallee
            Todd A. Seaver

**BERMAN DEVALERIO**
One California Street, Suite 900  San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282
nlavallee@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan (PE-6812)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermandevalerio.com

*Additional Counsel for Plaintiffs*

14