

Three World Financial Center
New York, New York 10281-2101
Telephone: 212-415-8600
Fax: 212-303-2754
www.lockelord.com

Gregory T. Casamento
Direct Telephone: 212-415-7525
Direct Fax: 212-303-27540
gcasamento@lockelord.com

May 13, 2015

Via ECF

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Laydon v. Mizuho Bank, Ltd. et al.*, No. 1:12-cv-03419-GBD
  Response in Opposition to CalSTRS' Motion to Intervene

Dear Judge Daniels:

We represent the HSBC Defendants in the above-referenced action, and write on behalf of all defendants in opposition to the letter motion filed by California State Teachers' Retirement System ("CalSTRS") on April 29, 2015, seeking leave to intervene in this action.

CalSTRS seeks to achieve by intervening what this Court did not allow Plaintiff to do by amending: radically alter and expand the putative class to include financial instruments (i) with no pricing relationship to Yen LIBOR or Euroyen TIBOR and (ii) that are not governed by the Commodity Exchange Act ("CEA")—the statutory basis for the only surviving claims asserted by Plaintiff Jeffrey Laydon. As explained below, CalSTRS does not satisfy the requirements for intervention, and its proposed claims are futile. Its letter motion should accordingly be denied.

**I.  CalSTRS Is Not Entitled to Intervene as of Right.**

To establish a right to intervene, CalSTRS must: "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001); *see also Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014); *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).

"Failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd*, 770 F.3d at 1057 (emphasis in original and citations omitted); *see also Farmland Dairies v. Comm'r,* 847 F.2d 1038, 1043 (2d Cir. 1988). CalSTRS, which seeks to

intervene purportedly to "cure…deficiencies" identified by the Court and vastly expand the putative class alleged in the operative complaint, cannot meet any of these requirements.[1]

### A. CalSTRS' Motion to Intervene Is Untimely.

The Court determines whether a request to intervene is timely, in its discretion and based on the totality of the circumstances. *Hnot v. Willis Grp. Holdings, Ltd.*, 234 F. App'x 13, 14 (2d Cir. 2007) (citing *Catanzano*, 103 F.3d at 234 and *Farmland Dairies,* 847 F.2d at 1044); *see also Floyd*, 770 F.3d at 1058 (the "timeliness requirement … defies precise definition"). In making this determination, courts consider the following factors: (a) the length of time the applicant knew or should have known of its interest before moving; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) any unusual circumstances militating for or against a finding of timeliness. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390-91 (2d Cir. 2006). CalSTRS' motion, which relies on stale district court decisions, fails to acknowledge the Second Circuit's repeated instruction in recent decisions that the first factor—and not the second—is of primary importance. *See*, *e.g.*, *Hnot*, 234 F. App'x at 14; *Catanzano*, 103 F.3d at 232.

Tellingly, CalSTRS does not even attempt to explain its more than three-year delay in seeking to intervene. The PTAC alleged that investors such as CalSTRS were on notice of their Yen-LIBOR and Euroyen-TIBOR related claims by no later than July 26, 2011. (PTAC ¶ 726). This lawsuit was filed more than three years ago, on April 30, 2012. (ECF No. 1). Yet CalSTRS' motion offers no explanation or justification for its extensive delay in seeking to join this action. Courts in this Circuit routinely find delays of this magnitude fatal to motions to intervene. *See*, *e.g.*, *Catanazano*, 103 F.3d at 234 (affirming denial of motion to intervene as untimely where "proposed intervenors knew or should have known many months (probably years) before they filed their intervention motions"); *Hnot*, 234 F. App'x at 14-15 (affirming denial of motion to intervene as untimely where applicant learned of her interest in May 2005 but did not inform the court of her intent to intervene until mid-July 2006 and did not file her motion until August 2006); *see also Butler*, 250 F.3d at 182 (collecting cases, noting that the Second Circuit has found motions to intervene untimely where applicants delayed 8 months, 15 months, and 18 months after they knew or should have known of their interest). The Court should not aid an entity that slept on its rights.

Defendants have already been prejudiced by CalSTRS' delay because Defendants have now been forced to brief again the inadequacy of the same proposed legal claims previously asserted by

---

[1] Rule 24(c) requires a party seeking leave to intervene to attach its proposed pleading. CalSTRS ignores this requirement, opting instead to refer Defendants and the Court to Plaintiff's 345-page, 809-paragraph Proposed Third Amended Complaint ("PTAC," ECF No. 302-2) that this Court denied Plaintiff leave to file. (March 31 Order, ECF No. 448). The PTAC is devoid of any mention of or reference to CalSTRS, and the operative Second Amended Complaint ("SAC," ECF No. 150) does not purport to state causes of action for RICO violations or breach of contract, nor does it include allegations relating to Yen currency forward agreements. For purposes of this letter, therefore, Defendants assume that CalSTRS' motion to intervene is based on the proposed allegations filed as an attachment to Plaintiff's counsel's September 22, 2014 Declaration (ECF No. 388-1) in support of Plaintiff's motion for leave to file his PTAC.

two different aspiring plaintiffs. If intervention is allowed, Defendants would be further prejudiced by the need to engage in additional motion practice and oral argument regarding the adequacy of any amended pleading incorporating CalSTRS' claims and, to the extent any such claims survived motions to dismiss, because intervention would vastly expand the scope of this action. In contrast, CalSTRS will not be prejudiced if is not permitted to intervene because it is free to file a separate lawsuit—although its claims would be futile for the reasons discussed below—and "its absence from the [instant] litigation is not the cause of any harm [CalSTRS] may suffer." *MasterCard Int'l*, 471 F.3d 390-91.

### B. CalSTRS Has No Interest in This Action Sufficient to Justify Intervention.

"The explicit language of Rule 24(a) limits intervention as of right to cases in which the applicant claims an interest *relating to the property or transaction [that] is the subject of the action*...." *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 164 F.R.D. 313, 318 (N.D.N.Y. 1995) (emphasis in original). A proposed intervenor's interest must be "direct, substantial, and legally protectable" to support intervention. *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999).

The only surviving claims in this action are asserted by Plaintiff under the CEA. The only instruments CalSTRS allegedly transacted in are Yen currency forward agreements. As Plaintiff tacitly conceded when he withdrew OPPRS' proposed CEA claims on his motion to amend, Yen currency forward agreements like those traded by CalSTRS are exempt from the CEA's coverage and cannot give rise to CEA claims. (Pl's Mot. to Amend Reply, ECF No. 387, at 12 n.9 (dropping OPPRS' proposed CEA claims in response to Defendants' argument that forward rate agreements are exempt from statutory coverage); *see also* Defs.' Opp. to Pl.'s Mot. to Amend, ECF No. 361, at 20-22). Thus, CalSTRS has no interest in the prosecution of claims under the CEA and has no legitimate interest in this action.

CalSTRS' argument that it has a sufficient interest in this lawsuit because it "is an absent Class member covered by the PTAC" (Ltr. Motion at 6) must be rejected. First, because leave to file the PTAC was denied (*see generally* March 31 Order), its rejected allegations cannot support intervention. Moreover, CalSTRS' claim that it is an absent class member is simply incorrect. This Court has already rejected Plaintiff's claim that investors in Yen currency forward agreements are members of the existing class. (March 31 Order at 11) ("OPPRS transacted in Yen currency forward agreements that were purchased over-the- counter, rather than on any registered exchange. Thus, … OPPRS is not a member of the putative class identified in any of the three previously-filed complaints." (citation omitted)).[2]

Like the rejected Sullivan and OPPRS plaintiffs, CalSTRS' intervention would substantially expand the scope of this action by raising issues, for the first time, regarding products other than exchange-traded Euroyen TIBOR futures contracts. But "intervention cannot be used as a means to inject collateral issues into an existing action." *New York*, 198 F.3d at 365 (citation omitted) (proposed intervenor "cannot make" topics "an issue" where they were not previously "at issue

---

[2] The SAC, which is the operative complaint, limits the putative class to entities that entered into "Euroyen TIBOR futures contracts" on an exchange. (SAC ¶ 704).

in th[e] action"); *McBean v. City of New York*, 260 F.R.D. 120, 140-42 (S.D.N.Y. 2009) ("It is well-settled that intervenors must take the litigation as they find it at the time of intervention; they cannot change the issues framed between the original parties."); *Gordon v. Hunt*, No. 82-cv-1318, 1984 WL 1206, at *1 (S.D.N.Y. Oct. 31, 1984) (rejecting attempt to add new plaintiffs through intervention to serve as representatives for expanded class). Permitting CalSTRS to intervene here would greatly expand the scope of the putative class, introduce new theories of proximate cause, harm, and damages, and interject legal claims that have already been dismissed by the Court. The scope of discovery—which is scheduled to begin in just days—could significantly broaden, as would the universe of potential claimants.

This lawsuit is about CEA claims asserted by a putative class that purchased TIBOR-indexed futures contracts on an exchange. CalSTRS has not identified the requisite direct, substantial, and legally protectable interest in the subject matter of this action, and therefore has no right to intervene.

### C. The Disposition of This Action Will Not Impair CalSTRS.

CalSTRS next argues that it should be permitted to intervene because its claims could be "impaired" by potential adverse rulings in this case (Ltr. Motion at 7), but CalSTRS merely parrots the language of the requirement without explanation. That is for good reason—because CalSTRS did not transact in the instruments that are the subject of this litigation, its unrelated claims cannot be affected by it.[3] Regardless, any "impairment" to CalSTRS' litigation position is a result of CalSTRS' own impermissible delay in seeking to intervene or bring suit.

This action will not "impair or impede" CalSTRS' "ability to protect its interest" within the purview of Rule 24(a)(2) because although CalSTRS' claims are futile as explained below, it could nonetheless assert them in a separate action. *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied."); *New York*, 198 F.3d at 366 (affirming denial of motion to intervene, explaining that proposed intervenor would not be impaired because they could "still bring an independent action"); *Hnot v. Willis Grp. Holdings Ltd.*, No. 01-cv-6558, 2006 WL 3476746, at *5 (S.D.N.Y. Nov. 30, 2006), *aff'd*, 234 F. App'x 13 (2d Cir. 2007) (rejecting proposed intervenor's prejudice argument because "she remains free to bring a separate action against defendants").

Nor can CalSTRS justify intervention by claiming that it would be easier or less expensive to assert its claims alongside Plaintiff in this action rather than in a separate lawsuit,[4] as the Second Circuit has routinely rejected such arguments. *See*, *e.g.*, *In re Holocaust Victim Assets Litig.*, 225 F.3d at 199 (rejecting argument "that the goals of judicial economy and uniformity of decisions militate against duplicating the efforts of existing plaintiffs and proceeding separately," finding

---

[3] CalSTRS speculates that it could be adversely affected, under *stare decisis* principles, by rulings in this case. But this concern is meritless. As explained above, CalSTRS' claims are based on transactions in different types of instruments, with different entities, than Plaintiff's claims.

[4] *See* Ltr. Motion at 6 (arguing that "[w]hile CalSTRS could file its own independent action, CalSTRS would be deprived of the efficiencies and cost-savings of joining this existing action").

that "[t]hese potential obstacles to the pursuit of an independent lawsuit do not impair or impede the applicant's ability to protect its interest to an extent warranting intervention as of right").[5]

### D. CalSTRS Has Not Shown That Its Interests in This Action—to the Extent It Has Any—Will Not Be Adequately Protected.

CalSTRS completely fails to address the final requirement for intervention as of right: that any interest it has in this lawsuit is not adequately represented by Plaintiff. This is likely because, as discussed above, CalSTRS has *no* interest in this action. In any event, CalSTRS' failure to address this issue also provides a distinct basis to deny its motion.

"Whether or not representation of an intervenor's interest by existing parties is to be considered inadequate hinges upon whether there has been a showing of (1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence." *FTC v. First Capital Consumer Membership Servs.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001). CalSTRS does not allege that Plaintiff or its counsel suffers from any such defect. Instead, CalSTRS has retained Plaintiff's counsel and, despite claims that relate to different types of financial instruments, contends that it shares with Plaintiff a similar "theory of Defendants' liability." Ltr. Motion at 8. Thus, even if CalSTRS had a cognizable interest in this litigation (and it has identified none), it has shown no basis for finding Plaintiff inadequate to represent that interest. *See New York*, 198 F.3d at 367.

## II. The Court Should Also Decline Permissive Intervention Here.

CalSTRS' alternative request for leave to intervene under Rule 24(b) fares no better. A court may permit intervention by anyone with "a claim or defense that shares with the main action a common question of law or fact," if intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *New York*, 198 F.3d at 376. In determining whether to exercise its discretion to allow permissive intervention, courts review "[s]ubstantially the same factors" as in considering a motion for intervention as of right. *Hnot*, 234 F. App'x at 14. CalSTRS' request for permissive intervention should be denied for the same reasons as its request for intervention as of right.[6]

## III. CalSTRS' Proposed Legal Claims Are Futile.

Even if CalSTRS could otherwise satisfy the requirements for intervention—which it cannot— the Court should still deny CalSTRS' motion because its proposed legal claims are futile. "Although legal futility is not mentioned in Rule 24, courts have held that futility is a proper

---

[5] *See also Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972) (rejecting argument that proposed intervenor "will be required to bear the financial burden of duplicating [plaintiff's] efforts" in a separate lawsuit if intervention is denied; explaining that this "is not the sort of adverse practical effect contemplated by Rule 24(a)(2)"); *Hnot*, 2006 WL 3476746 at *5 (rejecting argument that intervention was appropriate because requiring proposed intervenor to bring a separate action "would impose unnecessary costs and burdens on her, defendants, and the Court").

[6] In particular, "[a] motion for permissive intervention, like one for intervention of right, must be timely…. If it is untimely, intervention must be denied." *MasterCard Int'l*, 471 F.3d at 391 (citing *Catanzano*, 103 F.3d at 234).

basis for denying a motion to intervene." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-cv-8472, 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008) (collecting authority, denying motion to intervene because intervenor's proposed pleading failed to state a viable claim for relief); *Kruse v. Wells Fargo Home Mortgage, Inc.*, No. 02-cv-3089, 2006 WL 1212512, at *7 (E.D.N.Y. May 3, 2006) (denying leave to intervene, in part because intervention would be futile where proposed complaint failed to state a claim). In determining whether claims of a proposed intervenor are futile, courts apply "the same standards as [they] would apply in considering a motion to dismiss" under Rule 12(b)(6). *In re Merrill Lynch & Co.*, 2008 WL 2594819 at *5.

CalSTRS' belated request to intervene is materially identical to Plaintiff's failed motion to add OPPRS (which, like CalSTRS, traded in Yen currency forwards only) by way of amendment—and therefore is equally deficient. As further shown below, CalSTRS' proposed Sherman Act, RICO, CEA, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims are all futile and its request to intervene should also be rejected on this basis.

### A. CalSTRS' Proposed Claims Are Time-Barred.

CalSTRS' last alleged Yen currency forward transaction was on December 30, 2010. Ltr. Motion at 2. The relevant date for determining whether an intervenor has asserted a claim within an applicable statute of limitations is the filing of the motion to intervene. *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986); 7C Wright & Miller, Federal Practice and Procedure § 1914 n. 25 (2d ed. 1986). CalSTRS did not file its motion to intervene until April 29, 2015, well past the expiration of the statute of limitation for each of its claims.

The limitations period for RICO and the Sherman Act is four years, while the CEA has a two-year statute of limitations. *Stolow v. Greg Manning Auctions Inc.*, 80 F. App'x 722, 724 (2d Cir. 2003); 7 U.S.C. § 25(c). Thus, CalSTRS' purported CEA claims expired on December 30, 2012, and its purported RICO and Sherman Act claims expired on December 30, 2014.[7]

CalSTRS' state law claims are similarly time-barred. Although CalSTRS does not allege facts showing where its claims purportedly accrued, CalSTRS is located in California, and its claims likely accrued there. Under New York's borrowing statute, N.Y. C.P.L.R. § 202, California's four-year statute of limitations period applies to CalSTRS' contract claims. *See* Cal. Code of Civ. Proc. § 337; *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1148 (Cal. 2001).[8]

---

[7] CalSTRS may argue that plaintiff's footnote in his September 22, 2014 reply in support of his motion for leave to amend should be interpreted as the "filing date" of CalSTRS' claims. (*See* ECF No. 387 at 8 n.2). This argument should be rejected. The proposed allegations attached to counsel's declaration in September 2014 alleged only state-law contract and unjust enrichment claims. No construction of the September 2014 submission can be interpreted to give defendants notice of CalSTRS' proposed federal claims. Moreover, the Court rejected Plaintiff's attempt to add a new plaintiff asserting new claims through a footnote in a reply brief.

[8] Even if New York's longer six-year statute of limitations were applied, the majority of CalSTRS' proposed contract and unjust enrichment claims—specifically, claims arising from transactions occurring between January 11, 2006 and April 29, 2009—would still be time-barred. *See* N.Y. C.P.L.R. § 213(2); (March 31 Order at 11) (holding proposed plaintiff OPPRS' contract and unjust enrichment claims time-barred where OPPRS failed to bring suit within six years of the transactions at issue); *CingleVue Int'l Pty, Ltd. v. eXo Platform NA, LLC*, No. 13-cv-818,

Because *all* of CalSTRS' alleged transactions underlying its contract claims occurred before April 29, 2011, CalSTRS' contract claims are time-barred. Unjust enrichment claims based on alleged "fraud or mistake" are governed by a shorter, three-year, statute of limitations—even when asserted against a contracting party. Cal. Code of Civ. Proc. § 338(d); *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 347 (Cal. Ct. App. 2008). Since CalSTRS' last alleged transaction was in December 2010 (ECF No. 388-1 at ¶ 672), all of its proposed unjust enrichment claims are similarly time-barred under California law.

As this Court has already explained, neither *American Pipe* tolling nor Rule 15's "relation back" doctrine can apply to CalSTRS' claims because (1) an investor in Yen currency forward agreements "is not a member of the putative class identified in any of the three previously-filed complaints," and (2) "its proposed claims do not arise out of the same transactions as Plaintiff's claims, nor can it be argued that Defendants were somehow on notice that an entity outside of the putative class would bring claims related to a different type of transaction years after the initial complaint was filed." (March 31 Order at 11). The Court has also already rejected Plaintiff's fraudulent concealment and equitable estoppel allegations, so CalSTRS may not rely on those theories to toll its claims. (*Id.* at 12-13 ("Plaintiff does what the Second Circuit has held is impermissible: he relies on the same allegations giving rise to OPPRS's proposed claims to argue that Defendants engaged in some activity that prevented OPPRS from timely filing.")). Thus, neither of these doctrines can revive CalSTRS' stale claims.

> **B. This Court's March 31 Order Establishes That CalSTRS' Proposed Sherman Act and RICO Claims Are Futile and That Yen Currency Forward Agreements Cannot Give Rise to CEA Claims.**

CalSTRS admits—as it must—that this Court's prior rulings render CalSTRS' proposed Sherman Act and RICO claims futile. *See* Ltr. Motion at 5; (March 28, 2014 Order, ECF No. 270, at 13-22 (dismissing antitrust claims for lack of antitrust standing and lack of restraint of trade); March 31 Order at 17-20 (finding RICO claims futile because (1) they are impermissibly extraterritorial and (2) plaintiffs' injuries are too remote and speculative to support RICO standing; finding antitrust claims futile for "fail[ure] to adequately plead: (1) antitrust injury; (2) that Plaintiff was an 'efficient enforcer' of the antitrust laws; and (3) restraint of trade")). CalSTRS offers no new allegations to support a different result for its proposed claims, nor could it, as the deficiencies this Court has identified involve failures to plead actionable conduct on the part of *Defendants* and are not plaintiff-specific.

CalSTRS' proposed CEA claim is futile as well. As noted above, CalSTRS cannot assert a CEA claim because the only instruments it allegedly transacted in are Yen currency forward

---

2014 WL 3400856, at *3 (N.D.N.Y. July 10, 2014) ("Breach of contract actions, including those alleging a breach of the implied covenants of good faith and fair dealing, accrue at 'the time of the breach[,even if] no damage occurs until later.'") (quotations omitted); *Plitman v. Leibowitz*, 990 F. Supp. 336, 337 (S.D.N.Y. 1998) ("[A]n unjust enrichment claim accrues upon occurrence of the wrongful act giving rise to the duty of restitution."). "[K]nowledge of the occurrence of the wrong … is not necessary to start the Statute of Limitations running in a contract action." *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 403 (N.Y. 1993).

agreements that are exempt from the CEA's coverage. CalSTRS also lacks statutory standing to bring CEA claims because its proposed injuries are too speculative and remote.[9]

### C. CalSTRS Cannot State a Claim for Breach of Contract or Unjust Enrichment.

CalSTRS' contention that it can state viable contract and unjust enrichment claims is premised on a fundamental mischaracterization of the products in which CalSTRS transacted: the false assertion that "Japanese Yen currency forward agreements are priced based on Yen-LIBOR and Euroyen-TIBOR." Ltr. Motion at 3. This central allegation cannot be reconciled with the Court's recent holding that "Yen currency futures contracts and forward agreements[] *are not* indexed or priced by reference to Euroyen TIBOR or Yen LIBOR," (March 31 Order at 20 (emphasis added)), which was based on Plaintiff's own allegations that Yen currency futures and forward agreements are priced with reference to the *U.S. Dollar-Japanese Yen exchange rate*—not the separate Yen LIBOR or Euroyen TIBOR benchmark. (*See* PTAC ¶ 638 (defining Yen currency futures), ¶ 644 (defining Yen currency forwards)). As shown below, CalSTRS' proposed contract and unjust enrichment claims cannot stand in the absence of a pricing relationship between CalSTRS' Yen currency forward agreements and Yen LIBOR or Euroyen TIBOR.

#### 1. CalSTRS Cannot State a Contract Claim Against the Alleged Counterparty Defendants.

CalSTRS proposes to assert a claim for breach of the implied covenant of good faith and fair dealing against eight Defendants with which CalSTRS allegedly transacted. Its proposed claim, however, is futile because the covenant "only applies where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks omitted); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 364 (S.D.N.Y. 2012). CalSTRS' failure to attach even a single contract at issue to its "proposed pleading" ends this inquiry.[10] In any event, as was true for already rejected plaintiff OPPRS, Yen LIBOR and Euroyen TIBOR are not "interwoven" into CalSTRS' alleged contracts in any way whatsoever, as pricing of Yen currency forwards does not reference Yen LIBOR or Euroyen TIBOR. (March 31 Order at 20).

Plaintiff's contention that "[t]hese claims" have been sustained by Judge Buchwald in the USD LIBOR MDL (Ltr. Motion at 4-5) ignores the key distinction between the MDL contract allegations and those CalSTRS seeks to assert: the over-the-counter instruments that gave rise to contract claims in the MDL *expressly reference USD LIBOR in their pricing formulae*, whereas

---

[9] March 31 Order at 20 ("Yen currency futures contracts and forward agreements, are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR, and any causation analysis leads to the conclusion that the connection is too attenuated and speculative to support standing.").

[10] Furthermore, with respect to three of its proposed counterparty Defendants—Citibank, HSBC, and Société Générale—CalSTRS fails to even identify any specific contract that it alleges was artificially priced. CalSTRS' failure to identify which Deutsche Bank- or HSBC-related entities it contracted with also renders insufficient CalSTRS' showing of privity as to those groups of defendants.

CalSTRS' Yen currency forwards *do not* reference either Yen LIBOR or Euroyen TIBOR. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR II*"), 962 F. Supp. 2d 606, 633 (S.D.N.Y. 2013) ("an implied duty not to manipulate LIBOR is 'in connection with' plaintiffs' explicit contractual right to receive a *LIBOR-based rate*" (emphasis added)). The MDL claims survived dismissal only because of this explicit relationship between the allegedly manipulated benchmark and the payments those plaintiffs made or received by the terms of their contracts—a relationship which this Court has already held is absent here. (March 31 Order at 20).

This missing link prevents CalSTRS from plausibly pleading the elements of an implied covenant claim. As Plaintiff acknowledges, a claim for breach of the implied covenant of good faith and fair dealing arises only where one party to a contract fails to fulfill "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" in the contract. *LIBOR II*, 962 F. Supp. 2d at 632 (cited at Ltr. Motion at 4). A reasonable person would not be justified in reading a promise about the integrity of Yen LIBOR or Euroyen TIBOR into a Yen currency forward agreement because that contract references neither of those benchmarks. *See, e.g.*, *Ari & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523-24 (S.D.N.Y. 2003) (dismissing breach of implied covenant claim where it sought "to recover for obligations that were not explicitly part of the Agreement" because "the implied covenant cannot be used to create independent obligations beyond the contract").

Furthermore, "to state a cause of action for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."[11] Plaintiff's unsupported allegation that Defendants intentionally made CalSTRS the target of their purported Yen LIBOR and Euroyen TIBOR manipulation are belied by the central fact that Yen currency forward agreements are *not* among the financial instruments priced by reference to Yen LIBOR or Euroyen TIBOR.

CalSTRS does not allege that anyone allegedly involved in the manipulation of Yen LIBOR and Euroyen TIBOR was even *aware* of CalSTRS' contracts, let alone that the contracting Defendants deliberately acted to impair, or recklessly disregarded, any right of CalSTRS to receive benefits under any agreement. *See, e.g.*, *Paul v. Bank of Am. Corp.*, No. 09-cv-1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011). In fact, of the eight counterparty Defendants, CalSTRS identifies only two (UBS and RBS) that allegedly participated in acts of manipulation that caused CalSTRS' losses. (*See* ECF No. 388-1 at ¶¶ 673, 675, 679, 682, 686). But these allegations relate to *Yen LIBOR* only. As explained above and in Defendants' prior briefing, there is no causal relationship between Yen LIBOR and the price of Yen currency forwards. (March 31 Order at 20; *see also* ECF No. 361 at 34). Therefore, these allegations must also fail.

---

[11] *Pitcairn Props., Inc. v. LJL 33rd St. Assocs., LLC*, No. 11-cv-7318, 2012 WL 6082398, at *5 (S.D.N.Y. Nov. 20, 2012), *aff'd sub nom. LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184 (2d Cir. 2013) (internal quotation marks omitted); *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 230 (2d Cir. 1991) (covenant of good faith and fair dealing entails "an implied undertaking on the part of each party that he will not *intentionally and purposely* do anything to prevent the other party from carrying out the agreement on his part" (emphasis added; internal quotation marks omitted)).

2.  CalSTRS Cannot State an Unjust Enrichment Claim Against the Non-Counterparty Defendants.

CalSTRS argues that its "claims for unjust enrichment and breach of the covenant of good faith and fair dealing are not futile because they arise from over-the-counter transactions in Euroyen-based derivatives conducted directly with Contributor Bank Defendants." Ltr. Motion at 3. But CalSTRS purports to bring unjust enrichment claims against fifteen Contributor Bank Defendants with which it admittedly did not transact—inexplicably ignoring this Court's order on Defendants' motion to dismiss. (ECF No. 388-1 at ¶¶ 819-21) (asserting cause of action for unjust enrichment against all Contributor Bank Defendants). CalSTRS has not alleged "some type of direct dealing or actual, substantive relationship" with any Defendants with which it did not transact and therefore cannot state a claim for unjust enrichment against those non-counterparty Defendants. (March 28, 2014 Order, at 13) (quoting *Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 478-82 (S.D.N.Y. 2014) (dismissing unjust enrichment claims asserted against non-counterparty defendants).

3.  CalSTRS Cannot State an Unjust Enrichment Claim Against the Alleged Counterparty Defendants.

CalSTRS' proposed unjust enrichment claim against the counterparty Defendants is equally futile. To state a claim for unjust enrichment, CalSTRS must plausibly allege that *each* counterparty Defendant (1) was enriched, (2) at CalSTRS' expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR I*"), 935 F. Supp. 2d 666, 737 (S.D.N.Y. 2013) (citing *Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012)). CalSTRS cannot do so.

First, CalSTRS' proposed unjust enrichment claim against counterparty Defendants is entirely duplicative of its proposed claim for breach of the implied covenant of good faith and fair dealing. Unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). Here, CalSTRS does not dispute that its proposed unjust enrichment claim arises from the same Yen currency forward contracts upon which it also asserts a claim for breach of the implied covenant of good faith and fair dealing. (ECF No. 388-1 at ¶ 819). Therefore, CalSTRS is not eligible to seek recovery in quasi-contract. *See, e.g.*, *Gianascio v. Giordano*, No. 99-cv-1796, 2003 WL 22999454, at *5 (S.D.N.Y. Dec. 19, 2003) (Daniels, J.); *Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.*, 676 F. Supp. 2d 100, 114-15 (S.D.N.Y. 2009).

Second, CalSTRS premises its purported unjust enrichment claim on a direct "pricing relationship" between Yen LIBOR/Euroyen TIBOR and Yen currency forward agreements, which simply does not exist.[12] (March 31 Order at 19-20). Furthermore, as explained above,

---

[12] *See* Ltr. Motion at 3 ("Japanese Yen forward agreements are priced based on Yen-LIBOR and Euroyen-TIBOR. Defendants knew of this pricing relationship and intentionally exploited it for their financial benefit."); *id.* at 4

CalSTRS does not even attempt to identify an act of manipulation that could have harmed its transactions for six of the eight counterparty Defendants. Therefore, CalSTRS cannot reasonably claim that "equity and good conscience" require restitution.

As in the contract context, CalSTRS' letter mischaracterizes Judge Buchwald's rulings in the USD LIBOR MDL, which upheld unjust enrichment claims only to the extent they arose from transactions that referenced USD LIBOR in their pricing. Judge Buchwald's holding was expressly premised upon the "alleg[ation] that [certain plaintiffs] purchased financial instruments from defendants wherein they paid defendants fixed sums and received in return a floating amount *tied to LIBOR*." *LIBOR II*, 962 F. Supp. 2d at 629 (emphasis added). That is not the case for CalSTRS.

### D. CalSTRS Fails to Specify What Claims It Seeks to Bring Against Which Defendants.

CalSTRS' failure to provide a proposed pleading as required by Rule 24(c) makes it impossible for Defendants, and the Court, to identify what claims CalSTRS is proposing to bring against which specific Defendants. CalSTRS says that it wants to "assert the same claims as Laydon," (Ltr. Motion at 2), but later indicates that it wants to assert claims that are not in Plaintiff's operative Second Amended Complaint. Ltr. Motion at 5 (seeking permission to assert RICO claims); (SAC ¶¶ 719-47) (asserting claims arising under the CEA and the Sherman Act, and for unjust enrichment).[13] CalSTRS states that it transacted with "UBS, RBS, JPMorgan, Deutsche, Citibank, Barclays, HSBC and Société Générale" and that these transactions form the basis for several of its claims (Ltr. Motion at 2-3), but fails to indicate which specific entities among these groups of Defendants were parties to the transactions.[14] CalSTRS states that its unjust enrichment claim is not futile because it arises from "over-the-counter transactions…conducted directly with" certain Defendants (Ltr. Motion at 3), but apparently seeks to bring the claim against all "Contributor BankDefendants [sic]" regardless of whether or not they contracted with CalSTRS. (ECF No. 388-1 at 9); *see also* Ltr. Motion at 4 (alleging that "Defendants were unjustly enriched"). CalSTRS asks the Court to allow it to assert claims that this Court has already dismissed as a matter of law, including antitrust and unjust enrichment claims. Ltr. Motion at 2, 5. And, CalSTRS seeks leave to bring claims against all "Defendants"—a group

---

("Because of this pricing relationship, and the direct nature of the contractual nature of the agreement between CalSTRS and the Defendants, any loss to CalSTRS was profit to Defendants.").

[13] As discussed above, as a matter of law, CalSTRS cannot assert CEA claims based on its alleged trading of Yen currency forward agreements that are not governed by the CEA. Those are the only claims Plaintiff is currently asserting, as Plaintiff's other claims were dismissed.

[14] For example, Plaintiff sued two different HSBC entities: HSBC Holdings plc and HSBC Bank plc. Early in the SAC (¶ 77) and PTAC (¶ 77), Plaintiff groups these separate entities together and refers to them collectively as "HSBC." CalSTRS' statement that it transacted with "HSBC" fails to adequately inform Defendants which HSBC-related entity CalSTRS transacted with and intends to sue. In addition, no Defendant is defined anywhere, in any proposed or operative pleading, as "Deutsche." Deutsche Bank AG was defined as "Deutsche Bank" in the PTAC (PTAC ¶ 65), and CalSTRS indicates in its letter that it wishes to add DB Group Services (UK) Limited as a defendant, but CalSTRS' reference to "Deutsche" in its letter motion fails to identify the specific entity with which it contracted and, therefore, fails to adequately notify Defendants of its proposed claims.

Hon. George B. Daniels
May 13, 2015
Page | 12

which remains undefined in any submission from CalSTRS—regardless of whether they have already been dismissed from the case for lack of personal jurisdiction or have yet to be served. *See generally* Ltr. Motion & ECF No. 388-1.[15]

These major gaps and inconsistencies in CalSTRS' "proposed pleading" mean that it has not adequately informed Defendants of the claims it wishes to assert or the bases therefor, as required by Rule 8(a). *See, e.g., Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (Rule 8 "requires factual allegations that are sufficient to give the defendant fair notice of what the ... claim is and the grounds upon which it rests").

\* \* \* \* \*

For the reasons set forth above, CalSTRS' letter motion seeking leave to intervene in this action should be denied.

Respectfully submitted,

Gregory T. Casamento
Counsel for HSBC Defendants

cc: All Counsel of Record (by email)

---

[15] CalSTRS' request for leave to add two new defendants—DB Group Services (UK) Limited and Bank of America—should be denied because CalSTRS does not provide a single allegation of wrongdoing against either of these entities, and does not indicate which (if any) claims it wishes to assert against them.