

**New York**
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

www.lowey.com

**Pennsylvania**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

May 26, 2015

<u>VIA ECF</u>

The Honorable George B. Daniels
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (GBD) (HBP)
CalSTRS' reply letter[1] in further support of its motion to be added as a representative plaintiff

Dear Judge Daniels:

Two incorrect, counterfactual themes dominate Defendants' opposition to the California State Teachers' Retirement System's ("CalSTRS") timely and well-supported motion to intervene: (i) that the Japanese Yen currency forward agreements CalSTRS directly transacted with a number of Defendants herein are not price based on Yen-LIBOR and/or Euroyen TIBOR (Defs. Opp. Ltr. at 8); and (ii) that permitting CalSTRS to intervene, in what has recently been described as one of the most pervasive frauds committed on the multi-trillion dollar financial market for Euroyen-based derivatives, would be unduly prejudicial to the very Defendants who have thus far pled guilty to Sherman Act and wire fraud violations, paid about $9 billion in fines, are targets of investigations by no less than nine government regulators in the United States and abroad, and who have self-reported criminal cartel activity impacting the very same instruments that CalSTRS transacted in hopes of securing conditional leniency pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA").

The Court should reject Defendants' arguments and permit CalSTRS to join the litigation at this early (still pleading) stage so that claims (and substantial economic losses) related to the Euroyen-based derivatives that it transacted are litigated alongside Laydon's sustained claims.[2]

---

[1] While the Court's March 31, 2015 Memorandum Decision and Order (ECF No. 448) ("March 31 Order") did not expressly provide for a reply, Defendants' significant mischaracterizations of CalSTRS' arguments and the applicable law cry out for a response. *See* Defendants Response in Opposition to CalSTRS' Motion to Intervene, ECF No. 471, dated May 13, 2015 ("Defs. Opp. Ltr."). To the extent necessary, Plaintiff Jeffrey Laydon ("Laydon") and CalSTRS respectfully seek leave to file this reply.

[2] Pragmatism is paramount when evaluating intervention requests. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) ("prior decisions are not always reliable guides," so courts must be practical when balancing "efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.").



### I. The thousands of Yen currency forward agreements that CalSTRS traded were directly (and mathematically) price impacted by Defendants' admitted manipulative and anticompetitive conduct.

CalSTRS adequately pleads that throughout the Class Period, it directly transacted tens of thousands of Euroyen-based derivatives, including Yen currency forward agreements, with Defendants UBS, Citibank, Deutsche Bank, RBS, HSBC, JPMorgan, Société Générale, and Barclays. (Declaration of Vincent Briganti, Ex. 1 ("CalSTRS' Allegations") ¶¶ 671-72 (ECF No. 388-1)). CalSTRS' rigorous economic analysis demonstrates that Yen currency forward agreements are price based on Yen-LIBOR—a manipulation of Yen-LIBOR and/or Euroyen TIBOR renders the exchange rate to be paid or received under these contracts artificial. (*Id.* ¶ 673.) When the Defendants suppressed Yen-LIBOR and/or Euroyen TIBOR, the cost of purchasing Yen artificially increased, directly causing CalSTRS and members of the Class to pay more for their agreements to purchase Yen. (*Id.* ¶¶ 677, 684, 687.) CalSTRS' excess payments for Yen went straight into Defendants' pockets. (*Id.* ¶¶ 819-21.) The Court must construe all reasonable inferences in CalSTRS' favor, accept these pleadings as true, and reject Defendants' incorrect, counterfactual denials. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

CalSTRS' proposed allegations include specific examples of how it was harmed when Defendants, by manipulating Yen-LIBOR and/or Euroyen TIBOR for their financial benefit, overcharged or underpaid CalSTRS for Yen that was purchased and sold during the Class Period. (*Id.* ¶ 674-677.) By systematically cheating CalSTRS and other Class members out of money owed to them under their Yen currency forward agreements, Defendants generated billions of dollars in illicit profits. Defendant Deutsche Bank's FX Forwards desk's revenue, for example, which traded the same currency forward agreements as CalSTRS, exploded as a result of Defendants' manipulative scheme, more than quadrupling from €399 million in 2007 to €1.942 billion in 2008. (Deutsche Bank CFTC Order at 9.) Given the direct, contractual nature of Yen currency forwards, these increased profits represent losses to CalSTRS and the proposed Class.[3]

Michelle Cunningham, the Deputy Chief Investment Officer at CalSTRS, submitted a declaration stating that the value of a Yen currency forward agreement, and what CalSTRS paid to buy or sell Yen in the future, is determined by an industry-standard formula that incorporates

---

[3] This impact pleading soars past the notice pleading standard. *See* FED. R. CIV. P. 8 ("A pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief"); see also In re LIBOR-Based Fin. Instruments Antitrust Litig., 27 F. Supp. 3d 447, 482 (S.D.N.Y. 2014) ("LIBOR III") (quoting *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, (2d Cir. 2014)) ("'Twombly does not impose a probability requirement at the pleading stage. It simply requires factual allegations sufficient to raise a reasonable expectation that discovery is likely to generate evidence of liability.'").



Yen-LIBOR, so the "manipulation of Yen-LIBOR and/or Euroyen TIBOR will also manipulate the price of Japanese Yen being purchased or sold under a Japanese Yen currency forward agreement, directly impacting its value." *See* Decl. of Michelle Cunningham in Support of CalSTRS' Motion for Intervention ("Cunningham Decl."), May 22, 2015, ¶¶ 5, 6.

### A. Various government regulators' factual findings state that CalSTRS' Yen currency forward agreements are price based on Yen-LIBOR.

The government regulators' factual findings support CalSTRS' allegations. The Commodity Futures Trading Commission ("CFTC") found that Defendant RBS' and Rabobank's Yen derivatives traders transacted in numerous financial instruments **"price based on" Yen LIBOR**, including **"foreign exchange ('FX') forwards**."[4] RBS' foreign exchange forwards that were "priced based on" Yen-LIBOR are the exact financial instruments CalSTRS traded throughout the Class Period. Therefore, a manipulation of Yen-LIBOR or Euroyen TIBOR impacted the price of CalSTRS' Yen currency forward agreements.

Defendants Rabobank and Deutsche Bank both acknowledged in their Yen-LIBOR settlements that they each traded foreign exchange forwards. (See PTAC Ex. D-2 at 6; Deutsche Bank CFTC Order at 8.) These acknowledgements are identical to the findings within RBS' settlement. The CFTC found that foreign exchange forwards that Rabobank and Deutsche Bank traded were "priced off of LIBOR." *Id.* Any argument that Defendants were unaware that the Yen currency forward agreements CalSTRS traded throughout the Class Period were "priced based on" or "priced off of" Yen-LIBOR is wholly disingenuous.[5]

Indeed, a finding that CalSTRS' Yen currency forwards were not, as a matter of law, impacted by Yen-LIBOR manipulation would directly contradict the findings of the CFTC, the expert governmental agency charged with policing futures manipulation, as well as the Declaration of Michelle Cunningham.

---

[4] *See* Proposed Third Amended Complaint ("PTAC") (ECF No. 302-2), Ex. B-4 at 6, Ex. D-2 at 6 (emphasis added); *see also* CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions against Deutsche Bank AG, CFTC Docket No. 15-20, at 8 (Apr. 23, 2015) ("Deutsche Bank CFTC Order") (finding that Deutsche Bank's GFFX Group traded FX Forwards which were priced off of LIBOR).

[5] Further, Defendants' lawyers' statements expressly contradict those of the Defendants own derivatives traders. For example, Defendant HSBC's Global Head of Foreign Exchange Cash Trading explained that, "[i]nterest rates are a key driver of the forex [foreign exchange] forward market" because "[t]he market needs an interest rate yield curve to be able to value currencies over time." (ECF No. 387 at 4 n. 8.) HSBC knew that CalSTRS' Yen currency foreign agreements were "priced based on" Yen-LIBOR. As a result, Defendants knew that manipulating Yen-LIBOR and/or Euroyen TIBOR price impacted the Yen currency forward agreements that CalSTRS traded.



Letter to The Honorable George B. Daniels
May 26, 2015
Page 4

**II.   Allowing CalSTRS to intervene in this action does not unduly prejudice Defendants, who have already admitted guilt, settled governmental charges, and/or self-reported criminal cartel activity which impacted the very same financial instruments that CalSTRS transacted.**

This action is at a stage where permitting CalSTRS to intervene would not prejudice the Defendants. Document discovery just commenced and no non-settling Defendant has produced a single page to Plaintiff. (ECF No. 451.) Laydon's initial document request will not change with CalSTRS' addition because CalSTRS' claims arise from the same common nucleus of operative facts as Laydon's claims and can be proven with the same evidence. Defendants' employees and experts have not been deposed (or even served with notices of deposition), so there is no risk of subjecting the Defendants to multiple depositions. Further, Laydon intends to file an amended complaint adding new defendants based on newly-released government settlements and on information revealed in the criminal trial of UBS' and Citibank's Yen trader, Tom Hayes, beginning today in London. The Defendants intend to oppose the complaint on personal jurisdiction grounds.[6] (ECF No. 469.) Despite pending for three years, this case remains essentially at the pleading stage, the ideal time for CalSTRS to intervene to hold Defendants liable for their wrongdoing in the over-the-counter market.

**III.   CalSTRS' interests are not collateral and its involvement will ensure that its interest and those of the Class are adequately represented.**

CalSTRS' intervention would not inject collateral issues into the case. Rather, CalSTRS' damages arise from the same misconduct that has always been at the core of this case—Defendants' manipulation of Yen-LIBOR and/or Euroyen TIBOR.

Defendants rely on case law that is not analogous to this intervention motion. In *New York*, plaintiffs sought to enforce a filtration mandate, while the proposed intervenor sought to challenge it. *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999). *McBean* involved a complex civil rights class action wherein the court found that the facts underlying the intervenors' claims were unrelated to those pleaded by the original plaintiffs. *McBean v. City of New York*, 260 F.R.D. 120, 140 (S.D.N.Y. 2009) ("Introduction of [intervenors'] claims is problematic, however, because . . . they arise under different factual circumstances . . . .").

---

[6] Defendants incorrectly believe they will be prejudiced by additional briefing and oral argument. (*See* Defs. Opp. Ltr. at 2-3.) This does not constitute prejudice. *See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 262 (S.D.N.Y. 2009) (finding that additional discovery or motion practice, if any, would not constitute undue prejudice for the defendants). Additionally, the Court created the motion to amend briefing schedule to "avoid another round of motions to dismiss." (Transcript of Rule 16 Conference at 25.). Thus, the sufficiency of the breach of the implied covenant of good faith and fair dealing and unjust enrichment claims for Yen currency forward agreements is *sub judice* in the motion to amend briefing for the Court's consideration. (ECF Nos. 302, 361, 387, 391.)



*Gordon* involved an intervenor that tried to expand a previously-certified class and the court considered the motion an attempt at reargument. *Gordon v. Hunt*, No. 82 Civ. 1318, 1984 U.S. Dist. LEXIS 22318, at *1 (S.D.N.Y. Oct. 31, 1984).

CalSTRS' intervention would not raise distinct questions of law in regards to Defendants' manipulation of Yen-LIBOR and/or Euroyen TIBOR. The manipulation at issue presently in this case similarly impacted CalSTRS through its investments in Yen currency forwards. *See e.g., Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123, 132 (2d Cir. 2001) (finding intervenors' interest in seniority rights permitted intervention in a case in which the proposed settlement agreement resolving employment discrimination claims by employees would alter the existing seniority formula). The Court should not immunize Defendants from liability by denying intervention, particularly because it is clear from the government settlement agreements that Defendants were well aware of the impact their manipulation had in the Euroyen-based derivatives market.

### A. CalSTRS may bring its claims for unjust enrichment and breach of the implied covenant of good faith in this action.

Defendants' focus on the Commodity Exchange Act ("CEA") claims that Laydon alleges—and CalSTRS does not pursue—is a distraction. CalSTRS has an interest in asserting unjust enrichment and implied covenant of good faith and fair dealing claims, which CalSTRS is uniquely situated to replead. Intervenors need only have a "direct interest in the action because their claims 'arise out of the same transaction and occurrence that is the subject of the instant case.'" *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781, 08 Civ. 5093, 2010 U.S. Dist. LEXIS 135261, at *14 (S.D.N.Y. Dec. 21, 2010) (quotation omitted). There is no further need for intervenors to have the same legal claim as the existing plaintiff. Pleading is about unity of facts, not law. As the Supreme Court recently put it: "The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (citation omitted).

CalSTRS cannot be prevented from intervening because Laydon's CEA claim is the only one that has survived at this time. As the Court will recall, it dismissed Laydon's unjust enrichment claims because Laydon could not establish a relationship between himself and any of the Defendants and how Defendants benefited at his expense. *See Laydon v. Mizuho Bank, Ltd., et al*, No. 12-3419, 2014 U.S. Dist. LEXIS 46368, at *42-45 (S.D.N.Y. Mar. 28, 2014) (ECF No. 270). This denial was without prejudice to cure, which CalSTRS is in a position to do.

### IV.   CalSTRS' motion to intervene is timely.

Defendants claim that CalSTRS' intervention is untimely, either because the motion itself is untimely or its underlying claims are time-barred. (Defs. Opp. Ltr. at 2, 6-7.) This argument



lacks merit. On September 22, 2014, CalSTRS sought to join this action. (ECF No. 387.) CalSTRS entered into Yen currency forward agreements through December 30, 2010. Under New York's six-year statutes of limitations previously applied to these claims,[7] CalSTRS' claims are not time-barred.[8] *See Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 468 (E.D.N.Y. 1999) (finding intervenor's motion timely when "filed within the statute of limitations and within a reasonable period after the cause of action accrued").[9]

The parties agree that the standard for timeliness with respect to intervention assesses "(1) how long the applicant had notice of the interest before making the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Pitney Bowes, Inc.*, 25 F.3d at 70. Timeliness is "not confined strictly to chronology," but is instead, an examination of all the circumstances of the action. *Id.* Defendants raise a laundry list of reasons why the Court should find CalSTRS' intervention motion untimely, but the simple fact remains—CalSTRS timely filed its claims.

Despite Defendants' assertion to the contrary, "[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *See Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86 (D. Conn. 2014). For the reasons discussed *supra*, at II, Defendants would not be prejudiced by permitting CalSTRS to intervene.

### A. CalSTRS' interest in this action arose in August of 2014.

Defendants' own case law states, yet they misconstrue, that the date upon which a party learns that its interests are not adequately represented in an action is the date for assessing delay, not the date on which the action was filed. *See Hnot v. Willis Group Holdings, Ltd.*, 234 F. App'x 13, 15 (2d Cir. 2007). Neither the record, nor Defendants' opposition, suggests that

---

[7] *See Laydon v. Mizuho Bank, Ltd. et al*, No. 12 Civ. 3419, 2015 U.S. Dist. LEXIS 44126, at *22 (S.D.N.Y. Mar. 31, 2015) (ECF No. 448) ("OPPRS's breach of contract and unjust enrichment claims are technically time-barred under New York's six-year statute of limitations.[] *See* N.Y. C.P.L.R. § 213(2).").

[8] Defendants argue that California's statute of limitations may apply to CalSTRS' claims. (Defs. Opp. Ltr. at 6.) Even if the applicable statute of limitations is four years for contract claims (it is not), CalSTRS sought to join this action on September 22, 2014, within four years of December 30, 2010.

[9] Defendants attempt to divert the Court's attention to extraneous statutes of limitations, such as the CEA, RICO, and Sherman Act, to hide the fact that the claims that CalSTRS is bringing in this action, breach of the implied covenant of good faith and fair dealing and unjust enrichment, are not time-barred. (*See* CalSTRS' Allegations; ECF No. 460). The Court should not fall victim to Defendants' smokescreen. The sole focus is whether CalSTRS' claims are timely under the six-year statutes governing contract and unjust enrichment claims. As to the Sherman Act and RICO claims, CalSTRS is protecting its appellate rights. If these claims are restored after an appeal, under the applicable four-year statutes of limitations, CalSTRS' claims were also timely filed.



CalSTRS knew of its claims at an earlier point in time before it moved to be included in the PTAC.[10] In August 2014, when Defendants objected to the addition of Oklahoma Police Pension & Retirement System ("OPPRS") on statute of limitations grounds (ECF No. 361), CalSTRS became aware that its interest in recovering damages associated with its Yen currency forward agreements might no longer be protected. It then promptly moved to bring its claims before the Court. *See Consol. Edison, Inc. v. Northeast Utils.*, No. 01 Civ. 1893, 2003 U.S. Dist. 23532, at *16 (S.D.N.Y. Dec. 24, 2003) (intervenor's motion was timely when filed two years after the law suit commenced because the issue for which it intervened had "only recently crystallized."). CalSTRS' claims were tolled as of September 22, 2014—when it filed its supplemental allegations to be added to the PTAC. (ECF Nos. 388; 388-1); *see Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (motion to amend to add plaintiffs asserting new claims against existing defendants is the date on which the action was commenced for statute of limitations purposes).[11]

**B. If intervention is denied, CalSTRS will be prejudiced.**

Both CalSTRS and the class will be prejudiced if they are denied the benefit of proceeding with this action to cure the unjust enrichment deficiencies and ultimately obtain financial relief from the harms caused by Defendants' manipulation of Yen-LIBOR and/or Euroyen TIBOR. Therefore, the totality of the circumstances dictate that CalSTRS' claims are timely and should proceed alongside Laydon's claims.[12]

\* \* \*

---

[10] Defendants' case law is distinguishable, as their cases involved actual notice to the intervening party. *See Catanzano by Catanzano v. Wing*, 103 F.3d 223, 233-34 (2d Cir. 1996) (intervenors received a letter in the mail disclosing their interest eighteen months prior to moving to intervene); *see also Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182-83 (2d Cir. 2001) (intervenor was a law firm discharged from the litigation that obtained a charging lien on the judgment, thus the firm knew of its interest in the action when the charging lien was imposed three years prior).

[11] *See also, e.g., Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 524 (S.D.N.Y. 2013) (pre-motion letter with draft amended complaint served as limitations period end date). In addition, when CalSTRS learned that its Yen currency forward agreements were not incorporated into this action, it promptly moved to intervene on the date that the Court directed, April 29, 2015. (*See* March 31 Order at 5 n.2.)

[12] While CalSTRS should be entitled to intervene as a matter of right, permissive intervention is also warranted. Permissive intervention may be granted where there are common questions of law of fact and so long as intervention would not cause undue delay or prejudice to the original parties. The common questions and lack of prejudice to Defendants (or Laydon) both support permissive intervention.



The Court should allow CalSTRS to intervene.

Respectfully submitted,

*Vincent Briganti/MEC*

Vincent Briganti

cc: Counsel of Record (via ECF)