# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, OKLAHOMA POLICE PENSION & RETIREMENT SYSTEM and STEPHEN P. SULLIVAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>– against –<br><br>MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,<br><br>Defendants. | Docket No. 12-cv-3419 (GBD) (HBP)<br><br>ECF Case |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    Whether Plaintiffs must plead that each wire fraud element occurred domestically (and only domestically) should be certified for immediate appeal to the Second Circuit. .......... 2

        A.    A controlling question of law exists. ................................................................... 3

        B.    A substantial ground for a difference of opinion exists. ....................................... 3

    II.    Defendants fail to rebut bases for certifying the RICO standing issue under § 1292(b). .... 4

        A.    Cases in this Circuit and others confirm that the RICO standing issue is a "pure" and controlling question of law .............................................................................. 4

        B.    A substantial ground for difference of opinion on RICO standing exists ............... 6

    III.    The issue of whether a newly-named class plaintiff's claims relate back is a properly certifiable issue of first impression for the Second Circuit. .................................................. 7

    IV.    Certification of the March 31 Order will materially advance this litigation. ....................... 9

    V.    1292(b) does not require Plaintiffs to show "exceptional circumstances." ....................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*BCS Servs. v. Heartwood 88, L.L.C.*,
    637 F.3d 750 (7th Cir. 2011) ................................................................................. 7

*BPP Ill., L.L.C. v. Royal Bank of Scot. Group Public Ltd.*,
    No. 13-4459-cv, 2015 U.S. App. LEXIS 7850 (2d Cir. May 13, 2015) .................... 2, 7, 8

*Beach v. Citigroup Alt. Invs. L.L.C.*,
    No. 12 Civ. 7717 (PKC), 2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) .......... 8

*Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank
    of Tallahassee Second Mortg. Loan Litig.)*,
    622 F.3d 275 (3d Cir. 2010) ................................................................................. 8

*Eur. Cmty. v. RJR Nabisco, Inc.*,
    783 F.3d 123 (2d Cir. 2015) ................................................................................. 3

*Flor v. BOT Fin. Corp. (In re Flor)*,
    79 F.3d 281 (2d Cir. 1996) ................................................................................. 3, 4

*In re A2P SMS Antitrust Litig.*,
    No. 12-CV-2656 (AJN), 2015 U.S. Dist. LEXIS 24909 (S.D.N.Y. Mar. 2, 2015) ........... 9

*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir. 1991) ............................................................................. 9

*Johnson v. City of Shelby*,
    135 S. Ct. 346 (2014) ......................................................................................... 8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) ................................................................................. 3, 10

*Koal Indus. v. Asland, S.A.*,
    808 F. Supp. 1143 (S.D.N.Y. 1992) ...................................................................... 8

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    7 F. Supp. 2d 294 (S.D.N.Y. 1998) ....................................................................... 5

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999) ............................................................................... 1, 5

*Mayle v. Felix*,
   545 U.S. 644 (2005) .................................................................................................... 8

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ......................................................................... 5, 6

*Pollack v. Laidlaw Holdings*,
   No. 90 Civ. 5788 (PKL), 1993 U.S. Dist. LEXIS 8783 (S.D.N.Y. June 25, 1993) ........... 9

*Reich v. Lopez*,
   38 F. Supp. 3d 436 (S.D.N.Y. 2014) ............................................................................. 4

*Republic of Colom. v. Diageo N. Am., Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ........................................................................... 5, 9

*Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*,
   985 F.2d 102 (2d Cir. 1993) .......................................................................................... 7

*State Farm Mut. Auto. Ins. Co. v. Abrams*,
    No. 96 C 6365, 2000 U.S. Dist. LEXIS 1524 (N.D. Ill. Feb. 3, 2000) ............................. 5

*United States v. Hayes*,
   12 M.J. 3229, 2015 U.S. Dist. LEXIS 35149 (S.D.N.Y. Mar. 20, 2015) .................. 1, 2, 4

## **Rules**

Fed. R. Civ. P. 15(c) ............................................................................................................ 7, 8

**PRELIMINARY STATEMENT**

Three weeks after this Court issued its March 31 Order,[1] Deutsche Bank admitted that its New York office, among its other offices around the world, abused U.S. domestic wires to manipulate Yen-LIBOR and/or Euroyen TIBOR for at least five years.[2] Deutsche Bank reaped risk-free profits on billions of dollars of financial instruments price-based on Yen-LIBOR and/or Euroyen TIBOR, using U.S. wires to transact directly with U.S. counterparties, including proposed intervenor CalSTRS. No proper interpretation of RICO could result in these activities being considered extraterritorial.

A recent Southern District opinion held that the identical manipulative scheme at issue herein involving UBS' rigging of Yen-LIBOR is within the domestic reach of the wire fraud statute. *See United States v. Hayes*, 12 MJ 3229, 2015 U.S. Dist. LEXIS 35149, at *20-38 (S.D.N.Y. Mar. 20, 2015). There is no credible argument, therefore, that there is not a substantial ground for difference of opinion concerning whether RICO applies to condemn this scheme.

Defendants contradict themselves on RICO standing, now claiming that certification is improper because "a reviewing panel would need to 'study the record' to understand, among other things, the Yen LIBOR and Euroyen TIBOR submission, . . . how these instruments are priced, and the factors that affect their pricing."[3] Yet previously, Defendants asserted that the Court could decide this question of law on the pleadings.[4] Plaintiffs assuredly pled these facts, as the Court recognized. *See Order*, at 19-21. The Second Circuit previously reviewed a RICO pleading to assess the standing question on a § 1292(b) certification. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 234 (2d Cir. 1999) ("*Laborers Local 17 II*"). Certification is appropriate here as well.

---

[1] ECF No. 448 ("*March 31 Order*" or "*Order*").

[2] *See* New York State Dep't of Financial Servs. Consent Order Under New York Banking Law §§ 44 and 44-a, at 1, (Apr. 23, 2015).

[3] Defendants' Response in Opposition to Plaintiff's Motion for Interlocutory Appeal Under 28 U.S.C. § 1292(b) Motion, ECF No. 477, at 9 ("*Def. Br.*").

[4] *See* Defendants' Opposition to Plaintiff's Motion for Leave to Amend, ECF No. 361, at 17-19.

1

On the relation back/statute of limitations question, the Second Circuit recently vacated a district court's order dismissing a USD LIBOR plaintiff's claims on statute of limitations grounds and cautioned district courts to not "act[] too hastily" in evaluating pleadings for limitations problems. *See BPP Ill., LLC v. Royal Bank of Scotland Group PLC*, No. 13 Civ. 4459, 2015 U.S. App. LEXIS 7850, at *4 (2d Cir. May 13, 2015). This new guidance applies here. The issue of relation back is properly certifiable and the question of whether a court should dismiss a complaint on limitations grounds under Rule 12 motion (or its equivalent) prior to plaintiffs having an opportunity to develop the factual record should be certified.

Certifying the March 31 Order to address these issues promotes judicial efficiency. Accordingly, the Court should grant Plaintiffs' motion.

## ARGUMENT

I. **Whether Plaintiffs must plead that each wire fraud element occurred domestically (and only domestically) should be certified for immediate appeal to the Second Circuit.**

Because Defendants abused U.S. domestic wires from within the United States, "[t]he presumption against extraterritoriality is [] irrelevant to [] the wire fraud and the conspiracy." *See Hayes*, 2015 U.S. Dist. LEXIS 35149, at *28-29 (finding that the wire fraud "occurred in the United States" when a foreign-based defendant caused a false Yen-LIBOR rate to be published in the U.S. and used U.S. wires to execute trades with U.S. counterparties based on the false Yen-LIBOR).[5]

Defendants attempt to blur the line between the planning of their scheme to manipulate Euroyen TIBOR and/or Yen-LIBOR and their domestic execution of that scheme. Plaintiffs seek to appeal whether allegations of abuse of domestic wires satisfy the wire fraud statute to plead a RICO violation.[6]

If this question is answered in the affirmative, as the *Hayes* court held in identical

---

[5] As argued previously, Plaintiffs make these same allegations. *See, e.g.*, Plaintiff's Notice of Supplemental Authority, ECF No. 442, at 2.

[6] Defendants do not argue to the contrary and, therefore, concede that this issue is a "pure" question of law.

circumstances, then the complaint plausibly alleges a domestic fraud to which RICO liability will attach. Defendants' arguments fail to address Deutsche Bank's admitted abuse of U.S. wires to rig Yen-LIBOR (and other interbank rates) from within the United States under the same facts as alleged here. Defendants do not—and cannot—argue that the same predicate acts should be treated differently. Deutsche Bank's admitted abuse of U.S. wires from within the United States takes any doubt about the second element of the wire fraud statute completely off the table, leaving only the Court's determination that the Defendants' scheme to defraud was not hatched in the United States.[7]

### A. A controlling question of law exists.

In their opening brief, Plaintiffs cited two examples of pending LIBOR cases in this District that will be impacted by the Second Circuit's RICO holdings.[8] Another LIBOR case was filed in this District after Plaintiffs filed their opening motion.[9] Defendants ignore the existence of these cases even though each alleges a substantive RICO violation against domestic- and foreign-based defendants (including many of these same defendants). "[A] 'controlling question of law' under section 1292(b) need not affect a wide range of pending cases" (*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 921 F.2d 21, 24 (2d Cir. 1990)), therefore, Plaintiffs' question of law is controlling because it is relevant to at least three additional actions pending in this District. *See also European Cmty. v. RJR Nabisco, Inc.*, 783 F.3d 123, 128 (2d Cir. 2015).

### B. A substantial ground for a difference of opinion exists.

Five Second Circuit judges asked the district courts to certify this exact issue. *See id.* at 127. In hopes of avoiding certification, Defendants stop short of reciting the entire standard, only stating that the presence of a disputed issue, standing alone, is insufficient. *Def. Br.* at 7 (citing *In*

---

[7] Plaintiffs alleged that Defendants committed at least six acts of wire fraud. *See, e.g.*, PTAC ¶¶ 473-482, 768.

[8] *See Pls.' Mot.* at 8 (citing *Sullivan v. Barclays plc, et al.*, No. 13 Civ. 2811 and *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, No. 15 Civ. 00871).

[9] *See Sonterra Capital Master Fund, Ltd. v. Barclays Bank plc*, No. 15 Civ. 3538, ECF No. 1 (S.D.N.Y.) (Broderick, J.) (class action alleging that the Sterling LIBOR contributor panel banks manipulated Sterling LIBOR in violation of the CEA, 7 U.S.C. §§ 1, *et seq.*, Section 1 of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and RICO, 18 U.S.C. §§1961, *et seq.*).

3

*re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). However, Defendants own case law states that "[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Flor*, 79 F.3d at 284. Plaintiffs' RICO arguments are compelling, as evinced by the tension between this Court's holding that a scheme to defraud must come about in the United States and *RJR Nabisco's* holding that an enterprise need not be domestic to plead a RICO claim. *Compare Order* at 16 *with European Cmty.*, 764 F.3d at 138.

Also, in *Hayes*, the court concluded, on the same facts alleged here, that defendants' extraterritoriality argument was "irrelevant to both the wire fraud and the conspiracy." *Hayes*, 2015 U.S. Dist. LEXIS 35149, at *28. The *Hayes* court held that allegations that a defendant and his co-conspirators "purportedly caused the manipulated LIBOR to be published to servers in the United States and used United States wires to memorialize trades affected by that rate…occurred in the United States." *Id.* at *25, 31. *Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014) also conflicts with the *March 31 Order*. The *Reich* defendants objected to RICO allegations using location-specific facts—defendants were a Barbados corporation and citizens and nationals of Venezuela. *Id.* at 447. The court rejected the defendants' focus on the international aspects of the alleged scheme and held that "[a]s long as enough domestic conduct exists to fulfill the requirements of . . . wire fraud, it is irrelevant that [the statute is] further violated by conduct that is extraterritorial in nature." *Id.* at 448. Thus, this question is ripe for appeal.

**II.     Defendants fail to rebut bases for certifying the RICO standing issue under § 1292(b).**

Defendants do not cite a single case for the proposition that a RICO standing question is never appropriate for certification. On the contrary, cases in this District support certification.

**A.     Cases in this Circuit and others confirm that the RICO standing issue is a "pure" and controlling question of law.**

Courts routinely find that RICO standing is an issue of controlling law that is "pure," *i.e.,* for which an appellate court need not study the record in order to render an opinion. *See, e.g.*,

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F. Supp. 2d 294, 296 (S.D.N.Y. 1998) (certifying a Court-formulated RICO proximate cause question in response to defendants' motion to certify under § 1292(b)); *Republic of Colombia v. Diageo N. Am., Inc.*, 619 F. Supp. 2d 7, 10-11 (E.D.N.Y. 2007) ("*Diageo*"); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 U.S. Dist. LEXIS 1524, at *13-14 (N.D. Ill. Feb. 3, 2000). RICO proximate causation does not morph from a pure issue of law into a mixed question of law and fact simply because the appellate court may need to take stock of the complaint. *See Diageo*, 619 F. Supp. 2d at 10-13 (where defendants sought to certify the question "whether the elements of a RICO claim have been adequately pled," the court found that proximate causation was a pure and controlling question of law); *Laborers Local 17 II*, 191 F.3d at 234 (reviewing the certified question "[w]hether, under the circumstances alleged in plaintiffs' complaint, economic injuries incurred by a union health care trust fund are . . . too remote to permit recovery as a matter of law"). To assess whether the Court correctly interpreted the RICO proximate causation standard, the appellate court would only need to assume the facts pled in the complaint are true – not review some non-existent "record."[10]

Defendants' reliance on *National Asbestos* to oppose Plaintiffs' motion is problematic. *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999). *National Asbestos* held that RICO proximate causation "mandates a multi-faceted and highly fact specific inquiry" to determine the sufficiency of its allegations, making it inappropriate for review on a motion to dismiss. *Id.* at 144. The *National Asbestos* Court declined to grant § 1292(b) certification due to its own determination that additional factual development of the case was necessary to evaluate RICO proximate cause. *See id.* at 167.

Defendants' citation to *National Asbestos* presents a contradiction. If Defendants are correct that *National Asbestos* is on point and prevents certification, then Defendants must also acknowledge that *National Asbestos* equally demonstrates that the Court's dismissal on RICO

---

[10] This same precedent also demonstrates that RICO proximate causation is controlling law. *See* notes 8-9, *supra* (listing other cases pending in this district alleging similar RICO claims).

proximate cause grounds was erroneous. The conflict between this case and *National Asbestos* demonstrates that a substantial ground for difference of opinion exists. If the Court relies on *National Asbestos* and declines to certify the RICO proximate cause issue, such a decision would have the opposite effect intended by *National Asbestos*—blocking, instead of facilitating, the factual development of the RICO proximate causation issue.

### B.   A substantial ground for difference of opinion on RICO standing exists.

Plaintiffs' motion to certify the RICO proximate cause issue satisfies § 1292(b)'s second prong. The parties agree that *Holmes v. SIPC* contains the operative RICO proximate causation standard, but Defendants incorrectly contend that the Court properly applied the *Holmes* standard. Under *Holmes*, "injuries that are wholly derivative of harm to a third party . . . are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery." *Laborers Local 17 II*, 191 F. 3d at 236 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69). There are three policy factors that courts must employ in assessing RICO proximate cause:

> First, the more indirect an injury is, the more difficult it becomes to determine the amount of plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages . . . to avoid risk of multiple recoveries. Third, struggling with the first two problems is unnecessary where there are directly injured parties who can remedy the harm without these attendant problems.

*Laborers Local 17 II* at 236-37 (citing *Holmes*, 503 U.S. at 269-70).

The Court focused on the alleged links between Defendants' manipulation and Plaintiffs' harm, and relied on those links to determine that the injury was indirect, rather than employing the *Holmes* standard. The Court did not accept Plaintiffs' regression analysis allegations as true or the CFTC's findings that Yen currency forward agreements are price based on Yen-LIBOR[11] (as it must on a motion to dismiss) and failed to recognize that the damages from Defendants' manipulation could be isolated and determined. Further, and perhaps most importantly, the Court

---

[11] PTAC, Ex. B-4 at 6, Ex. D-2 at 6.

never discerned who, if not the proposed Plaintiffs and the putative class, was directly injured such that it became unnecessary to struggle with the first two policy factors.

At least two circuit courts interpreted *Holmes* differently. *See Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*, 985 F.2d 102, 103-04 (2d Cir. 1993) (Van Graafeiland, J.); *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011) (Posner, J.). In both cases, the courts of appeal reversed summary judgment orders dismissing RICO claims for lack of direct injury, finding that the perceived discrete links between the defendants' RICO predicate act and the injury did not bar recovery. Instead, each Court found that the nature of each injury was not derivative of a third party's injury and thus could be a direct injury. As a result, *Standardbred* and *BCS*' treatment of the discrete links in comparison to Court's interpretation demonstrates a substantial ground for difference of opinion.[12]

### III. The issue of whether a newly-named class plaintiff's claims relate back is a properly certifiable issue of first impression for the Second Circuit.

The parties and this Court agree that whether a newly-named class plaintiffs' claims relate back under FED. R. CIV. P. 15(c) is an issue of first impression for the Second Circuit. Defendants do not truly challenge that this question is of significant precedential value, but simply offer that there is nothing "difficult" about this Court's application of FED. R. CIV. P. 15(c) to this case. *Def. Br.* at 13.[13] Their argument ignores recent Second Circuit authority—decided after Plaintiff filed his motion for leave to amend—vacating this very Court's dismissal of a USD LIBOR plaintiff's claims on statute of limitations grounds. *See BPP Ill.,* 2015 U.S. App. LEXIS 7850, at *4 (district court "acted too hastily" in dismissing fraud claims on statute of limitations grounds on defendants' Rule 12(b)(6) motion).

The core question is whether Defendants were on notice within the limitations period of their conduct that Plaintiffs allege was wrongful, not whether they had notice of the precise

---

[12] Defendants suggest, without case support, that Plaintiffs' injury is not derivative of a third party's harm, but rather flows from some other form of indirect harm. (*Def. Br.* at 11). If this novel concept is the basis of the Court's reasoning, this is a difficult question of first impression, satisfying the second prong of § 1292(b).

[13] Defendants do not even attempt to distinguish the line of cases that demonstrate that statute of limitations rulings are ripe for interlocutory review. *See Pl. Mem.* at 11.

7

theory of damages asserted by a newly-proposed class action plaintiff. *See Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005) (relation back is allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory") (citation omitted); *Koal Indus. Corp. v Asland, S.A.*, 808 F. Supp. 1143, 1158 (S.D.N.Y. 1992) ("There is no requirement that the new claim must have been asserted in the original pleading . . . An amendment that changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back.") (citation omitted); *Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*, 622 F.3d 275, 300 (3d Cir. 2010) (proposed class representative's claims could relate back under Rule 15(c) because they "share a common factual and legal nexus" with the named plaintiffs' claims "*i.e.*, both claims are predicated on defendants' alleged predatory lending scheme and the charging of fraudulent and excessive closing fees."). This is consistent with recent Supreme Court precedent that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). These authorities are at odds with the *March 31 Order* and *Beach v. Citigroup Alternative Investments LLC,* No. 12 Civ. 7717, 2014 U.S. Dist. LEXIS 30032, at *19 (S.D.N.Y. Mar. 7, 2014)), which required that the proposed plaintiff's claims be identical to pre-existing claims.

      The Second Circuit's decision in *BPP Ill., LLC v. Royal Bank of Scotland Group PLC* also shows that this question presents a substantial ground for a difference of opinion. In *BPP*, the Second Circuit instructed district courts to not "act[] too hastily" in dismissing claims on statute of limitations grounds especially at the pleadings stage. *See BPP Ill., LLC,* 2015 U.S. App. LEXIS 7850, at *4. Whether a district court should dismiss a complaint on statute of limitations grounds on a Rule 12 motion (or its equivalent) prior to plaintiffs having an opportunity to develop the factual record shows that the issue of relation back is properly certifiable. For example, three weeks after the *March 31 Order*, Deutsche Bank entered into a $2.5 billion settlement with global regulators (including the DOJ and New York State Department of Financial Services) and admitted that from approximately 2005 through 2010, its

New York branch, among other offices, manipulated Yen-LIBOR and/or Euroyen TIBOR to benefit its derivatives price based on Yen-LIBOR and/or Euroyen TIBOR. These include derivatives traded directly with U.S. counterparties such as proposed plaintiff and intervener CalSTRS.

As the factual record develops and the contours of the class and its claims evolve, questions as to who the appropriate defendants are, what the class' claims are, and whether the claims relate back to Laydon's April 30, 2012 filing will be clarified. Because Defendants concede that all claims are based on the same underlying facts (*Defs. Br.* at 16), there is substantial ground for difference of opinion about whether claims relate back under Rule 15.

**IV.     Certification of the March 31 Order will materially advance this litigation.**

Defendants take the narrow view that the controlling question must either terminate the litigation or advance the time for trial for it to materially advance the litigation. *Def. Br.* at 15-17. Because the third prong of 1292(b) "overlaps with the issue of whether a controlling question of law is presented" *In re A2P SMS Antitrust Litig.*, 12 Civ. 2656 (AJN), 2015 U.S. Dist. LEXIS 24909, at *17 (S.D.N.Y. Mar. 2, 2015), the relevant inquiry is whether "interlocutory reversal might save time for the [district court], and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991). Therefore, where "much repetition of discovery and a retrial" may be avoided if interlocutory review is granted, the controlling question materially advances the litigation. *See Pollack v. Laidlaw Holdings*, No. 90 Civ. 5788 (PKL), 1993 U.S. Dist. LEXIS 8783, at *10-11 (S.D.N.Y. June 25, 1993). This is especially true in complex class litigation. *See Diageo*, 619 F. Supp. 2d at 11 (certification would materially advance a "big" complex case, involving "expensive," "extensive," and "costly" discovery, and "multiple parties and third-parties in the United States and abroad"). Although Defendants correctly acknowledge that all claims are based on the same underlying conduct (*Defs. Br.* at 16), the legal significance of certain documents and deposition testimony is not perfectly aligned for Laydon's sustained CEA claim and Plaintiffs' proposed RICO or common law claims (*e.g.,* CEA claims do not require proof of concerted action or conspiracy). Permitting interlocutory appeal

would avoid a substantial duplication of effort and reduce discovery related costs (*i.e.*, obviate the need for the parties to revisit discovery should the dismissed claims be reinstated at the end of the case).[14]

## V. Section 1292(b) does not require Plaintiffs to show "exceptional circumstances."

Defendants impose another burden on Plaintiffs that does not exist in the text of the statute or the case law: a showing of exceptional circumstances. (*See Def. Br.* at 17-18.) No such requirement exists once a party satisfies the three § 1292(b) factors. *See Klinghoffer*, 921 F.2d at 25 ("the power [to grant an interlocutory appeal] must be strictly limited to the precise conditions stated in the law." (citation omitted)). Tellingly, in their own motion for interlocutory appeal, Defendants do not impose on themselves a requirement to demonstrate exceptional circumstances. *Compare Def. Br.* at 17-18 *with* ECF Nos. 453, 468, *passim*. Their attempt to engraft this extra requirement for Plaintiffs should be rejected.

## CONCLUSION

Plaintiffs respectfully request that the Court certify the March 31 Order for interlocutory appeal.

Dated: June 8, 2015
White Plains, New York

**LOWEY DANNENBERG COHEN & HART, P.C.**

By:   */s/ Vincent Briganti*
Vincent Briganti
Geoffrey M. Horn
Peter D. St. Phillip
Thomas Skelton
Raymond Girnys
Christian Levis
One North Broadway
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com

---

[14] Denying interlocutory review now may also force absent class members to file their own protective actions or seek intervention (*e.g.*, CalSTRS), unnecessarily burdening this Court with further filings and motion practice.

        pstphillip@lowey.com
        tskelton@lowey.com
        rgirnys@lowey.com
        clevis@lowey.com

*Interim Lead Class Counsel*

Nicole Lavallee
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900  San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282
nlavallee@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan (PE-6812)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermandevalerio.com

*Additional Counsel for Plaintiffs*

11