## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : Case No. 12-cv-3419-GBD-HBP <br> : |
| MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., CHUO MITSUI TRUST & BANKING CO. LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN LTD., THE BANK OF YOKOHAMA, LTD., SOCIETE GENERALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC,: ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50, | : ECF Case <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

_____ :

## CERTAIN DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
## FOR ORDER SUSTAINING OBJECTIONS TO DISCOVERY UNDER
## DATA PRIVACY LAWS OF THE UNITED KINGDOM

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................2

I.     Producing Documents Would Require Defendants To Risk Violating The DPA. .............2

       A.     The DPA Arises From A Legitimate Sovereign Interest. .....................................3

       B.     The DPA Applies To The Documents Requested. .................................................4

       C.     The DPA Prevents Defendants From Producing The Documents To Plaintiff. ......4

             1.     Requirements For Processing The Documents Must Be Satisfied..............5

             2.     The Restrictions On Transfer Of Documents Must Be Observed..............7

       D.     Defendants Could Be Subject To Fines, Regulatory Consequences And Criminal Prosecution For Violating The DPA. ....................................................9

II.    Responding To Plaintiff's Document Request Would Also Require Defendants To Risk Violating The Banker's Common Law Duty Of Confidentiality..............................9

III.   Comity Analysis Weighs Strongly In Favor Of Requiring Plaintiff To Follow Hague Convention Procedures. ......................................................................................11

       A.     The Balancing Test Provides The Proper Framework For Considering A Conflict Between Foreign Privacy Laws And The Federal Rules.......................11

       B.     The Hague Convention Constitutes An Adequate Alternative Means Of Discovery.....................................................................................................13

       C.     The Requested Information Originated Outside Of The US. ...............................13

       D.     The UK's Interest In Enforcing Its Privacy Laws Outweighs Any Domestic Interest Implicated. .........................................................................................14

       E.     The Document Request Has A Broad Reach.....................................................14

       F.     Production Would Impose A Considerable Burden On Defendants. ...................15

       G.     Defendants' Objection Was Raised In Good Faith..............................................15

CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Activision Blizzard, Inc.*,
   86 A.3d 531 (Del. Ch. 2014) ...................................................................3, 14

*In re Baycol Prods. Litig.*,
   MDL No. 1431, 2003 WL 22023449 (D. Minn. Mar. 21, 2003)...........................13

*In re Maxwell Commc'n Corp. plc*,
   93 F.3d 1036, 1049 (2d Cir. 1996)...................................................................11

*In re Perrier Bottled Water Litig.*,
   138 F.R.D. 348 (D. Conn. 1991)........................................................... 11, 14, 15

*In re State of Norway's Application*,
   1 All E.R. 746 (Q.B. 1989) (Casamento Decl. Ex. L).........................................10

*Ings v. Ferguson*,
   282 F.2d 149 (2d Cir. 1960) .............................................................................12

*Linde v. Arab Bank, plc*,
   262 F.R.D. 136, 151 (E.D.N.Y. 2009) ..............................................................14

*Minpeco, S.A. v. Conticommodity Serv., Inc.*,
   116 F.R.D. 517 (S.D.N.Y. 1987) ......................................................... 12, 14, 15

*Nam Tai Elecs. Inc. v PWC*,
   Unreported, Court of Final Appeal of the Hong Kong Special Administrative Region,
   Li CJ, Bokhary, Chan, Ribeiro PJJ & McHugh NPJ, 31 January 2008
   (Casamento Decl. Ex. N)...................................................................................10

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*,
   902 F.2d 1275 (7th Cir. 1990) ......................................................................4, 11

*Salerno v. Lecia, Inc.*,
   No. 97-973S, 1999 WL 299306 (W.D.N.Y. Mar. 23, 1999).................................14

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
   482 U.S. 522 (1987) ...................................................................... 2, 11, 12, 13

*Tiffany (NJ) LLC v. Qi Andrew*,
   276 F.R.D. 143 (S.D.N.Y. 2011), *aff'd sub nom, Tiffany (NJ) LLC v. Andrew*,
   No. 10-9471, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011).................................. 12, 13, 15

*Tournier v Nat'l Provincial & Union Bank of England*,
    [1924] 1 KB 461 (Casamento Decl. Ex. K)................................................................9, 10

*United States v. Chase Manhattan Bank, N.A.*,
    584 F. Supp. 1080 (S.D.N.Y. 1984)................................................................14

*Volkswagen, A.G. v. Valdez*,
    909 S.W.2d 900 (Tex. 1995)................................................................ 3, 13, 14

*X AG v A Bank*
    [1983] 2 All ER 464 (Casamento Decl. Ex. M)................................................................10

STATUTES

Charter of Fundamental Rights of the European Union (Casamento Decl. Ex. E) ........................3

Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995
    On the protection of individuals with regard to the processing of personal data and on
    the free movement of such data (Casamento Decl. Ex. D)................................................................3, 6

Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters
    (Casamento Decl. Ex. C ................................................................*passim*

United Kingdom's Data Protection Act 1998 (Casamento Decl. Ex. B) ................................*passim*

United Kingdom's Data Protection Act 1998 § 1 (Casamento Decl. Ex. B) ................................4

United Kingdom's Data Protection Act 1998 Schedule 1 (Casamento Decl. Ex. B) ................7, 8

United Kingdom's Data Protection Act 1998 Schedule 2 (Casamento Decl. Ex. B) ................6. 7

United Kingdom's Data Protection Act 1998 Schedule 4 (Casamento Decl. Ex. B) ................8

REGULATORY OPINIONS

European Union's Article 29 Working Party Opinion, WP 128, Opinion 10/2006 on the
    processing of personal data by the Society for Worldwide Interbank Financial
    Telecommunication (SWIFT) (Cassamento Decl. Ex. J)........................................................9

European Union's Article 29 Working Party Opinion, WP 114, "Working document on a
    common interpretation of Article 26(1) of Directive 95/46/EC of 24 October 1995"
    (Casamento Decl. Ex. H)........................................................8

OTHER AUTHORITIES

Patricia L. Bellia, *Chasing Bits Across Borders*, 2001 U. CHI. LEGAL F. 35 (2001) ................10

Restatement (Third) of Foreign Relations Law Section 442................................................................2, 11

United Kingdom Information Commissioner's Office, "Actions We've Taken"
(Casamento Decl. Ex. I) ........................................................................................... 9

United Kingdom Information Commissioner's Office, "Assessing Adequacy,
International Data Transfers" (Casamento Decl. Ex. G) ........................................... 8

United Kingdom Information Commissioner's Office, "The Guide to Data Protection"
(Casamento Decl. Ex. F) ...................................................................................... 5, 8

United Kingdom's Response to 2013 Questionnaire Regarding the Hague Convention's
Practical Operation ................................................................................................ 13

Defendants HSBC Holdings plc, HSBC Bank plc, JPMorgan Chase & Co., JPMorgan

Chase Bank, N.A., J.P. Morgan Securities plc, Société Générale, Sumitomo Mitsui Banking

Corporation, Mizuho Corporate Bank, Ltd., and Deutsche Bank AG[1] submit this memorandum

regarding barriers to the production of documents presented by United Kingdom ("UK") data

privacy laws.  To assist the Court in analyzing the contours of these laws, Defendants

respectfully submit the Declaration of Mark Watts and Christopher Millard (the "Expert

Declaration"), filed concurrently herewith.

## PRELIMINARY STATEMENT

Plaintiff requested that Defendants produce a wide variety of documents related to

governmental and/or regulatory investigations.  *See* Plaintiff's First Request for Production of

Documents (the "Document Request"), attached to the Declaration of Gregory T. Casamento as

Exhibit A.[2]  Defendants served written objections to the Document Request on the basis that,

among other things, compliance with Plaintiff's requests would risk violating the UK's Data

Protection Act ("DPA")[3] and/or the English common law banker's duty of confidentiality.[4]

Plaintiff is aware of, but has refused to utilize, the Hague Convention on the Taking of Evidence

Abroad in Civil and Commercial Matters (the "Hague Convention," Casamento Decl. Ex. C)—to

which both the United States ("US") and the UK are signatories—to obtain documents located in

the UK and subject to UK law.  To be absolutely clear, the objection addressed by this

---

[1] Deutsche Bank AG joins Part III of the brief.

[2] Plaintiff is currently pursuing only the production of documents responsive to Request No. 3, but he has not withdrawn his other requests for production.  Accordingly, this memorandum addresses the Document Request in its entirety and focuses on issues relating to Request No. 3.

[3] Copies of foreign authorities cited in this memorandum and in the Expert Declaration are attached to the Casamento Declaration, filed concurrently herewith. Relevant provisions of the DPA can be found at Exhibit B to the Casamento Declaration.

[4] Individual Defendants also asserted additional objections not addressed in this memorandum.

memorandum does not seek to prevent Plaintiff from obtaining discovery.  Rather, to obtain documents and information subject to the DPA (referred to herein as the "Documents"), Plaintiff should proceed via the Hague Convention.

The UK's data privacy laws are designed to balance the protection of an individual's fundamental right, as recognized in the UK, to safeguard his personal information with the policy-based rationales for informational transfers (*i.e.*, to promote free trade).  *See* Expert Decl. ¶¶ 4.1-4.3.  Forcing Defendants to produce the Documents requested by Plaintiff, without requiring Plaintiff to follow the Hague Convention's procedures, exposes Defendants to potential civil and criminal penalties in the UK.  The conflict between UK privacy laws and the Federal Rules of Civil Procedure requires this Court to conduct an analysis using the multi-factored test established in the Restatement (Third) of Foreign Relations Law Section 442(1)(c) (the "Restatement").  The Supreme Court has recognized that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).  As such, "the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses."  *Id*.  Close scrutiny of the Restatement factors reveals that they weigh heavily in favor of requiring Plaintiff to utilize the Hague Convention.

## ARGUMENT

## I.     Producing Documents Would Require Defendants To Risk Violating The DPA.

The DPA sets out restrictions on when and how personal data can be processed and, with only limited exceptions, prohibits the transfer of personal data that resides in the European Union ("EU") to certain countries including the US.  "Personal data" is a term of art under the DPA and

2

encompasses a broad range of information, including any data related to a living person who could be identified from that data or from the data combined with other information in the possession of the data controller (here, Defendants).  Expert Decl. ¶ 5.3.  Any document with an individual employee's name, particularly in combination with an email address, contains personal data subject to the DPA.[5]  Expert Decl. ¶¶ 5.3, 9.1.

It is undisputed that Plaintiff's Document Request seeks Documents containing personal data within the meaning of the statute.  Producing such Documents without adequate procedural safeguards would be inconsistent with the DPA.

### A.    The DPA Arises From A Legitimate Sovereign Interest.

The DPA reflects the interest of the UK, and more generally the EU, in protecting the privacy rights of individuals.  The EU considers the privacy of personal data to be a fundamental right of natural persons.[6]  US courts have recognized the strength and prominence of European nations' sovereign interest in data protection.  *See e.g.*, *In re Activision Blizzard, Inc.*, 86 A.3d 531, 538, 550 (Del. Ch. 2014); *see also Volkswagen, A.G. v. Valdez*, 909 S.W.2d 900, 902 (Tex. 1995) (acknowledging that "privacy rights under German law are 'equal in rank to the right of freedom of speech'").[7]  The DPA also serves to enhance free trade amongst EU members.  *See* Expert Decl. ¶ 4.2.

---

[5] To the extent any of the Documents contain information relating to the political opinions, religious beliefs, criminal records, or sexual lives of their authors or others, the Documents also contain sensitive personal data and are subject to additional restrictions.  *See* Expert Decl. ¶ 5.4.

[6] *See* Directive 95/46/EC, Casamento Decl. Ex. D at Art. 2.  The right is also enshrined in Article 8 of the Charter of Fundamental Rights of the European Union.  Casamento Decl. Ex. E.

[7] Though each EU member state has adopted its own statute, each did so pursuant to the EU Directive's rather specific guidelines.  Thus, as a group, EU data protection statutes are substantially similar.  *See* Expert Decl. ¶ 4.2.  Unsurprisingly, US courts have approached data protection statutes of EU member states in substantially the same way.

Thus, "[u]nlike a blocking statute," the DPA is "directed at domestic affairs rather than merely protecting [the home country's] corporations from foreign discovery requests."  *See Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1280 (7th Cir. 1990) (distinguishing Romanian privacy laws from blocking statutes).

### B.      The DPA Applies To The Documents Requested.

The DPA regulates "the processing of information relating to individuals, including the obtaining, holding, use or disclosure of such information."  Expert Decl. ¶ 5.  Plaintiff's Document Request captures many Documents that contain personal data.  For example, many responsive emails will include signature lines containing the sender's full name, email address, job title, and other personal content.  English courts consider these combinations of information to constitute personal data.  Expert Decl. ¶ 5.3.  Additionally, certain communications called for by Plaintiff's Document Request contain protected expressions of opinion and intention.  Thus, to the extent Plaintiff seeks production of Documents stored or maintained in the UK, Defendants' ability to process and transfer these Documents is governed by the DPA.

Moreover, Defendants are data controllers under the DPA because they "determine[] the purpose for which and the manner in which" this personal data can be processed.  *See* DPA §1(1); Expert Decl. ¶ 5.1.  Finally, certain Defendants are subject to the DPA because they are financial institutions incorporated, based in and/or operating in the UK and the processing of the personal data would be in the context of those operations.  *See* Expert Decl. ¶¶ 5.5, 5.6.

### C.      The DPA Prevents Defendants From Producing The Documents To Plaintiff.

The DPA sets out eight data protection principles.  "[While] the Defendants must comply with all of the Principles, the First, Second, Third and Eighth Principles are of particular relevance to the present situation."  Expert Decl. ¶ 6.

4

In order for Defendants to produce the Documents, they must first be processed and then transferred to the US.  These two distinct actions are addressed by different data protection principles in the DPA, discussed in detail below.  *See* Expert Decl. ¶¶ 6, 6.1.2, 6.4.[8]

      **1.**      **Requirements For Processing The Documents Must Be Satisfied.**

The DPA provides that personal data must be processed—that is, obtained, used, held, or disclosed—"fairly" and "lawfully," and in a limited manner encompassing only the minimum amount of personal data necessary to fulfill the intended purpose of the processing.  *See* Expert Decl. ¶¶ 6.1.1, 6.1.2, and 6.3.

In order to "fairly" process personal data, data controllers must provide sufficient notice regarding processing to the individuals whose personal information is contained in the documents.  *Id.* ¶ 6.1.1.  Here, notifying all of the data subjects whose names and personal information appear in the myriad emails and Bloomberg messages requested by Plaintiff would be impractical due to their sheer number.  Such "disproportionate effort" is not required by the DPA, which recognizes that where notice is impractical, fair processing of personal data is impossible.[9]  *See id.*

In addition, all conditions governing "lawful" processing (other than consent) require that data processing be "necessary" for the purpose set out in that particular condition, such that the conditions must be narrowly construed.  *See* Expert Decl. ¶ 6.1.2.  Because the Hague

---

[8] As the Documents cannot be processed in conformity with the DPA, the question of whether the Documents can be transferred in conformity with the DPA need not be considered.  *See* U.K. Info. Comm'rs Office, The Guide to Data Protection ("ICO Guide"), Casamento Decl. Ex. F at 83-97 ("If you transfer personal data outside the EEA, you are required to comply with all the principles and the Act as a whole, not just the eighth principle relating to international data transfers.").

[9] The processing of the personal data must also be compatible with the purpose for which it was collected.  *See* Expert Decl. ¶ 6.2.  While the purposes for which the data was originally collected may vary from Defendant to Defendant, this compatibility requirement also turns on notification.  *See* Expert Decl. ¶ 6.1.1.

Convention constitutes a readily available alternative, however, the processing Plaintiff requests is not "necessary." *Id.*; *see also supra* Section III(B). Indeed, the European Commission's Article 29 Working Party – the leading authority on interpreting and applying the EU Directive on which the DPA was modeled[10] – has determined that the Hague Convention should be the primary method for obtaining documents held overseas. *See* Expert Decl. ¶¶ 11.1-11.2.

Even if the data could be processed "fairly" and was "necessary," however, processing must also satisfy the lawfulness requirement. Conditions 3, 5, and 6 do not provide adequate protection here.[11] Condition 3 (which permits processing where necessary for compliance with legal obligations) is inadequate because there is no UK statute or court order requiring processing. If this Court were to issue such an order requiring processing of personal data, Defendants would still be at risk of violating the DPA because foreign orders have not been fully accepted in English courts as binding authority for this purpose. *See* Expert Decl. ¶ 6.1.2 (noting that "there is considerable uncertainty regarding" whether "a court order from a court outside of the UK" is sufficient); *see also id.* ¶ 6.5 (explaining why certain exemptions do not apply). Condition 5 permits processing where "necessary . . . for the administration of justice." *See* Expert Decl. ¶ 6.1.2. However, Condition 5 only applies to public bodies carrying out public functions, not to individuals or corporate citizens in private litigation. *See id.* Condition 6 sets out a balancing test between the interests of the data controller (in this case, the Defendants) and the privacy rights of the data subjects. *See* Expert Decl. ¶ 6.1.2. But this Condition is very

---

[10] Directive 95/46/EC, adopted by the EU in 1995, is binding on all EU Member States, including the UK. *See* Casamento Decl. Ex. D. Just as the DPA was adopted in response to this Directive, all EU Member States have implemented similar domestic legislation. *See* Expert Decl. ¶ 4.2.

[11] All six conditions of Schedule 2 are outlined in Paragraph 6.1.2 of the Expert Declaration. Conditions 2 and 4 are irrelevant on their face. Condition 1 is inapplicable because obtaining the consent of the data subjects implicated here is impractical. *See* Expert Decl. ¶ 6.1.2.

unlikely to support the processing of the data here because the potential for privacy violations encompassing large groups of data subjects outweighs any legitimate interest in disclosure. *See id*. That Plaintiff could use the Hague Convention to alleviate the potential privacy violation, but is choosing not to, further cuts in favor of protecting the data subjects' privacy interests. Indeed, the Court need not reach any of Schedule 2's exceptions in this circumstance; there is a readily available alternative in the Hague Convention, which the European Commission has determined should be the primary method for obtaining documents held overseas and subject to the DPA. *See id*. ¶¶ 11.1-11.2.

Finally, even if all other requirements were met, responding to the Document Request in its current form would risk violating the DPA's requirement that processing be limited to the minimum amount of personal data necessary to fulfill the intended purpose. *See* Expert Decl. ¶ 6.3. The DPA mandates that processing be limited in terms of the individuals whose personal data is included and the amount of personal data that is processed. But Plaintiff has made no effort to circumscribe his Document Request; his pending Request No. 3 seeks all documents produced to foreign regulators without limitation. Given the broad nature of the Document Request, it plainly captures more personal data than necessary for the adjudication of Plaintiff's claims.

## 2.     The Restrictions On Transfer Of Documents Must Be Observed.

Even if processing were permissible, the Eighth Data Protection Principle contains an additional restriction barring the transfer of the Documents from the UK to Plaintiff here in the US. *See* Expert Decl. ¶ 6.4. Under the DPA, Defendants' production of the Documents would constitute a transfer. *Id*. With limited exception, the Eighth Data Protection Principle prohibits

the transfer of personal data to countries that do not provide adequate data protection, including the US.  *See id.*; DPA, schedule 1, ¶ 8.[12]

Although there are exceptions to the Eighth Data Protection Principle, none are applicable here.  Obtaining the consent of all the data subjects (including the consent of individuals whose personal data is included in the communication in addition to the consent of each custodian of these communications) is impractical and likely impossible.  Thus, the only potential exception permits transfer only where it is "necessary for the purpose of, or in connection with, any legal proceedings."  *See* Expert Decl. ¶ 6.4; DPA, schedule 4, ¶ 4(1).  This exemption applies only where it is necessary for the data controller to transfer personal data for the purposes of establishing or defending legal claims and there are no other means to establish or defend such claims.[13]  For example, the UK's Information Commissioner's Office ("ICO"), citing an Article 29 Working Party example, observes that this exemption would apply "where a parent company based in a third country is sued by an employee of the group based at one of the European subsidiaries, and the company requests the European subsidiary to transfer certain data relating to the employee if the data are necessary for the defence."  ICO Guide, Casamento Decl. Ex. F at 96.  Plaintiff has made no showing that transfer of the Documents here reaches this level of necessity.  To the contrary, whether considering Request No. 3 or the entirety of his requests for production, Plaintiff has cast a wide net that is likely to snare documents wholly irrelevant to

---

[12] The EU has determined that, at present, only the "Safe Harbor" scheme provides for an adequate level of protection for data transfers from the EU to the US.  Expert Decl. ¶ 6.4.  To Defendants' knowledge, neither Plaintiff nor the State of New York have obtained "Safe Harbor" certification.  *See* Expert Decl. at ¶ 6.4; *see also* U.K. Info. Comm'r's Office, Assessing Adequacy for International Data Transfers, Casamento Decl. Ex. G.

[13] The Article 29 Working Party emphasized in an opinion that the concept of "establishment, safeguarding or defence of legal claims' must . . . be subject to strict interpretation."  WP114, Casamento Decl. Ex. H.

his claims.  Furthermore, this transfer is not strictly necessary because the Documents could be procured through other means – namely, the Hague Convention.[14]

> **D.  Defendants Could Be Subject To Fines, Regulatory Consequences And Criminal Prosecution For Violating the DPA.**

Requiring Defendants to process the requested Documents and transfer them to Plaintiff in the US could expose Defendants to a range of penalties in the UK.[15]  Violations of the DPA are punishable by fines of up to £500,000, and violators may receive enforcement notices from the UK's Information Commissioner.  *See* Expert Decl. ¶¶ 7.1-7.2.  Defendants could even face criminal prosecution if they fail to comply with an enforcement notice.  *See* Expert Decl. ¶¶ 7, 7.2.

> **II.  Responding To Plaintiff's Document Request Would Also Require Defendants To Risk Violating The Banker's Common Law Duty Of Confidentiality.**

Under English law, the banker's common law duty of confidentiality prohibits banks from divulging to third parties (such as Plaintiff) any information relating to a customer's account.  *See* Expert Decl. ¶ 10.1; *see also Tournier v Nat'l Provincial & Union Bank of England*, [1924] 1 KB 461 (Casamento Decl. Ex. K).  The duty of confidentiality protects from

---

[14] Plaintiff may argue that redaction of personal data is a feasible alternative to Hague Convention procedures.  Indeed, certain defendants argue for redaction as a reasonable method of complying with Japanese data privacy laws.  But the set of documents that would have to be produced from the UK is on a vastly different scale and potentially includes millions of pages of documents that contain protected information.  The cost and time burden of a redaction project of that magnitude make redaction utterly impracticable.  Moreover, if redaction were ordered, Plaintiff would not receive the Documents for an extended period of time (potentially longer than it would have taken for him to get them through the Hague Convention had he begun those procedures when he was first notified of Defendants' objections).

[15] *See generally* U.K. ICO, Actions We've Taken, Casamento Decl. Ex. I; *see also* WP 128, Casamento Decl. Ex. J (finding that Belgium-based Society for Worldwide Interbank Financial Telecommunication ("SWIFT") violated both processing and transfer restrictions of Directive 95/46/EC by providing information including personal data to the US Department of the Treasury in response to subpoena).

disclosure the state of a bank account, any information derived from the account itself, and any transactions flowing through the account. *Id.*

Plaintiff's broad Document Request seeks Documents containing information subject to this duty. Numerous Documents reflect conversations, discussions, and presentations made among banks and between bankers, and some of these Documents will likely refer to customers' accounts and/or transactions. Defendants cannot divulge that information without breaching the duty owed to affected customers. *See, e.g.*, Patricia L. Bellia, *Chasing Bits Across Borders*, 2001 U. CHI. LEGAL F. 35, 63 n. 96 (2001) (stressing the degree to which England is opposed to foreign subpoenas requesting confidential bank account information). A violation of the duty is especially likely as Plaintiff's broad Request amounts to a "fishing expedition." *In re State of Norway's Application*, 1 All E.R. 746 (Q.B. 1989) (Casamento Decl. Ex. L) (denying a Norwegian court's broad request for examination of witnesses in the UK for this reason).

None of the potential limitations on the duty of confidentiality apply. Foreign demands for production are not necessarily sufficient to implicate the compulsion by law exception. *See e.g., X AG v A Bank* [1983] 2 All ER 464 (Casamento Decl. Ex. M) (upholding injunction barring disclosure of information to the US pursuant to a DOJ-issued subpoena). Similarly, the exception allowing disclosure where there is a public duty to disclose does not apply because this is a suit between private parties. The qualification allowing disclosure where it is in the interests of the bank is irrelevant because it applies only to disclosures in the context of customer litigation (suits between the bank and its customer) and disclosures against third parties arising out of transactions between the bank and its customer. *Tournier*, 1 KB at 486.[16] Finally,

---

[16] *See also Nam Tai Elecs. Inc. v PWC*, Unreported, Court of Final Appeal of the Hong Kong Special Administrative Region, Li CJ, Bokhary, Chan, Ribeiro PJJ & McHugh NPJ, 31 January

customers have not consented to the production requested by Plaintiff, and obtaining their

consent is not feasible, rendering that exception irrelevant.[17]

## III.   Comity Analysis Weighs Strongly In Favor Of Requiring Plaintiff To Follow Hague Convention Procedures.

Given that processing and producing the Documents as requested would be at odds with

both the DPA and the banker's duty of confidentiality, there is a meaningful conflict between the

Federal Rules' discovery procedures and UK privacy laws.  *See e.g., Reinsurance Co. of Am.*,

902 F.2d at 1279 (recognizing the need for a comity analysis); *In re Maxwell Commc'n Corp.*

*plc*, 93 F.3d 1036, 1049 (2d Cir. 1996) ("International comity comes into play … when there is a

true conflict between American law and that of a foreign jurisdiction.").  The Restatement's

comity analysis established by the Supreme Court in *Aérospatiale* must therefore be applied to

determine whether Plaintiff should be required to seek the Documents through the Hague

Convention.[18]

### A.   The Balancing Test Provides The Proper Framework For Considering A Conflict Between Foreign Privacy Laws And The Federal Rules.

Comity arises from the principle that "a state may not require a person . . . to do an act in

another state that is prohibited by the law of the state of which he is a national."  Restatement §

---

2008) [52] (Casamento Decl. Ex. N) (explaining the justification for disclosure in third party litigation).

[17] If Defendants were to violate the duty of confidentiality, Defendants could be exposed to breach of contract suits brought by affected customers.  *See* Expert Decl. ¶ 10.2.  Even if the breach of contract claims were unsuccessful, Defendants could incur significant costs in defending against such suits and customer relations could be irreparably harmed.  Exposing Defendants to these kinds of potential costs is unfair, especially because it is entirely avoidable. *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 355 (D. Conn. 1991) (recognizing "the [c]ourt's concern for fairness to foreign litigants" in reaching its decision to deny motion to compel).

[18] For the reasons set forth in footnote 14, Deutsche Bank agrees that it is not practicable to comply with the UK DPA by reviewing and redacting documents on the scale that would be required here, and that as a result plaintiff should be required, for the reasons set out below, to follow Hague Convention procedures.

441.  US courts are directed to avoid "any action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures," *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960), and "should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Aérospatiale*, 482 U.S. at 546.

"In determining whether to order discovery of foreign documents and information, courts in this Circuit follow the [Restatement] and consider: (1) the importance of the documents or information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the US; (4) the availability of alternative means of retrieving the information; and (5) the extent to which noncompliance with the request would undermine important interests of the US, or compliance with the request would undermine the important interests of the state where the information is located." *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 151 (S.D.N.Y. 2011) (Pitman, M.J.), *aff'd sub nom, Tiffany (NJ) LLC v. Andrew*, No. 10-9471, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011).[19]

Here, the balancing test leads to a clear conclusion: discovery through the Hague Convention is warranted because, if Defendants are forced to proceed through other means, "the cost in international comity will be likely to exceed the benefit to the conduct of these American litigations." *Minpeco, S.A. v. Conticommodity Serv., Inc.*, 116 F.R.D. 517, 530 (S.D.N.Y. 1987).

---

[19] *See also Aérospatiale*, 482 U.S. at 544 n.28 (identifying identical list of factors).

12

**B.      The Hague Convention Constitutes An Adequate Alternative Means Of Discovery.**

The Hague Convention is law in the US.  *See Aérospatiale*, 482 U.S. at 533.  Use of the Hague Convention would allow Plaintiff to obtain discovery to which he is entitled without causing Defendants to risk violating UK law and thereby expose themselves to liability.  Indeed, given that many (and for some Defendants, all) potentially relevant Documents, custodians, and Defendants are located in the UK, this may be a case where the "litigant's first use of the Hague Convention procedures can be expected to yield more evidence abroad more promptly than use of the normal procedures governing pre-trial civil discovery."  *Id.* at 543.  In such cases, the Hague Convention should be utilized.  *See e.g.*, *In re Baycol Prods. Litig.,* MDL No. 1431, 2003 WL 22023449, at *6 (D. Minn. Mar. 21, 2003) (denying motion to compel); *Volkswagen, A.G.*, 909 S.W.2d at 903 (factoring "adequate alternatives" into comity analysis and protecting information from discovery).

The UK routinely acts on Hague Convention discovery requests originating from the US.  According to a 2013 response to a questionnaire on the Hague Convention's practical operation, the UK received 172 letters of request from foreign litigants in 2013.  *See* Casamento Decl. at Ex. O.  The same survey indicated that approximately all of the 222 requests received in 2012 were executed in two to four months.  *Id*. at 1.

**C.      The Requested Information Originated Outside Of The US.**

Defendants' objections to Plaintiff's Document Request based on UK data privacy laws relate to Documents originated, located, processed, and/or stored in the UK.  "The overseas location of this information weighs in favor of the Banks."  *Tiffany*, 276 F.R.D. at 152.

### D.     The UK's Interest In Enforcing Its Privacy Laws Outweighs Any Domestic Interest Implicated.

A sovereign jurisdiction's interest in the enforcement of its financial privacy and data protection laws is substantial.  *See e.g., Minpeco*, 116 F.R.D. at 524 ("[T]he bank secrecy laws have the legitimate purpose of protecting commercial privacy."); *In re Activision Blizzard*, 86 A.3d at 550 ("[T]he Data Protection Act does represent a "sovereign interest[ ] in nondisclosure of specific kinds of material.").  Courts have repeatedly emphasized the significant weight of other countries' data protection regimes in denying motions to compel or enforcing the Hague Convention.  *See, e.g., In re Perrier Bottled Water Litig.*, 138 F.R.D. at 355 (finding that any inefficiencies associated with foreign discovery processes "pale beside the importance of respecting France's sovereign interests, and the Court's concern for fairness to foreign litigants"); *Linde v. Arab Bank, plc,* 262 F.R.D. 136, 151 (E.D.N.Y. 2009) (declining to compel production of confidential Israeli bank documents because production "would undermine important Israeli interest" of "maintaining public trust in the security and confidentiality of the banking system"); *accord Salerno v. Lecia, Inc.*, No. 97-973S, 1999 WL 299306, at *3 (W.D.N.Y. Mar. 23, 1999); *Volkswagen, A.G*, 909 S.W.2d 900.  Conversely, this private civil action does not implicate any specific and compelling national interest that could outweigh foreign jurisdictions' interest in their data privacy regimes.  *Cf. United States v. Chase Manhattan Bank, N.A.*, 584 F. Supp. 1080, 1086 (S.D.N.Y. 1984) (finding a "vital interest" in "the collection of tax revenues rightly due to [the US]" where the US was a party to the suit).

### E.     The Document Request Has A Broad Reach.

Plaintiff's Document Request is "not [a] narrowly tailored inquir[y] designed solely to target discreet [sic] and material information."  *In re Perrier Bottled Water Litig.*, 138 F.R.D. at

355 (requiring employment of Hague Convention procedures).  "Rather, although many of the requests seek discoverable information, they call for extremely broad responses … much of which is likely to be immaterial, and intrusive."  *Id.*

### F.   Production Would Impose A Considerable Burden On Defendants.

Producing the Documents could expose Defendants to fines, enforcement action, and potential prosecution for breaching the DPA and potentially substantial damages for violations of the banker's duty of confidentiality.  The mere possibility of these punishments warrants use of the Hague Convention.  *Tiffany*, 276 F.R.D. at 160 (ordering discovery through the Hague Convention where defendants "could potentially" be sanctioned for the disclosure); *see also Minpeco, S.A.*, 116 F.R.D. at 529 (denying motion to compel where it was "fairly clear that compliance with an order of this court would place BPS and its employees in violation of the Swiss criminal law").

### G.   Defendants' Objection Was Raised In Good Faith.

Defendants have not unnecessarily resisted producing any information and have raised this issue promptly so as to minimize any delays and any inconvenience to the Court or Plaintiff.  *See* Dkt No. 308-1, August 4, 2014 Joint Report Regarding Proposed Scheduling Order and Initial Discovery Plan (identifying foreign secrecy and data privacy laws as an anticipated discovery dispute).  Defendants are willing to cooperate with the Hague Convention process to the extent required by law.  Defendants' conduct only strengthens the argument in favor of requiring Plaintiff to proceed through the Hague Convention.  *See e.g, Tiffany (NJ) LLC*, 276 F.R.D. 143 at 160 (finding that lack of bad faith conduct weighed in defendants' favor).

In sum, Plaintiff's claims accuse Defendants of a lengthy, wide-ranging international conspiracy.  The Hague Convention provides for robust discovery exchanges through a process

compatible with the UK's sovereign interests in its privacy regime and in protecting fundamental rights of its citizens.  Comity strongly favors requiring Plaintiff to seek discovery of documents present in the UK through the Hague Convention in this substantially international litigation.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court sustain Defendants' objections to Plaintiffs' First Request for Production of Documents based on the data privacy laws of the United Kingdom, and issue an order requiring Plaintiff to pursue discovery of documents located or processed in the United Kingdom and subject to United Kingdom law through the procedures set forth in the Hague Convention.

Dated:          August 6, 2015
                New York, New York

Respectfully submitted,

/s/ Gregory T. Casamento
Edwin R. DeYoung
Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center
New York, New York  10281
Tel.: (212) 415-8600
Fax: (212) 303-2754
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel.: (214) 740-8000
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
Chicago, Illinois 60606
Tel.: (312) 443-0700

16

Fax: (312) 896-6472
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings plc and HSBC Bank plc*

/s/ Jerome S. Fortinsky
_____

Jerome S. Fortinsky
John A. Nathanson
Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Tel.: 212-848-4000
Fax: 212-848-7179
jfortinsky@shearman.com
john.nathanson@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendant Mizuho Corporate Bank, Ltd.*

/s/ Steven Wolowitz
_____

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Jon R. Roellke
_____

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP

17

1111 Pennsylvania Ave., N.W.
Washington, D.C.  20004
jon.roellke@morganlewis.com
Telephone:  (202) 739-3000
Fax:  (202) 739-3001

Michael L. Spafford
PAUL HASTINGS LLP
michaelspafford@paulhastings.com
875 15th Street, NW
Washington, DC 20005
Telephone:  (202) 551-1700
Fax: (202) 551-1705

*Attorneys for Defendant Sumitomo Mitsui Banking
Corporation*


/s/ Thomas C. Rice
_____
Thomas C. Rice
Paul C. Gluckow
Shannon P. Torres
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
stores@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A. and J.P. Morgan
Securities plc*


/s/ Moses Silverman
_____
Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas

18

New York, New York 10019
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com
Tel.: (212) 373-3355

*Attorneys for Defendant Deutsche Bank AG*