# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 12-cv-3419 (GBD) (HBP) |
| | : | |
| | : | |
| MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., CHUO MITSUI TRUST & BANKING CO. LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN LTD., THE BANK OF YOKOHAMA, LTD., SOCIETE GENERALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50, | : | ECF Case |
| | : | |
| Defendants. | : | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JAPANESE DATA PRIVACY LAW OBJECTIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

    A.    Plaintiff's Document Requests and the
Japanese Data Privacy Law .......................................................... 2

    B.    The Proposed Solution and Requested Order ....................................... 3

ARGUMENT ............................................................................................................... 4

I.    Japan's APPI Prohibits Defendants From
Producing Personal Data To Plaintiff .................................................... 4

    A.    The APPI Protects Personal Data From
Disclosure To Third Parties Absent
Written Consent ...................................................................... 4

    B.    The APPI Applies to the Documents
Requested ............................................................................. 7

    C.    It Is Impossible Or Impractical For
Defendants To Obtain Written Consent
Prior to Production .................................................................. 7

II.    No Convention Or Treaty Permits Defendants
To Produce Personal Information To Plaintiffs ......................................... 8

III.    Defendants Should Be Permitted To Anonymize
Personal Information From Responsive Documents
To Ensure Compliance With The APPI ................................................... 8

IV.    A Comity Analysis Weighs Heavily In Favor
Of The Proposed Order .................................................................. 9

    A.    A Significant Number Of The Documents
And Information Requested Are
Unimportant To The Litigation .................................................... 11

    B.    The Request Is Non-Specific ....................................................... 12

    C.    The Information Originated Outside
the United States .................................................................. 12

    D.    The Availability Of Alternative
Means Of Securing The Information ............................................... 13

    E.    Important Interests Of The United States
Will Not Be Undermined, and Compliance
with the Request Would Undermine
Important Interests of Japan ...................................................... 13

CONCLUSION ........................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Baycol Prods. Litig.*,
   MDL No. 1431, 2003 WL 22023449 (D. Minn. March 21, 2003) ........................................12

*Gibbs v. City of New York*,
   243 F.R.D. 95 (S.D.N.Y. 2007) ...........................................................................................13

*Gucci America, Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) ................................................................................................10

*Ings v. Ferguson*,
   282 F.2d 149 (2d Cir. 1960) ..........................................................................................11, 13

*Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.*,
   155 F.R.D. 626 (N.D. Ind. 1993) .....................................................................................8, 10

*McKesson Corp. v. Islamic Republic of Iran*,
   185 F.R.D. 70 (D.D.C. 1999) ...............................................................................................10

*Mediate v. City of San Diego*,
   No. 12-cv-2294, 2014 WL 1669977 (S.D. Cal. Apr. 28, 2014) ...........................................13

*In re Perrier Bottled Water Litigation*,
   138 F.R.D. 348 (D. Conn. 1991) ..........................................................................................12

*In re Porsche Cars N. Am., Inc.*,
   No. 2:11–md–2233, 2012 WL 4361430 (S.D. Ohio Sept. 25, 2012) ....................................13

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*,
   902 F.2d 1275 (7th Cir. 1990) ..............................................................................................10

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) .........................................................................................11, 12

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
   482 U.S. 522 (1987) ........................................................................................................10, 11

*Tiffany (NJ) LLC v. Qi Andrew*,
   276 F.R.D. 143 (S.D.N.Y. 2011), *aff'd sub nom, Tiffany (NJ) LLC v. Andrew*,
   No. 10-9471, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) ...............................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*In re Vitamins Antitrust Litig.*,
 120 F. Supp. 2d 45 (D.D.C. 2000) ........................................................................................8, 10

*Volkswagen, A.G. v. Valdez*,
 909 S.W.2d 900 (Tex. 1995) .................................................................................................13

**Statutes**

Japanese Act on Protection of Personal Information, Act No. 57 of 2003 ........................... *passim*

**Other Authorities**

Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or
 Commercial Matters, ..............................................................................................................8

Guidelines for Personal Information Protection in the Financial Industries (July 2,
 2015) .......................................................................................................................................5

Mangyo Kinoshita, et al., Data Protection in Japan: Overview,
 Data Protection Multi-Jurisdictional Guide 2014/15 (2014) ...................................................5

Ministry of Health, Labor and Welfare Notice No. 357, May 12, 2012 .........................................6

Restatement (Third) of Foreign Relations Law § 442(1)(c) .........................................4, 10, 11, 14

U.S.-Japan Consular Convention of 1963 .....................................................................................8

Pursuant to the Court's June 26, 2015 Order, Defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd., The Bank of Yokohama, Ltd., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities, plc, Mitsubishi UFJ Trust and Banking Corporation, Mizuho Corporate Bank, Ltd., The Norinchukin Bank, Shinkin Central Bank, The Shoko Chukin Bank, Ltd., Société Générale, Sumitomo Mitsui Banking Corp. and Sumitomo Mitsui Trust Bank, Ltd. ("Defendants") respectfully submit this memorandum of law in support of their motion to sustain their objections to Plaintiff's First Request for Production of Documents Directed to Defendants (the "Document Requests") based on Japan's Act on the Protection of Personal Information (Act No. 57 of 2003).  Defendants also submit the Declaration of Hirotaka Uranaka, dated August 5, 2015, as further support and to assist the Court in its review.

## PRELIMINARY STATEMENT

As we demonstrate below, Defendants' objection—and Plaintiff's request for documents produced to various government agencies—can be addressed through an order that ensures compliance with *both* the Federal Rules of Civil Procedure and the requirements of the Japanese Act on Protection of Personal Information, Act No. 57 of 2003 (the "APPI").  Specifically, Defendants seek an order from this Court (1) sustaining their objections based on the data privacy law of Japan and (2) directing that they be permitted to anonymize or pseudonymize personal information (as defined by the APPI), through redactions, from applicable documents. Once such an order is entered, Defendants can commence their production of documents from Japan that are responsive to Plaintiff's request and not otherwise subject to a valid objection.[1]

---

[1]  In its June 26, 2015 order, the Court directed the parties to brief certain foreign data privacy law objections.  Accordingly, this brief does not address foreign regulator objections and Defendants preserve all other objections that they have raised to Plaintiff's Document Requests.

1

**A.    Plaintiff's Document Requests and the Japanese Data Privacy Law**

At this time, Plaintiff is pursuing Request No. 3 of the Document Requests.  Request No.

3 seeks the production of, *inter alia*, "All documents produced by you to any regulatory body or

government agency, including, without limitation, the DOJ, the CFTC, the EC, the FSA, the

JSESC, the Swiss COMCO or the CCB concerning Yen-LIBOR and/or Euroyen TIBOR."

Plaintiff has not withdrawn his other Document Requests.  This memorandum focuses on

Request No. 3, but Defendants' objections are equally applicable to all of Plaintiff's requests.

Defendants are Japanese banks and European or U.S. financial institutions with direct or

affiliated operations in Japan, who have documents potentially responsive to the Document

Requests.  Defendants have interposed objections to the production of certain documents called

for by the Document Requests that are located in Japan because compliance with Plaintiff's

requests would violate the APPI.

The APPI (together with the supplementary guidance promulgated, as relevant here, by

the Japanese Financial Services Agency ("JFSA")) is designed to protect the rights and interests

of individuals and to prescribe the duties to be observed by business operators, such as

Defendants, handling personal information.  As is most relevant here, the APPI prohibits the

production of personal data—personal information that is retrievable or searchable through a

computer database—to third parties, such as Plaintiff, by those operating in the financial field,

including Defendants, absent prior written consent of the individual whose personal information

is subject to disclosure.  The APPI affords protection to personal information—it does not

prohibit production of documents located in Japan to foreign litigants, and Defendants have not

asserted any such outright prohibition.

The APPI defines "Personal information" broadly to include "information about a living

individual which can identify the specific individual by name, date of birth, or other description

contained in such information (including such information as will allow easy reference to other information and will thereby enable the identification for the specific individual)."  "Personal data" is defined as personal information constituting a personal information database, which is a set of information that is systematically arranged in such a way that specific personal information can be retrieved by a computer.  Plaintiff's Request No. 3 encompasses personal data to which the APPI applies.

In the circumstances presented here, however, obtaining individual consent to produce personal information in response to Plaintiff's Document Requests is impractical, if not impossible.  Defendants would be required to identify, locate, contact and seek consent from a substantial number of individuals, including former employees and personnel at other financial institutions.  These individuals may well elect to withhold consent in this litigation context.  As a result, and because traditional means of obtaining foreign documents are likely unavailable here—Japan is not a signatory to the Hague Evidence Convention, for example—compliance requires fashioning an alternative solution.

### B.    The Proposed Solution and Requested Order

Defendants propose to anonymize[2] or pseudonymize personal information in their responsive documents, with the effect of making the individual unidentifiable.  This approach is consistent with proposed clarifying amendments to the APPI that are currently before the legislature in Japan.  Moreover, Plaintiff will suffer no prejudice; he will receive the information sought and retain the ability to challenge redactions following a review of the productions.  The

---

[2]   Anonymization is a form of information sanitation whose intent is to protect individual privacy.  It is the process of removing (or encrypting) personally identifiable information, so that the individuals whom the data describe remain anonymous.

proposed order also has the benefit of imposing no burden on the Court and does not require an election between the Federal Rules and foreign data privacy law.

Defendants' proposal is further supported by a comity analysis.  All or nearly all of the factors to be applied under a Restatement (Third) of Foreign Relations § 442(1)(c) analysis weigh in favor of showing appropriate deference to Japan's interest in protecting personal information.

For these reasons, and those discussed below, the Court should sustain Defendants' Japanese data privacy objections and issue the proposed order.

## ARGUMENT

**I.     Japan's APPI Prohibits Defendants From Producing Personal Data To Plaintiff**

**A.     The APPI Protects Personal Data From Disclosure To Third Parties Absent Written Consent**

Plaintiff's Request No. 3 seeks documents produced by Defendants to numerous U.S. and foreign regulatory bodies and government agencies.  Even setting aside the overbreadth of Request No. 3 and Plaintiff's other Document Requests—and the strong likelihood that they sweep in wholly irrelevant materials involving hundreds of individuals—compliance with Plaintiff's Request No. 3 would require Defendants to violate Japan's data privacy laws.

The APPI is the principal data protection legislation in Japan, and its stated purpose is "to protect the rights and interests of individuals" with respect to their personal information.  *See* Decl. of Hirotaka Uranaka, dated August 5, 2015 (attached as Exhibit A), at ¶ 6; *see also* APPI, art. 1 (Uranaka Decl., Ex. 2).  It was enacted in response to the remarkable increase in the utilization of personal information resulting from the development of advanced information and communications technology in society.  Uranaka Decl. ¶ 8.  The APPI establishes duties to be observed by entities that have a presence in Japan and who handle personal information.  *Id.*

4

The APPI prohibits Defendants' transfer of "personal data" maintained in Japan to a "third party."  *See* Uranaka Decl. ¶ 12; *see also* APPI, art. 1; 23.[3]   Under the APPI, "personal data" refers to an assembly of "personal information" retrievable or searchable through a computer database, and "personal information" means "information about a living individual which can identify the specific individual by name, date of birth or other description contained in such information (including such information as will allow easy reference to other information and will thereby enable the identification of the specific individual)."  *See id.* at ¶ 10; APPI, art. 2(1)-(2), (4).  Third parties include foreign litigants, such as Plaintiff here.  *See* Uranaka Decl. ¶ 14.[4]

The APPI is an administrative law.  The APPI directs various administrative ministries that regulate specific industrial sectors to issue, and enforce, data protection guidelines.  *See id.* at ¶ 7.  Defendants are subject to, at a minimum, the Guidelines for Personal Information Protection in the Financial Field promulgated by the Japanese Financial Services Agency ("JFSA") ("APPI Guidelines").[5]  *Id.*; *see also* Mangyo Kinoshita, et al., *Data Protection in*

---

[3]  Defendants are plainly business operators (or data controllers) handling personal information under the APPI.  A business operator handling personal information includes entities that use personal information in a database, excluding certain governmental entities.  *See* Uranaka Decl. ¶ 12; *see also* APPI, art. 2(3).

[4]  Defendants recognize that in some circumstances a protective order that limits the dissemination of personal information to a plaintiff or his counsel may be appropriate to address privacy concerns.  However, that is not the case here.  Plaintiff and his counsel are third parties under the APPI, and therefore the production of personal data to them would violate the APPI.

[5]  The JFSA's updated Guidelines for Personal Information Protection in the Financial Industries (July 2, 2015) is available at http://www.fsa.go.jp/news/27/20150702-3.html (Japanese).  The JFSA's English translation of the original Guidelines, available at http://www.fsa.go.jp/frtc/kenkyu/event/20070424_02.pdf, is annexed as Exhibit A to the Declaration of Andrew J. Calica, dated August 5, 2015.  Many industries are subject to the jurisdiction of multiple ministries.  In addition to the JFSA, banks are subject to the Privacy Guidelines of the Ministry of Health, Labor and Welfare with regard to their employees

5

*Japan: Overview*, Data Protection Multi-Jurisdictional Guide 2014/15 (2014), *available at* http://us.practicallaw.com/cs/Satellite?blobcol=urldata&blobheader=application%2Fpdf&blobkey=id&blobtable=MungoBlobs&blobwhere=1247703603376&ssbinary=true, *archived at* http://perma.cc/33GJ-8AK5.   The APPI Guidelines incorporate the APPI's definition of personal information, JFSA, art. 2(1), and augment that definition by including reference to "sensitive information," which is described as including information on political views, religion, participation in union activities, race, family origin and registered domicile, health care, sex life and past criminal records,  JFSA, art. 6(1).

Further, the APPI Guidelines adopt the APPI's general prohibition on producing personal data to a third party, and strengthen that prohibition by requiring the prior written consent of any individual whose personal information is to be produced, obtained after notifying each individual of (i) the third party to whom the personal information will be provided, (ii) the purpose of the third party for the personal information, and (iii) the content of the personal information to be provided. Uranaka Decl. ¶ 13; *see also* (JFSA, art. 13(1)).   Again, a "third party" is any legal entity other than the data controller, whether located abroad or in Japan—*i.e.*, Plaintiff and his counsel. *See id.* ¶ 14; *see also* Kinoshita, *Data Protection in Japan*.   While there are exceptions to this general prohibition, none are applicable here.[6]

---

(Ministry of Health, Labor and Welfare Notice No. 357, May 12, 2012).  Industrial associations such as the Japanese Bankers Association and the Japan Securities Dealers Association also maintain privacy regulations.  These industry privacy regulations do not have the force of law, but  they  may  provide  for  penalties  within  the  association.

[6]  This case does not implicate the protection of the life, body, or property of an individual or public hygiene, nor is the provision of personal data necessary for cooperating with a (Japanese) state institution or local public body.  *See* JFSA, art. 13(1).  The exception in cases in which the provision of personal data is based on "laws and regulations," excludes the laws and regulations of foreign states.  *See id.* at ¶ 16.

The JFSA is empowered to direct Defendants to comply with the APPI and to cease any violations if the JFSA determines that there is the potential for the serious infringement of the rights and interests of individuals.   Uranaka Decl. ¶ 27-28.   The JFSA also may take other measures as necessary to rectify a violation.   *Id.*   Failure to comply can result in imprisonment or fines of up to ¥ 300,000.   *Id.* at ¶ 29.[7]

**B.     The APPI Applies to the Documents Requested**

Request No. 3 calls for the production of personal data.   Such data may include, for example, information identifying specific individuals by name and information, such as telephone numbers or employee identification numbers, that when used in conjunction with other available information could lead to the identification of an individual.   Thus, the APPI plainly applies by its terms to the Document Requests.

**C.     It Is Impossible Or Impractical For Defendants To Obtain Written Consent Prior to Production**

In order to comply with the APPI and the APPI Guidelines, Defendants would be required to seek and obtain written consent from each individual whose personal information is encompassed by the Document Requests, after informing those individuals of the third parties to whom the data would be transferred, the content of the data and the purpose of the transfer. Given the broad scope of Plaintiff's requests, seeking and obtaining written consent from all of the affected individuals would be impractical at best, and likely impossible.   Defendants would need to identify, locate and contact a substantial number of individuals—including, potentially, senders and recipients who are customers or individuals at other financial institutions—whose personal information might appear in the requested communications.   Defendants would then

---

[7] An individual who is harmed by a violation of the APPI may have a cause of action against the data controller under tort or contract law.   Thus, if Defendants were to produce documents in response to Plaintiff's Document Requests in contravention of the APPI, they could be vulnerable to lawsuits in Japan.

need to seek consent from these numerous individuals prior to production. Aside from the logistical challenges, many of the individuals affected will likely see no reason to consent to the disclosure of their personal information.  Because it is not practical to obtain consent in these circumstances, the parties must find an alternative solution to ensure compliance with the APPI.

## II.    No Convention Or Treaty Permits Defendants To Produce Personal Information To Plaintiffs

The traditional mechanisms for obtaining information from foreign countries are not available here.  Unlike some other countries, such as the United Kingdom, Japan is not a signatory to the Hague Evidence Convention.  *See In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45 (D.D.C. 2000);  Uranaka Decl. ¶ 24; *see also* Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Commercial Matters, *available at* http://www.hcch.net/index_en.php?act=conventions.text&cid=82; list of parties to the Convention, *available at* http://www.hcch.net/upload/overview20e.pdf.  Certain forms of limited disclosure (such as depositions and letters rogatory) are available through the U.S.-Japan Consular Convention of 1963, but that treaty does not provide a means for document requests directed to parties located in Japan such as the Document Requests at issue here.  *See, e.g., Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.*, 155 F.R.D. 626, 627 (N.D. Ind. 1993); Uranaka Decl. ¶ 26.  Thus, production of information from Japan typically must be voluntary.

## III.   Defendants Should Be Permitted To Anonymize Personal Information From Responsive Documents To Ensure Compliance With The APPI

Obtaining consent from the individuals affected is not practical and the traditional means for obtaining foreign disclosure are unavailable.  Defendants therefore seek an order (1) sustaining their objections based on the APPI and (2) directing that they be permitted to anonymize or pseudonymize personal information (as defined by the APPI), through redactions, from applicable documents.

8

By anonymizing or pseudonymizing protected personal information, through redaction, Defendants can produce responsive documents without violating the APPI.   *See* Uranaka Decl. ¶ 23.  Indeed, this approach is consistent with the proposed amendments to the APPI.[8]  That legislation provides, among other things, that personal data may be transferred to third parties without first obtaining consent from the affected individuals, so long as the personal data is processed into anonymized or pseudonymized form with the effect of making the individual unidentifiable.  *Id.* at ¶ 32(iii).

There is no prejudice to Plaintiff from this pragmatic approach.  Plaintiff will receive documents responsive to Request No. 3, to the extent not otherwise subject to objection, and Defendants will comply with their APPI obligations.  Only personal information will be subject to redaction, and the remaining non-private text will be visible to Plaintiff.  And, nothing in the order would prohibit Plaintiff from seeking relief, if necessary, once counsel reviews the information produced and the redactions.

In sum, such an order would enable Plaintiff to receive the discovery it seeks while providing due regard to Japan's interest in protecting personal information.  Further, as discussed below, a comity analysis favors Defendants' proposed solution.

## IV.    A Comity Analysis Weighs Heavily In Favor Of The Proposed Order

Because the production of personal data as contained in the material responsive to the Document Requests would contravene the APPI, there is a meaningful conflict between

---

[8] Japan is in the process of amending the APPI to clarify the terms of the act and further strengthen the protection of personal information.  Among other things, the bill to amend the APPI, which has been submitted to the National Diet of Japan proposes to expand the definition of personal information to include (1) letters, numbers, and any other code converting physical characteristics of specific individuals, and (2) letters, numbers, and any other code provided in relation to services or goods provided to individuals or those in documents to be issued to individuals which could identify specific individuals.  Uranaka Decl.  ¶¶ 31-32.

discovery under the Federal Rules and Japan's privacy law.  Where such a conflict is present, a comity analysis is appropriate.  *See, e.g., Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1279, 1282 (7th Cir. 1990) (recognizing the need for a comity analysis in light of conflict between foreign privacy law and United States).

As discussed above, Japan is not a signatory to the Hague Evidence Convention. Accordingly, the Supreme Court's decision in *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987)—which was concerned exclusively with whether to apply the Hague Evidence Convention to discovery sought from entities in a signatory country—is inapplicable.  *See In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d at 55 ("the Supreme Court's holding in [*Aérospatiale*] is clearly limited to countries that have adopted the Hague Convention procedures for the taking of evidence."); *McKesson Corp. v. Islamic Republic of Iran,* 185 F.R.D. 70, 79 (D.D.C. 1999) (holding that *Aérospatiale* is "of limited assistance to this case since Iran is not a party to the Hague Evidence Convention"); *Japan Halon* 155 F.R.D. at 627 (N.D. Ind. 1993) ("The court agrees with the defendants that because Japan is not a signatory to the Hague Convention on Evidence, any analysis of case law on that point is rendered moot.").

In such circumstances, the Second Circuit has applied a comity analysis, under the Restatement (Third) of Foreign Relations § 442(1)(c), to fashion an appropriate discovery order for the production of information located abroad.  *See, e.g., Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014) (approving application of Restatement (Third) of Foreign Relations Law § 442(1)(c) to determine whether foreign bank should be required to produce documents in response to a subpoena.)  Specifically, courts are directed to avoid "such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary

circumvention of its procedures," *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960), and "should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Aérospatiale*, 482 U.S. at 546.  Defendants' proposed solution achieves these ends.

Under section 442(1)(c), a court should take into account the following factors in determining whether to order the production of information located abroad, and in framing an appropriate order:  a) the importance to the investigation or litigation of the documents or other information requested; b) the degree of specificity of the request; c) whether the information originated in the United States; d) the availability of alternative means of securing the information; e) and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.  Each of these factors favors Defendants.

### A.    A Significant Number Of The Documents And Information Requested Are Unimportant To The Litigation

While it is possible that some of the documents responsive to the Document Requests will be relevant to the parties' claims and defenses, given the broad scope of the Document Requests generally and Request No. 3, in particular, it is likely that a substantial number of irrelevant documents will be called for, especially considering Plaintiff's narrow trading period in relation to the broad period covered by the requests.  As a result, this factor favors producing documents with anonymized personal information, without prejudice to Plaintiff's right to challenge redactions following review of the materials produced.  *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("[w]here the outcome of

litigation 'does not stand or fall on the present discovery order,'… courts have generally been unwilling to override foreign secrecy laws.)   Plaintiff's Document Requests almost certainly encompass information that "is likely to be immaterial, and intrusive."   *In re Perrier Bottled Water Litigation*, 138 F.R.D. 348, 355 (D. Conn. 1991).   Further, Plaintiff has made no showing that the information is important to the litigation.   *See, e.g., In re Baycol Prods. Litig.*, MDL No. 1431, 2003 WL 22023449, at *6 (D. Minn. March 21, 2003) (recognizing that information sought was subject to German privacy laws and denying motion to compel production in part because "[p]laintiffs have made no showing of the importance of this information").   This factor favors Defendants' proposal.

### B.      The Request Is Non-Specific

As explained above, Request No. 3 is anything but specific—here, Plaintiff seeks documents solely based on the fact that they were provided to an apparently unlimited number of authorities spread throughout the world regardless of whether those documents relate to the parties' claims and defenses.   "Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged."   *See generally Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).   This factor also favors Defendants' proposal.

### C.      The Information Originated Outside the United States

The information sought by Plaintiff that is subject to Defendants' APPI objections originated in Japan.   There can be no dispute that this factor favors Defendants' proposal.   *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 152 (S.D.N.Y. 2011) (Pitman, M.J.) (collecting cases), *aff'd sub nom, Tiffany (NJ) LLC v. Andrew*, No. 10-9471, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011).

**D.      The Availability Of Alternative Means Of Securing The Information**

Defendants can and with an appropriate order will produce documents that are responsive to Request No. 3 and that are not otherwise subject to an objection directly to Plaintiff and have proposed a means by which Plaintiff can secure the requested information.  This factor again favors Defendants' proposal.

**E.      Important Interests Of The United States Will Not Be Undermined, and Compliance with the Request Would Undermine Important Interests of Japan**

This factor similarly favors Defendants, because Defendants propose to produce documents subject to anonymizing or pseudonymizing personal information, through redactions, to avoid violating the APPI.   Defendants' proposal does nothing to undermine, and, in fact, promotes, the U.S. interest in broad discovery while preventing an "unnecessary circumvention" of Japan's laws.  *Ferguson*, 282 F.2d at 152.   Conversely, the wholesale production of an indiscriminate population of materials containing a host of personal data and which is unlikely to contain information relevant to the claims and defenses in this action, would severely undermine Japan's interests in data privacy.  *See, e.g., Volkswagen, A.G. v. Valdez*, 909 S.W.2d 900, 903 (Tex. 1995) (recognizing that the interests of Germany would be undermined if a corporate defendant was required to produce an employee phone book in violation of Germany's privacy laws); *see also In re Porsche Cars N. Am., Inc.*, No. 2:11–md–2233, 2012 WL 4361430, at *10 (S.D. Ohio Sept. 25, 2012) (denying motion to compel production of unredacted versions of documents redacted to comply with foreign privacy laws.)   U.S. courts routinely order that personal information be redacted where the only concern is one of individual privacy.  *See, e.g., Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) ("[p]rivacy concerns can be alleviated   by   an   appropriate protective order and   the redaction of personal information."); *Mediate v. City of San Diego*, No. 12-cv-2294, 2014 WL 1669977, at *4 (S.D. Cal. Apr. 28,

2014) (ordering the redaction of home addresses, telephone numbers, family members, or the personal information of other non-parties, such as license plate information, social security numbers, etc., because plaintiff had not shown a need for such information.).  Here, where the individual privacy rights and a foreign sovereign's interests are at stake, the result should be no different.[9]

In short, all of the section 442(1)(c) factors favor Defendants' proposed solution. Defendants' proposal permits the Court to fashion an order that (i) gives due regard to Japan's interest in protecting personal information collected by businesses operating within its borders, (ii) enables Defendants to comply with their obligations under the APPI, and (iii) allows Plaintiff to obtain the requested information without experiencing any prejudice.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court issue an order (1) sustaining their objections based on the data privacy law of Japan and (2) directing that they be permitted to anonymize or pseudonymize personal information (as defined by the APPI), through redactions, from applicable documents prior to production.

Dated:     August 6, 2015
           New York, New York

---

[9] Plaintiff can hardly complain about Defendants' proposal because his own document production contains numerous (and unexplained) redactions.

14

/s/ Steven Wolowitz

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*


/s/ Daryl A. Libow

Daryl A. Libow
Christopher M. Viapiano
SULLIVAN 7 CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
Tel:  (202) 956-7500
Fax:  (202) 956-7056
libowd@sullcrom.com
viapianoc@sullcrom.com

*Attorneys for Defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Mitsubishi UFJ Trust and Banking Corporation*


/s/ Gary W. Kubek

Gary W. Kubek
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6836
gwkubek@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendant The Bank of Yokohama, Ltd.*

/s/ Thomas C. Rice

Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and J.P. Morgan Securities plc*


/s/ Jerome S. Fortinsky

Jerome S. Fortinsky
John A. Nathanson
Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 848-4000
Fax: (212) 848-7179
jfortinsky@shearman.com
john.nathanson@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendants Mizuho Corporate Bank, Ltd.*

/s/ Andrew W. Stern
_____
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 839-5300
Fax:  (202) 839-5599
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com

*Attorneys for Defendant The Norinchukin Bank*

/s/ Andrew C. Smith
_____
Andrew C. Smith
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1540 BROADWAY
New York, New York 10036
Tel.: (212) 858-1000
Fax: (212) 858-1500
andrew.smith@pillsburylaw.com

*Attorneys for Defendant Shinkin Central Bank*

/s/ Robert C. Mason
_____
Robert C. Mason
Bret A. Finkelstein
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 715-1088
Fax: (212) 715-1399
robert.mason@aporter.com
bret.finkelstein@aporter.com

James W. Thomas, Jr. *(admitted pro hac vice)*
555 Twelfth Street, NW
Washington, DC 20004
Tel.: (202) 942-5000
Fax: (202) 942-5999
james.thomas@aporter.com

*Attorneys for Defendant*
*The Shoko Chukin Bank, Ltd.*

/s/ Jon R. Roellke
_____
Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel.:  (202) 739-3000
Fax:  (202) 739-3001
jon.roellke@morganlewis.com

Michael L. Spafford
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005
Tel.: (202) 551-1700
Fax: (202) 551-1705
michaelspafford@paulhastings.com

*Attorneys for Defendant Sumitomo Mitsui*
*Banking Corporation*

16

/s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Tel:  (212) 574-1200
christensen@sewkis.com
weitmen@sewkis.com

*Attorneys for Defendant Sumitomo Mitsui*
*Trust Bank, Ltd.*

17

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

This brief complies with the type-volume limitation established by the Court in its instruction during the June 25, 2015 hearing on this matter and contains 4,249 words, inclusive of headings, footnotes, and quotations and exclusive of pages containing the caption, table of contents, table of citations signatures and any certificates of counsel.

Dated: August 6, 2015

Respectfully submitted,

By: /s/ Andrew J. Calica
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2256
Fax: (212) 849-5856
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

18