

**New York**
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

**www.lowey.com**

**Pennsylvania**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

August 17, 2015

*Via Facsimile and ECF*

Honorable Henry B. Pitman
United States Magistrate Judge
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re:     *Laydon v. Mizuho*, No. 12-cv-3419(GBD)(HBP)
>         **Response to Defendants' Request for a Pre-Motion Conference
>         Regarding Plaintiff's Notices of Deposition of Foreign Law Experts**

Dear Judge Pitman,

We write in response to Mr. Casamento's August 14, 2015 letter ("*Defs. Ltr.*") requesting a pre-motion conference relative to certain Defendants' anticipated motion for a protective order quashing Plaintiffs' notices of deposition for these Defendants' U.K. data privacy law experts.  ECF No. 506.  The question of determining foreign law is governed by Rule 44.1.  That Rule provides that a court may consider "any relevant material or source, *including testimony*, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  FED. R. CIV. P. 44.1 (emphasis added).  As the Advisory Committee Notes discuss, "the court may have at its disposal better foreign law materials than counsel have presented, or may wish to reexamine and amplify material that has been presented by counsel in partisan fashion or in insufficient detail.  On the other hand, the court is free to insist on a complete presentation by counsel."  FED. R. CIV. P. 44.1 advisory committee's note (1966).

The concern of partisanship in the presentation of foreign law materials has been noted by several courts.  The Seventh Circuit has observed that "[a]ll too often counsel will do an inadequate job of researching and presenting foreign law or will attempt to prove it in such a partisan fashion that the court is obliged to go beyond their offerings. * * * It must be remembered that one of the policies inherent in Rule 44.1 is that whenever possible issues of foreign law should be resolved on their merits and on the basis of a full evaluation of the available materials.  To effectuate this policy, the court is obliged to take an active role in the process of ascertaining foreign law."  *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1193 (7th Cir. 1985).  Courts repeatedly express skepticism at the balance provided by parties offering foreign law experts and "caution[] against undue reliance on the testimony of experts in determining foreign law."  *In re Tyson*, 433 B.R. 68, 79 n.15 (S.D.N.Y. 2010) (Cote, *J.*); *see also Bodum USA. Inc. v. La Cafetiere. Inc.*, 621 F.3d 624, 629 (7th Cir. 2010) ("Trying to establish foreign law through experts' declarations . . . adds an adversary's spin, which the court then must discount."); *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495-96 (7th Cir. 2009) (noting



foreign law experts are often "selected on the basis of the convergence of their views with the litigating position of the client or their willingness to fall in with the views urged upon them by the client"); *United States v. Mitchell*, 985 F.2d 1275, 1280 (4th Cir. 1993) ("Not surprisingly, th[e Parties'] affidavits and letters present conflicting views of the interpretation of the [Pakistani statute and constitution] and fail to establish, to this court's satisfaction, a definitive answer as to the official Pakistani interpretation of the laws.").

In order to increase the likelihood that the district courts will arrive at correct determinations, the Second Circuit has "urge[d] district courts to invoke the flexible provisions of Rule 44.1 to determine issues relating to the law of foreign nations." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998). Indeed, U.S. Department of Justice representatives have publicly expressed concern about global corporations' expanded interpretations of foreign data privacy laws to shield relevant documents from examination:

> We find that global companies are increasingly hasty to invoke foreign data privacy laws to avoid providing evidence to the department. While we recognize that some of these laws pose real challenges to data access and transfer, ***many do not***.

> As a result, we are looking closely – ***with an ever more skeptical eye*** – to ensure that these claims are honest and not obstructionist. A company that reads foreign data protection laws expansively, to restrict its disclosure of documents, when it could be read more narrowly, is in dangerous territory if it wants to receive full cooperation credit.

October 1, 2014 Remarks by Assistant Attorney General for the Criminal Division Leslie R. Caldwell at the 22nd Annual Ethics and Compliance Conference, available at http://www.justice.gov/opa/speech/remarks-assistant-attorney-general-criminal-division-leslie-r-caldwell-22nd-annual-ethics (emphasis supplied).

Should the Court wish to rely on the parties' foreign law expert submissions, the likelihood that that reliance will yield accurate results will increase if they are tested by examination. As the Supreme Court has repeatedly concluded, cross-examination enjoys an exalted status as a tool for truth-revealing. *See, e.g., Perry v. Leeke*, 488 U.S. 272, 283 n.7 (1989) (citing with approval case law and commentators extolling virtues of cross-examination in the truth finding process) (citations omitted); *Penn. v. Ritchie*, 480 U.S. 39, 51 (same); *see also Crawford v. Washington*, 541 U.S. 36, 41 (2004) (explaining that reliability of evidence should be assessed "by testing in the crucible of cross-examination").

Courts in this District have determined that "utility exists" in permitting a party to depose an expert who submits an affidavit addressing foreign law. *See Norex Petroleum v. Access Indus.*, No. 02



Civ. 1499, 2003 U.S. Dist. LEXIS 4276, at *7 (S.D.N.Y. Mar. 21, 2003); *see also Base Metal Trading S.A. v. Russian Aluminum*, No. 00 Civ. 9627, 2002 U.S. Dist. LEXIS 8516, at *2 (S.D.N.Y. May 13, 2002) ("plaintiffs should be permitted to investigate the bases for the opinions of the [d]efendants' foreign law experts through depositions before being required to submit their opposition papers."); *Silberman v. Innovation Luggages, Inc.*, No. 01-7109, 2002 WL 31175226, at *1-3 (S.D.N.Y. Sept. 30, 2002) (same).[1]

Finally, in connection with Defendants' claim of burden, Plaintiffs have offered to minimize any expense and burden by agreeing to conduct the depositions by videoconference under Rule 30(b)(4) for the convenience of the witnesses and lawyers, provided that the depositions are conducted as if taken under Rule 28(a) governing deposition taken within the United States. Plaintiffs have also offered to be flexible concerning dates and times for the deposition, and can conduct the depositions at any time on or before September 8, 2015, three days prior to the date the Court has set for Plaintiff's responsive briefing.[2]

The Court should deny Defendants' motion for a protective order and permit Plaintiff to conduct a videotaped deposition of Defendants' foreign law experts following production of their expert disclosure materials on or before September 8, 2015.

Respectfully submitted,

Peter D. St. Phillip, Jr.

cc:    The Honorable George B. Daniels (via facsimile, 212-805-6737)
       All Counsel of Record (by email)

---

[1] As to Defendants' claims that Rule 26 expert disclosures do not apply to foreign law experts, Magistrate Judge Fox in *Norex* concluded otherwise. *See Norex* at *7 (requiring production of Rule 26(a)(2) materials in advance of the depositions).

[2] Defendants state that Plaintiff failed to mention the need to depose Defendants' foreign law experts or how such depositions might affect the briefing schedule at the June 25, 2015 conference ("June 25 Conference"). *Defs. Ltr.* at 1. Defendants overlook the fact that they never expressed their intent to rely on such experts at the June 25 Conference or at any point thereafter. It was not until August 6, 2015 when Defendants filed their expert declarations in support of their data privacy motions (ECF Nos. 497, 503) that Plaintiff's need to depose Defendants' experts arose and Plaintiff promptly served Defendants with Notices of Depositions.