IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>     – against –<br><br>MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50,<br><br>       Defendants. | Docket No. 12-cv-3419 (GBD) (HBP)<br><br>ECF Case |

**DECLARATION OF HUGH TOMLINSON, QC IN OPPOSITION TO CERTAIN DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDER SUSTAINING OBJECTIONS TO DISCOVERY UNDER DATA PRIVACY LAWS OF THE UNITED KINGDOM**

I, Hugh Tomlinson, hereby declare as follows:

1. I am citizen of the United Kingdom.

2. I am a member of the Bar of England and Wales and a founding member the barristers' chambers known as Matrix Chambers. I specialize in media and information law, including data protection, defamation, confidence, privacy and in human rights law. I have been practicing law at the Bar for more than 30 years. I was appointed a Queen's Counsel in 2002. I am a Master of the Bench at the Honourable Society of Gray's Inn. I am a visiting Professor at the London School of Economics and I am the author of a number of legal textbooks, in particular *The Law of Human Rights* (Oxford University Press, 2nd Edn, 2009). I am regularly involved in data protection cases including those involving the transfer of data to other jurisdictions. I was lead counsel for the applicants in the well-known data privacy case of *Corporate Officer of the House of Commons v. Information Commissioner* ([2009] 3 All ER 403) – the "MPs expenses" case. Most recently, I have been lead counsel for the plaintiffs in the leading data privacy case of *Vidal-Hall v. Google Inc* ([2015] 3 WLR 409). This is notable as the first case in which an English court has struck down part of the United Kingdom's Data Protection Act of 1998 ("DPA") (the provision concerning damages in section 13(2)) as being incompatible with the European Charter of Fundamental Rights. An appeal in this case is presently pending before the UK Supreme Court.

3. I have been asked to consider a number of issues arising out of the Defendants' Motion for an order sustaining objections to discovery under data privacy laws of the United Kingdom.

4. I have been shown a copy of the expert declaration of Mark Watts and Christopher Millard ("the Defendants' Expert Declaration") on which I will comment in the course of this declaration.

**DATA PROTECTION**

**Introduction**

5. The Defendants' Expert Declaration deals with the history and structure of data protection in the European Union in general and the United Kingdom in particular in considerable detail. Much of what is said consists of uncontroversial explication of the Data Protection Act 1998 ("the DPA"). In particular, the analysis of the basic concepts of the DPA – "data controller", "processing", "personal data", "jurisdiction" in section 5 is accurate and I agree with the "Conclusion" at ¶5.6.

6. The discussion of the "Requirements of the Act" in Section 6 of the Defendants' Expert Declaration, in my view, gives a misleading impression as to the operation of the DPA in relation to the process of discovery (known in England as "disclosure").

7. Although it is correct to say that the production of documents in connection with proceedings engages the DPA, the analysis in Defendants' Expert Declaration is apt to give the impression that this is an issue which the English courts regularly address in the context of the discovery of documents in litigation. This is not correct. Although the Courts do in this context consider the balancing of, on the one hand, the right to privacy, and on the other hand, the right of the other party, or (as in this case) of non-parties, to privacy or confidentiality, this is in my experience very rarely done by reference to the DPA. As the Court of Appeal said in the case of *Dunn v Durham County Council* ([2013] 2 All ER 213), "It is a distraction to start with the DPA" ([21]). The relevant balancing exercise is, if necessary, considered in the context of the English Civil Procedure Rules. As the Court of Appeal went on to point out in the *Dunn* case, the DPA itself acknowledges this point in that section 35 provides an exemption to the "non-disclosure provisions" in the case of disclosure required by "the order of a court". I will consider this provision in the next section of this declaration.

**Section 35 Exemption**

8. Section 35 provides that

   (1) Personal data are exempt from the non-disclosure provisions where

>>the disclosure is required by or under any enactment, by any rule of law or <u>by the order of a court</u>" (emphasis added)

This provision is briefly mentioned in ¶6.5 of the Defendants' Expert Declaration. It is said that

> "As described in section 3.1 of this paper, the reference to a court order is generally regarded as limited to a UK court order as opposed to an overseas court"

Unfortunately, the Defendants' Expert Declaration does not contain a "section 3.1" so the reasoning on this point is not explained. If Defendants' Expert Declaration is intending to refer to ¶ 6.1.2, that also does not support the proposition that an order of an overseas court is insufficient to fulfill Condition 3. In fact, that paragraph acknowledges the Article 29 Working Party's view that in individual member states "there may exist a legal obligation to comply with an Order of a Court in another jurisdiction seeking such discovery." ¶ 6.1.2.

9. I do not agree that the reference to a court "is generally regarded" as limited to a UK court order. It should be noted that Guidance provided by the regulator, the Information Commissioner, on section 35 specifically states that

> "Personal data is exempt from the non-disclosure provisions if you are required to disclose it … by order of a court or tribunal <u>in any jurisdiction</u>" (emphasis added).

10. In my view, the effect of section 35 is therefore that if an order for discovery were to be made by a US Court, the Defendants would be exempt from the "non-disclosure" provisions of the DPA. These provisions are defined in section 27(3) and (4) of the DPA as being
   (a)   the first data protection principle – that is, the requirement that data shall be processed fairly and lawfully, except to the extent to which it requires compliance with the conditions in Schedules 2 and 3,
   (b)   the second, third, fourth and fifth data protection principles, and
   (c)   sections 10 and 14(1) to (3) – that is the right of a data subject to object to processing and rights in relation to inaccurate data.

4

11. In short, the effect of section 35 is that the Defendants are, in the words of the Defendants' Experts Declaration "largely reliev[ed]" from having to comply with the three Principles that they suggested "combine to restrict Defendants' ability to disclose Documents containing personal data in accordance with the Act" (¶6.5. p.21).

**Processing Conditions**

12. As I have indicated above, section 35 does not relieve a data controller from the requirement of complying with the "Processing Conditions" in Schedule 2 of the DPA. However, this will not inhibit compliance with a court order as Condition 3 is in the following terms:

> "The processing is necessary for compliance with any legal obligation to which the data controller is subject other than an obligation imposed by contract".

13. The Defendants' Expert Declaration suggests that there is uncertainty as to whether Condition 3 covers a court order from a court outside the UK (¶6.1.2, p.16) referring to the Article 29 "Working Document 1/2009 on pre-trial discovery for cross border civil litigation". This Working Document is not a formal "Opinion" of the Working Party and has no formal status under the Directive or in English law. It simply represents the "working views" of a group of public officials. The Working Document does not in any event, deal in terms with the effect of an order made by a Court outside the EU but only with "an obligation imposed by a foreign legal statute or regulation" which it states "_may not_ qualify" as a legal obligation (emphasis added). This obviously cannot be regarded as a definitive statement on the point by an authoritative body.

14. In my view, the tentative suggestion by the Article 29 Working Party is not correct. The term "legal obligation" used in Condition 3 of Schedule 2 to the DPA covers an obligation imposed by the order of a Court outside the United Kingdom. There are three reasons for this:

5

(1) If "legal obligation" in Condition 3 were to be confined to obligations imposed under English law, it would not permit processing which complied with orders of other EU Courts. This would be a remarkable result which would run contrary to the whole purpose of the Data Protection Directive. This would strongly support a construction of "legal obligation" as covering obligations imposed both in the UK and in other jurisdictions.

(2) The wider construction of the words "legal obligation" would be consistent with the construction of the term "legal proceedings" in section 35 which I have already mentioned (see ¶9 above).

(3) This wider construction also receives support from paragraph 5 of Schedule 4 which provides that Eighth Data Protection Principle (which deals with the transfer of data outside the European Economic Area) does not apply where

"The transfer:

(a) is necessary for the purpose of, or in connection with, any legal proceedings (including prospective legal proceedings).

(b) is necessary for the purpose of obtaining legal advice, or

(c) is otherwise necessary for the purposes of establishing, exercising or defending legal rights."

Bearing in mind the fact that the Eighth Data Protection Principle concerns transfer of data outside the European Economic Area, this provision must be using the phrase "legal proceedings" to refer to foreign legal proceedings. In the case of *Re Madoff Investment Securities LLC* ([2009] EWHC 442 (Ch) [10]), the High Court held that paragraph 5(a) was satisfied when the liquidators of Madoff International Securities Limited applied for the transfer of personal data to New York where there was a liquidation proceeding. This construction of Schedule 4 paragraph 5 is accepted by the Defendants' Expert Declaration (¶6.4, p.20).

15. Schedule 3 of the DPA (which contains the conditions relevant to "sensitive personal data") contains Condition 6 which is in the following terms

"The processing—

   (a)  is necessary for the purpose of, or in connection with, any legal proceedings (including prospective legal proceedings),

   (b)  is necessary for the purpose of obtaining legal advice, or

   (c)  is otherwise necessary for the purposes of establishing, exercising or defending legal rights".

These are the same words as appear in paragraph 4 of Schedule 5 and, in my view, have the same meaning. In other words, they apply where processing is "necessary for the purpose" of foreign legal proceedings.

**Eighth Data Protection Principle**

16. The Eighth Data Protection Principle provides that

> "Personal data shall not be transferred to a country or territory outside the European Economic Area unless that country or territory ensures an adequate level of protection for the rights and freedoms of data subjects in relation to the processing of personal data".

This provision applies to personal data even where disclosure is required by an order of the court. As the Defendants' Expert Declaration says, the provision on discovery to the plaintiffs in the United States of documents from the UK containing personal data would constitute a "transfer" of personal data and would, therefore, engage this principle.

17. The Defendants' Expert Declaration deals with the "derogations" from the Eighth Data Protection Principle which are found in Schedule 4 to the DPA and, in particular, with paragraph 5 which covers transfers which are necessary for the purpose of foreign legal proceedings (¶6.4, p.20). It is accepted that this covers "foreign legal proceedings" and that this exception is plainly relevant in the present case.

18. The Defendants' Expert Declaration places reliance on another Working Paper produced by the Article 29 Working Party, the "Working document on a common interpretation of Article 26(1) of the Directive 95/46/EC of 24 October 1995" ("the Transfers Exception Paper"). This document deals with what, under the DPA, are

7

the derogations to the Eighth Data Protection Principle, contained in Schedule 4 to the DPA.

19. It is correct that the Article 29 Working Party reiterates the well-known principle that "clauses making exceptions are interpreted restrictively". This does not, however, mean that the clear meaning of such a clause can be ignored. The words "necessary for the purpose of … legal proceedings" mean, in my view, that a transfer will not breach the Eighth Data Protection Principle if is required by the order of a foreign court. "Necessary" in this context means "really needed" and, if a foreign court orders the discovery of documents then a transfer is "really needed" to comply with this order.

20. The Transfer Exceptions Paper deals specifically with the exception in Article 26(1)(d) of the Data Protection Directive which provides for a derogation if
    "the transfer is necessary or legally required on important public interest grounds, or for the establishment, exercise or defence of legal claims"
    This is the provision which is transposed into English law by paragraph 5 of Schedule 4 to the DPA. The Transfer Exceptions Paper states that
    "this exception can only be applied if the rules governing criminal or civil proceedings applicable to this type of international situation have been complied with, notably as they derive from the provisions of the Hague Conventions" (¶2.4, p.15).
    No explanation is given as to why the Working Party believes that the derogation in Article 26(1)(d) can only be applied if the Hague Conventions have been complied with.

21. This view is not consistent with wording of the Data Protection Directive or the DPA. This view is not supported by the guidance given by the UK statutory data protection authority, the Information Commissioner's Office ("ICO"). In its guidance on the Eighth Data Protection Principle the ICO does not suggest that it is first necessary to comply with the Hague Conventions, it simply notes that
    "Although this exemption could apply widely, transfers are only likely to fall under this category if they are connected with legal proceedings or getting

> legal advice.

> In the case of *Re Madoff Investment Securities LLC* ([2009] EWHC 442 (Ch)) the Court approved transfers of personal data to New York without the Hague Convention procedure having been used.

22. As the Defendants' Expert Declaration notes (¶6.4, p.20) in its subsequent Working Paper on pre-trial discovery, the Article 29 Working Party expressed a "more pragmatic view" on the use of the Hague Convention. The Working Party does not state that, where available, the Hague Convention "should be the primary method for facilitating the transfer of evidence". Rather, it states that

    > "Where it is possible for The Hague Convention to be used, the Working Party urges that this approach <u>should be considered first</u> as a method of providing for the transfer of information for litigation purposes" (Working Document 1/2009, p.20).

    There is no basis for the statement in the Defendants' Expert Declaration (¶6.4, p.22) that it

    > "remains the view of the Article 29 Working Party, that the Hague Convention should be used to transfer documents containing personal data wherever possible".

    The most recently expressed view of the Article 29 Working Party is to be found in its letter of 12 June 2012 in response to the Sedona Conference's International Principles on Discovery, Disclosure and Data Protection. It notes that these do not attach much importance to the Hague Convention which are described as "severely outdated". It expresses qualified general approval for the approach of the Sedona Conference and does not suggest that its view is that, where available, the Hague Convention should be used.

**Comments on the Defendants' Expert Declaration "Conclusion" (¶6.6)**

23. In the light of the above, I would make the following comments on the "Conclusion" on the requirements of the DPA in the Defendants' Expert Declaration ((¶6.6, p.22-23). In relation to the eight bullet points set out, my views are as follows:
    - Due to the operation of section 35, the "lawfulness" requirement of the First

9

- Data Protection Principle has no application to a transfer in compliance with a US Court order. In any event, a transfer which was required by such an order would not constitute a breach of confidence.
- Due to the operation of section 35, the "fairness" requirement of the First Data Protection Principle has no application to a transfer in compliance with a US Court order. There is, in any event, no need to inform the individuals of the possibility that their data may be disclosed in connection with US litigation as the provision of such information would involve disproportionate effort (see Schedule 1, para 3 of the DPA).
- Condition 3 in Schedule 2 of the DPA applies to the transfer under the terms of a US Court Order.
- Due to the operation of section 35, the Second Data Protection Principle has no application to a transfer in compliance with a US Court order.
- Due to the operation of section 35 the Third Data Protection Principle has no application to a transfer in compliance with a US Court order.
- The transfer of documents containing personal data for use in the Proceedings would fall within the terms of paragraph 5 of Schedule 4 of the DPA. There is no requirement that the Hague Convention be used "wherever possible".
- The personal data in the Documents is exempt from the non-disclosure provisions where disclosure is required by an order of a US Court.
- The Defendants can only engage in "Discovery processing" where this is necessary for the purposes of complying with a US Court order. If the US Court makes an order requiring the Defendants to transfer Documents containing personal data then the transfer is "necessary" for the purposes of the proceedings.

**Enforcement of the Act**

24. The Defendants' Expert Declaration deals, in section 7, with the enforcement powers of the ICO. This section contains an accurate description of the powers available.

25. It is, noteworthy, however that no example is cited of enforcement action being taken against a data controller which has transferred data to the US in compliance with a US Court Order. I am not aware of any enforcement action being taken in such a case and, in my view, it is in practice extremely unlikely that such action would ever be taken. The risk of enforcement action or prosecution in a case such as the present are, in my view, negligible.

**BANKERS DUTY OF CONFIDENTIALITY**

26. The duty of confidentiality which is imposed by law on bankers is described in the leading legal textbook, *Halsbury's Laws of England* (Vol 49, 2008, §910) in the following terms

> "It is an implied term of the contract between a banker and his customer that the banker will not divulge to third persons, without the express or implied consent of the customer, either the state of the customer's account, or any of his transactions with the bank or any information relating to the customer acquired through the keeping of his account, unless the banker is compelled to do so by order of a court, or the circumstances give rise to a public duty of disclosure or the protection of the banker's own interests requires it"

In the case of *X AG v A bank* ([1983] 2 All ER 464), the High Court although continuing injunctions to prevent an English bank disclosing confidential information in response to a US Grand Jury subpoena, accepted that the position would have been different if it had been dealing with an order which had been made after hearing all the parties. In the case of *Pharaon v BCCI* ([1998] 4 All ER 455), the High Court permitted the disclosure of UK banking documents the parties to US litigation pursuant to a subpoena, subject only to the redaction of material not relevant to the fraud which was the subject of the action.

27. The bankers' duty of confidentiality duty applies only between bankers and their customers. It not a duty owed to the employees of banks. The bankers' duty of confidentiality would not, therefore, apply to documents such as Bloomberg messages or emails between bank employees or to audio recordings save insofar

as they contained information about the affairs of identified customers.

28. In relation to certain limited classes of information also owes its employees a qualified common law duty of confidentiality. This would cover the employee's own confidential information which had been imparted to the bank as part of the employment relationship and may cover, for example, private information imparted in Blackberry messages or emails. It is possible that some of the information sought from the Defendants is in this category although it seems likely that it would have been redacted prior to the provision of information to the regulators in the UK.

29. In any event, like the banker's duty of confidentiality this duty to employees is a qualified one. Disclosure of information can be justified on a wide range of "public interest" grounds. In particular, there is a public interest in the administration of justice which may take precedence over confidentiality rights. This includes the administration of justice outside the United Kingdom.

30. The fact that documents contain confidential information is not a ground on which a party can claim "privilege" against discovery (see the decision of the House of Lords in *Alfred Crompton Amusement Machines v Customs and Excise Commissioners (No.2)* [1974] AC 405). In practice, save in special cases such as legal privilege (which has no application in the present case), confidentiality is never, of itself, an objection to the discovery of documents in accordance with an order of the Court.

31. If special considerations of confidentiality arise (because, for example, confidential documents are commercially or personally sensitive) then the English courts may put in place a "protective regime", often known as a "confidentiality club". This might, for example, involve the circulation of the disclosed documents being limited to legal representatives or to particular named individuals. Such an arrangement was put in place, for example, in the well-known "Phone Hacking" litigation. This was, in substance, a class action brought by victims of phone hacking against News Group Newspapers Limited (the publisher of the News of the World and a

UK subsidiary of News Corp). I was lead counsel for the plaintiffs in that litigation and an order was made for a "confidentiality club" with the circulation of documents being limited to named individuals with News Corp. In my experience, an English court has never refused to make an order for discovery on the grounds of confidentiality alone.

32. In this case, there is a Protective Order in place. This provides special protection for "Confidential" and "High Confidential" information provided in the course of discovery. In my view, an English Court would regard an order in these terms as appropriate to provide protection for the confidentiality of both customer and employee confidential information in this case.

**HAGUE CONVENTION**

33. The US and the UK are both signatories to the Hague Convention and a US Court could, therefore, rely on the Hague Convention as a means of obtaining evidence from the UK in connection with the discovery process in this action. In practice, however, this process is not an effective one. As the Sedona Conference puts it in its paper on "International Principles on Discovery, Disclosure and Data Protection"

> "agreements among nations concerning cross-border discovery, made in the age before personal computers and the Internet, are now severely outdated" (p. v).

34. In England and Wales, the position is governed by the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("the 1975 Act"). The High Court has power to make an order giving effect to the request but a person may not be required to take any steps unless they are steps which can be required to be taken by way of obtaining evidence for the purposes of civil proceedings in the High Court. As indicated in the Defendants' Expert Declaration (¶11.1.1), in practice the scope of a Letter of Request under the Hague Convention must set out specific documents which are required and the High Court is likely to refuse a request which is considered to be a "fishing expedition". In the case of *The State of Minnesota v Philip Morris* the Court of Appeal asked the question

> "does the Request itself amount to a Request for American style discovery which is not within the scope of the 1975 Act?"

In that case, the Request was refused, inter alia, on this ground.

35. In practice, therefore, a letter of request under the Hague Convention would have to set out the specific documents required. It could not be in the form of the Plaintiff's First Request for the Production of Documents directed to the Defendants dated 18 June 2014 which would, in my view, be regarded by the High Court as a "Request for American style discovery" and not therefore within the scope of the Hague Convention.

**CONCLUSIONS**

36. In conclusion, I am asked to deal with two specific questions:
    (1) **Would producing documents in accordance with Plaintiffs' request risk violating the DPA?** In my view, for the reasons set out above, if defendants were required to produce documents containing personal data in accordance with an order of a US Court, this would not violate the DPA. As a result of section 35 of the DPA, the Non-Disclosure provisions would not apply to personal data where disclosure is required by an order of the court Condition 3 in Schedule 2 would be satisfied.  The derogation from the Eighth Data Protection Principle contained in paragraph 5 of Schedule 4 would also apply. There is no DPA requirement that a plaintiff seeking disclosure should first use the Hague Convention to obtain documents. There is no realistic prospect whatever of Defendants facing regulatory or criminal consequences if they complied with a US Court order.
    (2) **Would producing documents in accordance with Plaintiffs' request risk violating the bankers' common law duty of confidentiality?**  It seems highly unlikely that the bankers' common law duty of confidentiality applies in relation to the documents.  Insofar as it did apply, Defendants would not violate that duty as they would be compelled to disclose by an order of the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10th day of September, 2015 at _London, England_

_[signature]_
Hugh Tomlinson, QC