## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

JEFFREY LAYDON, on behalf of himself and all    :
others similarly situated,    :
   :
      Plaintiff,    :
   :
     v.    :  Case No. 12-cv-3419-GBD-HBP
   :
MIZUHO BANK, LTD., THE BANK OF TOKYO-    :  ECF Case
MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST    :
AND BANKING CO., LTD., THE NORINCHUKIN    :
BANK, MITSUBISHI UFJ TRUST AND BANKING    :
CORPORATION, SUMITOMO MITSUI BANKING    :
CORPORATION, RESONA BANK, LTD., J.P.    :
MORGAN CHASE & CO., J.P. MORGAN CHASE    :
BANK, NATIONAL ASSOCIATION, J.P. MORGAN    :
SECURITIES PLC, MIZUHO CORPORATE BANK,    :
LTD., CHUO MITSUI TRUST & BANKING CO.    :
LTD., DEUTSCHE BANK AG, MIZUHO TRUST    :
AND BANKING CO., LTD., THE SHOKO CHUKIN    :
BANK, LTD., SHINKIN CENTRAL BANK, UBS AG,    :
UBS SECURITIES JAPAN LTD., THE BANK OF    :
YOKOHAMA, LTD., SOCIETE GENERALE SA, THE    :
ROYAL BANK OF SCOTLAND GROUP PLC,    :
ROYAL BANK OF SCOTLAND PLC, BARCLAYS    :
BANK PLC, CITIBANK, NA, CITIGROUP, INC.,    :
CITIBANK, JAPAN LTD., CITIGROUP GLOBAL    :
MARKETS JAPAN, INC., COÖPERATIEVE    :
CENTRALE RAIFFEISEN-BOERENLEENBANK    :
B.A., HSBC HOLDINGS PLC, HSBC BANK PLC,:    :
ICAP PLC, R.P. MARTIN HOLDINGS LIMITED    :
AND JOHN DOE NOS. 1-50,    :
   :
      Defendants.    :
_____  :

## CERTAIN DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER SUSTAINING OBJECTIONS TO DISCOVERY UNDER DATA PRIVACY LAWS OF THE UNITED KINGDOM

Plaintiff failed to pursue discovery of documents located in the UK through Hague Convention procedures, despite his knowledge of Defendants' UK data protection concerns since early August 2014.  By Plaintiff's own suggested timeline, if Plaintiff had requested the documents through Hague Convention procedures when he first became aware of Defendants' objection, he would have them by now.  (*See* Opp at 18).  Pursuing discovery through the proper channels would have addressed comity concerns and made it unnecessary for the Court to even consider entering an order forcing Defendants to risk violating UK law.  But Plaintiff has refused to proceed under the Hague Convention because he admits his requests constitute a "fishing expedition" and he is, therefore, concerned that he might have difficulty convincing a UK court the broad discovery he requests is necessary or appropriate.  Such a theoretical problem, however, is solely of Plaintiff's own making as he chose to issue an extremely broad request for production without any description of what specific documents or types of documents he actually hopes to obtain.[1]  Under these circumstances, Plaintiff should not be excused from the general requirement to seek international discovery through Hague Convention procedures.

I.      **Plaintiff Should Be Required To Pursue Discovery of Documents Located In The UK Through the Hague Convention.[2]**

Plaintiff makes a variety of errors and mischaracterizations in his Opposition brief.  *First*, Plaintiff cannot seriously contest that some of the Documents he requested are either located in the UK or would need to be processed in the UK.  (Opp. at 11-12).  Plaintiff expressly requested

---

[1] Respectfully, the fact that certain defendants agreed to produce certain documents (Opp. at 7) does not mean that moving Defendants' concerns are unfounded.  As Plaintiff acknowledges, determination of whether certain exemptions apply requires each defendant to independently analyze the necessity of the requested documents to the litigation, among other things.

[2] While Plaintiff has temporarily agreed to narrow his request to documents sought in Request No. 3, his other Requests have not been withdrawn.  Accordingly, the arguments set forth in this brief apply to all of Plaintiffs' Requests for Production.

documents produced to UK (and other) regulators from certain banks incorporated (among other places) in the UK with their principal places of business in the UK, relating to Yen-LIBOR and Euroyen-TIBOR submissions made in the UK.[3]  The Court made clear at the June 25, 2015 hearing that it wanted to receive a combined brief from all Defendants affected by UK data protection laws, so that it could establish general rules governing production of affected documents.  Plaintiff's demand that Defendants specify each and every document containing information protected by the DPA or the bankers' duty of confidentiality is not consistent with this approach, and is simply not reasonable or feasible given the huge volume of documents potentially responsive to Plaintiff's request.[4]  Defendants should be required to review the Documents only once—after the parameters of production, if found permissible under the Hague Convention and UK law, are established by the Court.

    *Second*, Plaintiff proposes an unduly narrow view of what information is protected as "personal data" under the DPA.  (Opp. at 11) (citing *Durant v. Financial Services Authority* [2003] EWCA Civ. 1746 (Casamento Decl. Ex. R at 576).  In particular, *Durant* confirms that whether information qualifies as "personal data" depends on "a continuum of relevance or proximity to the data subject."  *Durant*, Casamento Ex. R at 576.[5]  More recent UK decisions

---

[3] Plaintiff expresses concern in his opposition that Defendants' experts did not review the entirety of the documents he requests.  (*See*, *e.g.*, Opp. at 3).  But, as their Declaration indicates, Dr. Watts and Professor Millard were not asked to conduct a document review; they were asked to provide context for and explanation of UK law relating to data protection to assist the Court with its interpretation of UK law pursuant to Rule 44.1.

[4] Plaintiff also complains that Defendants have not met their burden to show that UK data privacy laws apply and/or prohibit production.  But Defendants are only the movants here at the Court's direction—in truth, it is Plaintiff who is seeking to compel production of the Documents over Defendants' objection.

[5] There is concern in the UK that the *Durant* decision may have improperly interpreted the range of protected "personal data" too narrowly, in a manner that would be inconsistent with the EU Directive forming the basis for the DPA.  (Expert Decl. ¶ 5.3).  In fact, the European

confirm that the names of individuals, such as on e-mail communications, are indeed protected "personal data." *See, e.g., Edem v. the Information Commissioner and the Financial Services Authority* [2014] EWCA Civ. 92 (Casamento Dec. Ex. S).

*Third*, Plaintiff's personal opinion that the Documents are "necessary for the purpose of" this litigation (Opp. at 7) does not provide Defendants sufficient protection from the possibility that a UK court or the UK data privacy regulator (the Information Commissioner's Office) might reach a different conclusion. As Plaintiff recognizes, the Article 29 Working Party has explained that the "necessity" exception to transfer restrictions is only applicable where Hague Convention procedures have been followed. Mr. Tomlinson's rejection of the Working Party's opinion is not tenable, given the absence of any authority supporting his position. (*See* Tomlinson Decl. at ¶¶ 20-21).

*Fourth*, Plaintiff is wrong to suggest that no further processing would be required to produce the Documents. (Opp at 6). Documents produced to regulators relate to a number of different interbank offering rates, and each Defendant would need to review its productions and separate out those documents relating to Yen-LIBOR and Euroyen-TIBOR. (ECF No. 496 at 10 & ECF No. 497 ¶ 5.2) (explaining that "processing," under the DPA, means "carrying out any operation or set of operations on the information or data").[6]

*Fifth*, Plaintiff and his expert confirm that it is not clear whether an order from this Court requiring production—should Plaintiff succeed in convincing the Court such an order is appropriate—would be sufficient to exempt Defendants from compliance with certain processing

---

Commission opened infringement proceedings against the UK for failure to properly implement the EU Directive—at least partly as a result of the *Durant* decision. *Id.*
[6] Transferring the Documents to Plaintiff and his counsel would also involve "processing" under the DPA. *See* DPA § 1(1) (defining "processing" to include any "disclosure of the information or data by transmission, dissemination, or otherwise making available").

and transfer restrictions established by the DPA. (Opp. at 12). Plaintiff essentially shrugs off this concern, likely because *all of the potential harm* caused by this uncertainty falls on Defendants. This Court should decline to adopt an interpretation of ambiguous language in the statute that benefits Plaintiff while leaving Defendants open to the risk of reputational damage, civil fines and receipt of an enforcement notice from the UK Information Commissioner.[7] (*See* ECF No. 496 at 14).

*Sixth*, Plaintiff's repeated assertion that the protective order entered by the Court in this action is somehow sufficient to excuse Defendants from compliance with UK law is unconvincing. (*See, e.g.*, Opp. at 8, 12). The Sedona Conference's alleged endorsement of "this type" of protective order (Opp. at 8) has no precedential value and cannot possibly override rules established by UK statute. Moreover, Plaintiff's comments on the confidentiality of personal data (Opp. at 8, 12) are irrelevant to compliance with the relevant parts of the DPA in these circumstances.

*Seventh*, Plaintiff's contention that he would be unable to persuade a UK court to require Defendants to produce the Documents (Opp. at 7, 15-16) is directly and irreconcilably at odds with his contention that comity concerns are minimized here because UK regulators did not object to production of certain documents and a UK court, in a case involving Barclays, recently ordered production of documents within the UK without redaction of personal data. (*See* Opp. at 9-10). Plaintiff cannot have it both ways. Plaintiff's argument also confirms that his request is overly broad, and constitutes an impermissible fishing expedition. (*See* Opp. at 7) (expressing

---

[7] Mr. Tomlinson's opinion that guidance from the Article 29 Working Party on this issue "is not correct" (Tomlinson Decl. at ¶ 14) exemplifies the self-serving nature of Plaintiff's conclusions about the requirements of UK law in this context. Mr. Tomlinson's opinion on this issue does not appear to be based on any authority or regulatory body. (*Id.*) (interpreting the statute "in [his] view").

concern that a Letter of Request under Hague Convention procedures "would be rejected" because Plaintiff **"could not feasibly … describe"** the documents he wants Defendants to produce) (emphasis added).[8]

*Eighth*, Plaintiff fundamentally misunderstands the harm that could confront Defendants if Hague Convention procedures are not followed.  Plaintiff focuses only on the cost of reviewing and producing the Documents, which he agrees is substantial.  (Opp. at 19). Remarkably, Plaintiff ignores Defendants' potential exposure to reputational harm, and to statutory consequences if they are found to have violated the DPA or the bankers' duty of confidentiality by producing the Documents Plaintiff requests in this litigation.  (*See* ECF No. 496 at 14) (explaining that, among other things, violations of the DPA are punishable by fines up to £500,000); (Tomlinson Decl. at ¶ 24) (agreeing with Defendants as to the scope of these potentially significant sanctions).  Plaintiff also ignores Defendants' potential exposure to litigation, and resultant damages, that could be brought by affected customers.

*Ninth*, Plaintiff cannot credibly argue that he is acting as a private attorney general and therefore his request for documents is a matter of public interest.  The public interest in enforcement of US antitrust laws can be and already has been vindicated through government

---

[8] Moreover, Plaintiff's suggestion that a UK court would reject his request is entirely speculative—no UK court has had the opportunity to address the extent to which the DPA or the bankers' duty of confidentiality may impact Plaintiff's ability to obtain production of the Documents consistent with UK Law.  *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998)—relied on heavily by Plaintiff in his opposition—does not address the DPA, and has never been cited by any other court considering the UK DPA or analogous European data privacy laws.  Instead, *First American* considered less concrete "confidentiality obligations" and found them to be insufficiently "absolute."  *Id.* at 22.  The Second Circuit's decision in *First American* was also impacted by the fact that the plaintiff's request for production had already been rejected by the UK courts, a factor that is absent here.  *See Id.* at 23 (explaining that the prior participating of the UK courts was crucial to its conclusion that the balance of factors favored requiring production despite foreign data privacy laws).

investigations and financial settlements.  Plaintiff, in contrast, is a private individual seeking speculative and unspecified damages on his own behalf.[9]

*Finally*, Defendants are obligated to abide by UK law whether or not UK regulators have independently objected to production of the Documents, and regardless of the number of recent prosecutions for unauthorized processing or transfer.  Plaintiff's arguments on those issues should be disregarded as white noise, as they do not impact the question of whether requiring production without the process guaranteed by the Hague Convention would force Defendants to risk violating UK law—a result the US Supreme Court has instructed should be avoided.  *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (directing courts supervising pretrial proceedings to "exercise special vigilance to protect foreign litigants from the danger that unnecessary … discovery may place them in a disadvantageous position" and "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state").

## II.    Redaction Is Not A Viable Alternative.

Even if this Court were to permit Plaintiff to avoid Hague Convention procedures, Plaintiff's suggestion of redaction as a solution (Opp. at 9) simply is not practical.  Plaintiff has requested vast amounts of data from Defendants—"millions" of documents, as Plaintiff puts it (Opp. at 7)—rendering redaction unduly burdensome and destroying any ability of Defendants to

---

[9] The Second Circuit in *First American* found it persuasive that production favored public interest in large part because the US would "receive the proceeds of any award or settlement reached" in that action.  *First American*, 154 F.3d at 23.  Those circumstances obviously are not present here.

produce documents in redacted form on a short time frame.[10]  In addition, it is highly likely

that—after requiring Defendants to engage in a tremendously expensive redaction effort—

Plaintiff would be back before the Court contesting Defendants' determination of what to redact

and/or arguing that the redaction of protected personal information obscures information he was

hoping to uncover from the production.  Redaction, therefore, is not a viable solution to UK data

privacy concerns in this case.

<u>**CONCLUSION**</u>

Defendants do not seek to bar production of the documents that Plaintiff has requested.

Defendants seek only to produce the required documents in a way that comports with their

obligations under the UK's data privacy laws.  Defendants have acted in good faith in attempting

to comply with both US and UK law.  They timely asserted UK law objections and discussed

with Plaintiff the Hague Convention procedures that could be utilized to address those

objections.  In response, Plaintiff has intentionally declined to avail himself of the Hague

Convention procedures for more than a year, apparently because he hopes the Court will force

Defendants to risk violating UK law rather than direct Plaintiff to follow proper procedures for

discovery of foreign documents.  Comity concerns require the Court to exercise "special

vigilance" to avoid an order requiring foreign litigants to risk violating UK law.  *Societe*

*Nationale*, 482 U.S. at 546.  Applied here, this vigilance requires Plaintiff to proceed through the

Hague Convention and approach this Court for an order requiring Defendants to risk violating

UK law *if and only if* the UK courts do not grant Plaintiff the discovery he believes he needs to

prosecute his case.

---

[10] Undersigned Defendants note that some of them have asserted other objections unrelated to
UK data privacy concerns, for which redaction may not provide a realistic resolution.

For these reasons and the reasons set forth in their opening brief, Defendants respectfully request that the Court sustain Defendants' objections to Plaintiff's First Request for Production of Documents based on the data privacy laws of the United Kingdom.

Dated:           September 23, 2015
                     New York, New York

Respectfully submitted,

/s/ Gregory T. Casamento
_____
Edwin R. DeYoung
Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center
New York, New York  10281
Tel.: (212) 415-8600
Fax: (212) 303-2754
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel.: (214) 740-8000
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
Chicago, Illinois 60606
Tel.: (312) 443-0700
Fax: (312) 896-6472
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings plc and HSBC Bank plc*

/s/ Jerome S. Fortinsky
_____
Jerome S. Fortinsky
John A. Nathanson
Jeffrey J. Resetarits

8

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel.: 212-848-4000
Fax: 212-848-7179
jfortinsky@shearman.com
john.nathanson@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendant Mizuho Corporate Bank, Ltd.*


/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*


/s/ Jon R. Roellke
Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
jon.roellke@morganlewis.com
Telephone: (202) 739-3000
Fax: (202) 739-3001

Michael L. Spafford
PAUL HASTINGS LLP
michaelspafford@paulhastings.com
875 15th Street, NW
Washington, DC 20005
Telephone: (202) 551-1700

9

Fax: (202) 551-1705

*Attorneys for Defendant Sumitomo Mitsui Banking Corporation*

/s/ Thomas C. Rice
_____

Thomas C. Rice
Paul C. Gluckow
Shannon P. Torres
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
stores@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and J.P. Morgan Securities plc*

/s/ Moses Silverman
_____

Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com
Tel.: (212) 373-3355

*Attorneys for Defendant Deutsche Bank AG*

10