**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

JEFFREY LAYDON, on behalf of himself and all others
similarly situated,

                    Plaintiff,

              - against –

MIZUHO BANK, LTD., THE BANK OF TOKYO-
MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST
AND BANKING CO., LTD., THE NORINCHUKIN
BANK, MITSUBISHI UFJ TRUST AND BANKING
CORPORATION, SUMITOMO MITSUI BANKING
CORPORATION, RESONA BANK, LTD., J.P.
MORGAN CHASE & CO., J.P. MORGAN CHASE
BANK, NATIONAL ASSOCIATION, J.P. MORGAN
SECURITIES PLC, MIZUHO CORPORATE BANK,
LTD., DEUTSCHE BANK AG, MIZUHO TRUST
AND BANKING CO., LTD., THE SHOKO CHUKIN
BANK, LTD., SHINKIN CENTRAL BANK, UBS AG,
UBS SECURITIES JAPAN CO. LTD., THE BANK OF
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE
ROYAL BANK OF SCOTLAND GROUP PLC,
ROYAL BANK OF SCOTLAND PLC, RBS
SECURITIES JAPAN LIMITED, BARCLAYS BANK
PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK,
JAPAN LTD., CITIGROUP GLOBAL MARKETS
JAPAN, INC., COÖPERATIEVE CENTRALE
RAIFFEISEN-BOERENLEENBANK B.A., HSBC
HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P.
MARTIN HOLDINGS LIMITED AND JOHN DOE
NOS. 1-50,

                  Defendants.

Docket No. 12-cv-3419 (GBD) (HBP)

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.  The Court should preliminarily approve the settlements ............................................. 2

       A.  The preliminary approval standards .................................................................... 2

       B.  The settlements' benefits to the Settlement Class ............................................. 4

       C.  The settlements are procedurally fair because they were produced by well-informed, arms-length negotiations by experienced counsel .................................................. 6

       D.  There are no obvious or other deficiencies in the settlements ......................... 8

       E.  The settlements do not favor Plaintiffs or Class Members, nor do they create preferences. ........................................................................................................... 8

       F.  The settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable ...................................................... 10

          1.  Applying the *Grinnell* "final approval" factors to the settlements is unnecessary at preliminary approval ............................................................... 13

    II.  The Court should conditionally certify the Settlement Class ..................................... 17

       A.  The Settlement Class meets the Rule 23(a) requirements. .............................. 18

          1.  Numerosity ................................................................................................... 18

          2.  Commonality ................................................................................................ 18

          3.  Typicality ..................................................................................................... 19

          4.  Adequacy ..................................................................................................... 20

       B.  The proposed settlement class Satisfies Rule 23(b)(3) ..................................... 23

          1.  Predominance ............................................................................................... 23

          2.  Superiority ................................................................................................... 25

    III.  The Court should appoint A.B. Data as Escrow Agent ............................................ 26

CONCLUSION .................................................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 26

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ................................................................................. 20

*Bano v. Union Carbide Corp.*,
   273 F.3d 120 (2d Cir. 2001) ................................................................................. 2

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................... 4

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ........................................................................ 19

*Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*,
   MDL No. 1203, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000) ............................. 24

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ................................................................................ 23

*Cent. States Group v. AIG Glob. Inv. Corp. (In re Healthsouth Corp. Secs. Litig.)*,
   334 F. App'x 248 (11th Cir. 2009) ..................................................................... 10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ................................................................................ 22

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) .................................................................................. 9

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*,
   502 F.3d 91 (2d Cir. 2007) .................................................................................. 25

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................ 13

*Dziennik v. Sealift, Inc.*,
   No. 05-CV-4659 (DLI), 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) .................. 20

*Gottesman v. Gen. Motors Corp.*,
   436 F.2d 1205 (2d Cir. 1971) .............................................................................. 11

*In re "Agent Orange" Prod. Liab. Litig.*,

818 F.2d 145 (2d Cir. 1987) ................................................................................ 9, 10

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................... 10

*In re AOL Time Warner, Inc.*,
MDL No. 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) ....................................................................................... 15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1175 (JG) (VVP), 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) .. 24

*In re Am. Int'l Group Secs. Litig.*,
689 F.3d 229 (2d Cir. 2012) .................................................................. 17, 24, 26

*In re Austrian & German Bank Holocaust Litig*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................... 6

*In re Canadian Superior Secs. Litig.*,
No. 09 Civ. 10087 (SAS), 2011 U.S. Dist. LEXIS 132708 (S.D.N.Y. Nov. 16, 2011) ............ 9

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ............................................................................... 21

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1322 (5th Cir. 1981) ............................................................................. 11

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004) ......................................................................... 26

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................... 12

*In re Currency Conversion Fee Antitrust Litig.*,
MDL No. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ............... 6

*In re Data Access Sys. Sec. Litig.*,
103 F.R.D. 130 (D.N.J. 1984) ............................................................................. 18

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................................................. 11

*In re Giant Interactive Group, Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................... 9, 26

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 15, 21

*In re Initial Pub. Offering Sec. Litig.,*
    260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................ 6, 18, 25

*In re Ins. Brokerage Antitrust Litig.,*
    82 F.R.D. 92 (D.N.J. 2012) ........................................................ 26
*In re Ionosphere Clubs,*
    156 B.R. 414 (Bankr. S.D.N.Y. 1993) ........................................................ 11

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................ 6

*In re Marsh ERISA Litig.,*
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................ 9

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................ passim

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................ passim

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................ passim

*In re Packaged Ice Antitrust Litig.,*
    No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ...................... 4

*In re PaineWebber Pshps. Litig.,*
    171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) ........................................................ 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ........................................................ 13

*In re Platinum & Palladium Commodities Litig.,*
    No. 10cv3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ................................ 3, 7

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................ 18

*In re Prudential Secs. Ltd. P'ships Litig.,*
    MDL No. 1005, M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103
    (S.D.N.Y. Nov. 20, 1995) ........................................................ 11

*In re Qiao Xing Secs. Litig.,*
    No. 07-CIV-7097 (DLC), 2008 U.S. Dist. LEXIS 26043 (S.D.N.Y. Apr. 2, 2008) ................. 9

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................ 7

*In re Take Two Interactive Secs. Litig.,*
  No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010) ................ 14

*In re Traffic Exec. Asso.—E. Railroads,*
  627 F.2d 631 (2d Cir. 1980) ......................................................................................... 3

*In re Wachovia Equity Secs. Litig,*
  No. 08 Civ. 6171 (RJS), 2012 U.S. Dist. LEXIS 97910 (S.D.N.Y. June 8, 2012) .................... 9

*In re Warner Commc'ns Secs. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009) ........................................................................................ 19

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,*
  708 F.2d 1081 (7th Cir. 1983) .................................................................................... 11

*Marisol A. by Forbes v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997) ....................................................................................... 20

*Maywalt v. Parker & Parsley Petrol. Co.,*
  67 F.3d 1072 (2d Cir. 1995) ................................................................................. 11, 13

*McReynolds v. Richards-Cantave,*
  588 F.3d 790 (2d Cir. 2009) ........................................................................................ 3

*Meredith Corp. v. SESAC, L.L.C.,*
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................................ 26

*Messner v. Northshore Univ. HealthSystem,*
  669 F.3d 802 (7th Cir. 2012) ...................................................................................... 24

*Monaco v. Carpinello,*
  No. CV-98-3386 (CPS), 2007 U.S. Dist. LEXIS 28990 (E.D.N.Y. Apr. 19, 2007) ................ 6

*Morris v. Affinity Health Plan, Inc.,*
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................................... 6

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972) ....................................................................................... 10

*Precision Assocs. v. Panalpina World Transp., Ltd.,*
  No. 08-cv-42 (JG) (VVP), 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) .......... 9

*In re PaineWebber Ltd. Pshps. Litig.,*
  147 F.3d 132 (2d Cir. 1998) ........................................................................................ 2

*Seijas v. Republic of Arg.*,
     606 F.3d 53 (2d Cir. 2010) ........................................................................ 26

*Shapiro v. JPMorgan Chase & Co.*,
     No. 11 Civ. 7961 (CM), 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) .................. 7

*Silberblatt v. Morgan Stanley*,
     524 F. Supp. 2d 425 (S.D.N.Y. 2007) ........................................................... 2

*Strobl v. N.Y. Mercantile Exch.*,
     582 F. Supp. 770 (S.D.N.Y. 1984) ............................................................. 16

*Sullivan v. DB Invs., Inc.*,
     667 F.3d 273 (3d Cir. 2011) .................................................................. 27

*In re Tronox Inc.*,
     No. 14-cv-5495 (KBF), 2014 U.S. Dist. LEXIS 158767 (S.D.N.Y. Nov. 10, 2014) ............. 15

*U.S. Football League v. Nat'l Football League*,
     644 F. Supp. 1040 (S.D.N.Y. 1986) ........................................................... 11

*Velez v. Novartis Pharms. Corp.*,
     No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) .......... 17

*Visa Check/Mastermoney Antitrust Litig. v. Visa*,
     280 F.3d 124 (2d Cir. 2001) .................................................................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
     131 S. Ct. 2541 (2011) ...................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
     396 F.3d 96 (2d Cir. 2005) ................................................................... 2

**Rules**

Fed. R. Civ. P. 23 et seq. .................................................................... passim

**Other**

Manual for Complex Litigation (Fourth) § 21.632 .......................................... 3, 7
Manual for Complex Litigation (Fourth § 21.313 ............................................ 10

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) ......... 3
Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 12:35 (4th ed. 2002) ......... 10

## INTRODUCTION

Under Rule 23(e) of the Federal Rules of Civil Procedure ("FED. R. CIV. P."), Plaintiffs[1] respectfully submit this memorandum of law and the accompanying Declaration of Vincent Briganti, Esq. ("Briganti Decl.") to demonstrate that this Court should grant Plaintiffs' motion for an Order that: (a) preliminarily approves Plaintiffs' proposed Settlements with R.P. Martin[2] and Citi[3] (collectively, "Settlements"), subject to later, final approval; (b) conditionally certifies a Settlement Class on the claims against R.P. Martin and Citi; (c) appoints Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") as Class Counsel; and (d) appoints A.B. Data, Ltd. as Escrow Agent under the Settlements.[4] *See* Proposed Order annexed to Notice of Motion.

The Settlements provide substantial consideration to Plaintiffs and the Settlement Class, including Citi's payment of $23,000,000.00, and R.P. Martin's and Citi's provision of significant cooperation to Plaintiffs, which has already assisted and will continue to assist Plaintiffs in the prosecution of their claims against the remaining Defendants. R.P. Martin Settlement Agreement ¶ 3; Citi Settlement Agreement ¶ 4; *see* Part I.B., *infra* (Benefits to the Settlement Class).

The two essentials for preliminary approval are procedural fairness and substantive fairness.

**Procedural fairness.** The Settlements are the products of procedural fairness, including serious, informed, arm's length negotiations and hard bargaining between experienced counsel that took place over the course of several months. (*See* Part I.C., *infra*.)

**Substantive fairness.** The Settlements are also substantively fair, reasonable and adequate. No preferences have been created. (*See* Part I.E., *infra*.) Citi's payment of $23,000,000.00 and its

---

[1] Plaintiffs are Jeffrey Laydon, Sonterra Capital Master Fund, Ltd., Hayman Capital Management, L.P., and California State Teachers' Retirement System ("CalSTRS").

[2] "R.P. Martin" means R.P. Martin Holdings Limited and Martin Brokers (UK) Ltd., and their subsidiaries and affiliates (collectively "R.P. Martin"). The R.P. Martin Settlement Agreement is annexed at Briganti Decl., Exhibit 1.

[3] "Citi" means Citigroup Inc., Citibank, N.A., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc., and their subsidiaries and affiliates. The Citi Settlement Agreement is annexed at Briganti Decl., Exhibit 2.

[4] Capitalized terms here have the same meaning as in the Citi Settlement Agreement.

provision of substantial cooperation, as well as R.P Martin's substantial cooperation on the heels of its bankruptcy in the U.K., easily clear the low bar at preliminary approval: whether the settlement consideration is "possibly" within the range of approval at the final hearing after notice to Class Members. *See* Part I.F., *infra*.

Finally, all Rule 23 requisites for conditional certification of a Settlement Class on the claims against R.P. Martin and Citi are satisfied.

## ARGUMENT

### I.     The Court should preliminarily approve the settlements

The procedural history of the *Laydon* and *Sonterra* Actions is set forth in the Briganti Decl. at ¶¶ 10-20.

#### A.  The preliminary approval standards

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *Bano v. Union Carbide Corp*, 273 F.3d 120, 129-30 (2d Cir. 2001) (there is an overriding public interest in settling and quieting litigation, particularly class actions); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

Proposed settlements of Rule 23(b)(3) classes, like this one,[5] require notice to class members, an opportunity for those class members to object, and final approval by the Court after a hearing at which class members may appear and be heard. FED. R. CIV. P. 23(e) (settlements in class actions require ". . . the court's approval"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 428 (S.D.N.Y.

---

[5] Rule 23(b)(3) classes, unlike those based on non-monetary or injunctive relief under Rule 23(b)(2) require notice to the class.

2007); *see generally* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41, at 89 (4th ed. 2002).

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Assn. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980). The Judicial Center's Manual for Complex Litigation recommends preliminary approval in complex cases. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ("MANUAL").

Preliminary approval of a settlement is not expressly mentioned in either Federal Rules generally or Rule 23 in particular. Frequently, the judicially created requirements for preliminary approval have been expressed as follows:

> Where the proposed settlement [1] appears to be the product of serious, informed, non–collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of **possible** approval, preliminary approval is granted.

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*") (emphasis and numbers in brackets supplied); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 U.S. Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) ("*Platinum*"). The Settlements amply satisfy each of these four requirements. *See* Pts. I.C-F, *infra*.

In conducting the preliminary approval inquiry, a court considers primarily the "negotiating process leading up to the settlement, [*i.e.,* procedural fairness], as well as the settlement's substantive terms, [*i.e.,* substantive fairness]." *Platinum,* 2014 U.S. Dist. LEXIS 96457, at *35-36; *McReynolds v. Richards–Cantave,* 588 F.3d 790, 803–04 (2d Cir. 2009) (same). *See also* Order Preliminarily Approving Class Action Settlement and Conditionally Certifying a Settlement Class, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC), (S.D.N.Y. Dec. 15, 2015), ECF No. 234 ("Euribor Order") (preliminarily approving $94 million settlement in a proposed class action alleging the manipulation of the Euro

Interbank Offered Rate or Euribor). The question is whether the terms are "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ II*, 176 F.R.D. at 102.

### B. The settlements' benefits to the Settlement Class

First, the Citi Settlement is the initial, "ice breaker" settlement in the actions. It provides the twin benefits to the Settlement Class of substantial monetary consideration, $23,000,000, and serves as a potential catalyst for other Defendants to settle.[6]

Next, Citi has agreed that, if the Settlement is finally approved, there will be **no** reversion of settlement monies to Citi for opt-outs or failures to submit proofs of claim. Citi Settlement Agreement ¶ 10. Thus, unlike in many class action settlements, if the Citi Settlement is finally approved by this Court, no part of the $23,000,000 is subject to reversion to Citi.[7] That is, no matter how many Settlement Class Members ultimately fail to file proofs of claim or opt-out, if the Settlement is finally approved by this Court, none of the Settlement monies will revert to Citi. Given that the rates of submissions of proofs of claim are (often substantially) less than 100%, the non-reversion terms of the Citi Settlement likely will add substantial enhancement to the benefits and the recovery received from the Citi Settlement by the class members who submit valid proofs of claim.[8]

A third benefit is cooperation. Both R.P. Martin and Citi have provided and will continue to provide valuable cooperation to Plaintiffs in prosecuting the claims against the remaining

---

[6] *See In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *50-51 (E.D. Mich. Feb. 22, 2011) ("Also of significant value is the fact that the Settlement Agreement with Home City can serve as an "ice-breaker" settlement").

[7] *Contrast Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-82 (1980) (in the litigated trial and judgment context, the share of the settlement due to class members who failed to claim reverted to Defendants). Under the Citi Settlement, the proceeds that would have been paid to those persons who fail to claim will be redistributed among, and enhance the recovery of, those class members who do claim.

[8] While there is no reversion, Citi does have the right, but not the obligation, in its sole discretion, to exercise certain rights, including terminating the Settlement Agreement, pursuant to the terms and conditions of a Supplemental Agreement filed contemporaneously herewith under seal. Citi Settlement Agreement, at ¶ 23.

Defendants. Shortly after entering into its settlement with Plaintiffs, in December 2014, R.P. Martin was placed into the U.K. equivalent of bankruptcy. It lacked the financial resources to pay the Settlement Class any monetary compensation and instead agreed to significant cooperation obligations.[9]

For example, as part of its settlement cooperation, R.P. Martin produced its internal investigation files that were compiled as part of R.P. Martin's investigation into its manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives. These internal investigation files included interview notes with former brokers. The interview notes provide specifics on the means by which R.P. Martin and other Defendants manipulated Yen-LIBOR, the identities of R.P. Martin's principal co-conspirators, and specific examples of instances in which R.P. Martin and other Defendants manipulated Yen-LIBOR. Aside from R.P. Martin's interview notes, R.P. Martin also provided the documents and audio files that it produced directly to global regulators during the course of the regulators' investigations of Yen-LIBOR and Euroyen TIBOR manipulation. These documents have helped specifically identify the names of Yen traders and submitters at other Defendants who were active participants in the alleged manipulation. Both R.P. Martin's and Citi's cooperation also includes extensive market data productions. Their transaction data will help counsel formulate a plan of allocation of the settlement proceeds. This transaction data is also valuable in the prosecution of the merits of Plaintiffs' claims.

A fourth benefit from the Settlements is a risk diversification. On the one hand, Plaintiffs and the Settlement Class are no longer placing all their eggs in the basket of continued litigation. *In*

---

[9] To confirm its inability to provide the Settlement Class any monetary compensation, Plaintiffs' Counsel obtained information from R.P. Martin about its financial condition. (R.P. Martin Settlement ¶ 1(q)). R.P. Martin's inability to pay regulatory fines further confirmed its inability to provide the Settlement Class a monetary payment. For example, the U.S. Commodity Futures Trading Commission allowed R.P. Martin to pay its $1.2 million Yen-LIBOR related fine over three years rather than all at once. *See* Briganti Decl., Exhibit 3 at 29. The U.K. Financial Conduct Authority also reduced R.P. Martin's Yen-LIBOR fine from £3.6 million to £900,000 and also allowed R.P. Martin to pay the fine in installments over three years. *See* Briganti Decl., Exhibit 4, at 20.

*re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 642-43 (E.D. Pa. 2003) (court considered the facts that the settlement allows class plaintiffs to diversify the risk of no recovery with an immediate financial recovery). On the other hand, if the continued litigation against the non-settling Defendants is successful, Plaintiffs will still achieve a recovery on the joint and several liability claims that is equal to that which Plaintiffs would have received had they not settled. That is, notwithstanding the settlements, Plaintiffs may still recover, on the joint and several liability claims, all the damages that were allegedly caused by R.P. Martin and Citi.

In exchange for these benefits, Settlement Class Members will release R.P. Martin and Citi from claims in respect of instruments whose prices were allegedly distorted by the manipulation of Yen-LIBOR and Euroyen TIBOR. These instruments are defined as a Class Contract.[10] Also, Plaintiffs' claims against R.P. Martin and Citi will be dismissed.

### C. The settlements are procedurally fair because they were produced by well-informed, arms-length negotiations by experienced counsel

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).[11]

---

[10] "'Class Contract' means a transaction in Euroyen-Based Derivatives or any other similar financial instruments priced, benchmarked, settled to or otherwise affected by Yen-LIBOR or Euroyen TIBOR entered into by a U.S. Person, or by a Person from or through a location within the U.S." Citi Settlement Agreement, at ¶ 1(G).

[11] *See In re Currency Conversion Fee Antitrust Litig.*, 01 MDL 1409, 2006 U.S. Dist. LEXIS 81440, at *14-15 (S.D.N.Y. Nov. 8, 2006) (citing *NASDAQ II*, 176 F.R.D. at 102); *see also* MANUAL §21.632; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement"); *In re Initial Public Offering Sec. Litig.* 260 F.R.D. 81, 87 (S.D.N.Y. 2009) (same); *Monaco v. Carpinello*, No. CV-98-3386 (CPS), 2007 U.S. Dist. LEXIS 28990, at *27-28 (E.D.N.Y. Apr. 19, 2007).

Under these conditions, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997):

> As likewise stated by the MANUAL FOR COMPLEX LITIGATION, a 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.' MANUAL FOR COMPLEX LITIGATION, THIRD ¶ 30.42 (1995). That presumption clearly attaches here.

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999); *see also In re Platinum*, 2014 U.S. Dist. LEXIS 96457, at *35-36; *Shapiro v. JPMorgan Chase & Co.*, 11 CIV. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872, at *6 (S.D.N.Y. Mar. 24, 2014) ("Co–Lead Counsel, who have extensive experience in prosecuting complex class actions, strongly believe the Settlement is in the best interests of the Class, an opinion which is entitled to 'great weight.'").

The process leading up to and the timing of the settlements fully supports preliminary approval. The settlements are the result of arm's length, non-collusive negotiations. *See* Briganti Decl. at ¶ 21. Plaintiffs have been represented by experienced counsel since April 2012. *Id.* ¶¶ 6-10, 44. Before beginning negotiations with R.P. Martin in 2014, and Citi in 2015, Plaintiffs' counsel had the benefit of a number of decisions of this Court concerning the claims and allegations in these Actions; and government orders and settlements with certain Defendants that revealed various facts related to these Actions. *Id.* ¶ 9. Further, Plaintiffs' counsel had researched and considered a wide range of relevant legal issues and analyzed the facts known to date. *Id.* The Settlements are the product of hard-fought extensive negotiations, which involved numerous meetings and/or telephone conferences, and an extensive investigation using available, relevant information. *Id.* ¶¶ 21-42.

In light of Plaintiffs' Counsel's considerable prior experience in complex class action litigation involving CEA and antitrust claims (among others), *id.* ¶¶ 6-8, their knowledge of the

strengths and weaknesses of Plaintiffs' claims and their assessment of the Settlement Class's likely recovery following trial and appeal, the settlements are entitled to the presumption of procedural fairness.

### D.  There are no obvious or other deficiencies in the settlements

The next *NASDAQ II* preliminary approval element requires that a settlement involve a structure and terms that are common in class action settlements in this District. *NASDAQ II,* 176 F.R.D. at 102. The settlements meet this requirement. *See* Briganti Decl. ¶ 41.

Citi's right to terminate the Settlement Agreement under certain circumstances does not depart from this requirement. *See* Citi Settlement Agreement ¶ 23.  Under ¶ 23, Plaintiffs agreed that Citi has a qualified right to terminate the Citi Settlement Agreement before Final Approval. This qualified right begins with the number and significance of the Class Members, if any, who request to be excluded (or "opt out") of the Settlement Class. These "blow" provisions are common in class action settlements and are included, generally speaking, based on the defendant's desire to quiet the litigation through the class action settlement and without leaving open any material exposure. Typically, class settlement rescissory rights are triggered by specific numerical factors, such as the absolute number or percentage of class members who opt out.[12]

### E.  The settlements do not favor Plaintiffs or Class Members, nor do they create preferences.

The Settlements do not favor or disfavor any Plaintiffs or Settlement Class members; nor do they discriminate against, create any limitations, or exclude from payments, any persons or groups within the Settlement Class. *NASDAQ II,* 176 F.R.D. at 102; Citi Settlement *passim.* These types of distinctions are fully allowable, and expected, if there is a rational basis for them, in plans of

---

[12] A copy of the Citi Supplemental Agreement has been filed under seal.

allocation.[13] Here, Plaintiffs, with the assistance of their experts, are in the process of developing a plan of allocation to distribute settlement proceeds.

Settlements are routinely preliminarily approved before the plan of allocation is finalized. *E.g., Euribor Order*; *In re Wachovia Equity Secs. Litig.,* No. 08-6171 (RJS), 2012 U.S. Dist. LEXIS 97910, at *5 (S.D.N.Y. June 12, 2012) (approving plan of allocation after preliminary approval of proposed settlement and certification of settlement class); *In re Canadian Sup. Secs. Litig.,* No. 09-10087, 2011 U.S. Dist. LEXIS 132708, at *4-5 (S.D.N.Y. Nov. 16, 2011) (same); *In re Giant Interactive Grp. Inc. Secs. Litig.,* 279 F.R.D. 151, 156 (S.D.N.Y. 2011) (same); *In re Marsh ERISA Litig.,* 265 F.R.D. 128, 135 (S.D.N.Y. 2010) (same); *In re Qiao Xing Secs. Litig.,* No. 07cv7097, 2008 U.S. Dist. LEXIS 26043, at *4-6 (S.D.N.Y. Apr. 2, 2008) (same).[14] Indeed, even final approval of class action settlements is appropriate prior to the finalization of a plan of allocation, especially in a complex case in which only one or two defendants have settled and sufficient records for determination as to the distribution of the proceeds are not yet available. *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 170 (2d Cir. 1987); *In re Washington Public Power Supply Sys. Secs. Litig.,* 1988 U.S. Dist. LEXIS 16532, at *10-11 (W.D. Wash. July 28, 1988); *NASDAQ III*, 187 F.R.D. at 480; *In re*

---

[13] In *Charron v. Wiener*, 731 F.3d 241, 244-246, 254 (2d. Cir 2013) ("*Charron*"), all five named plaintiffs objected to the settlement made by class counsel because the settlement made allocation and other decisions that left various claims wholly unpaid, and did so without separate representation for differing interests. The Second Circuit overruled the objections. *Id.* Here, Plaintiffs—including CalSTRS—support the Settlements. The settlements make no allocation decisions. There is no intent to leave any category of claims unpaid.

[14] For example, in *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-0042, 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) ("*Freight Forwarders*"), plaintiffs moved for preliminary approval of the first ten partial settlements prior to formulating any plan of allocation. *Id.*, ECF No. 527 (9/20/2011); ECF No. 576 (4/2/2012); ECF No. 590 (6/14/2012); ECF No. 637 (8/29/2012); ECF No. 645 (09/17/2012); ECF No. 668 (10/10/2012); ECF No. 687 (12/10/2012); and ECF No. 712 (1/29/2013). Judge Gleeson preliminarily approved each of these settlements before any plan of allocation had been proposed. *Id.*, ECF No. 530 (9/23/11); ECF No. 587 (5/9/2012); ECF No. 604 (7/11/2012); ECF No. 643 (9/12/2012); ECF No. 649 (9/19/2012); ECF No. 673 (10/18/2012); ECF No. 692 (12/12/2012); and ECF No. 715 (1/30/2013). The court approved the proposed class notice program, again prior to any plan of allocation. *Id.*, ECF No. 666. The class notice provided that "a plan of allocation has not yet been determined" and referred class members to the settlement website. *Id.*, ECF No. 656-3. During the notice period, the plan of allocation was posted on the settlement website. Plaintiffs moved for approval of the plan of allocation in conjunction with their motion for final approval of the ten settlements on July 26, 2013, ECF No. 854, and the approval was granted. *Freight Forwarders*, 2013 U.S. Dist. LEXIS 121795, at *16.

9

*HealthSouth Corp. Sec. Litig.,* 334 F. App'x 248, 251, 253-255 (11th Cir. 2009); *see* MANUAL § 21.313 at 296; NEWBERG ON CLASS ACTIONS § 12:35 at 342 (4th ed. 2002).

But here, Plaintiffs **do** fully anticipate sending the proposed Distribution Plan with the notice to Class Members of the Settlements (and any other settlements that have been preliminarily approved by that time). Thus, the proposed Distribution Plan will be available to Settlement Class Members before they have to decide to accept its benefits, opt-out, or object to final approval. In these circumstances, the Settlements wholly avoid any improper preferences or discriminations. Moreover, whether any such preferences or discriminations will even be proposed (and, if so, which ones), will be determined by an appropriate process. Accordingly, this third *NASDAQ II* preliminary approval element is fully satisfied.

### F.  The settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable

The substantial consideration provided by the settlements falls well within the possible range of reasonable consideration at the final Settlement approval hearing. *NASDAQ II,* 176 F.R.D. at 102. The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (Bankr. S.D.N.Y. 1993) ("The weighing of a claim against compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.") (ellipses in original) (internal quotations omitted). "Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval." *NASDAQ III*, 187 F.R.D. at 478. As the Fifth

Circuit stated in one prominent antitrust case, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).

Private antitrust plaintiffs, unlike the government, have the burden to prove antitrust impact and damages. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir. 1971). This burden to prove impact and damages, even in non-complex cases, can be challenging in certain instances. Thus, for example, even where a criminal guilty plea was obtained, an antitrust jury has found no damages. *See* Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal., Sept. 3, 2013), ECF No. 8562.

"Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476. *See also In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) ("Even if Plaintiffs had succeeded in proving liability at trial, there is no guarantee they would have recovered damages."); *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983) (antitrust judgment was remanded for a new trial and damages).

Here, Citi's monetary consideration alone, $23,000,000, is significantly greater than the amount of maximum potential damages Citi would have argued it was liable for had the case proceeded to trial. It is also significantly less than Plaintiffs calculated as Citi's possible damages. *Compare Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("*Maywalt*") (maximum "likely" damages is the appropriate test) *with In re Prudential Secs. Ltd P'ships Litig.*, No. M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103, at *41 (S.D.N.Y. Nov. 20, 1995) ("*Prudential*") (Pollack,

*J.*) (where many non-settling defendants are present, class counsel must be circumspect in stating facts that may aid the non-settling defendants).

Plaintiffs' impact and damages theories against Citi would be sharply disputed, including at trial. This inevitably would involve a "battle of the experts." *NASDAQ III,* 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Before confronting the risks of proving impact and damages, Plaintiffs face the complexities, challenges, and risk of a far greater task: establishing the other elements of liability. The facts and claims here are very complex. As has been recognized in similar contexts, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). This task involves obtaining and proving the meaning and significance of instant messages, trading patterns, and extensive other facts or evidence. The evidence of manipulation and collusion will likely raise ambiguities and inferences. This creates many risks in establishing liability in this case.

Here again, Plaintiffs' counsel must be wary in describing in detail their proof risks due to the presence of non-settling defendants. *Prudential*, 1995 U.S. Dist. LEXIS 22103, at *41. But the answers to the key common questions of fact and law for all Settlement Class Members claims will be hotly disputed and Plaintiffs' counsel will zealously seek to overcome all the foregoing ostensible risks.

In view of the many risks of continued prosecution, the settlements beneficially diversify the Settlement Class' position. The settlements give class members a bird in the hand **and** the opportunity to obtain the same bird in the bush through settlements or verdicts against the

remaining defendants. In assessing the reasonableness and adequacy of benefits obtained in the settlements, Plaintiffs' counsel was mindful of the "benefits afforded the Class including the *immediacy* and *certainty* of the recovery, against the continuing risks of litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013) (emphasis in the original).

In light of the ostensible risks of litigation and all the circumstances, Plaintiffs' counsel's considered judgment is that the total consideration provided by the settlements, including the substantial cooperation that R.P. Martin and Citi have provided and will continue to provide to Plaintiffs, is fair, reasonable, and adequate in light of all the circumstances.

The consideration offered the class members in the settlements is well within the range of that which may possibly later be found to be fair, reasonable, and adequate at final approval. *NASDAQ II*, 176 F.R.D. at 102; Briganti Decl. ¶ 42.

### 1. Applying the *Grinnell* "final approval" factors to the settlements is unnecessary at preliminary approval

At final approval, the Court considers several factors in deciding whether a settlement is fair, reasonable and adequate::

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *see Maywalt*, 67 F.3d at 1079-80 (fundamental to a determination of whether a settlement is fair, reasonable and adequate "'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'"). In the discussion above, Plaintiffs have already addressed *Grinnell* factors 4-6 and 8-9. These *Grinnell* factors

are the only appropriate considerations for preliminary approval. S*ee In re Take Two Interactive Secs.*
*Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010), at \*32 n.8 ("A
court reviewing a settlement for final approval must address the nine factors laid out in C*ity of Detroit*
*v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  For preliminary approval purposes, however, we
do not need to make such an intensive analysis. To try to do so before the fairness hearing would be
premature.").

*Grinnell* **Factor 1.** This case involves complex financial instruments and legal questions. As
is always true in cases involving large document productions by defendants, a key component of the
duration of the case will be the time that the non-settling Defendants require to produce their
documents, and that the parties will spend reviewing these voluminous materials.  To date, Plaintiff
has reviewed more than 327,000 documents and most defendants have withheld vast portions of
their responsive materials while foreign data privacy issues are resolved by Magistrate Judge Pitman.
The litigation has been, and will continue to be, expensive to prosecute.

*Grinnell* **Factor 2.** *Grinnell* factor 2 (the reaction of the class to a settlement) is premature.
Certainly, however, all of the named Plaintiffs favor the settlements. Plaintiffs, including CalSTRS,
the largest U.S. teachers' retirement fund, with approximately $188.3 billion in assets and close to
one million members, and Hayman Capital Management, a multi-billion dollar hedge fund, among
others, are sophisticated investors with significant financial expertise and are fully capable of
assessing the benefits of the settlements. Well-versed in the rigorous analysis of complex financial
matters, Plaintiffs' approval is highly probative of the likely reaction by other Settlement Class
Members upon similarly reviewing the Settlements.

Any class member who does not favor the deals can opt out. After the Settlement Class has
been provided notice of the settlements, Plaintiffs will address the Settlement Class's reaction in
their motion for final approval.

*Grinnell* **Factor 3**.  The Court may approve a settlement at any stage of litigation. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 02-civ-5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at \*36 (S.D.N.Y. Apr. 6, 2006). The Court's primary concern in examining the stage of litigation and the extent of discovery undertaken is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their cases, and whether the settlement is adequate given those risks.  *Id.* at \*37.

Plaintiffs conducted extensive factual and legal research and consulted experts to assess the merits of their claims. Plaintiffs reviewed publicly-available information, including government pleas, non-prosecution and deferred prosecution agreements, and trial transcripts, and attended criminal court proceedings concerning the manipulation of Yen-LIBOR and Euroyen TIBOR as well as various other global benchmarks. Further, Plaintiffs had the benefit of this Court's evaluation of the strengths of Plaintiffs' claims and Defendants' defenses through orders granting and denying in part Defendants' motions to dismiss. The information gathered during this process informed Plaintiffs as to the advantages and disadvantages of entering into settlements with Citi and R.P. Martin. At the time of the agreements were struck, Plaintiffs' counsel was well-informed of the factual bases for the *Laydon* and *Sonterra* Actions, as well as the uncertainties with respect to the claims and the risks associated with ongoing litigation.

*Grinnell* **Factor 7**. Citi certainly has the ability to withstand a greater judgment than $23,000,000.00. But this factor alone does not bear on the appropriateness of the Citi Settlement. *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 U.S. Dist. LEXIS 158767, at \*21 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to

completely empty its pockets before a settlement may be approved–indeed, if it did, it is hard to imagine why a defendant would ever settle a case").

R.P. Martin was not in a financial position to contribute any money as part of its settlement. Before agreeing to the settlement, R.P. Martin had entered into a settlement agreement with the FCA that discounted the applicable fine by 75% due to its dire financial condition. The FCA further applied an additional 30% discount due to R.P. Martin's early stage cooperation.[15] The CFTC and FCA prorated R.P. Martin's regulatory fines to make them payable over three years rather than one. In this context, R.P. Martin's settlement cooperation is far more valuable than any money it could afford to pay in a settlement (and it can't pay any). R.P. Martin's inability to withstand any judgment favors approval of the R.P. Martin Settlement.

### 2. Unlike in *Grinnell,* recovery on many claims being settled here is not foreclosed because of the availability of joint and several liability recovery from the remaining defendants

Another reason that a more detailed *Grinnell* analysis is inappropriate is that *Grinnell* did not involve a settlement of the claims against one of more than a dozen different Defendants. Instead, it involved the payment by all four defendants of $10 million. In contrast, here, two Defendants have settled, but more than 25 Defendants remain in the litigation. Most of the claims here are premised on joint or otherwise conspiratorial conduct that creates joint and several liability. *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770, 778 (S.D.N.Y. 1984) (defendants jointly and severally liable on a jury verdict for price fixing, manipulation in violation of the antitrust laws and commodities laws, as well as common law fraud), *aff'd* 768 F.2d 22 (2d Cir. 1985). The situation here is different from the "entire settlement for all purposes" circumstance under review in *Grinnell*.

---

[15] *See* Financial Conduct Authority, Final Notice against Martin Brokers (UK) Ltd., FCA Ref. No. 187916, ¶ 6.17 (May 15, 2014), Briganti Decl., Exhibit 4 at ¶¶ 1.2, 1.3 (noting Martin Brokers (UK) Ltd. ("Martins") eligibility for a 30% (Stage 1) discount), 6.17 ("[T]he FCA would have imposed a penalty of £3,600,000 on Martins. Given Martins' financial circumstances, however, in particular, the fact that Martins would be unable to pay a penalty of this amount (together with the other regulatory liabilities that Martins faces in relation to LIBOR), the FCA has reduced the fine by 75% to £900,000 and has agreed to accept payment in installments over three years.").

**II.**     **The Court should conditionally certify the Settlement Class**

A court may certify a class for settlement purposes where the proposed settlement class

meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of

Rule 23(b). *See In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). Plaintiffs seek

certification under Rule 23(b)(3).

> Even in the final settlement approval context, Courts have reasoned:
>
> > As the initial and fundamental principle, it is important to remember that when
> > considering certification in the context of a proposed settlement, 'courts must take a
> > liberal rather than a restrictive approach.'  In other words, many of the restrictions or
> > considerations that come into play in the standard certification analysis do not
> > receive the same treatment at the settlement stage.

*Velez v. Novartis Pharm. Corp.,* No. 04 Civ. 09194, 2010 U.S. Dist. LEXIS 125945, at \*24-25

(S.D.N.Y. Nov. 30, 2010) (citation omitted).

The Settlement Class satisfies the provisions of Rule 23(a) and Rule 23(b)(3). The Settlement

Class is defined as:

> All Persons that engaged in a transaction in Euroyen-Based Derivatives[16] during the
> period of January 1, 2006 through June 30, 2011.[17]

(Citi Settlement ¶ 1(F))[18] Certification of the Settlement Class is not intended to serve as

certification of a class for all claims against all defendants, but is limited to the claims against Citi and

R.P. Martin based on transactions in Euroyen-Based Derivatives.

---

[16] Euroyen-Based Derivatives means: (i) a purchase or sale of a Euroyen TIBOR futures contract on the Chicago
Mercantile Exchange ("CME"); (ii) a purchase or sale of a Euroyen TIBOR futures contract on the Tokyo Financial
Exchange, Inc. ("TFX"), Singapore Exchange ("SGX"), or London International Financial Futures and Options
Exchange ("LIFFE") by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a purchase or sale
of a Japanese Yen currency futures contract on the CME; (iv) a purchase or sale of a Yen-LIBOR and/or Euroyen
TIBOR based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the
U.S.; (v) a purchase or sale of a Japanese Yen currency forward agreement entered into by a U.S. Person, or by a Person
from or through a location within the U.S.; and/or (vi) a purchase or sale of a Yen-LIBOR and/or Euroyen TIBOR
based forward rate agreement entered into by a U.S. Person or by a Person from or through a location within the U.S.

[17] Excluded from the Class are (i) Defendants and any parent, subsidiary, affiliate, or agent of any Defendant; (ii) the
Released Parties; and (iii) any Class Member who files a timely and valid request for exclusion.

[18] The Class Period definitions in the Citi and R.P. Martin Settlements differ slightly as the Class Period under the R.P.
Martin Settlement terminates December 31, 2010. (*See* R.P. Martin Settlement ¶ 1(c).) The time period difference is due

### A.  The Settlement Class meets the Rule 23(a) requirements.

#### 1.  Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). Joinder need not be impossible; only "merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. at 90. "Sufficient numerosity can be presumed at a level of forty members or more." *Id.*; *see also* Euribor Order ¶ 5. There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class definition. *See* Briganti Decl. ¶ 43. Thus, joinder of all these individuals and entities would be impracticable.

#### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2). This is a " 'low hurdle' easily surmounted."  *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)). Commonality requires the presence of only a single question common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("*Dukes*").

This case presents literally scores of common questions of fact and law.  Personal jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions raised by Defendants' motions to dismiss, create an extensive core of common questions of fact and law relating to Plaintiffs' claims and Defendants' affirmative defenses. All class members have the equal need to demonstrate facts relative to these questions and argue the same legal points to establish their claims.

---

to new information revealed after the R.P. Martin Settlement was executed, which prompted the *Sonterra* Plaintiffs to extend the Class Period by six months. The Court has the power to conform the Class Period in the R.P. Martin Settlement to the Class Period in the Citi Settlement. *See In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 147 (D.N.J. 1984) ("[The court] may redefine the contours of the class should that become necessary.").

Greatly adding to the common questions of law and fact are the same liability and impact questions that every Plaintiff and Class Member has to answer through the same body of common class-wide proof.  For example:

1. What constitutes a false or manipulative submission by a Yen-LIBOR or Euroyen TIBOR Contributor Panel Bank? This threshold question involves issues of fact that will be of overriding importance in this litigation. As their traders talked and colluded about the optimal level of Yen-LIBOR and Euroyen TIBOR to profit their proprietary positions held in Euroyen-Based derivatives, defendants allegedly (and in some cases, admittedly) adjusted their Yen-LIBOR and/or Euroyen TIBOR submissions in the direction of their financial self-interest.  Nonetheless, we expect Defendants will contend that the communications are ambiguous, that the evidence is otherwise mixed, and/or they had non-manipulative reasons for their Yen-LIBOR and/or Euroyen TIBOR submissions.

2. Which of the Defendants were engaged in conspiratorial conduct in Yen-LIBOR and Euroyen TIBOR, and for what period(s) were they involved in same?

3. What was would the non-manipulated Yen-LIBOR and Euroyen TIBOR be in the "but-for" world for each day of the Class Period?

These common questions involve dozens of common sub-questions of fact and law that are also common to all Settlement Class Members. Rule 23(a)(2) is overwhelmingly satisfied.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This permissive standard is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.") (internal quotation omitted).

19

Here, Plaintiffs' claims and all class members' claims arise from the same course of conduct involving Defendants' alleged false reporting and manipulation of Yen-LIBOR, Euroyen TIBOR and the prices of Euroyen-Based Derivatives. Therefore, Plaintiffs' claims are typical of these class members' claims. *Compare e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997) (finding named plaintiffs' claims typical of the class under Rule 23(a)(3) where "each named plaintiff challenges a different aspect of the child welfare system;" "[t]he claimed deficiencies implicate different statutory, constitutional and regulatory schemes;" and "no single plaintiff (named or otherwise) is affected by each and every legal violation alleged . . . and [] no single specific legal claim identified by the plaintiffs affects every member of the class" (citing *In re Drexel Burnham Lambert Group Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)); *see also* Euribor Order ¶ 4 (conditionally certifying settlement class of persons who purchased sold, held traded or otherwise had any interest in derivatives products priced, benchmarked and/or settled to Euribor). Typicality is satisfied for purposes of conditional certification.

### 4.   Adequacy

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts consider "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 61; *see also* Euribor Order ¶ 5.

#### a.   The Class Representatives suffer no disabling conflicts with the members of the settlement class

"'Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.,* No. 05-CV-4659 (DLI), 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting 7 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE &

20

PROCEDURE § 1768, at 639 (1972)); *see also In NASDAQ Market-Makers Antitrust Litig.,*169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) (*"NASDAQ I"*) (to warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation").

No such fundamental conflict exists here.

*First*, all Settlement Class Members share an overriding interest in obtaining the largest possible monetary recovery from Citi (and, for that matter, the remaining Defendants). *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members.  All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

*Second*, all settlement class members share a common interest in obtaining R.P. Martin's and Citi's early and substantial cooperation to prosecute the claims against the non-Settling Defendants.

*Third*, all Settlement Class Members share the same overriding interests to overcome the procedural dismissal motions, develop the enormous fact record during discovery, overcome the ambiguities and competing explanations, and establish the collusive, successful manipulation of Yen-LIBOR, Euroyen TIBOR and the prices of Euroyen-Based Derivatives. Further, all Settlement Class Members share the interest to successfully show that such manipulation of Yen-LIBOR and Euroyen TIBOR was sufficient to cause injury, and to quantify the impact of such manipulation on Yen-LIBOR, Euroyen TIBOR, and Euroyen-Based Derivatives prices.

There are no conflicts; the interests of Plaintiffs' (as proposed class representatives) in proving liability and damages are aligned with those of members of the Settlement Class.

### b. Plaintiffs' counsel is adequate

Plaintiffs and the Settlement Class are represented by experienced and skilled counsel. Plaintiffs' Counsel, Lowey Dannenberg, have prosecuted this litigation for 45 months. Lowey Dannenberg investigated and brought the case. This Court has already authorized and appointed Lowey Dannenberg as Interim Lead Counsel in the *Laydon* Action, having found counsel's experience sufficient and relevant. *Laydon* Action, ECF No. 99. The same reasoning equally applies to find that this part of the adequacy prong is satisfied as well. Lowey Dannenberg has vigorously represented the Settlement Class in both the *Laydon* and *Sonterra* Actions, having negotiated both Settlements. Lowey Dannenberg has obtained and will obtain valuable information provided by Citi and R.P. Martin. Briganti Decl. ¶¶ 32-34. With over fifty years of experience litigating complex class actions, Lowey Dannenberg has achieved some of the most significant class action recoveries under the CEA and has secured almost a billion dollars in recoveries on behalf of Fortune 100 Companies and other sophisticated investors in antitrust and competition-related litigation. Briganti Decl., Exhibit 5 (Lowey Firm Resume). *See also* December 15, 2015 Euribor Order ¶ 6 (appointing Lowey Dannenberg as Settlement Class Counsel in $94 million settlement with Barclays).

The same bases justifying the Court's appointment of Lowey Dannenberg as Interim Lead Counsel apply to Lowey Dannenberg's ability and adequacy to serve as class counsel for the Settlement Class. Therefore, upon certifying the Settlement Class, the Court should also appoint Lowey Dannenberg as Class Counsel.

Because no fundamental conflicts exist, the Settlement Class is appropriately represented by Lowey Dannenberg. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007) (separate representation of multiple classes is required only where there is a "fundamental conflict" that goes "to the very heart of the litigation").

The Rule 23(a)(4) requirements that there be no fundamental conflict and adequate class counsel are both satisfied.

### c. The Court should appoint Class Counsel under Rule 23(g)(1)

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). For the reasons described above, Lowey Dannenberg is adequate and should be appointed as Class Counsel for the Settlement Class.

### B. The proposed settlement class Satisfies Rule 23(b)(3)

Once the four requirements of Rule 23(a) have been satisfied, Plaintiffs must also conditionally establish (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

#### 1. Predominance

Certification is proper under Rule 23(b)(3) where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting FED. R. CIV. P. 23(b)(3) Adv. Comm. Note. to 1966 amend.). To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483. "If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3)

23

envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 180914, at \*194 (E.D.N.Y. Oct. 15, 2014).

Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law," unlike mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 315 (3d Cir. 1998) (noting that "the complexity of a case alleging physical injury . . . differs greatly from a case alleging economic injury"). In antitrust cases, predominance is often readily established because the elements of the claims lend themselves to common proof.  Liability focuses on defendants' alleged unlawful actions,, not the actions of individual plaintiffs, making  most antitrust claims particularly suited for class treatment. *Compare Amchem,* 521 U.S. at 624 *with Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).[19]

Moreover, the "predominance inquiry will sometimes be easier to satisfy in the settlement context." *See also Am. Int'l Grp.,* 689 F.3d at 240. Unlike class certification for litigation purposes, a settlement class presents no management difficulties for the court as settlement, not trial, is proposed. *See Amchem*, 521 U.S. at 620; *see also NASDAQ I*, 169 F.R.D. at 517 (stating that predominance test standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").[20]

---

[19] *See also, e.g.*, *In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement"); *Vitamin C*, 279 F.R.D. at 109 (stating that in horizontal price fixing cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class").

[20] The presence of the right of Class Members to opt out further favors conditional certification of this Settlement Class here. Even if some individual differences did exist among Settlement Class Members, those Class Members who "believe they may do better on their own are permitted to opt out." *Interchange*, 986 F. Supp. 2d at 239 n.20. As to potential individual issues among Class Members who stay in the Settlement Classes, "the fact of the settlement is 'relevant'" to the certification question, "since [the settlement] creates a single method and procedure for recovering monetary claims that might be otherwise complex and individualized." *Id.* (citing *Amchem*, 521 U.S. at 619); *see also In re Diet Drugs*, MDL Dkt No. 1203, 2000 U.S. Dist. LEXIS 12275, at \*130 (E.D. Pa. Aug. 28, 2000) (certifying a settlement class, stating any

24

If the claims against R.P. Martin and Citi had not been settled, the dozens of common questions would have predominated over individual questions in the prosecution of the claims against R.P. Martin and Citi. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, all Plaintiffs and class members face and must answer the same common factual and legal questions to establish personal jurisdiction, subject matter jurisdiction, conspiracy, unlawful Yen-LIBOR and Euroyen TIBOR manipulation, the amount of such Yen-LIBOR and Euroyen TIBOR manipulation and many additional matters of proof. These common questions predominate over individual questions. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (in price-fixing case, "allegations of the existence of a price-fixing conspiracy are susceptible to common proof"). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by, In re Initial Public Offering Sec. Litig.*, 471 F. 3d 24, 42 (2d Cir. 2006).

Here, the settlement class satisfies Rule 23(b)(3) as common issues predominate over individual issues.

### 2.   Superiority

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b). The Court balances the advantages of class action treatment against alternative available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement, however, is applied leniently in

---

"individual issues relating to causation, injury and damage . . . disappear because the settlement's objective criteria provide for an objective scheme of compensation").

the settlement context because the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

      *First*, a class action is the superior method for the fair and efficient adjudication of the Action. First, Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

      *Second*, the majority of Class Members have neither the incentive nor the means to litigate these claims. The damages suffered by most of the individual members of the Settlement Class are likely to be small compared to the very considerable expense and burden of individual litigation. This makes it uneconomic for a individual to protect his/her rights through an individual suit. That is why no Class member "has displayed any interest in bringing an individual lawsuit." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). A class action allows claimants to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566; *see also Seijas v. Republic of Arg.,* 606 F.3d 53, 58 (2d Cir. 2010)). "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

      *Third*, the prosecution of separate actions by hundreds (or thousands) of individual members of the Settlement Class would impose heavy burdens upon the Court. It would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class.

      Both prongs of Rule 23(b)(3) are satisfied.

**III.**      **The Court should appoint A.B. Data as Escrow Agent**

      Plaintiffs propose that the Court approve A.B. Data, Ltd. ("A.B. Data") as Escrow Agent. A.B. Data has served as an escrow agent in a number of significant class action matters, has

delivered reliable and accurate service in the past, and is well-qualified to serve in these roles in this action. Plaintiffs' Counsel has negotiated with A.B. Data to provide its services as Escrow Agent at market rates.

## CONCLUSION

For the stated reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed Order: (1) granting preliminary approval of the proposed Settlements with R.P. Martin and Citi; (2) conditionally certifying the Settlement Class for purposes of sending notice to the Class; (3) appointing Lowey Dannenberg as Class Counsel; and (4) appointing A.B. Data, Ltd. as Escrow Agent.

Dated: February 1, 2016
White Plains, New York

**LOWEY DANNENBERG COHEN & HART, P.C.**

/s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
Peter D. St. Phillip
One North Broadway, 5th Floor
White Plains, New York 10601
914-997-0500
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com

*Counsel for Plaintiffs*

Joseph J. Tabacco, Jr.
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan
Daryl DeValerio Andrews
**BERMAN DEVALERIO**
One Liberty Square

27

Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
pegan@bermandevalerio.com
dandrews@bermandevalerio.com

*Additional Counsel for Plaintiffs*