UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated, | : : : |
| Plaintiff, | : Case No. 12-CV-3419 (GBD) : |
| v. | : : |
| | : **ORAL ARGUMENT REQUESTED** |
| MIZUHO BANK, LTD., *et al.* | : : |
| Defendants. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF ICAP EUROPE LTD.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND FOR A STAY OF DISCOVERY**

Brian S. Fraser
Shari A. Brandt
H. Rowan Gaither IV
Robyn H. Frumkin
RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, New York 10281
Telephone:  (212) 530-1800

*Attorneys for Defendant
ICAP Europe Ltd.*

Dated: May 16, 2016

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT JURISDICTIONAL FACTS AND PROCEDURAL HISTORY ............................ 1

ARGUMENT .................................................................................................................................. 2

    I.       There Is No General Jurisdiction Over IEL. ..................................................................... 2

    II.      There Is No Specific Jurisdiction Over IEL. .................................................................... 3

           A.       Specific Jurisdiction Can Only Be Exercised Where a "Substantial Connection" Exists Between a Foreign Defendant's Suit-Related Conduct and the United States. .........................................................................................3

           B.       Allegations of a Conspiracy Do Not Support the Exercise of Specific Jurisdiction. ...........................................................................................................7

    III.     The Court Should Stay All Discovery As to IEL Pending Its Decision on Personal Jurisdiction. ....................................................................................................... 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*7 West 57th St. Realty Co. v. Citigroup, Inc.,* No. 13-CV-981, 2015 WL 1514539
(S.D.N.Y. Mar. 31, 2015) .................................................................................................5, 6

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ........................................................................2, 3

*Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262, 2014 WL
4473352 (S.D.N.Y. Sept. 11, 2014) ....................................................................................4

*Doe v. Del. State Police*, 939 F. Supp. 2d 313 (S.D.N.Y. 2013) .......................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) ..................................2

*Gandler v. Nazarov*, No. 94-CV-2272, 1994 WL 702004 (S.D.N.Y. Dec 14, 1994) ....................10

*Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014) ........................................................................3

*In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 234 (S.D.N.Y. 2015) ..............9

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-CV-7789, 2016
WL 1268267 (S.D.N.Y. Mar. 31, 2016) ..............................................................................5

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2015 WL
4634541 (S.D.N.Y. Aug. 4, 2015) ........................................................................4, 5, 6, 7, 9

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262 (S.D.N.Y. Apr.
15, 2016) (ECF No. 1380) ...............................................................................................4, 5

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262 (S.D.N.Y. Apr.
29, 2016) (ECF No. 1396) ................................................................................................11

*In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126, 2013 WL 1907738
(S.D.N.Y. May 8, 2013) ................................................................................................9, 10

*In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456 (S.D.N.Y. 2010) ..........................4

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013) ....................................4, 5

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998) ............................................................11

*Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419, 2015 WL 1515358 (S.D.N.Y. Mar. 31,
2015) ..........................................................................................................1, 2, 4, 7, 8, 9, 10

*Rush v. Savchuk*, 444 U.S. 320 (1980) ...........................................................................................8

**Page(s)**

*Sonterra Capital Master Fund, Ltd. v. UBS AG*, 15-CV-5844 (S.D.N.Y.) ...........................2, 5, 10

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015) ........................................6

*Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................11

*Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .............7

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ...............................................................................3, 7, 8

**OTHER AUTHORITIES**

NYSE Euronext, 2009 Annual Report on Form 10-K, at 1, *available at*
    http://www.sec.gov/Archives/edgar/data/ ..................................................................................7

Defendant ICAP Europe Ltd. ("IEL") respectfully submits this memorandum of law in support of IEL's Motion to Dismiss for Lack of Personal Jurisdiction the claims brought against it by Plaintiff Jeffrey Laydon ("Plaintiff" or "Laydon") in the Third Amended Complaint filed on February 29, 2016 (the "TAC") and for a stay of discovery.

## PRELIMINARY STATEMENT

This Court dismissed ICAP plc from this case last year for lack of personal jurisdiction. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419, 2015 WL 1515358, at *4-5 (S.D.N.Y. Mar. 31, 2015) ("*Laydon* PJ Op."). The Court found that ICAP plc's "alleged suit-related conduct d[id] not create a substantial connection with the United States," and therefore the Court had no personal jurisdiction over ICAP plc. *Id.* at *5. The Court's reasoning is just as applicable to IEL and the Court should dismiss IEL for those same reasons. Further, because of the strength of IEL's Motion, the Court should stay all discovery as to IEL pending its ruling on this Motion.

## RELEVANT JURISDICTIONAL FACTS AND PROCEDURAL HISTORY

IEL is a United Kingdom-based company and is organized and has its registered offices in the UK. Declaration of Richard Bigwood ("Bigwood Decl.") ¶¶ 3-4. IEL is wholly owned, through intermediate wholly-owned UK-based subsidiaries, by ICAP plc, a UK-based holding company. *Id.* ¶ 5. IEL has no offices, branches, employees, or derivative teams in the United States. *Id.* ¶¶ 4, 6-8. IEL's Yen Broker desk is located outside of the United States, as are all of the supervisors of that desk. *Id.* ¶ 11. IEL has no American shareholders, does not list stock on any public exchanges, including any in the United States, does not pay taxes to the United States government, and did not generate revenues in the 2012 fiscal year on which taxes were due to the United States government. *Id.* ¶¶ 5, 10. IEL has also never been a member of the NYSE LIFFE exchange ("LIFFE") or its predecessors or successors. Declaration of Jonathan Lock ("Lock Decl.") ¶ 3.

On September 25, 2013, the Commodity Futures Trading Commission ("CFTC") issued an Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act Making Findings and Imposing Remedial Sanctions Against IEL (the "CFTC Order"). Bigwood Decl. ¶ 13.  IEL neither admitted nor denied the findings or conclusions in the CFTC Order, and expressly withheld consent to the use of the CFTC Order by any other party in any other proceeding.  *Id.*  The conduct alleged in the CFTC Order took place entirely outside of the United States, and the CFTC Order contains no allegations related to individuals located in, or communicating with individuals located in, the United States.  *Id.* ¶ 14.

After the Court dismissed ICAP plc in its prior opinion on personal jurisdiction, *see Laydon* PJ Op. at *4-5, Plaintiff's counsel in this case filed a parallel litigation, which was assigned to this Court, with different plaintiffs but based on the same allegations.  *See Sonterra Capital Master Fund, Ltd. v. UBS AG*, 15-CV-5844 (S.D.N.Y.).  On February 1, 2016, IEL moved to dismiss the *Sonterra* complaint for lack of personal jurisdiction.  *Id.* (Feb. 1, 2016) (ECF No. 147).  IEL's currently pending personal jurisdiction motion in *Sonterra* is predicated on the same arguments contained herein.[1]

## ARGUMENT

**I.     There Is No General Jurisdiction Over IEL.**

There can be no credible assertion that the Court has general jurisdiction over IEL for the same reasons that Plaintiff previously withdrew his argument for general jurisdiction over ICAP plc in this case.  *See* ECF No. 367 at 13 ("Plaintiff relies on specific jurisdiction principles to establish personal jurisdiction over the Stipulating Defendants[, which includes ICAP plc]. *Daimler* [*AG v. Bauman*, 134 S. Ct. 746 (2014),] and *Goodyear* [*Dunlop Tires Operations, S.A.*

---

[1] Although Plaintiffs bring different causes of action in *Laydon* (Commodity Exchange Act and state law claims) and *Sonterra* (RICO, antitrust, and state law claims), the conduct they have alleged in both cases is the same.

*v. Brown*, 131 S. Ct. 2846 (2011)] —both exclusively 'general' personal jurisdiction cases—are therefore immaterial to the Court's inquiry."). IEL is in the same position as ICAP plc for purposes of the Court's jurisdictional analysis: IEL is a UK-organized company headquartered in London with its principal place of business in the U.K. Bigwood Decl. ¶¶ 3-4. IEL has no offices or employees in the United States, and it has no United States-based business that is "so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754 (internal quotations omitted); *see* Bigwood Decl. ¶¶ 4, 8. Here, IEL is not "at home" in New York or anywhere in the United States, and there can be no good faith argument that this Court has general jurisdiction over it. Indeed, the Second Circuit recently held that even "four branch offices in the United States" were insufficient to support general personal jurisdiction over a defendant. *Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014). IEL has *no* offices in the United States, Bigwood Decl. ¶ 4, and this Court does not have general jurisdiction over it.

II.     **There Is No Specific Jurisdiction Over IEL.**

    A.     **<u>Specific Jurisdiction Can Only Be Exercised Where a "Substantial Connection" Exists Between a Foreign Defendant's Suit-Related Conduct and the United States.</u>**

This Court also lacks personal jurisdiction over IEL because Plaintiff has failed to allege any suit-related conduct by IEL that it directed at the United States. For the exercise of specific personal jurisdiction to comport with due process, a "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The relationship must "arise out of contacts that the defendant *[it]self* creates with the forum State," and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (internal quotation marks omitted) (emphasis in original). If and only if a court finds that such minimum contacts exist, it must then determine

3

whether the exercise of personal jurisdiction would be "reasonable under the circumstances of the particular case." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (Daniels, J.), *affirmed in part and vacated in part by* 714 F.3d 659 (2d Cir. 2013).

Following *Walden*, courts in this District have required "no less than a 'but for' connection between the defendant's forum-directed activities and the claim" when adjudicating personal jurisdiction motions brought by foreign defendants. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2015 WL 4634541, at *22-23 (S.D.N.Y. Aug. 4, 2015) ("*USD LIBOR IV*"); *see Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014) (specific jurisdiction requires a "'substantial nexus' between the [contacts] and the cause of action.").

Courts in this District have consistently dismissed claims against foreign defendants in alleged LIBOR manipulation cases. In the U.S. Dollar LIBOR litigation ("*USD LIBOR*"), for example, Judge Buchwald has issued a number of personal jurisdiction rulings that are relevant here. Most recently, the Court held that it did not have personal jurisdiction over either IEL or ICAP plc on very similar facts as are alleged in this case. *See USD LIBOR*, No. 11-MD-2262 (S.D.N.Y. Apr. 15, 2016) (ECF No. 1380 at 18-19, 21). Judge Buchwald had also previously dismissed claims against many other foreign defendants on personal jurisdiction grounds, *see USD LIBOR IV* at *21-27, applying reasoning consistent with this Court's prior decision on jurisdiction in this case, *see generally Laydon* PJ Op. Judge Buchwald found that there was no specific jurisdiction over these foreign defendants because personal jurisdiction would exist "only where the LIBOR submission was determined or transmitted" in the forum or, in a suit involving allegations that a specific individual manipulated LIBOR, where the "location of the

4

person who requested the submitter to engage in manipulation" was within the forum.  *USD LIBOR IV* at *32.  Plaintiff has made no allegation that IEL's conduct relating to the submission of Yen LIBOR occurred in or was directed at the United States.[2]

In *7 West 57th St. Realty Co. v. Citigroup, Inc.*, Judge Gardephe dismissed foreign defendants from a different U.S. Dollar LIBOR litigation for lack of specific jurisdiction where the only allegation that "even hint[ed] at a connection between New York and the Foreign Banks' suit-related conduct" was a newspaper article reporting that one of the foreign defendants fired two employees who worked in the bank's New York office for their roles in attempted LIBOR manipulation.  No. 13-CV-981, 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015).  The Court found this allegation to be an insufficient basis for specific jurisdiction over that defendant or any others, and similarly found that, even accepting a causal relationship between changes to LIBOR rates and an effect on Plaintiff's portfolio of assets, "'the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant.'"  *Id.* at *11 (*quoting In re Terrorist Attacks*, 714 F.3d at 674) (alteration in original).  Here, Plaintiff does not and cannot even allege that IEL had a New York office, and his reliance on the same "foreseeability" test is equally misguided.

Plaintiff's attempts to draw any connection between IEL's alleged suit-related conduct and the United States are futile.  For example, allegations that IEL employees distributed false

---

[2] The *Sonterra* plaintiffs have attempted to rely upon *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-CV-7789, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016).  *See Sonterra*, 15-CV-5844 (S.D.N.Y. Apr. 15, 2016) (ECF. No. 224).  That decision, however, does not change the result with regard to IEL.  The *Foreign Exchange* Court's personal jurisdiction decision rested in part on the fact that defendants engaged in market transactions directed at the United States and had substantial foreign exchange business there.  *See Foreign Exchange*, 2016 WL 1268267, at *6.  As Judge Buchwald recently held, *Foreign Exchange* is inapplicable to alleged LIBOR manipulation cases because market transactions played no part in setting the LIBOR fix.  *See USD LIBOR*, No. 11-MD-2262 (S.D.N.Y. Apr. 15, 2016) (ECF No. 1380 at 18-19).  Just as Judge Buchwald barred amendment to include IEL on personal jurisdiction grounds in the U.S. Dollar LIBOR litigation, *id.* at 21, this Court should dismiss IEL because, as in *USD LIBOR* and unlike in *Foreign Exchange*, Plaintiff fails to show that any suit-related conduct took place in the United States or was aimed at causing effects inside the country, *see id.* at 18-19.

transaction information on "screens" and distributed false suggested Yen LIBOR rates via email "run thrus" to "banks located in New York and in the United States," *see, e.g.*, TAC ¶¶ 366, 489, do not provide a sufficient basis for specific jurisdiction because Plaintiff has not – and cannot – allege that this conduct was done "with the express aim of causing an effect" in the United States, as is required for a showing of specific jurisdiction over a foreign entity such as IEL. *See 7 West 57th St. Realty*, 2015 WL 1514539 at *11; *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015). The TAC does not identify anyone in the United States who was allegedly targeted by "run thrus" or "screens," nor does it allege that anyone who may have received the "run thrus" or viewed the "screens" in the United States had anything at all to do with setting the Yen LIBOR or Euroyen TIBOR benchmarks. Plaintiff's argument that it was "foreseeable" that publishing such information would have an impact in the United States, *see, e.g., id.* ¶¶ 365, 373-375, is also unavailing, as "mere foreseeability does not convey personal jurisdiction," *USD LIBOR IV* at *15 (finding no personal jurisdiction even where "the effect of LIBOR manipulation in the states in which plaintiffs sued was foreseeable").

Similarly, allegations related to IEL's purported failure to "implement adequate internal controls and procedures" governing its Yen brokers and to "adequately supervise and oversee its Yen brokers and the Yen and Cash Desks" are utterly irrelevant to specific jurisdiction. *See, e.g.*, TAC ¶ 203. IEL did not have any Yen brokers, or individuals responsible for supervising those brokers, working in the United States. Bigwood Decl. ¶ 11. Therefore, allegations that IEL personnel purportedly failed to supervise other IEL personnel, all of whom were located and conducted their business entirely outside of the United States, cannot possibly form the basis for specific jurisdiction in a New York court. In any event, the TAC does not state any claim for

6

failure to adequately supervise, and the "failure to supervise" allegations cannot constitute "suit-related conduct" that connects IEL to this forum. *See Walden*, 134 S. Ct. at 1121.

Finally, Plaintiff makes the jurisdictionally irrelevant allegation that (i) a different ICAP-affiliated entity, ICAP Securities Ltd., was a member of an exchange known as NYSE LIFFE and (ii) certain Euroyen TIBOR futures contracts, not involving *any* ICAP affiliate, were transacted on that exchange during the Class Period. *See, e.g.*, TAC ¶¶ 135, 154. LIFFE stands for the London International Financial Futures and Options Exchange. According to NYSE Euronext's 2009 Annual Report, "NYSE [LIFFE] is the *international derivatives business* of NYSE Euronext. In 2009, NYSE [LIFFE] was the second largest derivatives market *in Europe* . . . ."[3] ICAP Securities Ltd. was a member of LIFFE London during the relevant time period, but IEL, the Defendant, was not itself a member of any LIFFE exchange. Lock Decl. ¶ 3. In any event, NYSE LIFFE London is an exchange that is based abroad, so membership on that exchange creates no nexus to the United States. Even if IEL had been a member of LIFFE – and it was not – that fact would not in any way support jurisdiction over IEL.

### B. Allegations of a Conspiracy Do Not Support the Exercise of Specific Jurisdiction.

Plaintiff's "conspiracy jurisdiction" theory fails for the same reasons that this Court held that it failed against ICAP plc in its prior opinion regarding personal jurisdiction in this case. *See Laydon* PJ Op. at *3 (finding that "[c]ourts have been increasingly reluctant to extend [the conspiracy] theory of jurisdiction beyond the context of New York's long arm statute"); *see also USD LIBOR IV* at *23-24 (rejecting applicability of conspiracy theory of personal jurisdiction where there was no *prima facie* factual showing of a conspiracy); *Tymoshenko v. Firtash*, No.

---

[3] NYSE Euronext, 2009 Annual Report on Form 10-K, at 1, *available at* http://www.sec.gov/Archives/edgar/data/1368007/000119312509041093/d10k.htm (emphasis added).

11-CV-2794, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013) (declining to consider contacts of co-conspirators to establish personal jurisdiction). Plaintiff has given the Court no basis upon which it should depart from its prior ruling on the validity of "conspiracy jurisdiction." To the extent that the Court considers Plaintiff's allegations against IEL under this "nebulous" theory, the Court should reject it for at least the following three reasons.

First, the facts asserted by Plaintiff simply do not tie IEL to any conduct in the United States. Plaintiff alleges that IEL's Yen brokers "colluded" with traders at various banks to manipulate Euroyen TIBOR and/or Yen LIBOR submissions. *See, e.g.*, TAC ¶¶ 19, 21, 31, 357, 363, 366-386. Yet, all of Plaintiff's allegations against IEL exclusively concern IEL's Yen Broker desk and Yen brokers, who worked outside of the United States, *see* Bigwood Decl. ¶ 11, as well as conduct that occurred outside of the United States. Plaintiff has failed to identify any United States-based trader with whom any IEL broker purportedly colluded. Such allegations do not constitute "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 134 S. Ct. at 1123.

Second, Plaintiff's generalized conspiracy allegations against "Defendants" or "Broker Defendants" as a group are also insufficient to establish personal jurisdiction over IEL. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting an "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts," because due process requirements "must be met as to each defendant over whom a . . . court exercises jurisdiction"). Personal jurisdiction must be assessed on a defendant-by-defendant basis. *Laydon* PJ Op. at *4 ("[T]his Court must analyze the contacts articulated as to each defendant separately."); *see Doe v. Del. State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) ("[T]he plaintiff bears the burden of establishing the court's

personal jurisdiction over a particular defendant."). Any suit-related conduct by other Defendants in the United States is irrelevant to the question of jurisdiction over IEL, as are allegations pled against "Defendants" or any subset of Defendants as a group without specifically alleging conduct by IEL. *See, e.g.*, TAC ¶¶ 166, 387, 391 (failing to specifically allege conduct by IEL as opposed to conduct by "Broker Defendants").

Finally, as this Court held in its prior personal jurisdiction decision in this case, the mere fact of a settlement with a U.S. regulatory authority provides no basis to argue that IEL is subject to personal jurisdiction in the United States. *See Laydon* PJ Op. at *5 ("the CFTC Order is insufficient to establish minimum contacts with the United States" over ICAP plc); *see also USD LIBOR IV* at *27 (rejecting government settlements as a basis for personal jurisdiction "as such governmental actions are not the basis of plaintiffs' claims"). Moreover, IEL's settlement with the CFTC, like all of the allegations against IEL in the TAC, describes non-U.S. individuals and activities that took place entirely outside of the United States. These allegations provide no support for Plaintiff's attempt to establish personal jurisdiction over IEL. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 234 (S.D.N.Y. 2015) (foreign defendant not subject to conspiracy jurisdiction if plaintiff fails to allege any specific action taken with domestic defendant in furtherance of conspiracy).

### III. The Court Should Stay All Discovery As to IEL Pending Its Decision on Personal Jurisdiction.

IEL respectfully requests that this Court stay all discovery with respect to IEL pending the outcome of the instant Motion to Dismiss for Lack of Personal Jurisdiction.

IEL's arguments above make abundantly clear that there is no personal jurisdiction over IEL in the United States. For that reason alone this request for a stay should be granted. *See In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126, 2013 WL 1907738, at *5

(S.D.N.Y. May 8, 2013) (primary consideration for court on motion to stay discovery is strength of dispositive motion). A discovery stay is also warranted here because: (a) the stay would be for a limited time because IEL's Motion to Dismiss will be fully briefed by August 16, 2016; (b) Laydon will not be unduly prejudiced by a stay that will impact discovery (if at all) from IEL because discovery will move forward with the defendants who are concurrently answering the TAC; and (c) adjudication of IEL's Motion to Dismiss "might avoid the need for costly and time-consuming discovery." *Id.* at *7 (staying discovery pending outcome of motion to dismiss amended complaint where "plaintiffs failed to demonstrate that a short delay in discovery w[ould] impose any unfair prejudice on them"); *see also Gandler v. Nazarov*, No. 94-CV-2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec 14, 1994) (staying discovery pending outcome of motion to dismiss for lack of personal jurisdiction). Indeed, the Court's prior decisions in this action reflect a recognition that stays of discovery are appropriate during the pendency of motions to dismiss. *See* ECF No. 362 (Aug. 18, 2014) (denying Plaintiff's request for jurisdictional discovery prior to responding to the moving defendants' motions to dismiss and staying all discovery); *see also Laydon* PJ Op. (deciding motions to stay discovery concurrently with decisions on personal jurisdiction). Similarly, Judge Pitman has stayed all discovery pending the outcome of Rule 12(b) motions in *Sonterra*. *See* No. 15-CV-5844 (S.D.N.Y. Oct. 23, 2015) (ECF No. 85). Here, it is clear that ICAP's Motion raises substantial grounds for dismissal, and if granted, would end the case for IEL and eliminate the need for it to engage in costly and time-consuming merits discovery.

    Plaintiff, moreover, is not entitled to jurisdictional discovery because he has failed to make the *prima facie* showing that is necessary before he can take such discovery. *See Laydon* PJ Op. at *7 (finding alleged facts in Complaint provided "no basis to believe Plaintiff would

find any of the information that he seeks through jurisdictional discovery"); *see generally USD LIBOR*, No. 11-MD-2262 (S.D.N.Y. Apr. 29, 2016) (ECF No. 1396) (analyzing and denying request for jurisdictional discovery, and holding that plaintiffs failed to plead any facts alleging that IEL engaged in suit-related conduct in or directed towards the United States); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (district court did not err in denying discovery where Plaintiff failed to establish a *prima facie* case for personal jurisdiction); *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction."). For these reasons, the Court should deny any request for discovery as to IEL until after this Motion has been decided.

## CONCLUSION

For the foregoing reasons, Defendant ICAP Europe Ltd. respectfully requests that this Court dismiss Plaintiff's claims against it with prejudice for lack of personal jurisdiction, stay all discovery regarding IEL during the pendency of this Motion, and deny any request for jurisdictional discovery.

Dated: May 16, 2016
      New York, New York

**RICHARDS KIBBE & ORBE LLP**

By: /s/ Brian S. Fraser
    Brian S. Fraser (*bfraser@rkollp.com*)
    Shari A. Brandt (*sbrandt@rkollp.com*)
    H. Rowan Gaither (*rgaither@rkollp.com*)
    Robyn H. Frumkin (*rfrumkin@rkollp.com*)
    200 Liberty Street
    New York, NY  10281-1003
    Telephone: 212.530.1800
    Facsimile: 212.530.1801

*Attorneys for Defendant ICAP Europe Limited*