UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>MIZUHO BANK, LTD., *et al.*,<br><br>Defendants. | No. 12-cv-3419 (GBD)<br><br>ECF CASE<br><br><u>Oral Argument Requested</u> |

# TULLETT PREBON PLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL <u>JURISDICTION AND FOR A STAY OF DISCOVERY</u>

SCHULTE ROTH & ZABEL LLP

Harry S. Davis
Brian T. Kohn
Andrew D. Gladstein
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Defendant Tullett Prebon plc*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

I.   THE COURT LACKS GENERAL JURISDICTION OVER TULLETT. ......................... 5

    A.   Tullett Is Not "At Home" in the United States. ....................................................... 5

    B.   The Existence of Subsidiaries in the U.S. Does Not Subject Tullett to This Court's Jurisdiction. ................................................................................................ 6

        1.   Plaintiff Misrepresents Tullett's Statements in the New Jersey Action. ..... 6

        2.   Plaintiff Has Failed to Satisfy the Second Circuit's Alter Ego Test. .......... 8

II.  THE COURT LACKS SPECIFIC JURISDICTION OVER TULLETT. ......................... 11

    A.   The Complaint's Allegations Regarding a Broker's Trips to Las Vegas Are Jurisdictionally Irrelevant. ..................................................................................... 12

    B.   Plaintiff's Allegations Regarding Wash Trades and Instant Messages Have No Bearing on the Jurisdictional Analysis. ........................................................... 14

III. PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED AND DISCOVERY FROM TULLETT SHOULD BE STAYED. ................... 15

CONCLUSION ........................................................................................................................ 16

i

Case 1:12-cv-03419-GBD-HBP   Document 615   Filed 05/16/16   Page 3 of 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................13

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015) .........................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................... 12, 13, 14-15

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) .................................................................................13-14

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) .......................................................................................... 2, 5, 6, 11

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
  13 Civ. 7789 (LGS), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .........................2

*Gandler v. Nazarov*,
  No. 94 Civ. 2272 (CSH), 1994 WL 702004 (S.D.N.Y. Dec, 14, 1994)...................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................................................5, 6

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ......................................................................................5

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
  297 F.R.D. 69 (S.D.N.Y. 2013) .................................................................................15-16

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ..................................................................................................12

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ...................................................................................... 4, 5, 9, 15

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ..................................................................................................6

*Klinghoffer v. S.N.C. Achille Lauro*,
  937 F.2d 44 (2d Cir. 1991) ........................................................................................11

*Laydon v. Mizuho Bank, Ltd.*,
 No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ....................... *passim*

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
 No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ............................... 13

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
 No. 11 MDL 2262 NRB, 2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) ............................ 1-2

*In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*,
 959 F. Supp. 2d 476 (S.D.N.Y. 2013) .................................................................................5

*NewLead Holdings Ltd v. Ironridge Global IV Ltd.*,
 No. 14cv3945, 2014 WL 2619588 (S.D.N.Y. June 11, 2014) ................................................9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
 609 F.3d 30 (2d Cir. 2010) ..................................................................................................4

*Reers v. Deutsche Bahn AG¸*
 320 F.Supp.2d 140 (S.D.N.Y. 2004) ....................................................................................9

*Robinson v. Overseas Military Sales Corp.*,
 21 F.3d 502 (2d Cir. 1994) ............................................................................................. 4-5

*In re Terrorist Attacks on September 11, 2001*,
 714 F.3d 659 (2d Cir. 2013) ......................................................................................... 4, 12

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ...............................................................................................................2

*Volkswagenwerk AG v. Beech Aircraft Corp.*,
 751 F.2d 117 (2d Cir. 1984) ...................................................................................... 7, 8, 10

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014) ...................................................................................... 6, 11, 13-14

*Wilder v. News Corp.*,
 No. 11 Civ. 4947(PGG), 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ...................................9

*Williamson v. Verizon Commc'ns Inc.*,
 No. 11 CIV. 4948 (LTS)(HBP), 2013 WL 227691 (S.D.N.Y. Jan. 22, 2013) ......................10

**Statutes & Rules**

FED. R. CIV. P. 12(b)(2) .................................................................................................... 1, 16

Defendant Tullett Prebon plc ("Tullett") respectfully submits this Memorandum of Law in support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) all claims brought against it in the Amended Class Action Complaint (the "Complaint") by plaintiff Jeffrey Laydon and to Stay Discovery as to Tullett.

## PRELIMINARY STATEMENT

This Court has already ruled in *this* case that a foreign holding company with no direct ties to the United States that engaged in no suit-related conduct could not be subject to personal jurisdiction. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 GBD, 2015 WL 1515358, at *5 (S.D.N.Y. Mar. 31, 2015) (dismissing ICAP plc ("ICAP") from a prior complaint). That holding should be dispositive of Plaintiff's claim of jurisdiction over Tullett.

As Plaintiff concedes in the Complaint, Tullett, like ICAP, is incorporated in the United Kingdom and has its principal place of business in London. As a foreign holding company, Tullett—again, just like ICAP—has no offices or employees in the United States, conducts no business here and has no non-executive employees and, therefore, could not provide any brokering or trading services anywhere in the world (let alone in the United States). Thus, just as the Court held with respect to ICAP, Plaintiff could never establish that Tullett is "at home" in New York (or, for that matter, anywhere in the United States), which would be necessary for Plaintiff to establish that Tullett is subject to the general jurisdiction of this Court. Nor could Plaintiff ever establish that Tullett is subject to this Court's specific jurisdiction, as Tullett—a holding company with no brokerage or trading activities—could not possibly have played any role in the manipulation alleged in the Complaint.

Indeed, just last month, Judge Buchwald held—after Tullett provided the court with the same analysis it does here—that plaintiffs pursuing claims relating to the alleged manipulation of U.S. Dollar LIBOR had failed to allege a *prima facie* case of personal

jurisdiction over Tullett. *See in re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 1558504, at *5-7 (S.D.N.Y. Apr. 15, 2016) (denying leave to amend to assert claims against Tullett because the court lacks personal jurisdiction over Tullett). Nothing in the Complaint here supports a different result.[1]

Nevertheless, Plaintiff attempts to circumvent the infirmity of his jurisdictional allegations by asserting that Tullett is the alter ego of two of its U.S. subsidiaries, neither of which is alleged to have engaged in *any* suit-related conduct. The Court is familiar with this argument, as these allegations were adopted verbatim from the complaint in *Sonterra Capital Master Fund Ltd. et al. v. UBS, AG, et al.*, No. 1:15-cv-5844-GBD ("*Sonterra*"), a related case brought by the same counsel in which Tullett's motion to dismiss for lack of personal jurisdiction (which makes the very same arguments asserted here) is *sub judice*. Like the *Sonterra* plaintiffs, Plaintiff here has misrepresented statements Tullett made six years ago in an unrelated civil RICO action Tullett brought in the District of New Jersey (the "New Jersey Action"), and, based on those misrepresentations, leaps to the baseless conclusion that Tullett is subject to general jurisdiction on an alter ego theory. But, as set forth below, even if the Court were to assume that an alter ego theory of general jurisdiction is constitutionally permissible following the U.S. Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)—and it is not—Plaintiff has not even come close to adequately alleging any of the four

---

[1] In addition, a recent decision by Judge Schofield in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* further demonstrates why Tullett's motion to dismiss must be granted. There, the Court granted the motion to dismiss for lack of personal jurisdiction of the one moving defendant that—like Tullett—does not operate or maintain offices in the United States, has no employees in the U.S., and does not participate in any trading activities. *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 13 Civ. 7789 (LGS), 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

prongs of the Second Circuit's well-settled alter ego test and, therefore, there is no basis for subjecting Tullett to general jurisdiction.[2]

## STATEMENT OF FACTS

Tullett is a holding company incorporated in England and Wales, its principal place of business is in London, and its shares are traded on the London Stock Exchange. (Declaration of Philip Price ("Price Decl.") ¶¶ 3-4, 6; *see also* Compl. ¶¶ 85, 87.) Tullett has no offices in New York or anywhere else in the United States, conducts no business other than holding the stock of its subsidiary entities, employs no brokers or any other non-executive employees of any type (and even its executive officers are all based in London, not the United States), and participates in no trading or brokering of any kind. (Price Decl. ¶¶ 5, 7.) Tullett has wholly owned subsidiaries in several countries, including the United States, that do business in the interdealer brokerage industry. (*Id.* ¶ 9.) As interdealer brokers, those companies facilitate the trading activity of their customers, which are generally primary dealers, banks, and other large financial institutions. (Price Decl. ¶ 9.)

Neither Tullett nor any of its subsidiaries has ever been a panel bank authorized by the British Bankers' Association ("BBA") or the Japan Bankers Association ("JBA") to submit quotes for the calculation of LIBOR. (*Id.* ¶ 10.) Because Tullett has no non-executive employees and engages in no trading or brokering anywhere in the world, none of its employees could have engaged in any communications or submissions that allegedly were part of the purported manipulation of LIBOR. (*Id.* ¶ 7; *see, e.g.*, Compl. ¶¶ 23-25.) To the extent that Plaintiff alleges that interdealer brokers at some Tullett-affiliated entity that is not a party to this

---

[2] The *Sonterra* plaintiffs completely ignored all of these arguments during briefing and oral argument on motions to dismiss that case. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, *Sonterra Capital Master Fund Ltd. et al. v. UBS, AG, et al.*, No. 1:15-cv-5844-GBD [ECF No. 209] ("*Sonterra* Opp. Br.").

action engaged in any such communications, those acts would have occurred in London, not in the United States. (*See* Price Decl. ¶¶ 8-9.) Moreover, neither Tullett nor any of its subsidiaries has ever entered into contracts of any kind with Plaintiff. (*Id.* ¶ 11.)

Plaintiff alleges that the so-called Broker Defendants—a purposefully vague, collective descriptor that Plaintiff uses to lump together various interdealer brokers, including Tullett—"are subject to personal jurisdiction because they furthered Defendants' manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives from within the United States." (Compl. ¶ 109.) The only factual allegation ostensibly in support of this conclusion is contained in paragraph 109 of the Complaint, which asserts that an RBS trader allegedly spent weekends in Las Vegas with "Tullett Prebon's brokers, including Mark Jones." However, neither Mr. Jones nor the other broker the Complaint alleges worked for Tullett (Noel Cryan) did, in fact, work for Tullett and, in any event, both of those brokers worked in London (for subsidiaries of Tullett not named as defendants), not in the U.S. (Price Decl. ¶ 8.)

## ARGUMENT

As Tullett has challenged personal jurisdiction, Plaintiff now bears the burden of establishing it. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). On a motion to dismiss for lack of personal jurisdiction, a complaint must be dismissed unless the plaintiff can show that he has made out a *prima facie* showing that personal jurisdiction exists by "pleading in good faith … legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotations omitted).

In determining whether a plaintiff has met this burden, a Court must take as true the allegations in a complaint only "to the extent they are uncontroverted by the defendant's affidavits." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citations omitted). Moreover, a court should not "draw argumentative inferences in the

4

plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks omitted), nor "accept as true a legal conclusion couched as a factual allegation," *Jazini*, 148 F.3d at 185 (internal quotation marks omitted).

## I.  THE COURT LACKS GENERAL JURISDICTION OVER TULLETT.

### A.  Tullett Is Not "At Home" in the United States.

The law is well-settled that a foreign corporation cannot be subject to general jurisdiction unless it has "affiliations with the State [that] are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted). Applying that standard, the Second Circuit has repeatedly emphasized that "a corporation is at home (and, thus, subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).

Plaintiff acknowledges, as he must, that Tullett is not "at home" in New York or anywhere else in the United States, as the Complaint alleges that Tullett is "a United Kingdom public company headquartered in London." (Compl. ¶ 87.) That concession should resolve the general jurisdiction inquiry.[3] *See Daimler*, 134 S. Ct. at 761; *see also In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 492 (S.D.N.Y. 2013) (exercise of personal jurisdiction over foreign non-operating holding company does not satisfy due process).

---

[3] Not only is Tullett incorporated in England and Wales with a principal place of business in London, but it also has no offices or employees in the United States and conducts no business here. (Price Decl. ¶¶ 3-5.) As such, this case could not possibly present the "exceptional" circumstances the Supreme Court posited could provide a jurisdictional nexus, which exists only where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19.

## B. The Existence of Subsidiaries in the U.S. Does Not Subject Tullett to This Court's Jurisdiction.

Nevertheless, Plaintiff alleges in conclusory fashion that this Court has general jurisdiction over Tullett based on the existence of two U.S. subsidiaries, which Plaintiff claims are Tullett's alter ego (but does not claim had anything to do with the alleged conduct underlying this case).[4] These allegations do not change the general jurisdiction analysis, as the Supreme Court has made clear that a plaintiff must plead far more than the mere existence of U.S. subsidiaries to invoke U.S. jurisdiction. *See Daimler*, 134 S. Ct. at 761-62 ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal citations omitted).

### 1. Plaintiff Misrepresents Tullett's Statements in the New Jersey Action.

Although the Complaint contains *no* allegations actually supporting the erroneous conclusion that Tullett's U.S. subsidiaries are its alter ego, Plaintiff offers a fanciful theory of jurisdiction by misrepresenting purported "admissions" Tullett made in the New Jersey Action.

---

[4] Following the Supreme Court's decisions in *Daimler*, *Goodyear*, and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), Plaintiff's "alter ego" theory of general jurisdiction is not constitutionally permissible. In *Daimler*, plaintiffs sought to impose general jurisdiction on a foreign corporation based upon the contacts of its subsidiary in the forum. The Supreme Court rejected that attempt, concluding that doing so would subject corporations to general jurisdiction everywhere that one of its subsidiaries does a non-trivial amount of business, a result the Court found constitutionally impermissible. *Daimler AG*, 134 S. Ct. at 761. *Walden* emphasized that in the context of specific jurisdiction, courts must focus exclusively on "'the relationship among the defendant, the forum, and the litigation'" and that personal jurisdiction may not be created by the plaintiff or some third party. *Walden*, 134 S. Ct. at 1118 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Taken together, these cases stand for the proposition that courts may not constitutionally subject a person or entity to personal jurisdiction—whether general or specific—based upon the jurisdictional contacts of another entity, even a subsidiary or affiliate. Even though the issue of whether a parent corporation may be subjected to general jurisdiction based upon the contacts of its subsidiary arose in *Daimler* under an "agency theory" of jurisdiction rather than an "alter ego" or "mere department" theory of general jurisdiction, nothing in the Supreme Court's decision suggests that the result would differ based upon the label attached to an impermissible effort to impose jurisdiction on one company based upon the contacts of a subsidiary or affiliate. The Court need not reach this constitutional question here because, as demonstrated below, even assuming that an "alter ego" theory of general jurisdiction survives *Daimler*, Plaintiff does not come close to establishing that Tullett's subsidiaries are Tullett's alter ego, nor would any such conclusion change the result that Tullett would not be subject to general jurisdiction in New York even if the corporate separateness between it and its subsidiaries could be ignored.

That action arose out of a competitor's effort to cripple Tullett's worldwide business in a corporate raid that Tullett alleged violated New Jersey's RICO statute. After that competitor argued in a motion to dismiss that Tullett lacked standing to assert the RICO claims because it purportedly had alleged no harm to Tullett that was not derivative of injuries suffered by its domestic subsidiaries, Tullett opposed the motion by explaining how the injuries alleged in *that* action—a dramatic decline in Tullett's own stock price and market capitalization—were suffered only by Tullett and that, therefore, Tullett was "the real party in interest."[5] (*Id.* at 10.) Tullett also explained that it was "not attempting to assert contractual rights or any other right belonging to [its subsidiaries], but rather, it [was] seeking to recover for damage done to it." (*Id.* at 14.)

Ignoring the plain language and context of Tullett's opposition brief in the New Jersey Action, Plaintiff has cherry picked a few statements from it and misrepresented them to this Court in a woefully inadequate attempt to plead that Tullett's domestic subsidiaries are its alter ego. Plaintiffs in *Sonterra*—based on the same allegations and represented by the same counsel—argued that those statements show that Tullett had attempted "to establish standing and recover damages for the parent company relating to harm directed at [its] U.S. subsidiaries" and, without more, that this somehow establishes each of the so-called *Beech Aircraft* factors, which courts in the Second Circuit apply when conducting an alter ego analysis.[6] It does no such thing, a point the *Sonterra* plaintiffs made clear by completely ignoring this point when this precise issue was briefed and argued in that case. Tullett simply never sought to recover for harm done

---

[5] Tullett did not argue in the New Jersey Brief, as Plaintiff suggests, that its subsidiaries were not also injured by the conduct of Tullett's competitor. In fact, Tullett expressly explained that two of its U.S. subsidiaries also suffered their own distinct damages as a result of misconduct by a subsidiary of the competitor and were pursuing their own claims through a FINRA arbitration. *See Tullett Prebon plc v. BGC Partners, Inc.*, No. 09-cv-05365, Tullett's Memorandum of Law in Opposition to Defendant BGC Partners, Inc.'s Motion to Dismiss and Motion to Stay, ECF No. 39, at 9-10 (D.N.J. Mar. 10, 2010) ("New Jersey Brief"), a copy of which is attached as Exhibit 1 to the Declaration of Brian T. Kohn, submitted herewith.

[6] *See Sonterra* Opp. Br. at 36.

7

to its subsidiaries. Rather, it sought to recover for separate and unique harm that was done to Tullett itself, something this Court can plainly see by reviewing Tullett's opposition brief in the New Jersey Action upon which Plaintiff bases his argument here. Tullett never once argued in the New Jersey Action that it could or should be able to recover harm done to its subsidiaries nor did it ever evince any effort to ignore the corporate separateness between Tullett and its U.S. subsidiaries. Quite the contrary, the fact that the Tullett's U.S. subsidiaries pursued their own FINRA arbitration to recover for damages done to them while Tullett pursued a separate action against its competitor for the separate, unique harm done to it, demonstrates that Tullett scrupulously respects the corporate separateness between Tullett and its subsidiaries.

### 2. Plaintiff Has Failed to Satisfy the Second Circuit's Alter Ego Test.

Ignoring the indisputable, Plaintiff erroneously claims that by seeking to recover for damages to its U.S. subsidiaries in the New Jersey Action—something Tullett indisputably did *not* do—Tullett effectively has conceded that those subsidiaries are its alter ego. But none of Tullett's statements from the New Jersey Action have any bearing on the alter ego analysis.

In fact, all Plaintiff has alleged regarding Tullett's domestic subsidiaries is their mere existence, an allegation that is plainly insufficient to satisfy the four-part *Beech Aircraft* test: (i) whether there exists common ownership and the presence of an interlocking directorate and executive staff; (ii) the degree of financial dependency of the subsidiary on the parent; (iii) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (iv) the degree of the parent's control of the subsidiary's marketing and operational policies. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir.1984). The Complaint is devoid of the types of allegations necessary to satisfy these factors.

<u>Factor One</u>:  Allegations of common ownership—without more—are insufficient to establish alter ego for jurisdictional purposes.  *See NewLead Holdings Ltd v. Ironridge Global IV Ltd.*, No. 14cv3945, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014) (citing *Jazini*, 148 F.3d at 185-86, and finding no general jurisdiction based on alter ego where plaintiff had demonstrated common ownership but there was no evidence as to the remaining factors).

<u>Factor Two</u>:  A plaintiff must allege sufficient facts to demonstrate that the subsidiary is financially dependent on the parent.  In *Sonterra*, plaintiffs argued that because Tullett "called itself the only party that has standing to recover for certain economic injuries to its subsidiary" in the New Jersey Action, the complaint there adequately alleged that "the two companies' accounts have been intermingled to such a degree that shareholders see them as one entity."  (*Sonterra* Opp. Br. at 36.)  Once again, Tullett never sought to recover for injuries allegedly suffered by its subsidiary in the New Jersey Action.  But even if Tullett had done so, that still would be irrelevant to the analysis, which requires "not merely that the parent ha[s] some control over the finances of the subsidiary, but that the subsidiary would not be able to function without the financial support of the parent."  *Reers v. Deutsche Bahn AG¸* 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) (citations omitted).  The Complaint contains not a single allegation with respect to Tullett concerning financial dependence.

<u>Factor Three</u>:  Next, courts consider whether the allegations demonstrate that a corporate parent's control over its subsidiary's "executives and other personnel is so pervasive as to warrant a finding that the corporate form was disregarded."  *Wilder v. News Corp.*, No. 11 Civ. 4947(PGG), 2015 WL 5853763, at *9 (S.D.N.Y. Oct. 7, 2015).  Once again, the Complaint does not contain a single relevant allegation.  Rather, in *Sonterra*, plaintiffs puzzlingly argued that the corporate formalities factor is somehow satisfied by Tullett's purported "admission" in

9

the New Jersey Action that it was the "real party in interest" in that case. (*Sonterra* Opp. Br. at 36-37.) But far from showing a disregard for the separate corporate existence of its subsidiary, the fact that Tullett was seeking to recover in the New Jersey Action for injuries suffered only by it—and that the subsidiaries were pursuing their own FINRA arbitration to recover their own independent damages—plainly demonstrates respect for the corporate form.

Factor Four: Finally, the *Sonterra* plaintiffs argued that the parent's control of the subsidiary's marketing and operational policies factor is satisfied by Tullett's statement in the New Jersey Action that "all of [Tullett's] North American operations are headquartered and based in New Jersey." (*Id.* at 37.) According to the *Sonterra* plaintiffs—again, represented by the same counsel representing Plaintiff here—this statement transforms Tullett's domestic subsidiaries into "mere departments" of Tullett. (*Id.*) That is a non-sequitur. Once again, the Complaint makes not a single allegation suggesting Tullett exercised *any* control over the marketing and operational policies of its U.S. subsidiaries, and the lack of any such allegations ends the inquiry. *See Williamson v. Verizon Commc'ns Inc.*, No. 11 Civ. 4948(LTS)(HBP), 2013 WL 227691, at *3 (S.D.N.Y. Jan. 22, 2013) (even detailed allegations regarding parent's control over subsidiaries' policies "insufficient" to satisfy *Beech Aircraft*).

Indeed, this Court previously has rejected similarly lacking alter ego jurisdictional allegations in this case. *See Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419(GBD), 2015 WL 1515358, at *4-5 (S.D.N.Y. Mar. 31, 2015) (no jurisdiction over U.K. holding company on alter ego theory where allegations did not "belie the presumption of corporate separateness or satisfy the considerations outlined in *Volkswagenwerk AG*").[7]

---

[7] Moreover, even if Tullett had sought to recover in the New Jersey Action for damages to its subsidiaries—which it did not—that would have no bearing on whether jurisdiction exists over Tullett in this Court in connection with the specific claims asserted in the Complaint. *See Laydon*, 2015 WL 1515358, at *5 n.10 (finding that plaintiff's argument that another foreign holding company conceded it was subject to jurisdiction in New Jersey in an unrelated

## II.  THE COURT LACKS SPECIFIC JURISDICTION OVER TULLETT.

Nor has Plaintiff come close to making the necessary prima facie showing that Tullett is subject to specific jurisdiction, which could be the case only if (i) Tullett's "suit-related conduct" created "a substantial connection" with the forum, (ii) that connection arose out of contacts Tullett itself created with the forum, and (iii) those contacts must be "with the forum State itself," not Tullett's "contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014).  The Complaint does not come close to making such a case.

Here, as a holding company with no employees or offices in the United States and which participates in no trading or brokering activities anywhere in the world, Tullett could not have engaged in any "suit-related conduct" and, therefore, has no connection with the forum, let alone the "substantial" one necessary to establish specific jurisdiction.  (Price Decl. ¶¶ 7-10.) Indeed, in defending the jurisdictional allegations in *Sonterra*—which, with respect to Tullett, are identical to the allegations here—Plaintiff's counsel did not so much as argue once that Tullett was subject to specific jurisdiction aside from impermissibly grouping Tullett with all

---

case did not "factor into the personal jurisdiction analysis … because '[a] party's consent to jurisdiction in one case … extends to that case alone'") (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) (alterations in original)).  And even if Plaintiff could pretend that the facts and law are otherwise and use his constitutionally impermissible alter ego theory based upon his obvious misrepresentations of Tullett's brief in the New Jersey Action to ignore corporate formalities (which he cannot), that would not subject Tullett to the general jurisdiction of this court.  Ignoring the corporate separateness between Tullett and its subsidiaries would not change the fact that Tullett is incorporated and maintains its principal place of business in the U.K.  Thus, all Plaintiff would do is establish that Tullett does a non-trivial amount of business in New York and New Jersey.  But as *Daimler* teaches, the Court would still have to assess whether Tullett is "at home" in the forum based upon an evaluation of Tullett's "activities in their entirety, nationwide and worldwide," not just that hypothetical set of facts focusing only on whether Tullett does a non-trivial amount of business—completely unconnected to the allegations of manipulation—in the forum.  *See Daimler AG*, 134 S. Ct. at 762 n.20.  Yet Plaintiff has made no showing that Tullett's presence in the forum—even if one were to ignore the corporate separateness between Tullett and its subsidiaries—is so pervasive, particularly when compared to the worldwide operations of all of its subsidiaries, as to render it "at home" in this jurisdiction.

defendants in attempting to ascribe all of the Complaint's allegations to all of the defendants for jurisdictional purposes.[8] Accordingly, specific jurisdiction over Tullett does not exist.

### A. The Complaint's Allegations Regarding a Broker's Trips to Las Vegas Are Jurisdictionally Irrelevant.

The sole paragraph in the 428-page Complaint (which contains 981 paragraphs) that appears aimed at establishing specific jurisdiction over Tullett alleges that "Tullett Prebon's brokers, including Mark Jones … conspired with [RBS trader Neil] Danziger in Las Vegas, spending long weekends there and planning their manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives." (Compl. ¶ 109.) As an initial matter, this allegation is false—Tullett has never employed Mr. Jones or any other broker. (Price Decl. ¶¶ 7-8.) But even if the court were required to accept this allegation as true (and it does not given Tullett's declaration to the contrary, *see In re Terrorist Attacks*, 714 F.3d at 673), it would be insufficient to establish specific jurisdiction over Tullett.

In determining whether a defendant's activities created "a substantial connection" with the forum, a court must decide if the defendant has "purposefully directed his activities at … the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotations omitted). Accordingly, a defendant cannot be "haled into a jurisdiction solely as a

---

[8] Plaintiff contends that the Court can exercise specific personal jurisdiction over all the defendants because they supposedly conspired with defendants that committed tortious acts in the forum. (Compl. ¶ 117.) This Court has already recognized in this case that any theory of conspiracy jurisdiction is suspect, and that, even assuming that it is a valid theory of jurisdiction, a "'plaintiff must make a prima facie showing of conspiracy, allege specific facts warranting an inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in the forum.'" *Laydon*, 2015 WL 1515358, at *3 n.6 (quoting *In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (internal brackets omitted)); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) ("Nor does the Court find that the assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction subject only to the constraints of due process."). Here, Plaintiff does not come close to making the requisite showing as to Tullett, as the Complaint does not reference any communications or conduct of Tullett or its employees (as participants of the conspiracy in New York or otherwise).

result of 'random,' 'fortuitous,' or 'attenuated' contacts." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 905 (2011) (quoting *Burger King*, 471 U.S. at 475). For that reason, courts in this circuit typically find specific jurisdiction on the basis of a defendant's limited contacts with the forum only in cases that "have involved no less than a 'but for' connection between the defendant's forum-directed activities and the claim." *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015).

Here, Plaintiff attempts to meet his burden with only the unfounded conclusion that Tullett brokers "conspired" to manipulate the benchmarks with an RBS trader during long weekends in Las Vegas. (Compl. ¶ 109.) But those alleged weekends—assuming the brokers even worked for Tullett (and Tullett has conclusively demonstrated that they did not)—are precisely the type of fortuitous contacts the Supreme Court repeatedly has held cannot support an exercise of specific jurisdiction over a defendant. *See, e.g.*, *Burger King*, 471 U.S. at 475.

Indeed, far from being "purposefully directed" at the forum, the alleged trips to Las Vegas just as easily could have occurred anywhere else in the world. *Id.* at 472. In fact, Plaintiff's only source for his wildly exaggerated allegation—a *Wall Street Journal* article—notes that Las Vegas was one of several destinations for client entertainment, which also included "the Alps and Saint-Tropez," and that client entertainment was "even more prevalent in London."[9] Nothing in the article (or, for that matter, the Complaint), suggests that Tullett's

---

[9] What is more, although the *Wall Street Journal* article contains no discussion whatsoever regarding what occurred on those alleged trips to Las Vegas, Plaintiff nevertheless concludes—citing only to that article—that, while in Las Vegas, the alleged Tullett brokers and Danziger spent their time "planning their manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives." (*Id.* ¶ 109.) The article—a copy of which is attached as Exhibit 2 to the Declaration of Brian T. Kohn, submitted herewith—says nothing of the sort and Plaintiff's conjecture that that must have been what happened during the trips is precisely the type of speculation that the Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Instead, the article presents the trips and other entertainment simply as rewards provided by interdealer brokers to the traders for business they generated for the brokers—a fact Plaintiff readily acknowledges later in the Complaint. (*See id.* ¶ 442 ("Danziger … knew that the more commission he generated for Tullett Prebon, the more they would be willing to spend entertaining him.").) The Court should reject Plaintiff's

13

purported "conduct connects [it] to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. As the alleged Las Vegas trips are jurisdictionally irrelevant here, Plaintiff has failed to meet his burden of making out a *prima facie* showing of specific jurisdiction over Tullett.

### B. Plaintiff's Allegations Regarding Wash Trades and Instant Messages Have No Bearing on the Jurisdictional Analysis.

Plaintiff also alleges that Tullett brokers solicited "wash trades" from their clients in order to boost profitability, citing to a handful of Bloomberg messages between two brokers the Complaint erroneously identifies as Tullett employees and two non-U.S. traders. (*See, e.g.*, Compl. ¶¶ 497-500.) According to Plaintiff, once these wash trades became an established practice, they were used by traders "as a means to pay [Tullett broker Noel] Cryan illicit brokerage in exchange for his assistance in coordinating false Yen-LIBOR submissions among Contributor Bank Defendants." (Compl. ¶ 501.)

Putting aside the fact that this allegation is factually impossible because Tullett has never employed any brokers who could have generated commissions and the two brokers who are identified in the Complaint (Noel Cryan and Mark Jones) *never* worked for Tullett *and* instead were based in London (working for Tullett's U.K. subsidiaries) (Price Decl. ¶¶ 7-8), the Complaint does not allege that any of the traders or purported Tullett brokers coordinated the trades or sent or received instant messages within the United States. In sum, Plaintiff has not made a single allegation that by allegedly participating in the wash trades or the related instant messages, Tullett has "purposely directed [its] activities at … the forum" or that "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King,* 471 U.S.

---

efforts to establish jurisdiction over Tullett through conjecture and conclusory allegations. *See, e.g.*, *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.").

at 472 (internal quotations omitted).[10] Accordingly, Plaintiff cannot rely on the wash trades or instant messages to make the necessary *prima facie* showing of jurisdiction.

### III. PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED AND DISCOVERY FROM TULLETT SHOULD BE STAYED.

Plaintiff should not be permitted to take jurisdictional discovery from Tullett and all discovery with regard to Tullett should be stayed. Plaintiff is not entitled to jurisdictional discovery where the Complaint fails to make a single allegation that implicates any conduct on the part of Tullett in the forum, let alone a prima facie case for jurisdiction. *See Laydon v. Mizhuo Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *7 (S.D.N.Y. Mar. 31, 2015) (denying request for jurisdictional discovery where the Court found "no basis to believe Plaintiff would find any of the information that he seeks through jurisdictional discovery"); *see also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) (no error where district court denied request for jurisdictional discovery where complaint failed to make out a prima facie case of jurisdiction).

Indeed, the Court should stay *all* discovery of Tullett—including but not limited to jurisdictional discovery—prior to the resolution of this motion. This Court previously has stayed discovery and denied requests for jurisdictional discovery in this case with respect to other defendants while their dispositive motions were pending (*see* Order, August 18, 2014 [ECF No. 362]), and there is no reason for a different outcome here. In considering whether to grant a stay of discovery during the pendency of a motion to dismiss, courts consider (i) the scope of discovery sought, (ii) any prejudice that would result, and (iii) the strength of the motion. *See Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y.

---

[10] To the extent Plaintiff argues that merely by communicating over Bloomberg, Tullett's computers made electronic connections to the United States sufficient to support a finding of specific jurisdiction, this Court already has rejected that argument. *See Laydon*, 2015 WL 1515358, at *3 (finding "no basis to conclude" that defendants who "passively connect[ed] to the United States" via Bloomberg "took actions 'expressly aimed' at the United States").

15

2013) (granting request for stay of discovery); *see also Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (staying discovery pending resolution of motion to dismiss for lack of personal jurisdiction where motion was "potentially dispositive" and "appear[ed] to be not unfounded in the law").

      Here, Tullett's motion is plainly dispositive of the case against it and, for all of the reasons set forth above (most notably, that Plaintiff has failed to make a single allegation supporting the assertion of jurisdiction over Tullett), should be granted. Accordingly, "because the adjudication of the pending motion to dismiss might avoid the need for costly and time-consuming discovery" that would unfairly burden Tullett, all discovery should be stayed against Tullett pending the resolution of this motion. *Gandler*, 1994 WL 702004, at *4.

## CONCLUSION

      For all of the foregoing reasons, Tullett respectfully requests that the Court: (i) grant Tullett's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and dismiss with prejudice all claims asserted against Tullett; and (ii) stay all discovery against Tullett.

Dated: New York, New York  
       May 16, 2016

SCHULTE ROTH & ZABEL LLP

By: /s/ Harry S. Davis  
    Harry S. Davis  
    Brian T. Kohn  
    Andrew D. Gladstein

919 Third Avenue  
New York, New York 10022  
(212) 756-2000

*Attorneys for Defendant Tullett Prebon plc*