# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
JEFFREY LAYDON, on behalf of himself and all  :
others similarly situated,                     :
                                               :
                    Plaintiff,                 :      Case No.: 12-cv-3419 (GBD-HBP)
                                               :
              -against-                        :      ECF Case
                                               :
THE BANK OF TOKYO-MITSUBISHI UFJ,              :      **ORAL ARGUMENT REQUESTED**
LTD., THE SUMITOMO TRUST AND                   :
BANKING CO., LTD., THE NORINCHUKIN             :
BANK, MITSUBISHI UFJ TRUST AND                 :
BANKING CORPORATION, SUMITOMO                  :
MITSUI BANKING CORPORATION, J.P.               :
MORGAN CHASE & CO., J.P. MORGAN                :
CHASE BANK, NATIONAL ASSOCIATION,              :
J.P. MORGAN SECURITIES PLC, MIZUHO             :
CORPORATE BANK, LTD., DEUTSCHE                 :
BANK AG, THE SHOKO CHUKIN BANK,                :
LTD., SHINKIN CENTRAL BANK, UBS AG,            :
UBS SECURITIES JAPAN CO. LTD., THE             :
BANK OF YOKOHAMA, LTD., SOCIÉTÉ                :
GÉNÉRALE SA, THE ROYAL BANK OF                 :
SCOTLAND GROUP PLC, THE ROYAL BANK :
OF SCOTLAND PLC, RBS SECURITIES                :
JAPAN LIMITED, BARCLAYS BANK PLC,              :
CITIBANK, NA, CITIGROUP, INC.,                 :
CITIBANK, JAPAN LTD., CITIGROUP                :
GLOBAL MARKETS JAPAN, INC.,                    :
COÖPERATIEVE CENTRALE RAIFFEISEN-              :
BOERENLEENBANK B.A., HSBC HOLDINGS :
PLC, HSBC BANK PLC, LLOYDS BANKING             :
GROUP PLC, ICAP EUROPE LIMITED, R.P.           :
MARTIN HOLDINGS LIMITED, MARTIN                :
BROKERS (UK) LTD., TULLETT PREBON              :
PLC, AND JOHN DOE NOS. 1-50,                   :
                                               :
                    Defendants.                :
-------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LLOYDS BANKING GROUP PLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR A STAY OF DISCOVERY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

      A.    2012-14:  Plaintiff Initially Names, and Then Drops, LBG as a Defendant; Two of Plaintiff's Claims Against Other Defendants Survive a Motion to Dismiss Under Rules 12(b)(1) and (6)...................... 3

      B.    2015:  The Court Dismisses Four Defendants in *Laydon II*–and, in *Laydon III*, Permits Plaintiff to Amend to Add LBG and Certain Other Defendants. ............................................................................................ 4

      C.    LBG, Lloyds Bank, and Lloyds Bank's Yen-LIBOR Submissions............ 5

      D.    The TAC's Jurisdictional Allegations as to LBG. ..................................... 8

THE APPLICABLE LEGAL STANDARDS ................................................................... 9

ARGUMENT ................................................................................................................. 10

    I.    DUE PROCESS REQUIRES THAT THE THIRD AMENDED COMPLAINT BE DISMISSED AS AGAINST LBG FOR LACK OF PERSONAL JURISDICTION................................................................... 10

      A.    LBG Is Not Subject to General Jurisdiction. ........................................... 10

      B.    LBG Is Not Subject to Specific Jurisdiction........................................... 11

          1.    Introduction............................................................................... 11

          2.    Plaintiff Alleges No Suit-Related U.S. Conduct by LBG, a Holding Company, and Plaintiff Has Failed to Allege a Basis for an "Alter Ego" Theory Against LBG Based on any Conduct by Lloyds Bank......................................................... 12

          3.    Plaintiff's Allegations Would Be Insufficient Even If Lloyds Bank's (Non-U.S.) Conduct Were Attributable to LBG for Jurisdictional Purposes.................................................. 14

              a.    Lloyds Bank's Alleged Suit-Related Conduct Occurred Entirely Outside the United States and Was Not Purposefully Directed or Aimed at the United States. ................................................................. 14

        b.     Allegations That Lloyds Bank Participated in a Conspiracy Are Legally and Factually Insufficient. ......... 18

   C.    Considerations of Fair Play, Substantial Justice, and International Comity Require Dismissal ....................................................................... 19

II.    DISCOVERY AS TO LBG SHOULD BE STAYED PENDING DETERMINATION OF THIS MOTION ........................................................ 20

CONCLUSION ................................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
    No. 13-cv-981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ...............................1, 17

*Asahi Metal Indus. Co. v. Super. Ct.*,
    480 U.S. 102 (1987)..................................................................................................19, 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................................................2

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)...........................................................................................1, 10, 11

*Gandler v. Nazarov*,
    No. 94 Civ. 2272 (CSH), 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ...............................20

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)..............................................................................................11

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
    297 F.R.D. 69 (S.D.N.Y. 2013) ........................................................................................20

*In re Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015)..................................................................................18

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
    74 F. Supp. 3d 581 (S.D.N.Y. 2015)..................................................................................17

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
    No. 13 Civ. 7789 (LGS), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ...............................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    11-md-2262, 2015 WL 6243526
    (S.D.N.Y. Aug. 4, 2015, as amended Oct. 20, 2015)…................................................. passim

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    11-md-2262, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ...........................................1, 15, 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    11-md-2262, 2016 WL 1558504 (S.D.N.Y. Apr. 14, 2016) ........................................1, 17, 18

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)........................................................................................10, 16

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)................................................................9, 10, 13

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 Civ. 3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ..........................4, 6

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .................... passim

*Metro. Life Ins. Co v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)..............................................................................19

*Porina v. Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008)...........................................................................19

*Sonterra Capital Master Fund Ltd. v. UBS, AG*,
  No. 1:15-cv-5844-GBD (S.D.N.Y.).....................................................................5, 9

*Tymoshenko v. Firtash*,
  11–CV–2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)....................................18

*Volkswagenwerk AG v. Beech Aircraft Corp.*,
  751 F.2d 117 (2d Cir. 1984)...........................................................................13

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014).........................................................................12, 14, 18

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).................................................................................17, 19

**RULES**

Fed. R. Civ. P. 12(b)(1) .................................................................................3, 4

Fed. R. Civ. P. 12(b)(2)...................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................3, 4

N.Y. C.P.L.R. § 302(a)(2)..................................................................................18

Lloyds Banking Group plc ("LBG")—which has recently been added as a defendant in the Third Amended Complaint ("TAC") of plaintiff Jeffrey Laydon ("Plaintiff")—respectfully submits this memorandum of law in support of its motion: (i) to dismiss the TAC as against LBG for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure; and (ii) to stay all discovery as to LBG pending the Court's determination of this motion.

## PRELIMINARY STATEMENT

The TAC should be dismissed against LBG, one of three newly added defendants, for lack of personal jurisdiction.  Dismissal is required for much the same reasons that: (a) claims in this action against other foreign banks and bank holding companies that made timely motions to dismiss were previously dismissed for lack of personal jurisdiction, *see Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *4-5 (S.D.N.Y. Mar. 31, 2015) ("*Laydon II*"); and (b) claims against LBG and its subsidiaries in other LIBOR actions in this District were dismissed for lack of personal jurisdiction, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-md-2262, 2015 WL 6243526, at *37 (S.D.N.Y. Aug. 4, 2015, as amended Oct. 20, 2015) (Buchwald, J.) ("*LIBOR IV*") (USD LIBOR multidistrict litigation); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6696407, at *20 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*") (same); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 14, 2016) ("*LIBOR VI*") (same); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13-cv-981 (PGG), 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.) (USD LIBOR individual action).

LBG is a British bank holding company headquartered in the United Kingdom ("UK"). It is plainly not "at home" in New York or the United States, and therefore is not subject to general jurisdiction under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Nor is it subject to specific

jurisdiction here because Plaintiff cannot show that this action arises out of any "suit-related" minimum contacts by LBG with this forum, as required by Supreme Court precedent.  Plaintiff does not allege that LBG itself either committed *any* relevant acts in the United States or purposefully directed *any* relevant conduct at the United States from elsewhere.  Instead, he complains about *foreign* conduct by an employee of an LBG *subsidiary*: that a Yen LIBOR submitter employed by Lloyds Bank plc, formerly known as Lloyds TSB Bank plc ("Lloyds Bank"), a UK-incorporated and headquartered subsidiary of LBG, on certain occasions colluded with employees of another foreign Yen-LIBOR panel bank, when both were outside the United States, to make artificial submissions to the British Bankers Association ("BBA") in London.

Such allegations do not remotely suffice to sustain Plaintiff's burden of "demonstrating that this Court has jurisdiction over" LBG.  *Laydon II*, 2015 WL 1515358, at *1.  *First*, LBG, just like former defendant ICAP plc (which the Court dismissed from this action for lack of personal jurisdiction in *Laydon II*), is a non-operating holding company whose U.S. contacts do not support personal jurisdiction—and just as in *Laydon II*, Plaintiff has failed to allege any facts that would justify personal jurisdiction over LBG on an "alter ego" theory based on the alleged conduct of its subsidiary, Lloyds Bank.  *See id.* at *5.  *Second*, even if the Court were to attribute the conduct of Lloyds Bank to LBG for jurisdictional purposes (despite the absence of any factual or legal basis to do so), Plaintiff pleads no facts showing that Lloyds Bank "'purposefully directed' [its] activities at residents of the forum," much less that "the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted) (quoted in *Laydon II*, 2015 WL 1515358, at *2).  In order to stave off dismissal, Plaintiff must point to facts establishing *both* purposeful direction of LBG's foreign activities at the United States *and* a causal relationship between that conduct and

- 2 -

Plaintiff's claimed injuries.  He has not done, and cannot do, either one.  *Finally*, even if LBG had the requisite "minimum contacts" with the forum, sufficiently tethered to Plaintiff's claims, "a finding of personal jurisdiction under these facts would be improper because it would not comport with notions of fair play and substantial justice."  *Laydon II*, 2015 WL 1515358, at *6. In short, exercising personal jurisdiction over LBG in this case would violate due process.

In addition, discovery as to LBG should be stayed pending determination of LBG's motion to dismiss.  LBG presents a strong jurisdictional motion, grounded in fundamental principles that this Court has already applied in *Laydon II*, which resulted in dismissal of the same claims against similarly situated defendants. And although Plaintiff has long had the benefit of both substantial discovery from other defendants in this action and access to detailed publicly filed documents memorializing LBG's and Lloyds Bank's settlements with American and British authorities, he has still failed to make out a prima facie case of jurisdiction.  It would be unfair to subject LBG to expensive and time-consuming discovery unless and until it has been judicially determined that LBG is properly before the Court—especially when, as demonstrated below, there is no basis to exercise personal jurisdiction over LBG in this case.

## FACTUAL BACKGROUND

A.  **2012-14:  Plaintiff Initially Names, and Then Drops, LBG as a Defendant; Two of Plaintiff's Claims Against Other Defendants Survive a Motion to Dismiss Under Rules 12(b)(1) and (6).**

Plaintiff filed his initial complaint on April 30, 2012 and his Corrected First Amended Class Action Complaint ("FAC") on December 3, 2012.  *See Laydon v. Mizuho Bank, Ltd*., No. 12 Civ. 3419 (GBD), 2015 WL 1515487, at *1 (S.D.N.Y. Mar. 31, 2015) ("*Laydon III*").  LBG was named as a defendant only in the first of those pleadings.  *See* ECF No. 1.  Plaintiff voluntarily dropped LBG as a defendant in December 2012, when he omitted claims against it

from the FAC (ECF No. 124), which superseded the initial complaint.  LBG therefore had no

obligation to respond to the initial complaint under Rule 12.

On April 15, 2013, Plaintiff filed his Second Amended Complaint ("SAC") (ECF No.

150), which again did *not* include LBG as a defendant.  The defendants that were named in the

SAC timely moved to dismiss the action under Rules 12(b)(1) and (6).  On that motion, the Court

dismissed Plaintiff's claims except for two claims under the Commodity Exchange Act (the

"CEA")—one for price manipulation and the other for aiding and abetting.  *Laydon v. Mizuho

Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ("*Laydon I*").

### B.     2015:  The Court Dismisses Four Defendants in *Laydon II*–and, in *Laydon III*, Permits Plaintiff to Amend to Add LBG and Certain Other Defendants.

Four defendants named in the SAC[1] filed timely motions to dismiss this action as against

them for lack of personal jurisdiction.  In *Laydon II*, decided on March 31, 2015, the Court

granted their motions, dismissing this action as against them.  *See Laydon II*, 2015 WL 1515358,

at *4–6.  The Court rejected each of Plaintiff's jurisdictional theories—*i.e.*, that the moving

defendants: (1) "planned and carried out the manipulation . . . that entered the United States"

from abroad; (2) "conspired with and aided and abetted domestic Defendants to manipulate Yen-

LIBOR and Euroyen TIBOR"; (3) "took purposeful action to facilitate the manipulation of the

price of Euroyen-based derivatives traded in the United States"; and (4) "exercised sufficient

control over their U.S. banking and brokerage subsidiaries to support alter ego status."  *Id.* at *2

(quoting Pl. Opp. Br. at 1).  The Court also denied Plaintiff's request for jurisdictional discovery,

holding that "Plaintiff has not made out a prima facie case of jurisdiction," that "there is no basis

to believe Plaintiff would find any of the information that he seeks through jurisdictional

discovery," and that defendants' "declarations support a conclusion that Plaintiff would not find

---

[1] These were Mizuho Bank, Ltd.; Mizuho Trust and Banking Co., Ltd.; Resona Bank, Ltd.; and ICAP plc.

what he seeks through discovery." *Laydon II*, 2015 WL 1515358, at *7.[2]

Also on March 31, 2015, the Court issued a separate memorandum decision and order in which it granted in part Plaintiff's motion for leave to file a Third Amended Complaint that would add LBG back into the action and also name three other new defendants. *See generally Laydon III*, 2015 WL 1515487 (granting Plaintiff's motion for leave to amend only to the extent of adding four new defendants and otherwise denying the motion).[3]  In the TAC, finally filed on February 29, 2016 (ECF No. 580), Plaintiff alleges two claims for relief under the CEA: one for manipulation of the benchmarks Yen-LIBOR and Euroyen TIBOR (*see* TAC ¶¶ 967–76) and the other for aiding and abetting such violations (*see id.* ¶¶ 977–81).

### C.   LBG, Lloyds Bank, and Lloyds Bank's Yen-LIBOR Submissions.

LBG is a non-operating holding company, organized under Scottish law.  Declaration of Kevin P. McKendry, dated May 15, 2016 ("McKendry Decl.") ¶¶ 2, 3.  Its principal place of business is in the UK.  *Id.* ¶ 2.  LBG has various subsidiaries, mainly involved in banking and insurance, which are separate corporate entities from LBG.  *Id.* ¶¶ 3, 7.  LBG's largest subsidiary is Lloyds Bank, which, like its parent, is incorporated in and has its principal place of business in the UK.  *Id.* ¶ 9.  Although well aware of Lloyds Bank and other LBG subsidiaries, *see* TAC ¶¶ 77–78,[4] Plaintiff elected to name *none* of them as a defendant in this action.

---

[2] On the same day the Court issued *Laydon II* and *Laydon III*, it also issued a separate decision and order denying several other defendants' motions to dismiss for lack of personal jurisdiction, based on the Court's finding that those defendants had waived their Rule 12(b)(2) defenses by failing to assert them in a timely fashion.  *See* ECF No. 446 at 12-13.  That decision is of no relevance here.  LBG's motion is plainly timely: it has moved to dismiss the TAC, in which it was named as a defendant for the first time since the initial complaint (to which LBG never had any obligation to respond, *see supra* at pp. 3-4), on the very date when it was permitted to do so under a stipulation and order filed on April 15, 2016.  *See* ECF No. 595, ¶ 3 (LBG "shall have until May 16, 2016 to move to dismiss").

[3] One of those new defendants, R.P. Martin Holdings Ltd., settled with Plaintiff, subject to Court approval.  *See* ECF No. 592 (order preliminarily approving partial class settlement).

[4] Plaintiff's initial complaint in this action specifically referred to certain of LBG's subsidiaries, including Lloyds Bank.  *See* ECF No. 1 ¶ 50.  Likewise, on July 24, 2015, plaintiffs in the related *Sonterra Capital Master Fund Ltd. et al. v. UBS, AG, et al.*, No. 1:15-cv-5844-GBD ("*Sonterra*") Yen-LIBOR/Euroyen TIBOR case, represented by the same counsel, named LBG, Lloyds Bank, *and* another LBG subsidiary as defendants.  *See Sonterra* ECF No. 1.

The business of LBG's subsidiaries is conducted almost entirely in the UK:  In each of the past five years, no country except the UK contributed more than 5 percent of either total assets or income of LBG and its subsidiaries.  McKendry Decl. ¶ 11. The total combined assets of the United States operations of LBG and its subsidiaries amount to less than 2 percent of their total worldwide assets.  *Id*.  Fewer than one-half of one per cent of the employees of LBG's subsidiaries worldwide were located in the Americas.  *Id*. ¶ 12.  Lloyds Bank and LBG's other banking subsidiaries collectively comprise a "UK retail and commercial bank" with a "UK focused business model."  *Id.* ¶ 6.  Although Lloyds Bank has a single branch in New York, *see id*. ¶ 9; TAC ¶ 77, Plaintiff does not allege that the New York branch had anything to do with any of the events described in the TAC.   And although Plaintiff alleges that "the U.S. activities" of LBG were "primarily undertaken" through Lloyds Bank's New York branch, TAC ¶ 77, Plaintiff does not allege that any of those "U.S. activities" had anything to do with the setting of Yen-LIBOR or anything else relevant to the claims he has asserted in this action.

LBG was never a member of the British Bankers' Association's ("BBA") Yen-LIBOR Contributor Panel.  McKendry Decl. ¶ 13.  Rather, its subsidiary Lloyds Bank was a member of that panel throughout the alleged Class Period.  *Id*.[5]  Throughout that period, Yen-LIBOR was an interest rate benchmark overseen by the BBA, a London-based banking industry association. TAC ¶¶ 129, 130.  During the Class Period, the BBA based Yen-LIBOR on submissions by sixteen panel banks.  *Id*. ¶ 373.  The daily Yen-LIBOR benchmark reflected a trimmed average of the panel banks' estimates of their respective costs of borrowing Japanese Yen in the London interbank money market, *id.* ¶ 122; the top and bottom quartiles of the 16 separate submissions were discarded, leaving published Yen-LIBOR in each maturity as "the arithmetic mean of only

Lloyds Bank and LBG remain defendants in that action, *see Sonterra* ECF No. 121 (current operative pleading), which they have moved to dismiss as against them for, among other things, lack of personal jurisdiction.

[5] *See also* Lloyds CFTC Order (July 28, 2014) (TAC Ex. H-2) at 2 & n.2

the middle two qua[rtiles]." *Laydon I*, 2014 WL 1280464, at *1. Thomson Reuters, as the BBA's agent, calculated and disseminated Yen-LIBOR daily. TAC ¶ 132.

All of Lloyds Bank's submissions of Yen-LIBOR were made in London. McKendry Decl. ¶ 14; *see also* Lloyds Department of Justice ("DOJ") Statement of Facts ("DOJ SOF") (TAC Ex. H-1) at A-5–A-6, ¶ 13. No Lloyds Bank employee based in the United States made any Yen-LIBOR submissions or had any input into the Yen-LIBOR submissions of Lloyds Bank. McKendry Decl. ¶ 14; *see also* Lloyds DOJ SOF (TAC Ex. H-1) at A-5–A-6, ¶¶ 13, 14; *id*. at A-16, ¶ 36. Neither the New York branch of Lloyds Bank nor any other U.S.-based office of any entity that is or was a direct or indirect subsidiary of LBG had responsibility for determining or making Yen-LIBOR submissions. McKendry Decl. ¶ 14. Moreover, neither LBG nor Lloyds Bank, or any other direct or indirect subsidiary of LBG was ever a member of the Japanese Bankers Association's Euroyen TIBOR panel. *Id*. ¶ 15.

On July 28, 2014, LBG and several of its subsidiaries entered into settlement agreements with the DOJ, the Commodity Futures Trading Commission ("CFTC"), and the U.K. Financial Conduct Authority in connection with LIBOR-related misconduct in three currencies, including attempted manipulation of Yen-LIBOR. *See* TAC ¶¶ 7–8, 14–15 and Exs. H-1, H-2, and H-3. Based on these settlements, Plaintiff alleges that from 2006 to July 2009, Lloyds Bank at times made Yen-LIBOR submissions that were intended to benefit its own trading positions. TAC ¶ 14. He also alleges that from June 2006 to October 2008, Lloyds Bank employee Andy Doe (who was for part of that time its Yen-LIBOR submitter) had an agreement with Rabobank's Yen-LIBOR submitter Paul Robson to make Yen-LIBOR submissions that mutually benefitted their trading positions. *Id.* But neither those allegations, nor the findings of government regulators on which they are based, involve anything relevant to Yen-LIBOR submissions that

Lloyds Bank (or any other LBG affiliate) did *in the United States*.  It is undisputed that Lloyds Bank (and its affiliates) did *nothing* in the United States relating to the determination of Yen-LIBOR.  The DOJ, in the very settlement documents relied upon by Plaintiff, found no relevant conduct by individuals employed by Lloyds Bank, or any other LBG affiliate, located outside the U.K., Japan, or Australia.  *See* Lloyds DOJ SOF (TAC Ex. H-1) at A-5–A-6, ¶¶ 13–14; *id*. at A-16, ¶ 36.[6]  Nor does Plaintiff allege that Lloyds Bank (or any other LBG affiliate) purposefully aimed any Yen-LIBOR-related activity into this country from abroad.  Nothing in the detailed regulatory settlement agreements—which were the result of years of investigation by multiple authorities—provides any support for any such a proposition.

### D.    The TAC's Jurisdictional Allegations as to LBG.

Plaintiff includes in the TAC a 15-page, 31-paragraph-long section headed "Personal Jurisdiction," TAC ¶¶ 90–120, in which he *does not mention LBG once*.  Indeed, Plaintiff makes no assertions of fact, anywhere in his 981-paragraph pleading, to the effect that LBG (or for that matter its subsidiary Lloyds Bank, or any other direct or indirect subsidiary) did *anything* relating to Yen-LIBOR either in the United States or directed to this country from elsewhere.  Nor does Plaintiff allege that he ever dealt with LBG, Lloyds Bank, or any other LBG affiliate.

The complete absence of any factual allegations tying LBG to any suit-related conduct in the United States is striking.  Plaintiff has at least tried to allege *some* U.S.-related conduct (which he suggests is relevant to personal jurisdiction) against several other banks.  Even if such allegations were plausible *and* sufficient to support jurisdiction (and they are not), Plaintiff has made no such allegations about LBG or its affiliates.  For example:

> i.    Five defendants are identified by name as having allegedly employed derivatives traders in the United States who traded financial instruments

---

[6] Both Doe and Robson were based in London.  *See* TAC Ex. D-7, ¶ 17 (Robson); TAC Ex. H-1 at A-5–A-6, ¶ 13 (Lloyds Bank LIBOR submitters, which includes Doe).

tied to LIBOR (TAC ¶¶ 91–108)—*but not LBG or its affiliates*;

ii.  Two defendants are identified by name as having allegedly "furthered" other defendants' "manipulation of Yen-LIBOR, Euroyen TIBOR and the prices of Euroyen-based derivatives from within the United States" (TAC ¶ 109)—*but not LBG or its affiliates;*

iii.  Nine defendants are identified by name as having allegedly "[a]vailed themselves of the privilege and benefit of trading foreign exchange and/or interest rate derivatives, including Euroyen-based derivatives, in the United States throughout the Class Period" (TAC ¶ 110)—*but not LBG or its affiliates*;

iv.  Four defendants are identified by name as having allegedly "[p]urposefully directed their activity at the United States, taking intentional and tortious actions expressly aimed at the forum, transacting business throughout the United States and" the Southern District of New York (TAC ¶ 112)—*but not LBG or its affiliates*;

v.  Nine defendants are identified by name as having allegedly "transacted in Euroyen-based derivatives with other United States counterparties and reaped illicit profits from within the United States as a result of their manipulative conduct" (TAC ¶ 113)—*but not LBG or its affiliates*;

vi.  Five defendants are identified by name as having allegedly entered into International Swaps and Derivatives Association, Inc. ("ISDA") Master Agreements generally governed by New York law, "[t]o transact in over-the-counter derivatives market, including Yen-LIBOR-based over-the-counter derivatives" (TAC ¶¶ 114-15)—*but not LBG or its affiliates*;

vii.  Two defendants are identified by name as having allegedly "purposefully directed their activity at the United States, sending false run-thrus via U.S. wires to their New York and U.S.-based clients" (TAC ¶ 116)—*but not LBG or its affiliates*;

viii.  One defendant is identified by name as having allegedly "sent electronic chats across U.S. domestic and interstate wires in furtherance of their conspiracy to manipulate Yen-LIBOR and Euroyen TIBOR and fix the prices of Euroyen-based derivatives" (TAC ¶¶ 119-20)—*but not LBG or its affiliates.*[7]

## THE APPLICABLE LEGAL STANDARDS

In *Laydon II*, this Court addressed the legal standards governing motions such as this one.

---

[7] The operative *Sonterra* complaint contains similarly insufficient factual allegations against LBG and Lloyds Bank, both of which have moved to dismiss the case for lack of personal jurisdiction. *See* ECF Nos. 147, 149. That motion (argued on May 5, 2016) should be granted for many of the same reasons described in this memorandum.

"Plaintiff bears the burden of demonstrating that this Court has jurisdiction" over defendants. *Laydon II*, 2015 WL 1515358, at *1 (citation omitted).  To survive a motion to dismiss, a plaintiff "must make a prima facie showing of jurisdiction.'"  *Id.*  (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998)).  Plaintiff's required showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Laydon II*, 2015 WL 1515358, at *1 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted)).  Although the TAC is construed, for this motion, in the light most favorable to Plaintiff, *Laydon II*, 2015 WL 1515358, at *1, the Court need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714 F.3d at 673 (citations and internal quotation marks omitted); *see also Jazini*, 148 F.3d at 185.

To determine whether Plaintiff has established personal jurisdiction, "this Court must engage in a two-part due process inquiry to determine (1) whether the defendant has sufficient 'minimum contacts' with the forum, and (2) whether the exercise of jurisdiction is 'reasonable' as to each defendant under the circumstances."  *Laydon II*, 2015 WL 1515358, at *1 (citing *Metro. Life Ins. Co v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996)).  Plaintiff has not even come close to making these required showings as to LBG; his TAC must be dismissed as against it.

## ARGUMENT

## I.   DUE PROCESS REQUIRES THAT THE THIRD AMENDED COMPLAINT BE DISMISSED AS AGAINST LBG FOR LACK OF PERSONAL JURISDICTION.

### A.   LBG Is Not Subject to General Jurisdiction.

In *Daimler AG v. Bauman*, the Supreme Court held that "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's

affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (citation and internal quotation marks omitted); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (foreign bank was not subject to general jurisdiction in New York, even though the bank had a New York branch, because it was "incorporated and headquartered elsewhere" ).

Plaintiff does not even allege that LBG is subject to general jurisdiction. Nor could he, as it is beyond question that LBG both is incorporated and maintains its principal place of business in the UK. *See* McKendry Decl ¶ 2; TAC ¶ 77 (LBG "is a U.K.-based financial services group"). As neither of the paradigm bases for general jurisdiction identified in *Daimler* exists here, LBG is not subject to general jurisdiction in New York or anywhere in the United States.[8]

### B. LBG Is Not Subject to Specific Jurisdiction.

#### 1. Introduction.

As this Court explained in *Laydon II*, "[w]here, as here, the plaintiff proceeds under a theory of specific jurisdiction, the court must consider whether the lawsuit 'aris[es] out of or relat[es] to the defendant's contacts with the forum' to determine if jurisdiction exists." *Laydon II*, 2015 WL 1515358, at *1 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 & nn. 8–9 (1984)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Laydon II*, 2015 WL

---

[8] Although in theory an "exceptional case" outside the paradigms might justify exercising general jurisdiction over a foreign defendant, that would have to be based on forum contacts "so substantial and of such a nature as to render the corporation at home" there. *Daimler*, 134 S. Ct. at 761 n.19. Because LBG's operations in the United States account for but a small fraction of its worldwide operations (*see* McKendry Decl. ¶ 12), LBG is not "at home" here.

1515358, at *1 (quoting *Calder v. Jones,* 465 U.S. 783, 788 (1984) and *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  In its most recent decision on the subject, the Supreme Court held that for a defendant to be subject to specific jurisdiction: (i) "the defendant's suit-related conduct must create a substantial connection with the forum state"; (ii) that connection "must arise out of contacts that the defendant *himself* creates with the forum State"; and (iii) the contacts must be "with the forum State itself, not [merely] with persons who reside there."  *Walden v. Fiore,* 134 S. Ct. 1115, 1121–22 (2014) (emphasis added).  Moreover, the litigation must "result[ ] from alleged injuries that arise out of or relate to" the defendant's forum-based or forum-directed activities. *Laydon II*, 2015 WL 1515358, at *2 (quoting *Burger King*, 471 U.S. at 472–73, 475).[9]

Application of these standards requires dismissal of the TAC.  That pleading is devoid of any allegation that LBG engaged in any suit-related conduct substantially connected with the United States, or that Plaintiff's alleged injuries arose out of any such conduct by LBG.

## 2.    Plaintiff Alleges No Suit-Related U.S. Conduct by LBG, a Holding Company, and Plaintiff Has Failed to Allege a Basis for an "Alter Ego" Theory Against LBG Based on any Conduct by Lloyds Bank.

Plaintiff does not allege that LBG *itself* committed any purposeful acts directed or aimed at the United States that are relevant to this action.  That failure is fatal, because only a defendant's *own* suit-related conduct can create a substantial connection with a forum sufficient to justify the exercise of jurisdiction.  *See Walden*, 134 S. Ct. at 1121.

It is not clear whether Plaintiff is seeking to assert personal jurisdiction over LBG on an "alter ego" theory, based on the supposed acts of its subsidiary Lloyds Bank.  If it is, however, that theory would necessarily fail both because it is inconsistent with *Walden* and for the reasons

---

[9] This Court has previously ruled in this case that because Plaintiff relies on the CEA for jurisdiction, "the relevant forum for a contacts analysis is the United States as a whole." *Laydon II*, 2015 WL 1515358, at *1.  Accordingly, we analyze specific jurisdiction in this memorandum in terms of whether Plaintiff has alleged sufficient contacts with the United States, rather than just with New York.  However, because the issue has not been settled by the Court of Appeals for the Second Circuit, *see LIBOR IV*, 2015 WL 6243526, at *24 & n.41, LBG reserves for appeal a challenge to that ruling.

identified by this Court in *Laydon II*.  There, the Court rejected as insufficient Plaintiff's "alter ego" allegations against the British defendant ICAP plc and the Japanese defendants Mizuho Bank and Mizuho Trust.  *See Laydon II*, 2015 1515358, at *4.  As the Court explained there, this theory requires a showing of: (1) "nearly identical ownership interests," (2) "financial dependency of the subsidiary on the parent corporation," (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  *Id*.  (quoting *Volkswagenwerk AG v. Beech Aircraft Corp*., 751 F.2d 117, 120–22 (2d Cir. 1984)); *see also Jazini*, 148 F.3d at 184–85 (affirming dismissal of complaint against foreign parent corporation where jurisdiction was alleged based on New York presence of defendant's wholly owned American subsidiary).

Here, as in *Laydon II* and *Jazini*, Plaintiff has failed to establish any basis for an "alter ego" theory of jurisdiction.  He has not "belie[d] the presumption of corporate separateness or satisf[ied] the considerations outlined in *Volkswagenwerk AG*."  *Laydon II*, 2015 WL 1515358, at *5 (finding no specific jurisdiction over ICAP plc).  Moreover, any "alter ego" theory based on the LBG/Lloyds Bank relationship is negated by the facts set forth in LBG's declaration and in public record documents filed by LBG and Lloyds Bank with UK and American authorities.  Most significantly, Lloyds Bank, which operates a thriving, profitable business as one of the largest domestic banks in the UK,[10] is not financially dependent on LBG.  In fact, the opposite is true:  As "a non-operating holding company," LBG is actually dependent upon Lloyds Bank and

---

[10] In the year that ended on December 31, 2015, Lloyds Bank and its subsidiaries recorded an after-tax profit of £759 million.  *See* Report and Accounts: 2015, Lloyds Bank plc, at 14, *available at* https://beta.companieshouse.gov.uk/company/00002065/filing-history (last visited May 16, 2016).  That was equivalent to over $1.1 billion, calculated at the year-end exchange rate of approximately $1.4746 per pound (*see* LBG 2015 Form 20-F, at 1).  Lloyds Bank's after-tax profits equaled nearly 80 percent of LBG's 2015 after-tax profit on a consolidated Group-wide basis—*i.e.*, £956 million (equivalent to over $1.4 billion).  *Id*. at F-3.

its other operating subsidiaries "to meet its obligations, including its payment obligations with respect to its debt securities, and to provide profits for payment of future dividends to ordinary shareholders." [11]   Further, LBG respects the corporate formalities and separate corporate existence of Lloyds Bank, and there is no basis for any allegation that LBG controls its subsidiaries' operations as in cases where the "alter ego" theory was found to support jurisdiction.[12]   Here, as in *Laydon II*, Plaintiff simply "does not allege facts" to support—and, indeed, the defendant has presented "facts that contradict"—"any alter ego theory."   *Id.*, 2015 WL 1515358, at *6.

### 3. Plaintiff's Allegations Would Be Insufficient Even If Lloyds Bank's (Non-U.S.) Conduct Were Attributable to LBG for Jurisdictional Purposes.

#### a. Lloyds Bank's Alleged Suit-Related Conduct Occurred Entirely Outside the United States and Was Not Purposefully Directed or Aimed at the United States.

Even if Plaintiff *had* alleged facts sufficient to establish that Lloyds Bank is LBG's "alter ego" (which he has not), exercising specific jurisdiction over LBG would still be inappropriate because Plaintiff nowhere alleges any suit-related contacts that Lloyds Bank had with the forum, which is an absolute prerequisite to the exercise of such jurisdiction.   "[T]he defendant's suit-related conduct must create a substantial connection with the forum."   *Walden*, 134 S. Ct. at 1121.   *See also Laydon II*, 2015 WL 151538, at *2–4 (dismissing claims for, among other reasons, failure to plead such a connection).[13]   Here, Plaintiff's claims arise from the defendants' alleged manipulation of Yen-LIBOR *in London*, *not* from anything Lloyds Bank (much less

---

[11] LBG 2015 Form 20-F at 219; *see also* McKendry Decl. ¶ 3.

[12] *See, e.g.*, LBG Form 20-F at 158 (at meetings of the Boards of Directors of  LBG and its main subsidiaries, including Lloyds Bank, "[t]he agenda is split between the companies, allowing decisions to be taken and scrutinised by the appropriate Board").

[13] In the Second Circuit, the connection required is "no less than a 'but for' connection between the defendant's forum-directed activities and the claim."   *LIBOR IV*, 2015 WL 6243526, at *28.

LBG) is alleged to have done *in the U.S.*

Plaintiff's claims, advanced solely under the CEA, arise from the alleged manipulation of Yen-LIBOR and Euroyen TIBOR (a benchmark for which Lloyds Bank was never a submitter; *see supra* at 7).   These are foreign benchmarks, published overseas by trade associations in London and Tokyo, respectively. In the LIBOR-manipulation context, specific personal jurisdiction exists "'only where the LIBOR submission was determined or transmitted,' or, in the context of trader-based manipulation, 'in the location of the person who requested the submitter to engage in manipulation.'"   *LIBOR V*, 2015 WL 6696407, at *8 (quoting *LIBOR IV*, 2015 WL 6243526, at *38).   Plaintiff's allegations about Lloyds Bank do not satisfy any of these criteria. He does not (and cannot) deny that Lloyds Bank's Yen-LIBOR submissions were determined and transmitted in London, not in New York or anywhere in the United States.   *See* McKendry Decl. ¶ 14; TAC Ex. H-2 (CFTC Order) ¶ 5.   Nor does Plaintiff allege that anyone located in the United States ever requested Lloyds Bank's London-based submitter to make an artificial or manipulated Yen-LIBOR submission.   Any such counterfactual assertion would, moreover, contradict the DOJ's finding that the only places from which requests were made to submitters at Lloyds Bank or affiliates to make submissions in *any* currency were the U.K., Japan and Australia.   *See* TAC Ex. H-1 at A-6, ¶ 14.

Plaintiff, to be sure, alleges that Andy Doe, then a Yen trader and Yen-LIBOR submitter employed by Lloyds Bank, made certain manipulated submissions of Yen-LIBOR, at times in collusion with a Rabobank trader, Paul Robson.   *See* TAC ¶¶ 566–79.   But Plaintiff fails to allege that any part of this conduct occurred in the United States.   Nor could he: both Doe and Robson were located outside this country at all relevant times.   *See* TAC Ex. D-7, ¶ 17 (Robson based in London); TAC Ex. H-1 at A-5–A-6, ¶13 (Lloyds Bank's LIBOR submitters, including

- 15 -

Doe, based in London).  Conduct *outside* the forum may not give rise to specific jurisdiction absent factual allegations showing that the defendant engaged in "purposeful direction"—*i.e.*, that "the defendant took 'intentional, and allegedly tortious actions . . . expressly aimed at the forum."  *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Calder*, 465 U.S. at 789); *accord LIBOR V*, 2015 WL 6696407, at *19 ("a defendant is only subject to specific personal jurisdiction in a given forum on the basis of the in-forum effects of allegedly wrongful out-of-forum conduct where the defendant purposefully directed its conduct into that forum." (footnote omitted)).  Plaintiff has alleged nothing of the sort, and such "purposeful direction" cannot be presumed in this case.  In light of the wide range and volume of LIBOR-based instruments traded all over the world, "it does not stand to reason[ ] that foreign defendants aimed their manipulative conduct at the United States or any particular forum state." *LIBOR IV*, 2015 WL 6243526, at *32 (footnote omitted); *see also LIBOR V*, 2015 WL 6696407, at *19 ("reaffirm[ing]" this analysis).[14]  That conclusion *applies a fortiori* as to Yen-LIBOR, an interest rate benchmark relating to a foreign currency.

Plaintiff attempts to establish personal jurisdiction through conclusory allegations that all defendants used United States domestic and interstate wires to transmit and cause Thomson Reuters to transmit published Yen-LIBOR rates and panel bank Yen-LIBOR submissions to investors in the U.S.  TAC ¶¶ 118, 161.  But such acts would not constitute "purposeful direction" as a matter of law.  This Court has already rejected the argument that a defendant "took actions 'expressly aimed' at the United States by passively connecting to the United States via internet protocol ("IP") addresses." *Laydon II*, 2015 WL 1515358, at *3.  "Communications that 'passed through and/or were stored within the United States' are insufficient to assert

---

[14] The court in *LIBOR IV* distinguished cases involving alleged manipulation of LIBOR "from the typical commodities or securities manipulation case, in which defendant's conduct is intended to affect the prices of commodities or securities listed in, for example, New York or Chicago." *LIBOR IV*, 2015 WL 6243526, at *32 n.55.

personal jurisdiction over a defendant." *Id.* (quoting Pl. Opp. Br. at 20).  *See also LIBOR IV*, 2015 WL 6243526, at *30 (publication of LIBOR rates in forum did not give rise to personal jurisdiction because "the importance of LIBOR was its universal significance, not its projection into any particular state").

Plaintiff also alleges that the manipulation of Yen-LIBOR supposedly had foreseeable *effects* in the United States.  *See, e.g.*, TAC ¶ 56 ("Defendants knew or should have known" that their alleged manipulation of Yen-LIBOR would have "direct, substantial, and reasonably foreseeable effects in the U.S.").  But personal jurisdiction cannot be based on allegations of foreseeable in-forum effects of the alleged manipulation.  *See, e.g.*, *7 W. 57th St.*, 2015 WL 1514539, at *11; *LIBOR IV*, 2015 WL 6243526, at *32.  Rather, Plaintiff must "plead facts demonstrating that the [benchmark] manipulation was done with the *express* aim of causing an effect in New York." *7 W. 57th St.*, 2015 WL 1514539, at *10–11 (emphasis added) (finding no specific jurisdiction where plaintiff failed to plead facts demonstrating that the "suit-related conduct was expressly aimed at New York, in addition to having an effect [t]here" (internal quotations omitted)).  As this Court observed in *Laydon II*, "foreseeability is not the standard for recognizing personal jurisdiction; the actions must instead be 'expressly aimed . . . at residents of the United States.'" *Laydon II*, 2015 WL 1515358, at *2 (quoting *Terrorist Attacks*, 714 F.3d at 674–75); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

Because Lloyds Bank's alleged suit-related conduct all took place outside the United States and was not "expressly aimed at" or "purposefully directed" into this country, that conduct is insufficient to support the exercise of specific personal jurisdiction.[15]

---

[15] This case (and the allegations about LBG in it) is unlike *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13 Civ. 7789 (LGS), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ("*FX II*").  In *FX II*, the benchmark rate at issue was calculated based on actual market transactions, *see In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 587 (S.D.N.Y. 2015) ("*FX I*"), and "defendants[] accomplished their

b.      **Allegations That Lloyds Bank Participated in a Conspiracy Are Legally and Factually Insufficient.**

Plaintiff also relies on a "conspiracy" theory to establish jurisdiction over LBG (TAC ¶¶ 485–86, 509, 622, 871), but this theory fails for two reasons.  *First*, it is highly doubtful that the conspiracy theory of jurisdiction is viable (if it ever was).  As Judge Forrest held last year, "[t]he rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine."  *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015).  In *Laydon II*, this Court likewise rejected Plaintiff's attempt to establish jurisdiction over foreign defendants on a "conspiracy" theory, noting that "[c]ourts have been increasingly reluctant to extend this theory of jurisdiction beyond the context of New York's long-arm statute, N.Y. C.P.L.R. 302(a)(2)." *Laydon II*, 2015 WL 1515358, at *3; *accord Tymoshenko v. Firtash*, 11–CV–2794 (KMW), 2013 WL 1234943, at *2–4 (S.D.N.Y. Mar. 27, 2013).  The concept of "conspiracy" jurisdiction cannot be reconciled with the Supreme Court's recent admonition, in *Walden*, that specific jurisdiction must be based on "contacts that the defendant *himself* creates with the forum State," 134 S. Ct. at 1122 (emphasis in original)—not those of third parties, such as alleged co-conspirators.

*Second*, even if a "conspiracy theory" of jurisdiction could be applied without violating due process principles, such a theory would not apply to LBG here because Plaintiff pleads no specific facts anywhere in the 981-paragraph, 427-page TAC showing that LBG (or any of its affiliates) conspired with anyone in the United States.  Any alleged collusion between Doe of

---

purported scheme *by entering into . . . transactions*" that allegedly impacted those rates, *LIBOR VI*, 2016 WL 1558504, at *7 (emphasis added), including in the United States, *see FX I*, 74 F. Supp. 3d at 586.  "Here, by contrast, defendants [did not] engage in any market transactions at all . . . to affect the LIBOR [or TIBOR] fix[es]," *LIBOR VI*, 2016 WL 1558504, at *7, as these benchmarks were based exclusively on submissions reflecting hypothetical borrowing rates in the London and Tokyo interbank money markets, respectively (TAC ¶ 131).  Plaintiff, moreover, does not allege *any* relevant transactions in the United States by LBG or any affiliates.  *See supra* at 9.

Lloyds Bank and Robson of Rabobank is unavailing here because Plaintiff himself pleads that

Robson (like Doe) was based in London, not anywhere in the United States.  *See* TAC Ex. D-7,

¶ 17.  And Plaintiff's allegation that Rabobank committed tortious acts within the forum (TAC

¶ 117) is a bare legal conclusion not entitled to any deference.  Nor does Plaintiff allege facts

showing that LBG (or any affiliate) conspired with anyone located anywhere to do anything in or

specifically directed at the United States.

## C.   Considerations of Fair Play, Substantial Justice, and International Comity Require Dismissal.

Because Plaintiff has failed to allege sufficient suit-related contacts to justify the

exercise of specific jurisdiction over LBG, "the due process inquiry ends."  *Laydon II*, 2015 WL

1515358, at *2 (citing *Metro. Life Ins. Co.,* 84 F.3d at 568–69).  But even if the Court were to

reach the "second stage of the due process inquiry," *Porina v. Marward Shipping Co.,* 521 F.3d

122, 127 (2d Cir. 2008), and address the "reasonableness" of exercising jurisdiction, *Metro. Life*

*Ins. Co.*, 84 F.3d at 568–69, the relevant factors compel the conclusion that this action should be

dismissed as against LBG.

Under the "reasonableness" inquiry, courts "ask[ ] whether the assertion of personal

jurisdiction comports with 'traditional notions of fair play and substantial justice'-that is,

whether it is reasonable under the circumstances of the particular case." *Id.* at 568 (quoting *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Courts must evaluate the following factors:

(1) "the burden on the defendant"; (2) "the interests of the forum State"; (3) "the plaintiff's

interest in obtaining relief"; (4) "the interstate judicial system's interest in obtaining the most

efficient resolution of controversies"; and (5) "the shared interest of the several States in

furthering fundamental substantive social policies." *See Asahi Metal Indus. Co. v. Super. Ct.*, 480

U.S. 102, 113 (1987) (citing *World-Wide Volkswagen Corp.,* 444 U.S. at 292).  It would be both

unreasonable and inconsistent with settled principles of international comity to exercise personal jurisdiction over LBG, a foreign corporation that is not alleged to have had any suit-related connections whatsoever with the forum. *See Asahi Metal Indus.*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." (citation and internal quotation marks omitted)).

## II.   DISCOVERY AS TO LBG SHOULD BE STAYED PENDING DETERMINATION OF THIS MOTION.

This Court previously stayed discovery with respect to defendants other than LBG during the pendency of their motions to dismiss. *See* Order dated August 18, 2014 (ECF No. 362) (denying Plaintiff's request for jurisdictional discovery prior to responding to the moving defendants' motions to dismiss; staying all discovery). Such a stay with respect to LBG, pending adjudication of this motion, is at least equally warranted.

District Courts have ample discretion to stay what would be "costly and time-consuming discovery" pending a decision on a potentially dispositive motion to dismiss. *Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994). The relevant considerations include "any prejudice that would result" and "the strength of the motion." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013). Plaintiff cannot reasonably be heard to say that he would be prejudiced by a stay of discovery from LBG, as he already has had the benefit of (a) extensively documented settlements between regulators and LBG, Lloyds Bank, and several other defendants and (b) the substantial discovery already produced by other defendants in this action whose previous pre-answer motions to dismiss were denied in part. By contrast, if a stay does not issue, LBG—whose motion is a strong one, "supported by substantial arguments for dismissal,'" *Hong Leong*, 297 F.R.D. at 72—would be unfairly and unnecessarily put through the burden of discovery.

Finally, discovery cannot be justified on the basis that it is needed to establish jurisdictional facts. Jurisdictional discovery is inappropriate "where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction," *Laydon II*, 2015 WL 1515358, at *7, and where the declarations and facts set forth by defendant "support a conclusion that Plaintiff would not find what he seeks through discovery." *Id.* This is precisely such a case. Accordingly, no discovery from LBG should be permitted unless and until Plaintiff can establish that this Court has personal jurisdiction over LBG.

## CONCLUSION

For the foregoing reasons, the TAC should be dismissed, with prejudice, as against LBG pursuant to Rules 12(b)(2), and all discovery as to LBG should be stayed until this motion has been adjudicated.


Dated:  New York, New York
      May 16, 2016


Respectfully submitted,

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Kevin T. Baumann
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
kevin.baumann@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendant*
*Lloyds Banking Group plc*