**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

JEFFREY LAYDON, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIETE GENERALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, ICAP EUROPE LIMITED, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, AND JOHN DOE NOS. 1-50,

Defendants.

---

Docket No. 12-cv-3419 (GBD)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 3

      A.    The New Claims Were Asserted for the First Time in Plaintiff's Proposed Third Amended Complaint Filed December 18, 2015 .............. 3

      B.    Plaintiff's Proposed Third Amended Complaints Were Twice Stricken by the Court ................................................................................. 5

      C.    Plaintiff Has Acknowledged That Notice of His Alleged Injuries Arose No Later Than Spring/Summer 2011 ............................................... 6

      D.    This Court Has Already Held That Notice of a CEA Injury Arose No Later Than July 2011 ........................................................................ 7

ARGUMENT ....................................................................................................... 8

    I.    LAYDON LACKS STANDING TO BRING THE NEW CLAIMS ................... 8

    II.    PLAINTIFF'S CLAIMS FOR THE PERIOD JANUARY 1, 2011 TO JUNE 30, 2011 ARE TIME-BARRED ............................................................ 10

      A.    *American Pipe* Tolling Does Not Render the New Claims Timely ......... 12

      B.    The Relation Back Doctrine Does Not Render the New Claims Timely .................................................................................................... 14

      C.    The Doctrine of Fraudulent Concealment Does Not Render the New Claims Timely ................................................................................ 17

CONCLUSION .................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
   544 F. Supp. 2d 199 (S.D.N.Y. 2008) ....................................................................14

*American Pipe & Construction Company v. Utah*,
   414 U.S. 538 (1974) ...............................................................................12, 13, 14

*Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*,
   2010 WL 317472 (S.D. Ga. Jan. 25, 2010) ............................................................6

*In re Bausch & Lomb, Inc. Secs. Litig.*,
   941 F. Supp. 1352 (W.D.N.Y. 1996) ..............................................................12, 16

*Del Sontro v. Cendant Corp.*,
   223 F. Supp. 2d 563 (D.N.J. 2002) .......................................................................13

*In re Direxion Shares ETF Trust*,
   279 F.R.D. 221 (S.D.N.Y. 2012) ..........................................................................14

*Express Cos. v. Lifeguard Med. Sols., LLC*,
   2010 U.S. Dist. LEXIS 91381 (S.D. Cal. Sept. 1, 2010) ........................................6

*Hall Special Situations Inv. Fund v. Basix Corp.*,
   1994 WL 132235 (S.D.N.Y. Apr. 14, 1994) ........................................................11

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ..........................................................................11

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) .................................................................................10

*Koch v. Christie's Int'l PLC*,
   785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ............17

*Kolbeck v. LIT Am., Inc.*,
   923 F. Supp. 557 (S.D.N.Y. 1996) .......................................................................10

*Krinsk v. SunTrust Banks, Inc.*,
   654 F.3d 1194 (11th Cir. 2011) ..............................................................................6

*Krupski v. Costa Crociere S. p. A.*,
   560 U.S. 538 (2010) .............................................................................................16

**TABLE OF AUTHORITIES**
**(Cont.)**

**Page(s)**

*Laydon v. Mizuho Bank, Ltd.*,
    2015 WL 1515487 (S.D.N.Y. Mar. 31, 2015) ................................................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016)................................................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447, 484 (S.D.N.Y. 2014) ...................................................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litigation*,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........................................................................9

*Matana v. Merkin*,
    957 F. Supp. 2d 473 (S.D.N.Y. 2013).................................................................................13

*McCleod v. Travelers Indem. Co.*,
    2012 WL 5210945 (S.D.N.Y. Oct. 19, 2012) ......................................................................12

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998)...................................................................................................18

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012).......................................................................................2, 8, 9, 10

*Pruiss v. Bosse*,
    912 F. Supp. 104 (S.D.N.Y. 1996) .......................................................................................15

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank*
    *of New York Mellon*,
    775 F.3d 154 (2d Cir. 2014)............................................................................................ *passim*

*Ridge Seneca Plaza, LLC v. BP Prods. N. Am. Inc.*,
    545 Fed. App'x 44 (2d Cir. 2013)........................................................................................16

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015)................................................................................................12

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011)........................................................................................................13

*Vincent v. Money Store*,
    915 F. Supp. 2d 553 (S.D.N.Y. 2013).................................................................................13

*Wilder v. News Corp.*,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ...........................................................12, 15, 16

**TABLE OF AUTHORITIES**
**(Cont.)**

Page(s)

**Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 ........................................................................1

Commodity Exchange Act, 7 U.S.C. § 25 ...................................................................10

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1388 (3d ed. 2016) ..................................................................................................6

Fed. R. Civ. P. 12 .................................................................................................1, 6, 12

Fed. R. Civ. P. 15 .....................................................................................14, 15, 16, 17

Fed. R. Civ. P. 23 .............................................................................................2, 9

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.*, claims for the period January 1, 2011 to June 30, 2011, asserted for the first time in the Third Amended Class Action Complaint filed February 29, 2016.  ECF No. 580 (the "TAC").

## PRELIMINARY STATEMENT

Plaintiff Laydon now seeks to assert CEA claims for transactions during the new period, January 1, 2011 to June 30, 2011 (the "New Claims").  These transactions occurred after the end of the putative Class Period alleged in Plaintiff's previous complaints, and Plaintiff does not allege that he transacted, let alone suffered any injury, during this new period.  *See* TAC ¶¶ 911-916.  Because Plaintiff's New Claims have never been part of this case, and Defendants have therefore had no previous opportunity to challenge them in any respect under Rule 12(b), Defendants now seek dismissal of the New Claims because, as discussed below, (1) Plaintiff lacks standing to assert them, and (2) they are fully time-barred.

*First*, it cannot be disputed that Plaintiff lacks standing to assert the New Claims on his behalf because Plaintiff has asserted that his trading was limited to July and August 2006.  Moreover, Plaintiff cannot show that *he* has a personal and concrete stake in proving the New Claims.  This is because Plaintiff's 2006 transactions simply do not "implicate[] the same set of concerns" as those raised by the New Claims.  *Ret. Bd. of the Policemen's Annuity & Ben. Fund*

---

[1] The "Defendants" are The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Sumitomo Mitsui Trust Bank, Limited; The Norinchukin Bank; Mitsubishi UFJ Trust & Banking Corp.; Sumitomo Mitsui Banking Corp.; Mizuho Corporate Bank, Ltd.; Deutsche Bank AG; The Shoko Chukin Bank, Ltd.; Shinkin Central Bank; UBS AG; UBS Securities Japan Co. Ltd.; The Bank of Yokohama, Ltd.; Société Générale; The Royal Bank of Scotland Group PLC; The Royal Bank of Scotland PLC; RBS Securities Japan Limited; Barclays Bank PLC; Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank"); JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and J.P. Morgan Securities plc.

The newly-added defendants, ICAP Europe Ltd., Lloyds Banking Group plc, and Tullett Prebon plc, are moving separately today to dismiss for lack of personal jurisdiction.

*of the City of Chicago v. Bank of New York Mellon* ("*Policemen's Fund*"), 775 F.3d 154, 160 (2d Cir. 2014).[2]  The Second Circuit has made clear that this is an inquiry that is distinct from whether Plaintiff is an adequate class representative under Rule 23(a).  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ("*NECA*"), 693 F.3d 145, 158 n.9 (2d Cir. 2012).

As Judge Buchwald has held in the U.S. Dollar LIBOR litigation, the alleged trader-based activity that underlies Plaintiff's claims is "day-to-day and episodic," and, therefore, "[p]roof that a bank caused an artificial price one day will not determine whether it did so on another day."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), 2016 WL 1558504, at *9 (S.D.N.Y. Apr. 15, 2016).  Accordingly, different proof would be required to substantiate Plaintiff's claims that his 2006 contracts were artificially priced from that required to prove that the same was true for the New Claims, which concern 2011 contracts.  Plaintiff thus lacks a legally sufficient interest in litigating the New Claims, which implicate concerns different from his own, and, accordingly, he lacks standing to assert them.  *See Policemen's Fund*, 775 F.3d at 163; *NECA*, 693 F.3d at 163-64; *LIBOR VI*, 2016 WL 1558504, at *9.

*Second*, even if Plaintiff traded during the January 1, 2011 to June 30, 2011 period, Plaintiff's New Claims are barred by the CEA's two-year statute of limitations.  This Court already has held that a proposed plaintiff in this case was put on inquiry notice of his alleged injury from purported Yen LIBOR/Euroyen TIBOR manipulation no later than July 26, 2011.  That holding applies with equal force to Plaintiff here.  Because the New Claims were not asserted until Plaintiff first filed a proposed Third Amended Complaint (which this Court rejected) on December 18, 2015—*more than four years later*—those claims are time-barred.  No purported "new facts," tolling doctrines, or relation back principles render the New Claims timely.  The cases establish that if Plaintiff is time-barred as to the New Claims, then those

---

[2] Except as otherwise noted, all internal citations and quotation marks are omitted from case law citations.

claims cannot be maintained in this action.   As shown below, it is well-settled that courts consider at the pleading stage whether claims are time-barred.

Accordingly, the New Claims should be dismissed in their entirety and with prejudice.[3]

## BACKGROUND

### A.     The New Claims Were Asserted for the First Time in Plaintiff's Proposed Third Amended Complaint Filed December 18, 2015

Plaintiff commenced this action on April 30, 2012.  *See* ECF No. 1.  Asserting numerous claims against a number of Defendants, Plaintiff sought to represent a putative class of persons who traded Euroyen TIBOR futures contracts during the period January 1, 2006 to September 2010.  *See id.* ¶ 98.

In his First Amended Complaint filed December 2012, Plaintiff extended the end of his claims to encompass the period ending December 31, 2010.  *See* ECF No. 124 ¶¶ 1, 254. Plaintiff filed a Second Amended Complaint ("SAC") on April 15, 2013, which likewise asserted claims from January 1, 2006 to December 31, 2010.  *See* ECF No. 150 ¶¶ 1, 704.

---

[3] Though mindful of the Court's directive not to brief on this motion grounds "previously asserted and denied," the New Claims should also be dismissed for lack of personal jurisdiction as to the Foreign Defendants  and those Defendants expressly reserve and do not waive that defense as to the New Claims.  To preserve and avoid any inference that they have waived their personal jurisdiction defenses as to the New Claims, the Foreign Defendants incorporate by reference herein the arguments they made before this Court in *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-CV-05844-GBD (S.D.N.Y.).  *See* Mem. of Law in Support of The Japanese Bank Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction, Sonterra Capital Master Fund, Ltd. v. UBS AG, No. 15-cv-05844-GBD (S.D.N.Y. Feb. 1, 2016), ECF No. 159; European Defs.' Mem. in Support of Their Mot. to Dismiss the Am. Class Action Compl. for Lack of Personal Jurisdiction, No. 15-cv-05844-GBD (S.D.N.Y. Feb. 1, 2016), ECF No. 169; Reply Mem. of Law in Support of The Japanese Bank Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction, No. 15-cv-05844-GBD (S.D.N.Y. Apr. 22, 2016), ECF No. 231; European Defs.' Reply Mem. in Support of Their Mot. to Dismiss the Am. Class Action Compl. for Lack of Personal Jurisdiction, No. 15-cv-05844-GBD (S.D.N.Y. Apr. 22, 2016), ECF No. 235.

The "Foreign Defendants" are:  The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Sumitomo Mitsui Trust Bank, Limited, The Norinchukin Bank; Mitsubishi UFJ Trust & Banking Corp.; Sumitomo Mitsui Banking Corp.; Mizuho Corporate Bank, Ltd.; Deutsche Bank AG; The Shoko Chukin Bank, Ltd.; Shinkin Central Bank; UBS AG; UBS Securities Japan Co. Ltd.; The Bank of Yokohama, Ltd.; Société Générale; The Royal Bank of Scotland Group PLC; The Royal Bank of Scotland PLC; RBS Securities Japan Limited; Barclays Bank PLC; Rabobank; and J.P. Morgan Securities plc.

Defendants moved to dismiss the SAC on June 14, 2013.  *See* ECF No. 204.  At the oral argument on that motion, Plaintiff clarified for the first time that he sold five Euroyen TIBOR futures contracts on the Chicago Mercantile Exchange ("CME") in July 2006 and then covered that position by buying a corresponding number of Euroyen TIBOR futures contracts on the CME in August 2006.  *See* Mar. 5 2014, Mot. Hr'g Tr. 103:6-25.  This is the only transaction Plaintiff alleges he entered into with respect to Euroyen TIBOR futures contracts, and he alleges that he suffered a total loss of $2,150.35 in connection with the transaction.  *See* ECF No. 580 ¶ 911.  On March 28, 2014, this Court dismissed all of Plaintiff's claims other than CEA claims for manipulation and aiding and abetting manipulation.  *See* ECF No. 270.

Following that ruling, on June 17, 2014, Plaintiff sought leave to amend and file his proposed Third Amended Complaint, in which he proposed to: (i) add claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act; (ii) re-allege the previously-dismissed Sherman Act claims; (iii) add four new defendants; and (iv) expand the types of products traded by the putative class by adding two named plaintiffs who allegedly traded in different products than Plaintiff.  ECF Nos. 302-2 ¶¶ 54-55, 83-88; 302-3 ¶¶ 747-53, 754-95.  On March 31, 2015, this Court denied Plaintiff's motion to amend in its entirety, except for his unopposed request to add the four new defendants.  *See* ECF No. 448.

On December 18, 2015, Plaintiff filed another proposed Third Amended Complaint ("December 2015 PTAC").  *See* ECF No. 544.  In this pleading, Plaintiff sought for the first time to assert CEA claims for the January 1, 2011 to June 30, 2011 period.  *See* ECF No. 544 ¶¶ 1, 1030.

**B.      Plaintiff's Proposed Third Amended Complaints Were Twice Stricken by the Court**

On January 8, 2016, the Court ordered that the December 2015 PTAC be stricken from the docket because the complaint added several additional plaintiffs and claims in violation of the Court's motion to amend ruling, and included claims and defendants that the Court had ordered dismissed from this action. *See* ECF No. 558. The Court instructed Plaintiff that if he wished to file another pleading, he should submit a letter requesting leave, including a proposed complaint that "is consistent with this Court's previous orders," and invited Defendants to respond by letter. *Id.*

On January 28, 2016, Plaintiff again sought leave to file a new Proposed Third Amended Complaint ("January 2016 PTAC"). *See* ECF Nos. 564, 564-1, 564-2, 564-3. Plaintiff acknowledged that, for the first time, he was asserting additional claims and proposing to extend the class period "by six months from December 31, 2010 to June 30, 2011." ECF No. 564. On February 19, 2016, the Court issued an order stating that "[t]he [January 2016] PTAC includes claims which were previously dismissed. The proposed amendment which includes these claims in the [January 2016] PTAC is DENIED as futile." ECF No. 574. The Court directed that "Plaintiff shall re-file the PTAC without asserting against any defendant claims that have already been dismissed from this action." *Id.*

Following a call with the Court's law clerk on February 23, 2016, on February 29, 2016, Plaintiff filed the TAC that is the subject of this motion. *See* ECF No. 580. In a March 11, 2016 letter to the Court, Defendants advised that, while they believed striking the TAC because it contravened the Court's March 31, 2015 Order was the most efficient course of action, they would alternatively move to dismiss the claims asserted in the TAC which they had never previously had an opportunity to challenge. ECF No. 582. Defendants reserved their rights (as

they had done in previous submissions) to assert defenses in a Rule 12(b) motion, in addition to answering.[4]   The Court thereafter permitted Plaintiff to file the third version of the TAC (ECF No. 584) and subsequently endorsed a briefing schedule to entertain this motion (ECF No. 609).

### C.   Plaintiff Has Acknowledged That Notice of His Alleged Injuries Arose No Later Than Spring/Summer 2011

In multiple complaints filed in this action, Plaintiff has implicitly acknowledged that he could have discovered any purported injuries from alleged Euroyen TIBOR and/or Yen LIBOR manipulation by no later than March 15, 2011.   Plaintiff's initial complaint alleged that "[i]nvestigations into manipulation of Tibor rates were first publicly disclosed on March 15, 2011" in a UBS annual report and that Defendants' purported misconduct could "not have [been] discovered [] by the exercise of due diligence on or before March 15, 2011."   ECF No. 1 ¶¶ 83, 107.   Plaintiff's First, Second, and initial proposed Third Amended Complaints contained substantially similar allegations.   *See* ECF Nos. 124 ¶¶ 105, 263; 150 ¶¶ 711, 714; 302 ¶¶ 721, 724.

Even in the TAC, Plaintiff concedes that the discovery of purported injuries from alleged Euroyen TIBOR and/or Yen LIBOR manipulation occurred by no later than July 26, 2011 with

---

[4] On April 12, 2016, the Court endorsed a Stipulation and Order setting forth a schedule for responses to the TAC, which states, in part, "[t]his Stipulation does not constitute a waiver by the Legacy Defendants of any of their rights to move or otherwise respond to the TAC . . . ."   ECF No. 594.   Three newly-added defendants (Lloyds Banking Group plc, ICAP Europe Limited and Tullett Prebon plc) separately expressed their intention to move to dismiss the TAC.   ECF No. 595.

While "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading . . . , a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion."   5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2016); *see also Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) ("[T]he defendant will be allowed to plead anew in response to an amended complaint, as if it were the initial complaint, when the amended complaint . . . changes the theory or scope of the case."); *Express Cos. v. Lifeguard Med. Sols., LLC*, 2010 U.S. Dist. LEXIS 91381, at *14-15 (S.D. Cal. Sept. 1, 2010) (permitting motion to strike allegations in amended complaint where motion "bec[ame] available because of new matter in the amended complaint"); *Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, 2010 WL 317472, at *3 (S.D. Ga. Jan. 25, 2010) (when "the amendment adds a new matter that gives rise to a new, previously inapplicable Rule 12 motion, the responding party may assert the new Rule 12 defense by motion or responsive pleading").

respect to UBS and no later than February 2012 with respect to other Defendants.  TAC ¶ 944 (Defendants' misconduct "could not have [been] discovered [] by the exercise of due diligence until July 26, 2011 as to Defendant UBS only and until February 2012 as to several other [] Defendants.").[5]

### D.   This Court Has Already Held That Notice of a CEA Injury Arose No Later Than July 2011

This Court has already held that a proposed plaintiff was on notice of his purported CEA injuries from alleged Euroyen TIBOR and/or Yen LIBOR manipulation by July 26, 2011 at the latest.  In denying Plaintiff's June 17, 2014 motion to amend, this Court held that the proposed CEA claims of a newly-proposed plaintiff against all Defendants were futile because they were time-barred by the CEA's two-year statute of limitations.  *See Laydon v. Mizuho Bank, Ltd.* ("*Laydon II*"), 2015 WL 1515487, at *3-5 (S.D.N.Y. Mar. 31, 2015).  The Court reasoned that under the CEA, "discovery of the injury, not discovery of the other elements of the claim is what starts the clock" for the purpose of inquiry notice.  *Id*. at *3 n.3.  The Court held that the proposed plaintiff was on inquiry notice of his CEA claims against all Defendants no later than July 26, 2011—the date that UBS disclosed regulatory investigations of Yen LIBOR and

---

[5] *See also* TAC ¶¶ 946 (UBS's July 26, 2011 disclosure marked "the earliest Plaintiff could have suspected UBS' role in" the purported misconduct), 949 (in a July 26, 2011 SEC filing, "UBS disclosed for the first time it had received conditional leniency from the Antitrust Division of the U.S. Department of Justice . . . related to submissions of Yen-LIBOR and Euroyen TIBOR"), 768-69, 772, 951 (alleging that in February 2012, The Wall Street Journal and the Financial Times printed multiple articles describing regulatory actions against various Defendants for their purported Euroyen TIBOR and Yen LIBOR misconduct).

Although there is no merit to Plaintiff's contention that inquiry notice is defendant-specific, *see  In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"), 27 F. Supp. 3d 447, 484 (S.D.N.Y. 2014) ("inquiry notice is not a defendant-specific determination"), and although Plaintiff was on notice no later than March 15, 2011, the New Claims are untimely even assuming the TAC's staggered inquiry notice dates to be true for the purposes of this motion.  *See infra* pp. 10-18.

Euroyen TIBOR—and thus his attempt to assert CEA claims in June 2014 was untimely.[6]  *Id*. at

\*3.  Plaintiff is situated no differently from the proposed plaintiff.

**ARGUMENT**

## I.    LAYDON LACKS STANDING TO BRING THE NEW CLAIMS[7]

Plaintiff lacks Article III standing to bring his New Claims.  Plaintiff must establish

standing "for each claim he seeks to press."  *Policemen's Fund*, 775 F.3d at 159.  Plaintiff,

however, has asserted that his trading was limited to July and August 2006—more than four

years *before* the transactions (and the alleged conduct) that are the subject of the New Claims.

Plaintiff therefore "clearly lacks standing to assert such claims on [*his*] behalf because [he] did

not purchase" or sell Euroyen TIBOR futures contracts in January to June 2011 that he now

alleges were artificially priced.  *NECA*, 693 F.3d at 158 (emphasis added).

Although Plaintiff may have a personal stake in proving his own claims for 2006

transactions, the law requires that Plaintiff show that *he* has a "sufficiently personal and concrete

stake" in proving the New Claims pertaining to 2011 transactions.  *See Policemen's Fund*, 775

F.3d at 163.  Because Plaintiff's 2006 transactions do not "implicate[] the same set of concerns"

as transactions that are the subject of the New Claims, Plaintiff lacks standing to assert them.  *Id.*

---

[6] In doing so, the Court did not address whether Plaintiff was on notice by March 2011, when UBS disclosed the alleged manipulation in its annual report.  For the purposes of Defendants' motion and the Court's decision, it was immaterial whether the notice date was March or July of 2011, and thus Defendants did not press the earlier date.

[7] Plaintiff's First and Second Claims for Relief purport to assert CEA claims relating to CME Euroyen TIBOR futures contracts.  *See* TAC ¶¶ 967-81.  Nonetheless, Plaintiff's putative class definition also purports to include transactions on foreign exchanges:  the Tokyo Financial Exchange Inc., Singapore Exchange and the NYSE Euronext London International Financial Futures and Options Exchange.  *See id.* at ¶ 937.  As Defendants have noted, Plaintiff previously confirmed in a June 6, 2013 email that Plaintiff's CEA claims are being brought solely with respect to Euroyen TIBOR futures contracts traded on the CME, and not with respect to such contracts traded on foreign exchanges.  *See* Mem. of Law in Support of Defs'. Mot. to Dismiss Pl.'s CEA Claims (ECF No. 205) at 2 n.2.  Any CEA claims pertaining to any contracts traded on such foreign exchanges are not in the case.  Thus, Defendants have not briefed the reasons why Plaintiff's CEA claims cannot, as a matter of law, extend to such contracts traded on foreign exchanges.

As the Second Circuit has made clear, because this test "derives from constitutional standing principles" it is "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." *Id.* (citing *NECA*, 693 F.3d at 158 n.9). Further, the fact that Plaintiff *could* offer purported evidence to try to prove the New Claims has no bearing on whether Plaintiff has standing to do so. *See id.* at 163 ("The fact that it would be possible for a [named] plaintiff to litigate a given claim plainly does not imply that she should be the one to litigate it.").

Plaintiff's claims can implicate the same set of concerns as the New Claims only where the "proof contemplated for all of the claims would be sufficiently similar." *Id.* at 161.  But the trader-based activity that lies at the heart of this action is characterized by "day-to-day and episodic" behavior and thus "[p]roof that a bank caused an artificial price one day will not determine whether it did so on another day." *LIBOR VI*, 2016 WL 1558504, at *9.  Indeed, because any alleged "manipulation on any given day would have had *no impact* on the next day's published LIBOR," *LIBOR III*, 27 F. Supp. 3d at 461 (emphasis added), let alone on transactions that allegedly occurred four years later, the Court would need to examine several elements of proof for each alleged trading day, including, among others, "[w]hich defendant bank engaged in manipulation, of which tenor . . . , on which date, and in which direction." *In re LIBOR-Based Fin. Instruments Antitrust Litigation*, 2015 WL 6243526, at *40 (S.D.N.Y. Oct. 20, 2015); *see also NECA*, 693 F.3d at 163-64 (the question of whether one originator (*e.g.*, Wells Fargo) followed the underwriting guidelines might well have had nothing to do with whether another originator (*e.g.*, Washington Mutual) followed the guidelines).  In short, the nature of the claims in this case "unavoidably generates significant differences in the proof" that would be required for Plaintiff's 2006 claims and the New Claims. *Policemen's Fund*, 775 F.3d at 163.

Plaintiff thus lacks a legally sufficient interest in litigating the New Claims—his quest to show that his 2006 contracts were artificially priced does not encompass proving that 2011 contracts were artificially priced.  *See LIBOR VI*, 2016 WL 1558504, at *9 ("claims on behalf of absent class members for trader-based CEA violations do not involve the same set of concerns as the claims brought on behalf of named plaintiffs").  As a result, Plaintiff "do[es] not have class standing to bring claims on days on which [he] did not hold a relevant net position," and the New Claims should therefore be dismissed.  *LIBOR VI*, 2016 WL 1558504, at *9; *see also Policemen's Fund*, 775 F.3d at 163 (named plaintiffs lacked standing because proving alleged wrongdoing by the trustee that held plaintiffs' trust certificates did not involve proving alleged wrongdoing by other trustees in trusts in which plaintiffs did not invest); *NECA*, 693 F.3d at 163-64 (named plaintiff lacked standing with respect to offerings backed by loans that were not made by the same originators who made the loans underlying the named plaintiff's investments).

## II.   PLAINTIFF'S CLAIMS FOR THE PERIOD JANUARY 1, 2011 TO JUNE 30, 2011 ARE TIME-BARRED

Even if Plaintiff traded during the January 1, 2011 to June 30, 2011 period, the New Claims are fully time-barred by the CEA's two-year statute of limitations.  Under the CEA, a plaintiff must bring claims within "two years after the date the cause of action arises."  7 U.S.C. § 25(c).   A CEA claim "arises" when a plaintiff has "inquiry notice"—that is, when "circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded."  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 564 (S.D.N.Y. 1996).   Moreover, "inquiry notice is not a defendant-specific determination . . . ."  *LIBOR III*, 27 F. Supp. 3d at 484-85 ("The specificity required to trigger inquiry notice is not necessarily specificity with regard to [each] defendant, but rather specificity that notifies a plaintiff that he has been injured.").

As discussed above, *supra* at pp. 7-8, this Court has already found that a proposed plaintiff was on notice of his alleged injury from Euroyen TIBOR and/or Yen LIBOR manipulation for CEA claims no later than July 26, 2011 (the date UBS disclosed regulatory investigations into LIBOR). *See Laydon II*, 2015 WL 1515487, at *3 & n.3. This holding applies with equal force to Plaintiff.[8] Thus, the limitations period applicable to Plaintiff's New Claims expired no later than July 26, 2013—nearly two-and-a-half years *before* Plaintiff sought to assert the New Claims in the December 2015 PTAC.

The cases establish that if the named plaintiff is time barred, then the claim cannot be maintained in that action. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) ("If the *named* plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.") (emphasis in original); *Hall Special Situations Inv. Fund v. Basix Corp.*, 1994 WL 132235, at *2 (S.D.N.Y. Apr. 14, 1994) ("Plaintiff's claim on its own behalf is clearly time barred. Where the named plaintiff in a class action suit fails to state a claim upon which relief could be granted, the complaint must be dismissed."); *see also LIBOR III*, 27 F. Supp. 3d at 487 (where the named plaintiffs in a putative class action did not have a valid implied covenant claim because they had not transacted with certain defendants, that claim was dismissed as against those defendants).

In the letter briefing preceding the TAC, Plaintiff sought to justify the belated addition of the New Claims by asserting that they are based on "new facts" revealed only after the SAC was filed on April 15, 2013. *See* ECF No. 564 at 3. The only source Plaintiff cites for these alleged "new facts" is Rabobank's settlement with the Commodity Futures Trading Commission ("CFTC"). *Id.* To the extent Plaintiff argues that he could not have known of supposed Yen

---

[8] Indeed, Plaintiff has acknowledged that he was on notice no later than March 2011. *See* ECF No. 1 ¶¶ 83, 107.

LIBOR manipulation taking place in 2011 until Rabobank's regulatory settlements were published (*see id.*), that argument fails because the New Claims would *still* be untimely. Rabobank's CFTC settlement was published on October 29, 2013 (*see* ECF No. 563-25), more than two years before Plaintiff filed the December 2015 PTAC.

Furthermore, it is well-settled that courts in this District consider at the pleading stage whether claims are time-barred.[9] Thus, courts in this District and Circuit have rejected on limitations grounds named plaintiffs' attempts to add claims by extending the putative class period. For example, in *LIBOR VI*, Judge Buchwald recently rejected a similar attempt by the named plaintiffs to expand the putative class period and assert new CEA claims covering a time period those plaintiffs had not previously asserted. *See* 2016 WL 1558504, at *11 (holding that proposed CEA claims for the expanded period were "time-barred pursuant to the CEA's two-year statute of limitations.").[10] This Court should do likewise.

As discussed below, none of *American Pipe* tolling, the relation back doctrine, or alleged fraudulent concealment can save Plaintiff's untimely claims.

### A.    *American Pipe* Tolling Does Not Render the New Claims Timely

Tolling under *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974), does not apply because (i) Mr. Laydon cannot invoke the doctrine because he is the named plaintiff, and (ii) even if Mr. Laydon traded during the period January 1, 2011 to June 30, 2011,

---

[9] *See, e.g.*, *Sewell v. Bernardin*, 795 F.3d 337, 339-41 (2d Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar, such as lack of timeliness, as an affirmative defense and it is clear [ ] that the plaintiff's claims are barred as a matter of law."); *McCleod v. Travelers Indem. Co.*, 2012 WL 5210945, at *1 n.1 (S.D.N.Y. Oct. 19, 2012) (Daniels, J.) ("It is proper to consider the failure to comply with the statute of limitations at the motion to dismiss stage.").

[10] *See also Wilder v. News Corp.*, 2015 WL 5853763, at *14-17 (S.D.N.Y. Oct. 7, 2015) (dismissing named plaintiffs' claims based on an expanded class period on statute of limitations grounds that were asserted in a second amended complaint filed after ruling on motion to dismiss first amended complaint containing narrower class period); *In re Bausch & Lomb, Inc. Secs. Litig.*, 941 F. Supp. 1352 (W.D.N.Y. 1996) (granting motion to dismiss on statute of limitations grounds expanded class period claims pled in second amended complaint).

he was not (nor was any other late purchaser) asserted to be a member of any previous putative class.

First, Plaintiff cannot invoke *American Pipe* tolling to save the New Claims because that doctrine is inapplicable to named plaintiffs.  *See, e.g.*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 n.10 (2011) ("[*American Pipe*] demonstrate[s] only that a person *not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding." (emphasis added)); *LIBOR VI*, 2016 WL 1558504, at *11 ("While plaintiffs argue that *American Pipe* tolling saves their claims, this tolling rule does not apply to named plaintiffs."); *Vincent v. Money Store*, 915 F. Supp. 2d 553, 561 (S.D.N.Y. 2013) ("The policy underlying *American Pipe* makes clear that it is inapplicable to named plaintiffs.").[11]

Second, under the *American Pipe* tolling doctrine, the commencement of a class action suspends the applicable statute of limitations only as to "*asserted* members of the class."  414 U.S. at 554 (emphasis added); *see also Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013) (finding that a prerequisite to the application of *American Pipe* tolling is that "a plaintiff must have been a member of the purported class").[12]  This prerequisite is not satisfied here because if Plaintiff traded during the new period, he was never an asserted member of the putative class which ended in December 2010 (nor was anyone else who might have traded during the new period).

---

[11] In the letter briefing preceding Plaintiff's filing of the TAC, Plaintiff argued that he has reserved the right to amend the class period throughout this litigation.  (ECF No. 564, at 3 (citing SAC, ¶ 704, n.17))  However, Plaintiff cited no authority holding that such a reservation can toll applicable statutes of limitation.  *Id.*  Allowing a plaintiff to toll the statute of limitations applicable to his or her claims merely by making a unilateral reservation of rights would eviscerate both the *American Pipe* tolling doctrine and statutes of limitations in general.

[12] *See also Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002) (when "a purported class member for any reason ceases to be a member of the putative class, the toll ends by operation of law and the limitations period begins to run immediately").

In *Laydon II*, this Court recognized that *American Pipe* tolling was inapplicable in analogous circumstances.  There, the Court denied as untimely Plaintiff's attempt to add Stephen P. Sullivan as a new plaintiff who sought to assert CEA claims in this action.  *Laydon II*, 2015 WL 1515487, at *3-4.  The Court held that its "tolling [decision] turn[ed] primarily on whether Sullivan [was] an asserted member of the class proposed in Plaintiff's prior pleadings."  *Id.* at *3. The Court concluded that Sullivan was not, because Plaintiff's previous complaints limited class membership to entities that transacted in derivatives for which "Euroyen Tibor and Yen Libor serve[d] as the pricing benchmark," whereas Sullivan allegedly traded derivatives that were ***not*** benchmarked to Euroyen TIBOR and Yen LIBOR.  *Id.*  Like Sullivan, if Plaintiff traded during the period January 1, 2011 to June 30, 2011, he was never part of the putative class in this action which ended in December 2010 (nor was anyone else who might have traded in the new period). Thus, no class action existed on which Plaintiff (or any other late purchasers) could rely for *American Pipe* tolling.  *See LIBOR III*, 27 F. Supp. 3d at 486 (holding that plaintiffs who transacted after December 31, 2009—the end of the relevant prior class period—"were not part of the [previous] class, and [therefore] not eligible to receive . . . *American Pipe* tolling" for their CEA claims).[13]

### B.    The Relation Back Doctrine Does Not Render the New Claims Timely

To the extent Plaintiff may argue that the relation back doctrine renders the New Claims timely, Plaintiff would be wrong.  Plaintiff cannot escape the bar to his claims by arguing that he seeks to assert the New Claims on behalf of new plaintiffs because he must then satisfy Federal

---

[13] *See also In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (holding that a purchaser of one ETF was not entitled to *American Pipe* tolling because the purchaser was not an asserted member of a putative class that was limited to purchasers of different ETFs); *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215-16 (S.D.N.Y. 2008) (holding that *American Pipe* did not toll the claims of two putative plaintiffs, who were officers of the defendant-corporation, because the alleged class explicitly excluded officers of the corporation from its definition).

Rule of Civil Procedure 15(c)(1)(C).  *See Wilder v. News Corp.*, 2015 WL 5853763, at *15 ("Courts have concluded that Rule 15(c)(1)(C) applies to amendments making changes to named defendants, and is also applicable to a proposed change of plaintiffs."); *Laydon II*, 2015 WL 1515487, at *4 n.8 (recognizing that the Advisory Committee Note states that Rule 15(c)(1)(C) extends by analogy to amendments changing plaintiffs).  Under Rule 15(c)(1)(C), amendments to add new plaintiffs relate back to the date of an original pleading only if:  (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" (Rule 15(c)(1)(C) (incorporating Rule 15(c)(1)(B)); (2) the defendant "received such notice of the action that it will not be prejudiced in defending on the merits," Rule 15(c)(1)(C)(i); and (3) the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity", Rule 15(c)(1)(C)(ii); *see Laydon II*, 2015 1515487, at *4.  Plaintiff cannot satisfy any of these requirements.

First, the New Claims do not relate back to the original pleading because they exceed the scope of the claims asserted in Plaintiff's previous complaints and thus Defendants did not have proper notice of the New Claims.  *See Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged.").  This Court has already held that claims outside the scope of the previously-defined class cannot relate back to the originally-filed complaint because those claims would improperly and "significantly expand[] the class." *Laydon II*, 2015 WL 1515487 at *5.

In *Laydon II*, Plaintiff sought to amend his complaint to add claims on behalf of two proposed plaintiffs who allegedly traded different products than Plaintiff traded.  *Id*. at *4-6. This Court held that the proposed plaintiffs' claims did not relate back because (i) neither

plaintiff was a member of the previously-asserted class; (ii) the claims of both plaintiffs differed from the previously-asserted claims on behalf of the class; and therefore (iii) Defendants lacked notice of the proposed plaintiffs' claims.  *Id*.  Similarly, prior to filing the December 2015 PTAC, Plaintiff consistently limited the putative class to the period January 1, 2006 to December 31, 2010, *see supra* at pp. 3-4, while the New Claims relate to the different time period of January 1, 2011 to June 30, 2011.  *See* TAC ¶¶ 1, 937.

As in *Laydon II*, Rule 15(c) relation back is inappropriate here because the New Claims exceed the scope of Plaintiff's previous pleadings and thus Defendants lacked proper notice of the New Claims.  *See Ridge Seneca Plaza, LLC v. BP Prods. N. Am. Inc.*, 545 Fed. App'x 44, 47 (2d Cir. 2013) (claims related to later transactions did not relate back "despite their connection" to the incident in the initial complaint); *In re Bausch & Lomb,* 941 F. Supp. at 1366 (no relation back for new claims from expanded class period; such claims did not arise "out of the same conduct, transaction or occurrence" alleged in earlier pleading); *Wilder*, 2015 WL 5853763, at *16 (no relation back of plaintiff's attempt to expand the class period and assert new claims).

Second, for the reasons discussed above, Defendants lacked notice that Plaintiff would— more than *two years* after the statute of limitations on his CEA claims expired—alter the scope of the case by asserting the New Claims.  *See Laydon II*, 2015 WL 1515487, at *5 (no relation back where new claims Plaintiff sought to add were not within previous class definition and "Defendants therefore were not on notice" of such claims); *see also In re Bausch & Lomb*, 941 F. Supp. at 1366 (no relation back because prior pleadings did not put defendants on notice of plaintiffs' new claims that would arise from class period expansion).

Third, Plaintiff has given no reason to believe that Defendants knew or should have known of the New Claims "but for a mistake concerning the proper party's identity."  *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010); *Wilder*, 2015 WL 5853763, at *15-

17 (in order for relation back to be available for an attempted extended class, the omission of the new plaintiffs must have been "the result of a mistake").  Plaintiff does not even allege that he *made* a mistake, much less that Defendants knew or should have known of such mistake. Accordingly, those claims cannot relate back under Rule 15(c)(1)(C).

### C.   The Doctrine of Fraudulent Concealment Does Not Render the New Claims Timely

Apparently recognizing that his New Claims are time-barred, Plaintiff attempts to invoke the doctrine of fraudulent concealment to toll the limitations period, *see* TAC ¶¶ 944-66, but that argument fares no better.   A plaintiff asserting fraudulent concealment must allege, with particularity, that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled."   *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 116 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012).

Defendants dispute that Plaintiff has sufficiently alleged the first requirement.  But even if Plaintiff could allege any particularized facts showing that Defendants concealed information—which they did not—Plaintiff still fails to satisfy the second requirement.  Plaintiff did not remain unaware of the alleged violation during the limitations period.[14]  He was put on notice of the New Claims by no later than July 26, 2011 (UBS Disclosure), or even accepting *arguendo* Plaintiff's recent apparent contention, at the absolute latest by October 29, 2013 (Rabobank's CFTC Settlement), still more than two years before the New Claims were asserted. *See supra* at pp. 6-8.

---

[14] Tolling under the fraudulent concealment doctrine is: (1) "designed for application in cases where a plaintiff is unaware of his cause of action because of defendant's fraudulent conduct" and (2) only applicable "if the fraudulent concealment succeeds in depriving plaintiffs of notice."  *Koch*, 785 F. Supp. 2d at 117.

Plaintiff also cannot satisfy the third requirement of fraudulent concealment because he fails to allege that he diligently pursued discovery of the New Claims. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (plaintiffs bear burden to allege what they did to investigate the possibility of fraud). Indeed, Plaintiff bases his fraudulent concealment allegations on **one** conversation counsel allegedly had with a single financial Defendant. TAC ¶ 945. Other than this isolated conversation, Plaintiff fails to describe any specific inquiries that were made, "when such inquiries were made, to whom, regarding what, and with what response." *In re Merrill Lynch*, 154 F.3d at 60.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss with prejudice as against them Plaintiff's First and Second Claims for Relief for the period January 1, 2011 to June 30, 2011.

Dated: New York, New York
       May 16, 2016

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 956-7056
libowd@sullcrom.com
viapianoc@sullcrom.com
cassadye@sullcrom.com

*Attorneys for Defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Mitsubishi UFJ Trust and Banking Corporation*

/s/ Gary W. Kubek
Gary W. Kubek
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000
Fax: (212) 909-6836
gwkubek@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendant The Bank of Yokohama, Ltd.*

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael A. Brille
Melissa Felder Zappala
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Tel: (202) 237-2727
mbrille@bsfllp.com
mzappala@bsfllp.com

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants Barclays Bank PLC, Barclays PLC, and Barclays Capital Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
Mark D. Villaverde
MILBANK TWEED HADLEY & McCLOY
LLP
28 Liberty Street
New York, New York 10005
Tel.: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve
Rabobank U.A. (f/k/a Coöperatieve Centrale
Raiffeisen-Boerenleenbank B.A.)*

/s/ Andrew C. Finch
Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com
Tel.: (212) 373-3355

*Attorneys for Defendants Deutsche Bank AG
and DB Group Services UK Limited*

/s/ Thomas C. Rice
Thomas C. Rice
Paul C. Gluckow
Shannon P. Torres
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
stores@stblaw.com
omason@stblaw.com

*Attorneys for Defendants J.P. Morgan Chase &
Co., JPMorgan Chase Bank, National
Association, and J.P. Morgan Securities plc.*

/s/ Jerome S. Fortinsky
Jerome S. Fortinsky
John A. Nathanson
Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
jfortinsky@shearman.com
john.nathanson@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendant Mizuho Corporate
Bank, Ltd.*

/s/ Alan M. Unger
Alan M. Unger
Andrew W. Stern
Tom A. Paskowitz
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
tpaskowitz@sidley.com

*Attorneys for Defendant The Norinchukin
Bank*

/s/ Andrew C. Smith
Andrew C. Smith
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1540 Broadway
New York, New York 10036
Tel.: (212) 858-1000
Fax: (212) 858-1500
andrew.smith@pillsburylaw.com

*Attorneys for Defendant Shinkin Central Bank*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David Sapir Lesser
Jamie Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Counsel for Defendants The Royal Bank of
Scotland Group plc, The Royal Bank of
Scotland plc, RBS Securities Japan Limited,
and RBS Securities Inc.*

/s/ Robert C. Mason
Robert C. Mason
Maggie Maurone
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 715-1088
Fax: (212) 715-1399
robert.mason@aporter.com
maggie.maurone@aporter.com

James W. Thomas, Jr. *(admitted pro hac vice)*
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
james.thomas@aporter.com

*Attorneys for Defendant The Shoko Chukin
Bank, Ltd.*

/s/ Jon R. Roellke
Anthony R. Van Vuren
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
jon.roellke@morganlewis.com
anthony.vanvuren@morganlewis.com

Michael L. Spafford
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005
Tel.: (202) 551-1700
Fax: (202) 551-1705
michaelspafford@paulhastings.com

*Attorneys for Defendant Sumitomo Mitsui
Banking Corporation*

/s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Christensen@sewkis.com
Weitman@sewkis.com

*Attorneys for Defendant Sumitomo Mitsui
Trust Bank, Limited*

/s/ Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
Fax: (212) 351-4035
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Tel.: (415) 393-8200
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS
Securities Japan Ltd.*