

August 4, 2017

**VIA ECF & FEDERAL EXPRESS**
The Honorable Henry B. Pitman
United States Magistrate Judge
United States District Court for the
 Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

**Re:**   *Laydon v. Mizuho Bank, Ltd. et al.*, No. 12-cv-3419 (GBD) (HBP)

Dear Judge Pitman:

As counsel for Plaintiff, we request a Local Civil Rule 37.2 pre-motion conference before moving to compel Defendants Sumitomo Mitsui Trust Bank, Limited, The Shoko Chukin Bank, Ltd., The Bank of Tokyo-Mitsubishi UFJ, Ltd., Mitsubishi UFJ Trust and Banking Corporation, The Bank of Yokohama, Ltd., and Shinkin Central Bank (collectively, the "Objecting Defendants") to produce documents responsive to Plaintiff's Second Request for Production of Documents dated June 6, 2016 (the "Second Request").

We have gone through a lengthy meet and confer process with Objecting Defendants, negotiating through their various objections and agreeing to a set of Japanese and English search terms. Yet thus far, not a single Objecting Defendant has produced the requested internal and external communications. We ask the Court to set a deadline of September 6 for Objecting Defendants to begin a rolling production.

The Objecting Defendants also refuse to produce relevant documents and communications from one key group of custodians: their employees who traded financial instruments priced based on Yen-LIBOR or Euroyen TIBOR ("traders"); rather, the Objecting Defendants intend to limit their searches and productions to the personnel responsible for making the banks' daily Yen-LIBOR or Euroyen TIBOR submissions ("submitters"). As Plaintiff alleges, traders like the LIBOR-manipulation "ringmaster" Tom Hayes sat at the heart of defendants' conspiracy, were often the most egregious manipulators, and had much to gain financially by illegitimately improving their bank's bottom line. Other defendants have already produced their trader custodian files to regulators and to us, and those documents have proved to be fertile ground for evidence of manipulation. Yet the Objecting Defendants refuse to do the same.

We now seek the Court's intervention to resolve these issues.

**Background**

This case involves the manipulation of two interest rate benchmarks, the London Interbank Offered Rate for the Japanese Yen ("Yen-LIBOR") and the Tokyo Interbank Offered Rate ("Euroyen TIBOR"). Beginning in 2011, global regulators uncovered that banks manipulated

www.lowey.com
44 South Broadway, Suite 1100, White Plains, NY 10601  (p) 914-997-0500  (f) 914-997-0035
Four Tower Bridge, 200 Barr Harbor Drive, Suite 400, West Conshohocken, PA 19428-2977  (p): 610-941-2760  (f): 610-862-9777



LIBORs in multiple currencies to illegitimately profit the bank's derivatives trading books. Many of these regulators secured documents from the bank targets relating to LIBOR rigging.

On June 18, 2014, Plaintiff served his First Request for Production of Documents ("First Request") on all defendants, requesting they produce five categories of documents limited to, among other things, documents already reviewed, gathered, and produced to any government regulator concerning Yen-LIBOR and Euroyen TIBOR.[1] The Objecting Defendants collectively produced less than 2,400 documents in response to Plaintiff's First Request. As a result, on June 6, 2016, Plaintiff served his Second Request, requesting that the Objecting Defendants produce, among other things:

    1.    All documents and communications between or among your employees concerning your Yen-LIBOR and/or Euroyen TIBOR submissions.

    2.    All documents and communications between or among your employees concerning the Yen-LIBOR and/or Euroyen TIBOR submissions of another Yen-LIBOR or Euroyen TIBOR Contributor Panel Bank.

    3.    All documents and communications between your employees and any Yen-LIBOR or Euroyen TIBOR Contributor Panel Bank concerning Yen-LIBOR and/or Euroyen TIBOR.

    4.    All documents and communications between your employees and any Yen-LIBOR or Euroyen TIBOR Contributor Panel Bank concerning Euroyen-based derivatives.

    5.    All documents and communications between your employees and any interdealer broker concerning (a) your Yen-LIBOR or Euroyen TIBOR submissions; (b) "Suggested LIBORs"; or (c) Euroyen-based derivatives.

*See* Exhibit A (served on Mitsubishi UFJ Trust and Banking Corporation; the same was served on the other Objecting Defendants).

*Substantively*: Much of Plaintiff's negotiations with the Objecting Defendants concerned whether Objecting Defendants would produce documents from their traders' custodian files. Our talks reached an impasse when most of the Objecting Defendants took the same position: at least for now,[2] they would only produce documents from their submitters' custodian files, no matter what offer Plaintiff made to ease their claimed burden of producing traders.

*Procedurally*: Objecting Defendants provided their objections and responses to the Second

---

[1] Discovery was stayed until May 15, 2015. *See* ECF No. 451.

[2] The Objecting Defendants have tried to assuage our concerns with the same empty promise: they will withhold their traders' custodian files for now and prefer to revisit the subject later, after they have produced the submitters' custodian files. They don't assert that they will change their position; rather, they claim to hope that after we see the submitters' files, we will not want the traders' files. First, there is nothing in the submitters' files that would obviate the need for the traders' files; the two categories of custodian files will provide different sets of evidence. Second, Objecting Defendants' proposal to table the dispute is merely a delay tactic. With our discovery completion date fast approaching, delay is not an option, especially since it serves no purpose.



Request on July 29, 2016. *See* Exhibits B-G (describing Objecting Defendants' objections and responses to Request Nos. 1-5). Meet-and-confers to address the objections and responses began within a few weeks after their receipt, and have continued regularly to date. For discussion purposes, and in the hope of expediting the production process, Plaintiff proposed a comprehensive set of Japanese and English search terms to Objecting Defendants in December 2016. Some of the Objecting Defendants neither agreed to Plaintiff's search term proposal nor provided a counterproposal. Others negotiated with Plaintiff regarding search terms and by May 2017, Plaintiff and those Objecting Defendants reached an agreement on search terms. Plaintiff then offered those terms to the remaining Objecting Defendants that had not negotiated, and they agreed to use the terms.[3] But to date, no Objecting Defendant has produced documents responsive to Request Nos. 1-5 of the Second Request.

**Argument**

*Objecting Defendants should be ordered to begin a rolling production by September 6, 2017*

Objecting Defendants have had sufficient time to begin production of their responsive internal and external communications. In many cases, Objecting Defendants have attributed the delay to difficulties in gathering and loading documents for review. However, Objecting Defendants have had more than a year to collect and produce documents and have not done so. Accordingly, Plaintiff asks the Court to order Objecting Defendants to provide Plaintiff with documents responsive to Request Nos. 1-5 of the Second Request on a rolling basis beginning no later than September 6, 2017.

*Traders' custodian files should be searched and produced at the outset*

The Objecting Defendants do not contest that a search of traders' custodian files will turn up relevant documents. Instead, they argue two points: (1) relevant communications in the submitters' files will likely duplicate those that would be found in the traders' files; and (2) their search of submitters' files alone might turn up enough relevant documents to obviate the need to search through traders' files. As discussed below, the Objecting Defendants miss the mark.

*First*, Plaintiff's Third Amended Class Action Complaint and Defendants' documents make clear that limiting a search to submitters at the outset will miss relevant documents. *See, e.g.*, ECF No. 580 ¶ 237 (Deutsche Bank's Tokyo Regional Manager sent an instant message asking the Yen Desk Manager to tell the Senior Yen LIBOR Submitter to "go high in 1m and 6m."); ¶ 540 (RBS Senior Yen Trader commenting to another trader, "its just amazing how libor fixing can make you that much money").

*Second*, during our meet-and-confers, Plaintiff repeatedly discussed an example scenario where two traders communicate in writing their plan to manipulate, and then execute a verbal, undocumented request to their submitters. Such a communication would not be captured by a search of submitters alone. And Plaintiff alleges specific examples of this exact type of scenario in the Complaint. *See, e.g.*, *id.* ¶¶ 271-72 (describing how traders would send each other a written

---

[3] Plaintiff and Objecting Defendants agreed that Plaintiff reserves the right to supplement the initial list of search terms after Objecting Defendants make an initial production.



communication and then "shout" the request to the submitter); ¶ 191 (testimony from former Rabobank trader Lee Stewart stating, "The majority [of LIBOR requests] would be done in just over the desk, so not in writing").

*Third*, the general rule in this circuit is that just because relevant documents may be produced does not "establish that there are no other relevant materials to be found." *See Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 15-cv-01310, 2016 WL 2930887, at *2-3 (D. Conn. May 19, 2016) (requiring the search and production of electronically stored information from additional custodians the defendants initially refused to search); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12-cv-1579, 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) ("[T]he total number of documents 'harvested' is not a particularly compelling statistic by itself, because it says nothing about the possible significance of the documents and may in fact reflect an inefficient search protocol.").

*Finally,* defendants are not allowed to quarantine certain types of employees' documents because it is likely that different employees communicate differently, such that relevant materials are present in the custodian files of one but not the other. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50 (S.D.N.Y. 2009) ("With respect to the issue of custodians, it may well be . . . that only the more senior . . . employees sent or received emails that are relevant to the issues in this case. By the same token, however, it also may be true that employees at that level took care not to say anything incriminating and that lower-level employees were less guarded in their email communications."). Objecting Defendants have made clear that they have no intention to produce what are likely to be unique manipulative communications in trader custodian files that are absent from their submitter files. In sum, Objecting Defendants do not dispute that relevant evidence could be, or indeed *will* be, missed by their limitation to submitters.

This Court should order Objecting Defendants to search through and produce relevant documents from their traders' files.

* * *

We thank the Court for its consideration of Plaintiff's request and we are available to address any questions the Court may have.

Respectfully submitted,

/s/ Raymond Girnys

cc:   The Honorable George B. Daniels (via Federal Express)
      All Counsel of Record (via ECF)