# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN
CAPITAL MASTER FUND, L.P., JAPAN MACRO
OPPORTUNITIES MASTER FUND, L.P., and CALIFORNIA
STATE TEACHERS' RETIREMENT SYSTEM on behalf of
themselves and all others similarly situated,

Plaintiffs,

- against —

UBS AG, UBS SECURITIES JAPAN CO. LTD., MIZUHO
BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ,
LTD., THE SUMITOMO TRUST AND BANKING CO., LTD.,
THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST
AND BANKING CORPORATION, SUMITOMO MITSUI
BANKING CORPORATION, RESONA BANK, LTD., J.P.
MORGAN CHASE & CO., JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES
PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE
BANK AG, DB GROUP SERVICES UK LIMITED, MIZUHO
TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN
BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF
YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE
ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL
BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN
LIMITED, RBS SECURITIES INC., BARCLAYS BANK PLC,
BARCLAYS PLC, BARCLAYS CAPITAL INC., CITIBANK,
NA, CITIGROUP, INC., CITIBANK, JAPAN LTD.,
CITIGROUP GLOBAL MARKETS JAPAN, INC.,
COÖPERATIEVE CENTRALE RAIFFEISEN-
BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC
BANK PLC, LLOYDS BANKING GROUP PLC, LLOYDS
BANK PLC, ICAP PLC, ICAP EUROPE LIMITED,  R.P.
MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK)
LTD., TULLETT PREBON PLC, BANK OF AMERICA
CORPORATION, BANK OF AMERICA, N.A., MERRILL
LYNCH INTERNATIONAL, AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 15-cv-5844 (GBD)
(HBP)

JEFFREY LAYDON, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, ICAP EUROPE LIMITED,  R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 12-cv-3419 (GBD) (HBP)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE BANK OF TOKYO-MITSUBISHI UFJ, LTD. AND MITSUBISHI UFJ TRUST AND BANKING CORPORATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.   The Court has jurisdiction to consider and approve the Settlement. ..................................2

II.  The Court should preliminarily approve the Settlement. ...................................................3

    A.   The preliminary approval standard. ........................................................................3

    B.   The Settlement provides a considerable benefit to the Settlement Class.................3

    C.   The Settlement is procedurally fair because it was produced by well-informed, arm's-length negotiations by experienced counsel. ................................................4

    D.   The Settlement does not contain any deficiencies...................................................5

    E.   The Settlement does not favor any Plaintiffs or Class Members or create any preferences..............................................................................................................6

    F.   The consideration provided in the Settlement is well within the range of what possibly may be found to be fair and reasonable at final approval. ..........................6

        1.   Applying the *Grinnell* "final approval" factors to the Settlements is unnecessary at preliminary approval. ........................................................8

III. The Court should certify the Settlement Class defined in the Settlement. ..........................11

    A.   The Settlement Class meets the Rule 23(a) requirements...........................................11

        1.   The Representative Plaintiffs suffer no disabling conflicts. .......................12

        2.   Plaintiffs' Counsel is adequate. ...............................................................14

        3.   The Court should appoint Class Counsel under Rule 23(g)(1)..................15

    B.   The proposed Settlement Class satisfies Rule 23(b)(3). ...............................................15

IV.  The Court should appoint Amalgamated Bank as Escrow Agent. .......................................18

V.   The Court should approve the Class Notice plan, forms of notice, and Proposed Plan of Allocation...........................................................................................................................18

CONCLUSION .............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................................. 16, 17

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ................................................................................................................ 12

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010) .............................................................................................................. 15

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................................................................ 8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007) ............................................................................................................... 17

*Ehrheart v. Verizon Wireless,*
    609 F.3d 590 (3d Cir. 2010) ................................................................................................................ 2

*Gottesman v. General Motors Corp.,*
    436 F.2d 1205 (2d Cir. 1971) .............................................................................................................. 7

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ........................................ 6

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    MDL No. 1775, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ......................................................... 16

*In re Am. Int'l Grp. Secs. Litig.,*
    689 F.3d 229 (2d Cir. 2012) ........................................................................................................ 16, 17

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    MDL No. 1500, 02-civ-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................ 10

*In re Austrian and German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................................................... 4

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ............................................................................................................. 13

*In re Currency Conversion Fee Antitrust Litig.,*
    224 F.R.D. 555 (S.D.N.Y. 2004) ....................................................................................................... 17

*In re Currency Conversion Fee Antitrust Litig.,*
    263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................................................... 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ..............................................................................12

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 439 (S.D.N.Y. 2004) ............................................................. 10, 13

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................ 11, 16

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................. 12, 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................... 3, 5, 6, 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................7

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..........................3

*In re Prudential Secs. Ltd P'ships Litig.*,
  No. M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ......................7

*In re Warner Chilcott Ltd. Secs. Litig.*,
  No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .....................9

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................7

*Maley v. Del. Global Technologies Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................20

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ..............................................................................12

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ......................................................................12

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) .......................................................................... 7, 8

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .............................................................9, 17

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012)................................................................16

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)...............................................4

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ...............................6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..........................................................................11

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir. 1988) ..........................................................19

## Rules

Fed. R. Civ. P. 23(a)(4) ......................................................................12

Fed. R. Civ. P. 23(b).............................................................................17

Fed. R. Civ. P. 23(b)(3)...............................................................15, 17

Fed. R. Civ. P. 23(e) ...............................................................................3

Fed. R. Civ. P. 23(g)(1)........................................................................15

Fed. R. Civ. P. 23(g)(2)........................................................................15

## Treatises

Alba Conte & Herbert Newberg, Newberg on Class Actions §§ 18:28 & 18:29 (4th ed.
    2002)......................................................................................................16

# INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs[1] request the Court preliminarily approve their $30,000,000 settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") and Mitsubishi UFJ Trust and Banking Corporation ("MUTB").[2]  The terms of the Settlement are substantially the same as those in the $206,000,000 of collective settlements the Court has already approved in connection with Plaintiffs' settlements with Citi,[3] HSBC,[4] Deutsche Bank,[5] JPMorgan[6] and R.P. Martin.[7] ECF Nos. 298, 389.

Plaintiffs submit this memorandum of law and the accompanying Declaration of Vincent Briganti to demonstrate that this Court should grant Plaintiffs' motion for an Order that:

    (a)    preliminarily approves Plaintiffs' proposed Settlement, subject to later, final approval;

    (b)    conditionally certifies a Settlement Class for the claims against BTMU and MUTB;

    (c)    appoints Lowey Dannenberg, P.C. ("Lowey Dannenberg") as Class Counsel for the Settlement;

    (d)    appoints Amalgamated Bank as the Escrow Agent for the Settlement;

    (e)    appoints A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator for the Settlement;

    (f)    approves Plaintiffs' proposed class notice (February 2018 Briganti Decl. Exs. 3-4) and proposed notice plan for the Settlement (Young Affidavit, attached as Ex. 2 to the February 2018 Briganti Decl.);

---

[1] "Plaintiffs" are Jeffrey Laydon, Sonterra Capital Master Fund, Ltd., Hayman Capital Master Fund, L.P. and Japan Macro Opportunities Master Fund, L.P. (collectively, "Hayman"), and California State Teachers' Retirement System ("CalSTRS"). Unless otherwise noted, ECF citations are to the docket in the *Sonterra* Action, and internal citations and quotation marks are omitted.

[2] The Stipulation and Agreement of Settlement dated January 23, 2018 between Plaintiffs and BTMU and MUTB ("Settlement") is attached as Exhibit 1 to the Declaration of Vincent Briganti, Esq. dated February 9, 2018 ("February 2018 Briganti Decl."). Unless otherwise defined, capitalized terms herein have the same meaning as in the Settlement. Plaintiffs, BTMU and MUTB are collectively referred to as the "Settling Parties."

[3] "Citi" means Citibank, N.A., Citigroup Inc., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc.

[4] "HSBC" means HSBC Holdings plc and HSBC Bank plc.

[5] "Deutsche Bank" means Deutsche Bank AG and DB Group Services (UK) Ltd.

[6] "JPMorgan" means JPMorgan Chase & Co., JPMorgan Chase Bank, National Association, and J.P. Morgan Securities plc.

[7] "R.P. Martin" means R.P. Martin Holding Limited and Martin Brokers (UK) Ltd.

(g)     approves Plaintiffs' previously-approved Plan of Allocation (ECF No. 263-5) to the Settlement; and

(h)     sets a schedule leading to the Court's consideration of final approval of the Settlement, including: (i) the date, time, and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement; (ii) the deadline for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement; (iii) the deadline for Class Counsel to submit a petition for attorneys' fees and replenishment of the litigation expense fund, and any incentive awards for Settlement Class representatives; and (iv) the deadline for members of the Settlement Class to object to the Settlement and any of the related petitions.

*See* Proposed Order annexed as Exhibit A to the accompanying Notice of Motion.

## ARGUMENT

**I.     The Court has jurisdiction to consider and approve the Settlement.**

The Settlement resolves the claims against BTMU and MUTB in both the *Laydon* Action and the *Sonterra* Action.  The Court has jurisdiction to consider and approve the Settlement for the same reasons the Court determined it had jurisdiction to consider and finally approve Plaintiffs' prior settlements with Deutsche Bank and JPMorgan on December 7, 2017.  *See* ECF No. 389 ¶ 4 ("To the extent that one or both of the Actions has been dismissed, the Court has retained subject matter jurisdiction to approve the Settlements . . . in both of the Actions."). *See also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) (when parties execute a binding settlement agreement—including a class settlement—"with the understanding that intervening events could affect their interests in the litigation," including by eliminating entirely the claims on which the action was premised, the Court retains "the ability and the authority to approve the settlement.").[8]

---

[8] Plaintiffs and BTMU and MUTB agree that they have a "personal, concrete interest" in enforcing their binding Settlement. Settlement ¶ 3.

## II.   The Court should preliminarily approve the Settlement.

### A.  The preliminary approval standard.

Proposed Rule 23(b)(3) settlements require notice to class members, an opportunity for class members to object, and final approval after a hearing at which class members may appear. *See* FED. R. CIV. P. 23(e). Preliminary approval is appropriate "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

A court considers the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) ("*Platinum*"). The terms must be "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ II*, 176 F.R.D. at 102.[9]

### B.  The Settlement provides a considerable benefit to the Settlement Class.

The Settlement will provide the Settlement Class with a financial recovery of $30,000,000. This sum, plus the $206,000,000 already approved by the Court from the settlements with Citi, Deutsche Bank, HSBC, and JPMorgan, provides the Settlement Class with $236,000,000 to date.

---

[9] *See also, e.g.*, Order Preliminarily Approving Class Action Settlement and Conditionally Certifying a Settlement Class, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y. Dec. 15, 2015), ECF No. 234 ("*Euribor Order I*") (preliminarily approving the terms of a $94 million settlement as within the range of reasonableness, fairness and adequacy in a proposed class action alleging the manipulation of the Euro Interbank Offered Rate ("EURIBOR")); Order Preliminarily Approving Class Action Settlement with HSBC Holdings plc and HSBC Bank plc and Conditionally Certifying a Settlement Class, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y. Jan. 18, 2017), ECF No. 279 ("*Euribor Order II*") (preliminarily approving $45 million settlement as within the range of reasonableness, fairness and adequacy); Order Preliminarily Approving Proposed Settlement with Deutsche Bank AG and DB Group Services (UK) Ltd., Scheduling Hearing for Final Approval of Proposed Settlements with Barclays plc, Barclays Bank plc, Barclays Capital Inc., HSBC Holdings plc, HSBC Bank plc, Deutsche Bank AG and DB Group Services (UK) Ltd., and Approving the Proposed Form and Program of Notice to the Class, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y. Jul. 6, 2017), ECF No. 364 ("*Euribor Order III*") (preliminarily approving $170 million settlement as within the range of reasonableness, fairness and adequacy).

BTMU and MUTB also agreed that if the Settlement is finally approved, the settlement monies will **not** revert to BTMU and MUTB for opt-outs or failures to submit Proofs of Claim and Release. Settlement ¶ 10. Given the reality that claim rates often fall below 100%, the non-reversion term of the Settlement likely will enhance the benefits and the recovery for qualifying claimants.[10]

The Settlement also obligates BTMU and MUTB to provide specified cooperation to benefit the Settlement Class. Settlement ¶ 4. This cooperation will include production of: (i) certain data pertaining to BTMU's and MUTB's transactions conducted by their Tokyo branches in unsecured and secured borrowing and lending transactions, including Yen-denominated loan (placing), deposit (taking) and certificates of deposit; and (ii) BTMU's and MUTB's transactions conducted by BTMU's Tokyo, London, and New York branches and MUTB's Tokyo branch in Euroyen-Based Derivatives. *Id.* BTMU and MUTB will also provide Plaintiffs with reasonably available information necessary for Plaintiffs to authenticate or otherwise make usable at trial the cooperation materials and other documents and data previously produced. *Id.*

### C. The Settlement is procedurally fair because it was produced by well-informed, arm's-length negotiations by experienced counsel.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000).

The process leading to the Settlement supports preliminary approval. The Settlement is the result of seven months of arm's-length, non-collusive negotiations by experienced counsel.

---

[10] While there is no reversion, BTMU and MUTB do have the right, but not the obligation, in their sole discretion, to exercise certain rights, including terminating the Settlement, pursuant to the terms and conditions of a Supplemental Agreement. Settlement ¶ 23.

February 2018 Briganti Decl. ¶ 18. Counsel began discussions with BTMU and MUTB in June 2017. *Id.* ¶ 18. In the following months, Class Counsel and BTMU and MUTB's counsel had numerous telephone calls, during which counsel for each side expressed their view of the Actions and BTMU and MUTB's conduct in relation to the alleged conspiracy. *Id.* ¶¶ 19-23. At all times, counsel for BTMU and MUTB argued that they are not liable for the claims asserted against them in the Actions. *Id.* ¶ 18. Following months of hard-fought negotiations, Plaintiffs and BTMU and MUTB reached an agreement. *Id.* ¶ 21. BTMU and MUTB do not admit to any wrongdoing or liability as part of their Settlement and maintain that they have good and meritorious defenses to the claims brought against them in the Actions.

The Settlement Class benefitted from informed advocates in negotiating the Settlement. Before beginning negotiations with BTMU and MUTB, Class Counsel had the guidance of several of this Court's decisions concerning the claims and allegations in these Actions, government orders and settlements with certain Defendants, discovery produced to date in the *Laydon* Action, and settlement cooperation obtained pursuant to the already-approved Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements. February 2018 Briganti Decl. ¶ 17.

Considering Class Counsel's significant prior experience in complex class action litigation involving Commodity Exchange Act ("CEA") and antitrust claims (among others), their knowledge of the strengths and weaknesses of Plaintiffs' claims, and their assessment of the Settlement Class's likely recovery following trial and appeal, the Settlement is entitled to a presumption of procedural fairness.

**D. The Settlement does not contain any deficiencies.**

The Settlement satisfies the next *NASDAQ II* preliminary approval factor because it involves a structure and terms that are commonly used in class action settlements in this District. *NASDAQ II*, 176 F.R.D. at 102. Further, the Settlement contains similar terms to the Deutsche

Bank, JPMorgan, Citi and HSBC settlement agreements, which the Court has already finally approved. ECF No. 298 ¶ 9; ECF No. 389 ¶ 9.

**E. The Settlement does not favor any Plaintiffs or Class Members or create any preferences.**

The Settlement does not favor or disfavor any Plaintiffs or Class Members; nor does it discriminate against, create any limitations, or exclude from payments, any persons or groups within the Settlement Class. *See NASDAQ II*, 176 F.R.D. at 102. Plaintiffs, with the assistance of their expert, Dr. Craig Pirrong, developed a Plan of Allocation that this Court has already approved as fair, reasonable, and adequate. ECF No. 298 ¶ 20. This same Plan of Allocation will now be used to distribute the BTMU and MUTB Settlement Funds. Dr. Pirrong's daily artificiality matrix is available on the Settlement Website to inform Class Members of how valid and timely submitted claims will be compensated. The artificiality matrix may be adjusted following the receipt of BTMU and MUTB's cooperation materials and any changes will be immediately posted on the Settlement Website. Because the Settlement wholly avoids any improper preferences or discriminations, the Settlement satisfies the third *NASDAQ II* preliminary approval factor.

**F. The consideration provided in the Settlement is well within the range of what possibly may be found to be fair and reasonable at final approval.**

The sizeable consideration that the Settlement provides falls well within the possible range of reasonable consideration at the Fairness Hearing. *See NASDAQ II*, 176 F.R.D. at 102. The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Private antitrust plaintiffs, unlike the government, have the burden to prove anticompetitive impact and damages. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir. 1971). Even where the Department of Justice had secured a criminal guilty plea, civil juries have found no damages. *See, e.g.*, Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. Sept. 3, 2013), ECF No. 8562. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("*NASDAQ III*").

BTMU and MUTB's monetary consideration alone, $30,000,000, is greater than the amount of maximum potential damages BTMU and MUTB would have argued they were liable for had the cases proceeded to trial. *Compare Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("*Maywalt*") (maximum "likely" damages are the appropriate test), *with In re Prudential Secs. Ltd P'ships Litig.*, No. M-21-67 (MP), 1995 WL 798907, at *15 (S.D.N.Y. Nov. 20, 1995) ("*Prudential*") (Pollack, J.) (where many non-settling defendants are present, class counsel must be circumspect in stating facts that may aid the non-settling defendants). BTMU and MUTB would have argued that they were not liable for any damages on any claims in the Actions.

Plaintiffs' impact and damages theories against BTMU and MUTB would have been sharply disputed, including at trial. This inevitably would have involved a "battle of the experts." *NASDAQ III*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Before confronting the risks of proving impact and damages, Plaintiffs faced the complexities, challenges, and risk of a far-greater task: establishing the other elements of liability.

7

The facts and claims here are intricate. As recognized in similar contexts, "the complexity of [p]laintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). Establishing liability involves obtaining and proving the meaning and significance of instant messages, trading patterns, and other facts or evidence. Proving manipulation and collusion could raise ambiguities and require inferences.

In assessing the reasonableness and adequacy of the Settlement, Class Counsel was mindful of the "benefits afforded the Class including the immediacy and certainty of the recovery, against the continuing risks of litigation." *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). Due to the risks of litigation, Class Counsel's considered judgment is that the total consideration that the Settlement provides, including the cooperation that BTMU and MUTB will provide to Plaintiffs, is well within the range of that which may possibly later be found to be fair, reasonable, and adequate at final approval. *NASDAQ II*, 176 F.R.D. at 102; February 2018 Briganti Decl. ¶ 26.

1. **Applying the *Grinnell* "final approval" factors to the Settlements is unnecessary at preliminary approval.**

At final approval, the Court considers several factors, including:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"); *see Maywalt*, 67 F.3d at 1079-80 (fundamental to a determination of whether a settlement is fair, reasonable, and adequate "is the need to compare the terms of the compromise with the likely rewards of litigation."). In the discussion above, Plaintiffs have already addressed *Grinnell* Factors 4-6 and 8-9. These *Grinnell* Factors are the only appropriate considerations for preliminary approval. *See In re Warner Chilcott Ltd.*

*Secs. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, the [c]ourt need only find that the proposed settlement fits within the range of possible approval to proceed."). Plaintiffs nonetheless address the remaining *Grinnell* Factors below.

**_Grinnell_ Factor 1.** These Actions involve complex financial instruments and legal questions. In addition, there are dozens of Defendants, numerous third parties, and millions of pages of documents produced to Plaintiffs, and discovery remains ongoing. The litigations have been, and will continue to be, massive, complex, and expensive to prosecute. The expert work alone in these cases have been and will continue to be costly. Furthermore, these cases present an inherent level of risk and uncertainty because they involve a financial market unfamiliar to the average juror. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement.") (internal quotations omitted).

**_Grinnell_ Factor 2.** *Grinnell* Factor 2 (the reaction of the class to a settlement) is premature. Nonetheless, all of the named Plaintiffs favor the Settlement. Plaintiffs, including CalSTRS, the largest U.S. teachers' retirement fund, with approximately $225.3 billion in assets under management (as of December 31, 2017) and close to one million members, is a sophisticated investor with significant financial expertise and is fully capable of assessing the benefits of the Settlement. Well-versed in the rigorous analysis of financial matters, Plaintiffs' approval is highly probative of the likely reaction by other Class Members upon similarly reviewing the Settlements. Any Class Member who does not favor the settlement can opt out. After the Settlement Class has been provided notice of the Settlement, Plaintiffs will address the Settlement Class's reaction in their motion for final approval. Notably, there were no objections filed to any of the prior settlements (Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements). ECF No. 298 ¶ 7, ECF No. 389 ¶ 7.

*__Grinnell__* **Factor 3**. The Court may approve a settlement at any stage of litigation. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL No. 1500, 02-civ-5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The Court's primary concern is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their cases and whether the settlement is adequate given those risks. *Id.* at *37.

Plaintiffs conducted extensive factual and legal research and consulted experts to assess the merits of their claims. February 2018 Briganti Decl. ¶¶ 9, 17. Plaintiffs reviewed publicly-available information, including government pleas, non-prosecution and deferred prosecution agreements, trial transcripts, and attended criminal court proceedings concerning the manipulation of Yen-LIBOR and Euroyen TIBOR as well as various other global benchmarks. *Id.* ¶¶ 9, 17. Further, at the time Plaintiffs were negotiating the Settlement, Plaintiffs had the benefit of this Court's evaluation of the strengths of Plaintiffs' claims and Defendants' defenses through orders granting and denying in part Defendants' motions to dismiss in *Laydon*. Plaintiffs also had the benefit of settlement cooperation produced under the terms of the Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements and discovery produced to date in *Laydon. Id.* ¶¶ 9, 17. The information gathered during this process greatly informed Plaintiffs of the advantages and disadvantages of entering the Settlement.

*__Grinnell__* **Factor 7**. BTMU and MUTB can withstand a greater judgment than $30,000,000, but this *Grinnell* Factor alone does not bear on the appropriateness of the Settlement. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

**III.    The Court should certify the Settlement Class defined in the Settlement.**

As the Court already found when granting final approval to the Citibank, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements, the Settlement Class meets the requisites of Rule 23(a) and Rule 23(b)(3) for preliminary and final approval. *Compare* ECF Nos. 264 ¶ 4, 298 ¶ 2, 355 ¶ 4, 389 ¶ 2, *with* Settlement ¶ 1(G). Therefore, the Settlement Class should be preliminarily certified for the claims against BTMU and MUTB.[11]

**A.    The Settlement Class meets the Rule 23(a) requirements.**

**Numerosity.** Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). Joinder need not be impossible, "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). "Sufficient numerosity can be presumed at a level of forty members or more." *Id.* There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class definition, making joinder impracticable. *See* February 2018 Briganti Decl. ¶ 27.

**Commonality.** Commonality requires the presence of only a single question of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also* FED. R. CIV. P. 23(a)(2). These cases present many common questions of law and fact, including personal jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions that were raised in various motions to dismiss. Adding to the common questions of law and fact are the same liability and impact questions that every Plaintiff and Class Member must answer through the same body of common class-wide proof. For example:

1. What constitutes a false or manipulative submission by a Yen-LIBOR or Euroyen TIBOR contributor panel bank?

[11] BTMU and MUTB consent to preliminary certification of the Settlement Class solely for the purposes of the Settlement and without prejudice to any position BTMU and MUTB may take with respect to class certification in any other action or in these Actions if the Settlement is terminated. Settlement ¶ 22(E).

2.  Which of the Defendants were engaged in conspiratorial conduct in Yen-LIBOR and Euroyen TIBOR, and for what period(s) were they involved in the same?

3.  What would the non-manipulated Yen-LIBOR and Euroyen TIBOR be in the "but-for" world for each day of the Class Period?

These common questions involve common sub-questions of fact and law that are also common to all Class Members. Rule 23(a)(2) is overwhelmingly satisfied.

**Typicality.** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied if "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Plaintiffs' and Class Members' claims arise from the same course of conduct involving Defendants' alleged false reporting and manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives. Thus, Plaintiffs' claims are typical of the Class Members' claims. *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997).

**Adequacy.** Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts consider "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 60; *see also, e.g., Euribor Order I* ¶ 5.

**1.  The Representative Plaintiffs suffer no disabling conflicts.**

"[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) ("*NASDAQ I*") (finding that to warrant denial of class certification, "it must be shown that any

asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation"). No such fundamental conflict exists here.

*First*, all Class Members share an overriding interest in obtaining the largest possible monetary recovery from BTMU and MUTB (and the remaining non-settling Defendants). *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981).

*Second*, all Class Members share a common interest in obtaining BTMU and MUTB's cooperation to prosecute the claims against the non-settling Defendants.

*Third*, all Class Members share the same overriding interests to overcome the procedural dismissal motions, develop the enormous fact record during discovery, overcome the ambiguities and competing explanations, and establish the collusive, successful manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives. Further, all Class Members share the interest to successfully show that such manipulation was sufficient to cause injury and to quantify the impact of such manipulation.[12]

---

[12] Certain defendants in other "IBOR"-related actions pending in this District have challenged whether Sonterra has the capacity to sue under FED. R. CIV. P. 17 because it has dissolved.  *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A. et al.*, No. 16-cv-5263, ECF No. 243 at 13-16 (S.D.N.Y. Oct. 18, 2017); *Dennis v. JPMorgan Chase & Co. et al.*, No. 16-cv-6496, ECF No. 184 (S.D.N.Y. Oct. 19, 2017). Plaintiffs believe defendants' arguments are without merit because, for among other reasons, Sonterra unconditionally and irrevocably assigned, and transferred certain rights, title, and interests in its assets, including, without limitation, Sonterra's rights to recover any and all amounts payable on such assets, prior to its dissolution and further granted its assignee an irrevocable power of attorney that included, among other powers, the right to take all action in respect to such assets, including, without limitation, the right, power, and authority to participate and commence suit on behalf of Sonterra, and in Sonterra's name, place and stead. In any event, the capacity to sue issue raised in these other actions with respect to Sonterra (but one of the Representative Plaintiffs here) is of no consequence to the Court's ability to grant approval of the Settlements. *See* Settlement ¶ 1(LL) ("In the event that one or more Representative Plaintiff(s) fails to secure court approval to act as a Representative Plaintiff, the validity of this Settlement Agreement as to the remaining Representative Plaintiffs, the Settlement Class, and Interim Lead Counsel shall be unaffected.").

### 2.  Plaintiffs' Counsel is adequate.

Plaintiffs and the Settlement Class are represented by experienced and skilled counsel. Class Counsel, Lowey Dannenberg, has prosecuted these Actions for almost six years. Lowey Dannenberg investigated and brought the *Laydon* case prior to any government settlements in April 2012. This Court has already authorized and appointed Lowey Dannenberg as Interim Lead Counsel in *Laydon*, having found counsel's experience sufficient and relevant (*Laydon*, ECF No. 99), and as Class Counsel for the Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements. ECF No. 264 ¶ 5; ECF No. 355 ¶ 6. The Court has also found that Class Counsel has adequately represented the interests of the Settlement Class with respect to the Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements. ECF No. 298 ¶ 3; ECF No. 389 ¶ 3.

Lowey Dannenberg has vigorously represented the Settlement Class in both Actions, having negotiated the Settlement. Lowey Dannenberg has obtained and will obtain valuable information provided by the Settling Defendants.  Settlement ¶ 4. With over 50 years of experience litigating complex class actions, Lowey Dannenberg has achieved some of the most significant class action recoveries under the CEA and has secured almost a billion dollars in recoveries on behalf of Fortune 100 Companies and other sophisticated investors in antitrust and competition-related litigation. February 2018 Briganti Decl., Ex. 6 (Lowey Firm Resume); *see also Euribor Order I* ¶ 6 (appointing Lowey Dannenberg as settlement class counsel in $94 million settlement with Barclays); *Euribor Order II* ¶ 6 (appointing Lowey Dannenberg as settlement class counsel in $45 million settlement with HSBC); *Euribor Order III* ¶ 5 (appointing Lowey Dannenberg as settlement class counsel in $170 million settlement with Deutsche Bank); *Sonterra Capital Master Fund Ltd. et al. v. Credit Suisse Group AG et al.*, 15-cv-871 (SHS) (S.D.N.Y.), ECF No. 159 ¶ 7 (appointing Lowey Dannenberg as settlement class counsel in $22 million settlement with JPMorgan in Swiss Franc LIBOR class action).

The same bases justifying the Court's appointment of Lowey Dannenberg as Interim Lead Counsel and as Class Counsel for the Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements likewise apply to Lowey Dannenberg's ability and adequacy to serve as class counsel for the Settlement Class for the BTMU and MUTB Settlement. Therefore, upon certifying the Settlement Class, the Court should also appoint Lowey Dannenberg as Class Counsel. The Rule 23(a)(4) requirements that there be no fundamental conflict and adequate counsel are both satisfied.

### 3. The Court should appoint Class Counsel under Rule 23(g)(1).

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). For the reasons described above, Lowey Dannenberg is adequate and should be appointed as Class Counsel for the Settlement Class.

## B. The proposed Settlement Class satisfies Rule 23(b)(3).

Once Rule 23(a) has been satisfied, Plaintiffs must also conditionally establish (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

**Predominance.** Certification is proper under Rule 23(b)(3) where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). A plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Id.* (ellipses in original). "If the most substantial issues in controversy will be resolved by reliance primarily upon common

15

proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014), *adopted* 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws[,]" unlike mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §§ 18:28 & 18:29 (4th ed. 2002) (noting that allegations of antitrust conspiracies generally establish predominance of common questions). Many antitrust claims are well suited for class treatment because liability focuses on the defendants' alleged unlawful actions, not the actions of individual plaintiffs. *Compare Amchem*, 521 U.S. at 624, *with Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

The "predominance inquiry will sometimes be easier to satisfy in the settlement context." *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). Unlike class certification for litigation purposes, a settlement class presents no management difficulties for the court as settlement, not trial, is proposed. *Amchem*, 521 U.S. at 620; *see also NASDAQ I*, 169 F.R.D. at 517 (stating that the predominance test is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").

If the claims against BTMU and MUTB had not been settled, common questions would have predominated over individual questions in the prosecution of the claims against them. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. All Plaintiffs and Class Members must answer the same common factual and legal questions to establish personal jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions that were raised in various motions to dismiss. These common questions predominate over individual

16

questions. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (in price-fixing case, "allegations of the existence of a price-fixing conspiracy are susceptible to common proof").

**Superiority.** Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b). The Court balances the advantages of a class action against alternative available methods of adjudication. *See* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement is applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239-40.

A class action is the superior method for the fair and efficient adjudication of the Actions. *First*, members of the Settlement Class are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

*Second*, many Class Members have neither the incentive nor the means to litigate these claims. The damages most of the individual Class Members suffered are likely small compared to the very considerable expense and burden of individual litigation, making it uneconomic for an individual to protect his/her rights through an individual suit. That is why no Class Member "has displayed any interest in bringing an individual lawsuit." *See Meredith Corp.*, 87 F. Supp. 3d at 661. A class action allows claimants to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566.

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual members of the Settlement Class would impose heavy burdens upon the Court. It would create a risk of

inconsistent or varying adjudications of the questions of law and fact common to the Settlement

Class. Thus, both prongs of Rule 23(b)(3) are satisfied.

## IV.   The Court should appoint Amalgamated Bank as Escrow Agent.

Plaintiffs propose that the Court approve Amalgamated Bank ("Amalgamated") as Escrow

Agent. Amalgamated currently serves as Escrow Agent for settlements in *Sullivan v. Barclays plc*, case

no. 13-cv-2811 (PKC) (S.D.N.Y.) relating to the manipulation of EURIBOR and products priced,

benchmarked or settled to EURIBOR. Amalgamated has agreed to provide its services as Escrow

Agent at market rates.

## V.   The Court should approve the Class Notice plan, forms of notice, and Proposed Plan of Allocation.

Plaintiffs intend to use the same notice program that was successfully used for the Citi,

HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements.[13] This notice plan has been

approved several times by the Court (*see, e.g.,* ECF Nos. 264, 355) and resulted in the submission of

thousands of claims reflecting transactions for trillions of Yen in notional value. By building the

current notice program onto the prior notice plan, claimants from the last settlements will receive

notice of their ability to enhance their recovery and collect from BTMU and MUTB. Claimants in

the initial settlements will not have to file a new Proof of Claim and Release if they wish to

participate in the Settlement.

The direct-mailing notice program entails mailing the long form notice (February 2018

Briganti Decl., Ex. 3) to the following recipients, among others: (i) large traders on the CME; (ii)

clearing brokers on the CME, TFX, SGX, and LIFFE; (iii) BTMU's and MUTB's counterparties for

Euroyen-Based Derivatives during the Class Period, as well as Citi's, HSBC's, Deutsche Bank's and

JPMorgan's counterparties; (iv) members of the International Swaps and Derivatives Association

---

[13] Plaintiffs incorporate by reference their Supplemental Memorandum in Support of Motion for Preliminary Approval of Class Action Settlements seeking preliminary approval of the Citi and R.P. Martin Settlements (ECF No. 221).

("ISDA"), a global trade association for over-the-counter ("OTC") derivatives responsible for maintaining the standardized ISDA Master Agreement used in OTC Euroyen-based Derivatives transactions; (v) senior executives at hedge funds, investment banks, and real estate companies—the commercial end-users of OTC Euroyen-Based Derivatives; (vi) financial executives, including pension fund managers and derivatives traders, responsible for managing Yen exposure; (vii) a commercially available list of banks, brokers, and other investors; and (viii) the thirty largest foreign exchange and interest rate derivatives dealers in the United States from the Federal Reserve Bank of New York's triennial survey. Young Aff. Ex. A, at 2-3, attached to the February 2018 Briganti Decl., Ex. 2.

In addition to the far-reaching mailed notice program, Plaintiffs propose providing notice to members of the Settlement Class by publishing the publication notice (February 2018 Briganti Decl., Ex. 4) and continuing to operate the Settlement Website, www.EuroyenSettlement.com, and toll-free telephone number. Young Aff. ¶¶ 8-10, attached to the February 2018 Briganti Decl., Ex. 2. The publication notice will be published in The Wall Street Journal, Investor's Business Daily, the Financial Times, Modern Trader, Stocks & Commodities, Global Capital, Hedge Fund Alert, Grant's Interest Rate Observer, and on various websites, news releases, and in email "blasts" to subscribers to certain publications. These are the same publications that the Citi, HSBC, R.P. Martin, Deutsche Bank and JPMorgan settlements were published in. Further, the Settlement Website is live and, to date, has been visited over 46,000 times for information pertaining to the prior settlements in the Actions. Class Members can call the dedicated toll-free telephone number to ask questions regarding the Settlements. Together, the direct-mailing notice program, Settlement Website, publication notice, and toll-free telephone number amply satisfy the Rule 23(c)(2)(B) factors and due process. *See Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process does not require actual

notice to every class member, if class counsel "acted reasonably in selecting means likely to inform persons affected.").

Moreover, Plaintiffs' Plan of Allocation is fair and adequate. *See Maley v. Del. Global Technologies Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized -- namely, it must be fair and adequate."). As Plaintiffs previously described (ECF No. 221, at 8-10), Dr. Craig Pirrong created an "artificiality matrix" for Yen-LIBOR and Euroyen TIBOR, which is posted on the Settlement Website. The Net Settlement Fund will be distributed by multiplying the Net Settlement Fund by the Pro Rata Fraction. The denominator of the Pro Rata Fraction is the sum total of the Net Artificiality Paid by all Class Members who have positive Net Artificiality Paid, and the numerator of the Pro Rata Fraction is each Class Member's Net Artificiality Paid. For example, if the Class Member's Net Artificiality Paid constitutes 1% of the Net Artificiality Paid of all Class Members with positive Net Artificiality Paid, then that Class Member will receive 1% of the Net Settlement Fund. So, if the Net Settlement Fund is $15 million and a Class Member's Pro Rata Share is 1%, that Class Member will receive $150,000. This method will be used to determine the amount to be paid to each Class Member.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying proposed Order: (1) granting preliminary approval of the proposed settlement with BTMU and MUTB; (2) conditionally certifying the Settlement Class for the claims against BTMU and MUTB for purposes of sending notice to the Class; (3) appointing Lowey Dannenberg as Class Counsel; (4) appointing Amalgamated Bank as the Escrow Agent for the BTMU and MUTB Settlement; (5) appointing A.B. Data, Ltd. as Settlement Administrator; (6) approving Plaintiffs' proposed Class notices and proposed notice plan; (7) approving Plaintiffs' previously-approved Plan of Allocation to the

Settlement; and (8) setting a schedule leading to the Court's consideration of final approval of the

Settlement Agreement.

Dated: February 9, 2018
White Plains, New York

**LOWEY DANNENBERG, P.C.**

By: /s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
Peter D. St. Phillip
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914- 997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com


*Interim Lead Counsel*

Joseph J. Tabacco, Jr.
Todd A. Seaver
**BERMAN TABACCO**
44 Montgomery Street, Ste. 650
San Francisco, CA 94104
Tel.: 415-433-3200
Fax: 415-433-6282

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194

Christopher Lovell
Gary S. Jacobson
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Tel.: 212-608-1900
Fax: 212-719-4677

*Additional Counsel for Plaintiffs*

21