UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *Laydon v. Mizuho Bank, Ltd., et al.* | No. 12-cv-3419 (GBD) |
| *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.* | No. 15-cv-5844 (GBD) |

**DECLARATION OF VINCENT BRIGANTI, ESQ.**

I, Vincent Briganti, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a shareholder with the law firm Lowey Dannenberg, P.C. ("Lowey Dannenberg"). I submit this Declaration in connection with the pending Motion for Preliminary Approval of the Class Action Settlement with Defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") and Mitsubishi UFJ Trust and Banking Corporation ("MUTB")

2. A true and correct copy of the Stipulation and Agreement of Settlement between Plaintiffs[1] and BTMU and MUTB dated January 23, 2018 ("Settlement"), is attached as Exhibit 1.

3. Attached hereto as Exhibit 2 is a true and correct copy of the Affidavit of Linda Young, dated February 9, 2018.

4. Attached hereto as Exhibit 3 is a true and correct copy of the Proposed Mailed Notice.

5. Attached hereto as Exhibit 4 is a true and correct copy of the Proposed Publication Notice.

6. Attached hereto as Exhibit 5 is a true and correct copy of the Proof of Claim and Release form.

7. Attached hereto as Exhibit 6 is a true and correct copy of Lowey Dannenberg's firm Resume.

8. **Experience.** At the time the proposed Settlement with BTMU and MUTB was being negotiated, my firm and I were experienced in prosecuting claims under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 *et seq.*, Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. *See* Exhibit 6.

---

[1] The "Plaintiffs" are Jeffrey Laydon, Sonterra Capital Master Fund, Ltd., Hayman Capital Master Fund, L.P., Japan Macro Opportunities Master Fund, L.P., and the California State Teachers' Retirement System.

9. **Well-Informed.** Before reaching the Settlement, Interim Lead Counsel[2] was well-informed regarding the strengths and weaknesses of the Plaintiffs' claims. Lowey Dannenberg extensively reviewed and analyzed the following documents and information: (i) settlement cooperation provided by Defendants Deutsche Bank AG and DB Group Services (UK) Ltd. (collectively, "Deutsche Bank"), JPMorgan Chase & Co., JPMorgan Chase Bank, National Association and J.P. Morgan Securities plc (collectively, "JPMorgan"), R.P. Martin Holdings Limited and Martin Brokers (UK) Ltd. (collectively, "R.P. Martin"), Citigroup Inc., Citibank, N.A., Citibank Japan Ltd. and Citigroup Global Markets Japan Inc. (collectively, "Citi"), and HSBC Holdings plc and HSBC Bank plc (collectively, "HSBC"); (ii) government settlements, including plea, non-prosecution, and deferred prosecution agreements; (iii) publicly-available information relating to the conduct alleged in Plaintiffs' complaints; (iv) expert and industry research regarding Yen-LIBOR, Euroyen TIBOR, and Euroyen-Based Derivatives in the futures and over-the-counter markets; and (v) discovery produced to date in *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (GBD) (S.D.N.Y.) ("*Laydon*"). In addition, Lowey Dannenberg: (a) conducted an extensive investigation into the facts and legal issues in the Actions; (b) engaged in extensive negotiations with BTMU and MUTB; and (c) took many other steps to research and analyze the strengths and weaknesses of the claims, including ongoing consultations with a leading commodity manipulation consulting expert.

10. **Procedural History.** The procedural history of the Actions detailed in my prior declarations in support of preliminary approval of the settlements with Deutsche Bank and JPMorgan (ECF No. 338 ¶¶ 10-21),[3] R.P. Martin and Citi (ECF No. 189 ¶¶ 10-20), and HSBC (ECF No. 262 ¶¶ 5-12), and in support of final approval of the R.P. Martin, Citi, HSBC, Deutsche Bank and JPMorgan settlements (ECF No. 279 ¶¶ 2-55; ECF No. 372 ¶¶ 2-62), is hereby incorporated by

---

[2] Unless otherwise defined, capitalized terms shall have the same meanings as defined in the Settlement.

[3] Unless otherwise noted, all citations herein are to the docket in *Sonterra, et al. v. UBS AG, et al.*, No. 15-cv-5844 (GBD) (S.D.N.Y.) ("*Sonterra*").

2

reference. Since my prior declarations, the following events have occurred in the Actions:

11. On December 4, 2017, Plaintiffs and BTMU and MUTB executed a binding settlement Term Sheet. *See* Ltr. From Vincent Briganti to the Hon. George B. Daniels dated December 4, 2017.

12. On December 7, 2017, the Court granted Plaintiffs' motion for final approval of the settlements with Deutsche Bank and JPMorgan (ECF No. 389) and entered a final judgment and order dismissing Deutsche Bank and JPMorgan from the Actions with prejudice. ECF No. 390. The Court also awarded Class Counsel attorneys' fees. ECF No. 388.

13. On February 6, 2018, the *Sonterra* Plaintiffs filed a Motion to Amend the March 10, 2017 Judgment Pursuant to Fed. R. Civ. P. 60(b). ECF Nos. 394-95. On February 7, 2018, the Court entered the Amended Judgment, excluding BTMU and MUTB from the Amended Judgment in order to consider approval of the Settlement. ECF No. 396.

14. **Arm's-Length.** Negotiations leading to the Settlement were entirely non-collusive and strictly arm's-length. During the course of negotiations, Plaintiffs had the benefit of developing information from various sources, including the Deutsche Bank settlement cooperation, the JPMorgan settlement cooperation, R.P. Martin settlement cooperation, the Citi settlement cooperation, the HSBC settlement cooperation, discovery produced to date in *Laydon*, Defendants' government settlements and orders, other public accounts of manipulation involving Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives, Interim Lead Counsel's investigation into Plaintiffs' claims, industry and expert analysis, previous decisions in *Laydon* and *Sonterra,* and information shared by BTMU and MUTB during the course of negotiating the Settlement. I was involved in all aspects of the settlement negotiations on behalf of Plaintiffs.

15. **Settlement Negotiations.** The negotiations with BTMU and MUTB took place over seven months starting approximately in June 2017 and continuing until the Settlement was

executed in January 2018.

16. Following an initial phone call from BTMU and MUTB's counsel, Plaintiffs held a teleconference with BTMU and MUTB's counsel on August 29, 2017 for preliminary settlement discussions. The August 2017 teleconference did not result in a settlement.

17. Counsel for BTMU and MUTB contacted Plaintiffs again on October 4, 2017 to resume settlement discussions.

18. Interim Lead Counsel and BTMU and MUTB held a series of teleconferences over the following weeks. During these calls, the parties discussed, among other issues, Plaintiffs' view on BTMU and MUTB's liability and BTMU and MUTB's arguments against finding them liable for claims in these Actions. On November 17, 2017, Plaintiffs and BTMU and MUTB reached an agreement in principle to settle the claims in the Actions and immediately began drafting a Term Sheet.

19. On December 4, 2017, Interim Lead Counsel and BTMU and MUTB executed a binding Term Sheet. The Term Sheet set forth the terms on which Plaintiffs and BTMU and MUTB agreed to settle Plaintiffs' claims against BTMU and MUTB. At the time the Term Sheet was executed, Interim Lead Counsel was well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of the Actions.

20. Following several weeks of arm's-length negotiations via teleconference and exchanges of draft settlement terms, Interim Lead Counsel, on behalf of Plaintiffs, and BTMU and MUTB executed the Settlement on January 23, 2018.

21. The Settlement was not the product of collusion. Before any financial numbers were discussed in the settlement negotiations with BTMU and MUTB and before any demand or counter-offer was ever made, I was well informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of the Plaintiffs' claims against BTMU

4

and MUTB.

22. The Settlement involves a structure and terms that are common in class action settlements in this District.

23. The consideration that BTMU and MUTB have agreed to pay is within the range of that which may be found to be fair, reasonable, and adequate at final approval.

24. Lowey Dannenberg has strong reason to believe that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition. This belief is based on data from the Bank of International Settlements which shows that trillions of dollars of Euroyen-based interest rate swaps and forward rate agreements were traded within the United States from 2006 through 2011, as well as data from the settlement cooperation produced to date by R.P. Martin, Citi, HSBC, Deutsche Bank and JPMorgan.

25. Lowey Dannenberg has diligently represented the interests of the Class in the Actions. The firm investigated and brought the Actions. Lowey Dannenberg preserved the statute of limitations. Lowey Dannenberg negotiated the Settlement with BTMU and MUTB. The firm performed all of the necessary work to prosecute this litigation for over five years. Lowey Dannenberg will continue to zealously represent the Class to prosecute the Class's claims against the remaining Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 9, 2018
White Plains, New York

_____
Vincent Briganti