UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

JEFFREY LAYDON, *on behalf of himself and all others similarly situated*,

                        Plaintiff,

              v.

MIZUHO BANK, LTD. et al.,

                        Defendants.

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

12 Civ. 3419 (GBD)

GEORGE B. DANIELS, United States District Judge:

Defendants Barclays Bank PLC, Cooperatieve Rabobank U.A., RBS Securities Japan Limited, The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, Societe Generale, UBS AG, and UBS Securities Japan Co., Ltd. (collectively, "Defendants") move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(c), all of which Plaintiff has brought under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, as asserted in the Third Amended Complaint ("TAC"). (Notice of Defs.' Mot. for J. on the Pleadings, ECF No. 974.)[1] Defendants' motion to for judgment on the pleadings is GRANTED.

## I. FACTUAL BACKGROUND

This case involves Defendants' alleged manipulation of Euroyen TIBOR (the Tokyo Interbank Offered Rate), Yen LIBOR (the London Interbank Offered Rate for Japanese Yen), and the prices of Euroyen TIBOR futures contracts from January 1, 2006 to December 31, 2010 (the "Class Period"). Plaintiff brings this action to recover for losses that he allegedly suffered when he initiated short positions in Euroyen TIBOR futures contracts on the Chicago Mercantile

---

[1] Given the lengthy procedural history and factual background, this Court assumes familiarity and repeats only those details relevant to the instant motion.

1

Exchange ("CME") during the Class Period, claiming that Defendants' manipulation of Yen LIBOR and Euroyen TIBOR affected the prices of his Euroyen TIBOR futures contracts. (Third Amended Class Action Complaint ("TAC"), ECF No. 580, at ¶ 56.) Specifically, according to Plaintiff, Defendants made artificial Yen LIBOR and Euroyen TIBOR submissions to the British Bankers' Association ("BBA") in London and the Japanese Bankers' Association ("JBA") in Tokyo in order to profit from derivatives involving Japanese Yen. (*Id.*) Defendants argue that the alleged conduct at issue is so predominantly foreign as to render Plaintiff's claims impermissibly extraterritorial. (Defs.' Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Mem. in Supp."), ECF No. 975, at 1–2.)

## II.   LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, a court may consider "the complaint, the answer [and] any written documents attached to them." *L-7 Designs*, 647 F.3d at 422 (cleaned up).


Exchange ("CME") during the Class Period, claiming that Defendants' manipulation of Yen LIBOR and Euroyen TIBOR affected the prices of his Euroyen TIBOR futures contracts. (Third Amended Class Action Complaint ("TAC"), ECF No. 580, at ¶ 56.) Specifically, according to Plaintiff, Defendants made artificial Yen LIBOR and Euroyen TIBOR submissions to the British Bankers' Association ("BBA") in London and the Japanese Bankers' Association ("JBA") in Tokyo in order to profit from derivatives involving Japanese Yen. (*Id.*) Defendants argue that the alleged conduct at issue is so predominantly foreign as to render Plaintiff's claims impermissibly extraterritorial. (Defs.' Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Mem. in Supp."), ECF No. 975, at 1–2.)

## II.   LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, a court may consider "the complaint, the answer [and] any written documents attached to them." *L-7 Designs*, 647 F.3d at 422 (cleaned up).

### III. PLAINTIFF FAILS TO ALLEGE CEA CLAIMS

Since the inception of this action, there has been an intervening change of controlling law regarding the extraterritorial application of the CEA. Indeed, the Second Circuit in *Prime Int'l Trading, Ltd. v. BP P.L.C.* unequivocally held that a private plaintiff asserting claims under Section 22 of the CEA "must allege not only a domestic transaction, but also domestic—not extraterritorial—*conduct* by Defendants that is violative of a substantive provision of the CEA." 937 F.3d 94, 105 (2d Cir. 2019), *cert. denied sub nom. Atl. Trading USA, LLC v. BP P.L.C.*, No. 19-1141, 2020 WL 3146710 (U.S. June 15, 2020) (emphasis added). The Circuit explained that allowing an action to proceed "any time a domestic transaction is pleaded would turn the presumption against extraterritoriality into a 'craven watchdog'" and "fly in the face of the Supreme Court's clear guidance that the presumption against extraterritoriality cannot evaporate any time" *some* domestic activity is implicated in the action. *Id.* at 106 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010)). The fact that a domestic transition is implicated is insufficient to rebut the presumption against extraterritoriality because "[f]oreign conduct is generally the domain of foreign law." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007). The Circuit further reasoned that "potential unintended clashes between our laws and those of other nations . . . could result in international discord if [it] adopts an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Prime Int'l Trading*, 937 F.3d at 106 (cleaned up).

For instance, the Circuit in *Prime International Trading* affirmed the district court's dismissal of CEA claims on the basis that the plaintiffs asserted:

> attenuated "ripple effects" theory whereby (1) the alleged manipulative trading activity taking place in the North Sea (2) affected Brent crude prices—a foreign commodity—which (3) affected a foreign benchmark, the Dated Brent Assessment, which

3

> (4) was then disseminated by a foreign price reporting agency, which (5) was then allegedly used (in part) to price futures contracts traded on exchanges around the world.

*Id.* at 106–07. The Circuit concluded that in addition to the trades at issue being pegged to the value of a foreign asset, almost every link in the plaintiffs' "chain of wrongdoing is entirely foreign" as to render their claims impermissibly extraterritorial. *Id.* at 107. Indeed, a plaintiff alleging a CEA claim must show that (1) the transactions at issue are domestic and (2) the conduct affecting such transactions was sufficiently domestic so to warrant a proper domestic application of the CEA. *Id.* at 105–06

Here, Defendants' alleged wrongful conduct, however, is almost entirely foreign, rendering it impermissibly extraterritorial. *See Prime Int'l Trading*, 937 F.3d at 107. In particular, instead of alleging any relevant conduct by Defendants in the United States, Plaintiff merely relies on the attenuated "ripple effects" effects theory the Circuit in *Prime International Trading* rejected as predominantly foreign. More specifically, Plaintiff claims that (1) the alleged manipulative Yen LIBOR submissions occurred abroad, which (2) affected the setting of Yen LIBOR determined abroad, which (3) was then disseminated by the BBA in London, which (4) essentially affected Euroyen TIBOR, which, in turn (5) impacted the trading prices of Euroyen TIBOR futures contracts traded on the CME. (TAC ¶¶ 1–2.)

As this Court has previously determined, Plaintiff cannot point to any direct, traceable ways in which Defendants' alleged manipulation of Yen LIBOR caused a loss to him on futures contracts associated with an entirely different benchmark, Euroyen TIBOR. *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2014 WL 1280464, at *9 (S.D.N.Y. Mar. 28, 2014). Indeed, Plaintiff's "ripple effects" theory is unavailing because the disconnect between Yen LIBOR and Euroyen TIBOR renders Plaintiff's causal chain more attenuated than that rejected by the *Prime*

4

*International Trading* court. *See Prime Int'l Trading*, 937 F.3d at 107. Accordingly, Plaintiff's remaining CEA claims—alleging manipulation of Japanese Yen benchmark rates, by foreign financial institutions, on foreign soil—is "predominantly foreign" as to render them impermissibly extraterritorial and are thus not actionable under the CEA. *See id.* at 106.

## IV. CONCLUSION

Defendants' motion to for judgment on the pleadings, (ECF No. 974), is GRANTED. Accordingly, Plaintiff's Third Amended Complaint, (ECF No. 580), is dismissed. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
        August 27, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge